UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------X
                :

ABUCHI RAYMOND WEALTH     :
and STANISLAV MARKEVICH,   :
                :

      Plaintiffs,     :       Civil Action No. 2:23-cv-03194
                :
                :       Motion Day: February 5, 2024
v.                :
                :

FOX ROTHSCHILD LLP, ALKA  :
BAHAL, KRISTEN M. AMABILE, :
JOHN AND JANE DOES 1-10 and :
ABC CORPS. 1-10,      :
                :

      Defendants.    :
---------------------------------------------X

---

## BRIEF ON BEHALF OF DEFENDANT FOX ROTHSCHILD LLP IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO STRIKE IMPERTINENT ALLEGATIONS

---

WILENTZ, GOLDMAN & SPITZER, P.A.
Brian J. Molloy, Esq.
Daniel J. Kluska, Esq.
Immanuel O. Adeola, Esq.
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, New Jersey 07095
Telephone: (732) 855-6083
bmolloy@wilentz.com
dkluska@wilentz.com
iadeola@wilentz.com
*Attorneys for Defendant Fox Rothschild LLP*

#14204770.1

## **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS .............................................................................. 6

A.  Both Wealth And His Prospective Employer Retain
    Fox Rothschild To File A Nonimmigrant Visa Petition
    On Behalf Of Wealth And Provide Related Legal
    Advice. ................................................................................ 6

B.  Fox Rothschild Prepares And Files The O-1 Petition
    On Behalf Of Wealth, And Provides Related Legal
    Advice, Just As It Was Retained To Do. ..................................... 9

C.  USCIS Denies Wealth's O-1 Petition Solely On The
    Grounds That Wealth Could Not Demonstrate That He
    Has Extraordinary Ability In Athletics Or Other
    Fields. .................................................................................. 10

D.  Wealth Is Indicted, And A Warrant Is Issued For His
    Arrest, For Alleged Criminal Sexual Contact. ........................... 11

E.  Wealth Is Detained By The United States Immigration
    And Customs Enforcement For Remaining In The
    United States Beyond The Expiration Date Of His
    Visa. 12

F.  Markevich Does Not Retain Fox Rothschild, And
    Ignores An Alleged Suggestion Made By Amabile
    And/Or Bahal, Concerning A Nonimmigrant Visa On
    His Behalf. ............................................................................ 12

G.  Fox Rothschild Terminates Amabile's Employment,
    And Amabile Subsequently Allegedly Misappropriates
    Funds And Other Property From Wealth And Fails to
    Cooperate With Markevich. ..................................................... 13

**<u>TABLE OF CONTENTS</u> (cont'd)**

**PAGE**

H.    Plaintiffs File A Legal Malpractice Complaint Against Defendants Riddled With Impertinent And Harassing Allegations That Blames Fox Rothschild For Wealth's Own Misconduct And Amabile's Alleged Post-Termination Activity, And Which Is Based On Otherwise Entirely Proper Conduct. ........................................... 15

STANDARD OF REVIEW ......................................................... 18

LEGAL ARGUMENT................................................................. 20

I.    THE COURT SHOULD DISMISS COUNT SIX OF THE SAC BECAUSE PLAINTIFFS HAVE NOT AND CANNOT PLEAD ALLEGATIONS SATISFYING ALL ELEMENTS OF A LEGAL MALPRACTICE CLAIM ........................................... 20

A.    Fox Rothschild Did Not Breach A Duty Owed To Wealth And His Alleged Damages Were Not Proximately Caused By Fox Rothschild..................................... 21

B.    Fox Rothschild Did Not Have An Attorney-Client Relationship With Markevich And His Alleged Damages Were Not Proximately Caused By Fox Rothschild............................................................................. 24

II.    THE COURT SHOULD DISMISS THE FIRST, SECOND AND FIFTH COUNTS OF THE SAC BECAUSE THEY ARE DUPLICATIVE OF THE SIXTH COUNT OF THE SAC  26

III.    THE COURT SHOULD DISMISS THE SECOND COUNT OF THE SAC BECAUSE PLAINTIFFS MAKE NO EFFORT TO PLEAD A NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM ...................................... 31

## TABLE OF CONTENTS (cont'd)

**PAGE**

IV.    THE COURT SHOULD DISMISS THE THIRD COUNT
       OF THE SAC BECAUSE THE FRAUD CLAIM LACKS
       THE REQUISITE SPECIFICITY ........................................... 32

V.     THE COURT SHOULD DISMISS THE FOURTH AND
       SEVENTH COUNTS OF THE SAC BECAUSE THE RICO
       CLAIMS ALSO LACK THE REQUISITE SPECIFICITY ................... 34

VI.    THE COURT SHOULD STRIKE ALL IMPERTINENT,
       SCANDALOUS AND IMMATERIAL ALLEGATIONS OF
       THE SAC ....................................................................... 38

CONCLUSION ........................................................................ 40

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn,*
  410 N.J. Super. 510  (App. Div. 2009).........................................................27

*Banker v. Davidson, Dawson & Clark LLP,*
  2023 WL 2620057 (App. Div. March 24, 2023)...........................................40

*Baraka v. McGreevey,*
  481 F.3d 187 (3d Cir. 2007) ........................................................................18

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .....................................................................................18

*Bristol-Myers Squibb Co. v. IVAX Corp.,*
  77 F. Supp. 2d 606 (D.N.J. 2000) ................................................................39

*Buck v. Hampton Twp. Sch. Dist.,*
  452 F.3d 256 (3d Cir. 2006) ........................................................................19

*Carbis Sales, Inc. v. Eisenberg,*
  397 N.J. Super. 64 (App. Div. 2007).............................................................21

*Cetel v. Kirwan Fin. Group,*
  460 F.3d 494 (3d. Cir. 2006) .......................................................................35

*Cohen v. Horn,*
  2022 WL 1718051 (D.N.J. May 27, 2022) ...................................................28

*Conklin v. Hannoch Weisman,*
  145 N.J. 395 (1996).......................................................................................22

*Cortez v. Gindhart,*
  435 N.J. Super. 589 (App. Div. 2014)...........................................................28

*Couri v. Gardner,*
  173 N.J. 328 (2002).......................................................................................27

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

*Dello Russo v. Nagel,*
   358 N.J. Super. 254 (App. Div. 2003).........................................................31

*Donnelly v. O'Malley & Langan, PC,*
   370 Fed. Appx. 347 (3d Cir. 2010) ............................................................18

*Fernandez v. Baruch,*
   96 N.J. Super. 125 (App. Div. 1967), *rev'd on other grounds,* 52 N.J. 127
   (1968) ........................................................................................................22

*Fink v. Kirchner,*
   2013 WL 1952303 (D.N.J. May 8, 2013) ...................................................28

*Fowler v. UPMC Shadyside,*
   578 F.3d 203 (3d Cir. 2009) ......................................................................18

*Frederico v. Home Depot,*
   507 F.3d 188 (3d Cir. 2007) ......................................................................33

*Gautam v. De Luca,*
   215 N.J. Super. 388  (App. Div. 1987)........................................................32

*Johnson v. McClellan,*
   468 N.J. Super. 563 (App. Div. 2021)........................................................40

*Lopez-Siguenza v. Roddy,*
   2014 WL 4854452 (D.N.J. Sept. 30, 2014..................................................28

*O'Keefe v. Friedman & Friedman, Ltd.,*
   2018 WL 1535234 (D.N.J. March 29, 2018) ..............................................28

*Poling v. K. Hovnanian Enterprises,*
   99 F. Supp. 2d 502 (D.N.J. 2000) ..............................................................35

*Sommers v. McKinney,*
   287 N.J. Super. 1 (App. Div. 1996)............................................................21

*Tonka Corp. v. Rose Art Indus.,*
   836 F. Supp. 200 (D.N.J. 2000) .................................................................39

#14204770.1

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

*Townsend v. Pierre,*
   221 N.J. 36 (2015)................................................................30

## STATUTES

18 U.S.C. § 1961(5) ...............................................................35

## RULES

Fed. R. Civ. P. 12(b)(6).......................................................18, 19

Fed. R. Civ. P. 12(f)................................................................38

Fed. R. Civ. P. 9(b) ............................................................32, 35

## REGULATIONS

8 C.F.R. § 319.1.....................................................................25

## OTHER AUTHORITIES

Mallen, 1 Legal Malpractice § 8:1 (2022 ed.) ...............................28

## PRELIMINARY STATEMENT

Defendant Fox Rothschild LLP ("Fox Rothschild") submits this brief in support of its motion to dismiss the frivolous Second Amended Complaint ("SAC") filed by Plaintiffs Abuchi Raymond Wealth ("Wealth") and Stanislav Markevich ("Markevich") or, in the alternative, to strike impertinent and scandalous allegations having no relation whatsoever to the alleged claims.

There are two main allegations in the SAC upon which all of Wealth's claims are based:

1. Fox Rothschild failed to timely and properly file an immigration petition for Wealth and, as a consequence, his petition was denied; and

2. Wealth did not know that Defendant Kristen Amabile, a former Fox Rothschild paralegal who worked on his immigration petition, had been terminated by the law firm and (although never specifically alleged in the SAC) he presumably continued to communicate with her after her termination when she allegedly stole from him.

Similarly, all of Markevich's claims are based on the allegation that he actually retained Fox Rothschild to file an immigration petition for him, that it failed to do so and that it made an improper suggestion as to how to obtain legal status in the United States. All of these claims are demonstrably false as shown by documents referenced or integral to the allegations in the SAC that reveal that Markevich was never a Fox Rothschild client. Consequently, Plaintiffs have failed to state a claim upon which relief can be granted.

This matter concerns Fox Rothschild's proper representation of Wealth in connection with his attempt to extend his stay in the United States under his soon to expire immigration visa. Wealth and his prospective employer (which has not filed any claim against Fox Rothschild) retained Fox Rothschild to prepare a visa petition known as an O-1 petition to extend Wealth's stay in the country and provide other related advice. Fox Rothschild, and specifically defendants Alka Bahal, Esq. ("Bahal") and Kristen Amabile ("Amabile"), a paralegal who assisted Bahal in this work, did exactly that: they prepared and filed the petition with the United States Citizenship and Immigration Services ("USCIS"), responded to a request for additional information from USCIS, and provided other related advice. USCIS denied the petition on the merits in a detailed decision (not because of any alleged untimely filing or the allegedly incorrect type of filing) because Wealth could not satisfy heightened criteria showing that he possesses "extraordinary ability" in athletics or other fields. The decision demonstrates that Wealth cannot state a claim for relief based on when the O-1 petition was filed or whether the correct type of petition was filed.

Furthermore, Wealth admits receipt of the decision denying his petition in which USCIS advised him that its decision would leave him out of status, and directed him to immediately leave the country or face repercussions for failing to do so.

Rather than heed USCIS's warning, Wealth continued to remain in the United States. Shortly thereafter, Wealth was charged with Third and Fourth-Degree Criminal Sexual Contact (a fact never mentioned in the SAC but which this Court may take judicial notice of the public record). Nearly one year after USCIS issued its decision, Immigration and Customs Enforcement ("ICE") detained Wealth for remaining in the country beyond his permitted stay.

Wealth further alleges that he did not know that Amabile no longer worked for Fox Rothschild when she allegedly stole from him. But, there are e-mails to and from Wealth within days of Amabile's termination (and long before any alleged theft) advising Wealth that she was no longer employed by the law firm. These e-mails, which are integral to the allegations in the SAC, establish that Wealth cannot base any claim on Amabile's former employment status with the law firm. What, if anything, Amabile did with Wealth after her employment ended with Fox Rothschild cannot be the basis of any claim against the law firm.

Joining the SAC is plaintiff Markevich, who filed an immigration petition pro se, and later had on and off communications with Amabile, and at times Bahal, concerning his immigration status. He alleges they made an improper suggestion that he marry his girlfriend to obtain legal status in this country. In contrast with Wealth, noticeably absent from Markevich's allegations is any evidence that he actually retained Fox Rothschild to perform legal services for

him; he freely acknowledges disregarding the suggestion allegedly made to him. Like Wealth, Markevich also pleads allegations against Amabile regarding her alleged misconduct occurring *after* Fox Rothschild terminated her employment.

Plaintiffs filed the SAC against Fox Rothschild based on a series of false claims belied by: their own allegations; documents they rely upon as integral to their claims or attached to the SAC, which this Court may consider on this motion to dismiss; and matters of public record that this Court may also consider on this motion to dismiss.   The gist of Plaintiffs' contention is that Fox Rothschild breached a duty of care when it caused Wealth's petition to be denied by filing it untimely and incorrectly, and by failing to file any application for Markevich.   First, USCIS addressed the merits of Wealth's petition in its decision denying the application, and made no mention whatsoever of any untimely nature of the filing or that the wrong type of petition had been filed. ICE's detention of Wealth was not based on the alleged untimeliness of the filing, but rather the fact that Wealth disregarded USCIS's express warning to leave the country and that Wealth was charged with criminal sexual contact.

As for Markevich, he fails to sufficiently plead the existence of any attorney-client relationship that he had with Fox Rothschild, and even if such a relationship existed, he freely admits electing not to pursue a suggestion made regarding obtaining legal status.

Plaintiffs' SAC inexplicably asserts the same legally-defective legal malpractice claim based on this same alleged breach of duty styled under different causes of action. Plaintiffs also plead one count of breach of contract, one count of negligence and one count of breach of fiduciary duty all based on the same factual allegations and all premised upon the legal theory that Fox Rothschild breached a duty of care to them and thereby proximately caused them to suffer damages. There is no legal or other basis for a plaintiff to plead and re-plead duplicative causes of action against a defendant. In accordance with New Jersey law, the Court should dismiss the duplicative counts of the SAC.

Plaintiffs also assert a fraud claim against Fox Rothschild based on vague allegations that Amabile misrepresented herself to them as an attorney and that no one at the firm informed them otherwise. Plaintiffs fail to plead their fraud claim with the specificity required not only as to the particulars concerning Amabile's alleged misrepresentations, but also concerning Fox Rothschild's misrepresentations (or omissions) to them. To the contrary, the retainer agreement relied upon by Wealth, invoices to Wealth attached to the SAC, and e-mails from Amabile to Markevich relied upon by Markevich do not identify Amabile as an attorney. Indeed, in a drawn-out e-mail to Fox Rothschild lodging all of his various complaints, Wealth *never* referred to her as an attorney.

Plaintiffs' claims under the federal and New Jersey RICO statutes against Fox Rothschild face the same fate. There are no allegations demonstrating how Fox Rothschild is part of a criminal enterprise, and Amabile's alleged actions long after her employment was terminated cannot be imputed to Fox Rothschild.

Lastly, if the Court allows Plaintiffs to proceed on any counts of the SAC, it should strike the impertinent and scandalous allegations in the SAC solely to harass and embarrass Defendants. Photographs of Bahal and Amabile, references to communications between Fox Rothschild's General Counsel and other law firm clients that may or may not have occurred, and references to other unrelated allegations have no place in a complaint filed in this District.

Accordingly, Fox Rothschild respectfully requests that the Court dismiss the SAC with prejudice or, in the alternative, strike all impertinent, scandalous and immaterial allegations from the SAC.

## STATEMENT OF FACTS

**A.   Both Wealth And His Prospective Employer Retain Fox Rothschild To File A Nonimmigrant Visa Petition On Behalf Of Wealth And Provide Related Legal Advice.**

According to the SAC, Wealth is a Nigerian native and Mexican citizen who immigrated to the United States by way of a J-1 non-immigrant visa on or about March 14, 2019. SAC at ¶¶ 150-151. Wealth's visa was set to expire on August 26, 2020. *Id.* at ¶ 136.

Bahal was an attorney with Fox Rothschild and a co-chair of the firm's Corporate Immigration Practice. *Id.*, generally. Amabile was formerly employed by Fox Rothschild as a paralegal in the firm's immigration department until it terminated her employment in January 2022. *Id.*, generally.

Just a few weeks before his initial visa was set to expire, Wealth and his prospective employer, Soccer Specific Training ("SST"), **both** retained Fox Rothschild to assist them with a visa application for Wealth. *Id.* at ¶ 136. On or about August 11, 2020, Wealth, SST and Fox Rothschild entered into a retainer agreement (the "Retainer Agreement") in which Fox Rothschild agreed to "(1) prepare and file an O-1 nonimmigrant visa petition ("O-1 Petition") on Wealth's behalf; and (2) provide general immigration related counseling, as requested." Declaration of Brian J. Molloy dated January 12, 2024 ("Molloy Decl."), Exh. A; see also SAC at, e.g., ¶¶ 18, 39-40. The Retainer Agreement is under Bahal's letterhead, identifies Bahal as an attorney and co-chair of the Corporate Immigration Practice, and is prepared for Bahal's signature. *Id.*, Exh. A. The Retainer Agreement does not identify Amabile as an attorney or in any other capacity, and only identifies Bahal as the attorney responsible for Wealth's and SST's immigration-related matters. *Id.*, Exh. A. Indeed, Wealth acknowledges that he specifically retained Bahal of Fox Rothschild to prepare and file the O-1 Petition. SAC at ¶ 136.

The Retainer Agreement further describes the fees that Fox Rothschild would charge Wealth for legal services. It states that "[t]he flat legal fee for this O-1 visa application will be $13,000, plus disbursements and USCIS Filing Fees." Molloy Decl., Exh. A. The Retainer Agreement makes clear that "[t]his fee includes services only related to the preparation and filing of the visa application under regular processing." *Id.*, Exh. A. The Retainer Agreement also describes services **not** included under the flat fee, such as "responses to Requests for Evidence ('RFE') or Requests for Information ('RFI')." *Id.*, Exh. A. The Retainer Agreement explains that Fox Rothschild will charge Wealth and SST for services not covered under the flat fee on an hourly basis at the rates of Bahal, other attorneys and staff performing the services. *Id.*, Exh. A.

While Wealth, as the beneficiary, was "responsible for all legal fees and costs incurred" under the Retainer Agreement, ***both*** Wealth and SST retained Fox Rothschild and were the clients of Fox Rothschild. The Retainer Agreement is addressed both to Wealth, and to Mike Turtle as the owner of SST. *Id.*, Exh. A. Furthermore, contrary to Wealth's representation, SST was not removed as a signatory to the Retainer Agreement; ***both*** Wealth and Turtle, as owner of SST, executed the Retainer Agreement. *Id.*, Exh. A. They both signed the Retainer Agreement directly below a paragraph requesting that they "acknowledge that you have read, understood and accepted the obligations and terms of service

outlined in this agreement by signing and returning it to us, keeping a signed copy for your records." *Id.*, Exh. A.

**B.      Fox Rothschild Prepares And Files The O-1 Petition On Behalf Of Wealth, And Provides Related Legal Advice, Just As It Was Retained To Do.**

At or about the time that Wealth and SST retained Fox Rothschild, Bahal and Amabile began preparing the O-1 Petition. SAC at ¶¶ 41-42 & Exh. B (Doc. No. 37-12). Fox Rothschild requested all of the required and relevant documents from Wealth, and he provided them the requested documents and information. *Id.* at ¶¶ 41, 166. Bahal filed the O-1 Petition on Wealth's behalf with USCIS. *Id.* at ¶ 43. Wealth acknowledges that Bahal rather than Amabile filed the O-1 Petition, having written an e-mail to Fox Rothschild's Deputy General Counsel stating that Amabile "was not the person who filed my case." *Id.* at ¶ 136.

In addition to the preparation and filing of the O-1 Petition, Fox Rothschild provided related services and immigration-related advice to Wealth and SST pursuant to the Retainer Agreement. *Id.*, Exh. B (Doc. No. 37-12). In March 2021, USCIS issued an RFE regarding the O-1 Petition. SAC, Exh. B (Doc. No. 37-12); Molloy Decl., Exh. B at p. 3. Fox Rothschild performed legal services in responding to the RFE and other matters, and per the Retainer Agreement, billed Wealth and SST for those services at the hourly rates of attorneys and staff who performed the services. SAC, Exh. B (Doc. No. 37-12).

Wealth acknowledges receiving invoices from Fox Rothschild and that Fox Rothschild has requested payment of approximately $22,000 for services rendered on his behalf.  SAC at ¶¶ 155-157.

### C.    USCIS Denies Wealth's O-1 Petition Solely On The Grounds That Wealth Could Not Demonstrate That He Has Extraordinary Ability In Athletics Or Other Fields.

On June 24, 2021, USCIS issued a decision addressed to Bahal (the filer of the O-1 Petition) denying Wealth's O-1 Petition (the "Decision").  Molloy Decl., Exh. B; see also SAC at, e.g., ¶¶ 44, 136.  USCIS confirms that it issued an RFE, and that Fox Rothschild responded with numerous additional documents and information supporting the O-1 Petition.  Molloy Decl., Exh. B at p. 3.  USCIS denied the O-1 Petition *solely* on the grounds that Wealth was not able to show that he had extraordinary ability in science, education, business or athletics. *Id.*, Exh. B at pp. 3-10.  The Decision makes clear that Wealth could only make such a showing by proving that he had received an internationally-recognized award or met certain other stringent criteria. *Id.*, Exh. B at p. 2.

Significantly, the Decision denying the O-1 Petition is not based upon the alleged untimely filing of the O-1 Petition, and makes no mention whatsoever of the fact that Fox Rothschild allegedly did not timely file the O-1 Petition. *Id.*, Exh. B.  The Decision is also not based upon the alleged incorrect type of petition filed on Wealth's behalf or upon the allegation that Wealth did not

qualify for an O-1 nonimmigrant visa.  The Decision makes no mention of either of these allegations and evaluates the merits of the O-1 Petition.  *Id.*, Exh. B.

At the end of the Decision, USCIS reminds Wealth that the Decision may leave him without lawful immigration status, and that if he is present in the United States in violation of the law, he is required to depart immediately or otherwise faces consequences for failing to do so.  *Id.*, Exh. B at p. 11.

*Significantly, Wealth admits that he received notice of the denial of his O-1 petition on or about June 24, 2021.*  SAC at ¶ 44.

### D.    Wealth Is Indicted, And A Warrant Is Issued For His Arrest, For Alleged Criminal Sexual Contact.

A few months after the Decision, on August 13, 2021, the State of New Jersey filed a (publicly available) criminal complaint against Wealth accusing him of committing third degree aggravated criminal sexual contact and fourth degree criminal sexual contact with a female passenger in an Uber vehicle that he was driving.  Molloy Decl., Exh. C.  According to the New Jersey Superior Court's publicly available docket sheet, Wealth failed to appear in court for his arraignment, and consequently, the court issued a bench warrant for his arrest on October 6, 2021.  *Id.*, Exh. D.  On October 7, 2021, a grand jury indicted Wealth for fourth degree criminal sexual contact.  *Id.*, Exh. D.  The criminal action against Wealth currently remains pending.  *Id.*, Exh. D.

**E.     Wealth Is Detained By The United States Immigration And Customs Enforcement For Remaining In The United States Beyond The Expiration Date Of His Visa.**

Despite the fact that USCIS warned Wealth in the Decision about remaining in the United States, he continued to reside in New Jersey, had an arrest warrant issued and was indicted for criminal sexual contact. Nearly one year after Wealth received the Decision, on April 29, 2022, Immigration and Customs Enforcement ("ICE") detained Wealth (while his criminal action remained pending) for overstaying the duration of his visa. SAC at ¶¶ 147-152.

**F.     Markevich Does Not Retain Fox Rothschild, And Ignores An Alleged Suggestion Made By Amabile And/Or Bahal, Concerning A Nonimmigrant Visa On His Behalf.**

Markevich is a non-resident musician, performer and artist. *Id.* at ¶ 78. He initially met Amabile in December 2016, but afterwards filed **on his own** an application for a visa to remain in the country. He received an O-1B visa in May 2017. *Id.* at ¶¶ 79-82. Markevich did not retain Fox Rothschild to perform any legal services on his behalf, at this time or ever. *Id.* at ¶ 82.

In or around June 2020, after Markevich unsuccessfully applied for a EB-1 visa, he contacted Amabile to discuss obtaining a visa. *Id.* at ¶¶ 85-86. While Markevich claims that Bahal set up a teleconference *at this time* to discuss securing a visa, he relies upon an earlier e-mail from Bahal from *January 17, 2017* (which resulted in no retention of Fox Rothschild). *Id.* at ¶ 88. Markevich

again did not retain Fox Rothschild to perform any legal services on his behalf as he claims he "did not feel comfortable" with and ultimately disregarded a suggestion made to him that he marry his girlfriend, a United States citizen, and then apply for permanent residency in the United States through marriage to his girlfriend. *Id.* at ¶¶ 89-93. Amabile provided Markevich with an Adjustment of Status: Document Checklist (the "Checklist") identifying the evidence that he would need had he followed through with the suggestion, including, under a heading entitled "**Evidence of Genuine Marriage**," "[d]ocuments proving the truthful nature of [his] marriage." *Id.* at ¶ 93 & Exh. A (Doc. 37-11).

In or around October 2021, despite never retaining Fox Rothschild, Markevich discussed filing for a visa with Amabile (but no other individuals). *Id.* at ¶¶ 94-96. Markevich again does not allege that he entered into a retainer agreement or other document establishing that he was retaining Fox Rothschild to perform legal services on his behalf. Indeed, at no point in time did he enter into or sign any retainer agreement with or retain Fox Rothschild. *Id.*, generally.

**G.    Fox Rothschild Terminates Amabile's Employment, And Amabile Subsequently Allegedly Misappropriates Funds And Other Property From Wealth And Fails to Cooperate With Markevich.**

In January 2022, Fox Rothschild terminated Amabile's employment with the firm. SAC at ¶ 45.

Integral to Wealth's claims are his allegations that no one advised him that Amabile was no longer employed by Fox Rothschild, see SAC at, e.g., ¶¶ 46-47; however, Wealth was promptly made aware by the law firm that Amabile was no longer employed there. Wealth sent an e-mail dated January 28, 2022, a few days after Amabile's termination, asking how he could reach her. Molloy Decl., Exh. E. Minutes later, Wealth received a response from the firm advising him that Amabile "is no longer with the firm" and directing him to send inquiries regarding his matter to the firm's immigration e-mail address. *Id.*, Exh. E.

***Months after Fox Rothschild terminated her employment***, Amabile allegedly stole money and personal property from Wealth. Specifically, Wealth alleges that, on or after April 29, 2022, the date that ICE detained him, Amabile obtained access to his apartment after sending an e-mail from his account to his building manager, and stole over $11,000 in cash and three laptop computers. SAC at ¶ 63. Amabile also allegedly improperly withdrew funds from Wealth's investment account, applied for and opened several credit cards under his name, and withdrew money from his checking account to pay for her credit card usage. SAC at ¶¶ 65-66, 69-72.

***Months after Fox Rothschild terminated her employment***, Amabile also allegedly failed to cooperate with Markevich. Specifically, Markevich alleges that, in or about March 2022, Amabile informed Markevich that she could assist

his father to enter the United States without a visa. *Id.* at ¶¶ 99-101. Markevich purchased a plane ticket for his father, but after his father went to the airport, Amabile did not answer his phone calls and his father was unable to board the plane to the United States. *Id.* at ¶¶ 103-106. Amabile subsequently refused to provide any information to Markevich regarding any visa applications filed on his behalf. *Id.* at ¶¶ 108-110. Allegedly, Markevich later learned that Amabile did not file any applications on his behalf. *Id.* at ¶ 113.

**H.   Plaintiffs File A Legal Malpractice Complaint Against Defendants Riddled With Impertinent And Harassing Allegations That Blames Fox Rothschild For Wealth's Own Misconduct And Amabile's Alleged Post-Termination Activity, And Which Is Based On Otherwise Entirely Proper Conduct.**

On December 27, 2023, Wealth (but not SST) and Markevich filed this multiple-count SAC against Fox Rothschild, Bahal and Amabile. The SAC is littered with scandalous, impertinent and immaterial allegations with no relevance whatsoever to Plaintiffs' claims, including:

- Paragraph 50 – Photograph of Amabile and allegations regarding her arrest (after Fox Rothschild terminated her employment) for allegedly fraudulently obtaining prescription medication;

- Paragraph 115 – Photograph of Bahal for no discernible purpose;

- Paragraph 145 – False allegations that Fox Rothschild's Deputy General Counsel failed to have certain communications with other Fox Rothschild clients that are not at issue in this matter;

- Paragraphs 55-61 and 196 – Allegations that Amabile engaged in the unauthorized practice of law and that Fox Rothschild turned a

blind eye to her conduct, despite the fact that these allegations do
not support any of his claims; and

- Page 8 – Allegation that "Amabile is being investigated by the
  Committee on the Unauthorized Practice of Law." Plaintiffs copy
  a letter received by the Committee expressing that, because of this
  pending lawsuit, the Committee "is without jurisdiction to conduct
  an investigation at this point in time."

**Plaintiffs' SAC asserts numerous duplicative causes of action against
Fox Rothschild that are all premised upon the exact same alleged breach of
duty as Wealth's and Markevich's alleged attorney.** Wealth alleges that Fox
Rothschild failed to timely file the O-1 Petition with USCIS, filed an incorrect
type of petition for a visa for which Wealth did not qualify and failed to seek
reconsideration of the Decision. Markevich alleges that Fox Rothschild failed
to file any visa petition on his behalf and improperly suggested to him a sham
marriage to his girlfriend to obtain legal status.

Specifically, in Count Six of the SAC, Plaintiffs allege that Fox
Rothschild committed legal malpractice because (1) after Wealth retained and
paid it to prepare and file his O-1 Petition, Fox Rothschild inaccurately and
untimely filed his O-1 petition after the deadline, which caused him to be out of
status; and (2) Fox Rothschild never processed any visa application for
Markevich (even though it was never retained to do so). *Id.* at Count Six.

Plaintiffs' First Count alleges that Fox Rothschild's late and improper
filing of the O-1 Petition for Wealth breached its obligations under the Retainer

Agreement, and while not identifying any contract between Fox Rothschild and Markevich, alleges that the firm never filed a visa application for him after being paid to do so. *Id.* at Count One.  In the Second Count, Plaintiffs allege that Fox Rothschild owed duties to them based on their attorney-client relationship but negligently failed to act in their best interests and inflicted emotional distress upon them. *Id.* at Count Two.  Plaintiffs' Fifth Count similarly alleges that Fox Rothschild "had a fiduciary duty to act in [Plaintiffs'] best interests" but "negligently failed to act in the best interests of [Plaintiffs]." *Id.* at Count Five.

In Count Three of the SAC, Plaintiffs claim that Fox Rothschild committed fraud because Amabile misrepresented to them that she was a New Jersey licensed attorney and no attorney from Fox Rothschild ever informed them that Amabile was not a licensed attorney. *Id.* at Count Three.

In Count Four of the SAC, Plaintiffs claim that Fox Rothschild violated the New Jersey RICO Act because it is a criminal enterprise that engaged in a pattern of racketeering activity when it stole money from Plaintiffs for services that were never rendered and used stolen credit cards procured by Amabile under Wealth's name. *Id.* at Count Four.  Plaintiffs repeat these allegations in Count Seven of the SAC in violation of the federal RICO Act. *Id.* at Count Seven.

## **STANDARD OF REVIEW**

Pursuant to Rule 12(b)(6), a defendant may bring a motion to dismiss on the basis that the plaintiffs have failed to state a claim upon which relief can be granted. Courts require "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires a pleading to show "more than a sheer possibility that a defendant has acted unlawfully." *Donnelly v. O'Malley & Langan, PC*, 370 Fed. Appx. 347, 349 (3d Cir. 2010).

On such a motion, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This assumption of truth applies only to factual allegations and a court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

On a Rule 12(b)(6) motion, district courts in this Circuit are permitted to "consider documents that are attached to or submitted with the complaint, . . . matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the

record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). The court may also consider documents appended as an exhibit to a 12(b)(6) motion if the plaintiff's claims are based on the document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

The Court can and should consider the Retainer Agreement, the Decision, documents pertaining to Wealth's arrest and resulting criminal action against him, e-mails confirming Amabile's departure from Fox Rothschild, the Checklist and other documents attached or copied to the SAC in deciding this motion to dismiss. Wealth references and relies upon his retention of Fox Rothschild and USCIS's denial of his O-1 Petition in support of his claims against Fox Rothschild. His arrest and criminal proceeding are matters of which the Court can take judicial notice, and in any event, are established by way of publicly available records. Wealth's allegation that 'Fox Rothschild never advised him that Amabile was no longer with the law firm is integral to his claims against Fox Rothschild, and the e-mails demonstrate that Wealth is not entitled to any relief on this basis. Additionally, Markevich relies upon the Checklist to demonstrate that an improper suggestion was made to him regarding a sham marriage even though the Checklist itself requires a confirmation of the genuine and truthful nature of any marriage.

**LEGAL ARGUMENT**

I. **THE COURT SHOULD DISMISS COUNT SIX OF THE SAC BECAUSE PLAINTIFFS HAVE NOT AND CANNOT PLEAD ALLEGATIONS SATISFYING ALL ELEMENTS OF A LEGAL MALPRACTICE CLAIM**

Wealth's legal malpractice claim is based on the contention that Fox Rothschild's allegedly untimely and improper filing of the O-1 Petition caused him to be detained by ICE and suffer resulting damages. Fox Rothschild's filing of the O-1 Petition, however, was not untimely or improper, and USCIS's denial of the O-1 Petition was on the merits and makes no reference to any alleged untimeliness or improper filing. Wealth cannot show that Fox Rothschild breached a duty or proximately caused him to sustain damages, and his legal malpractice claim against Fox Rothschild should be dismissed with prejudice.

Markevich's legal malpractice claim is based on the contention that Fox Rothschild's failure to file a nonimmigrant visa petition on his behalf, and improper advice to marry his girlfriend to obtain legal status, caused him to suffer damages. Markevich, however, never retained Fox Rothschild to perform any legal services on his behalf, and any information it provided him concerning a marriage to his girlfriend was not only correct as a matter of law, but was ultimately not acted upon by Markevich in any event. Consequently, Markevich cannot demonstrate any attorney-client relationship with Fox Rothschild, or any

damages proximately caused by Fox Rothschild, and thus his legal malpractice claim should also be dismissed with prejudice.

Legal malpractice is a variation on the tort of negligence. *Carbis Sales, Inc. v. Eisenberg*, 397 N.J. Super. 64, 78 (App. Div. 2007). "In order to establish malpractice, the plaintiff must demonstrate 1) the existence of an attorney-client relationship creating a duty of care upon the attorney; 2) that the attorney breached the duty owed; 3) that the breach was the proximate cause of any damages sustained; and 4) that actual damages were incurred." *Sommers v. McKinney*, 287 N.J. Super. 1, 9-10 (App. Div. 1996). "The client bears the burden of proving by a preponderance of competent credible evidence that injuries were suffered as a proximate consequence of the attorney's breach of duty." *Id.* at 10. "This burden is not satisfied by mere conjecture, surmise or suspicion." *Id.*

### A.   Fox Rothschild Did Not Breach A Duty Owed To Wealth And His Alleged Damages Were Not Proximately Caused By Fox Rothschild.

Wealth's central but frivolous claim is that Fox Rothschild breached a duty by untimely filing the O-1 Petition and filing an incorrect type of petition. USCIS, however, accepted the O-1 Petition and evaluated it on the merits. The Decision denying the O-1 Petition never mentions or relies upon any alleged untimely nature of the filing, or alleged impropriety of the type of filing.

Even setting aside the timely and proper nature of Fox Rothschild's filing of the O-1 Petition, **Wealth cannot plead that the result he complains about -- his detention by ICE -- would not have occurred but for Fox Rothschild's failure to file the O-1 Petition by August 26, 2020**. Proximate causation has been defined "as being any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Fernandez v. Baruch*, 96 N.J. Super. 125, 140 (App. Div. 1967), *rev'd on other grounds*, 52 N.J. 127 (1968). "The first and most basic concept 'buried' within proximate cause is that of causation of fact." *Conklin v. Hannoch Weisman,* 145 N.J. 395, 417 (1996). "Cause in fact is sometimes referred to as 'but for' causation." *Id.* That is, "the law requires proof that the result complained of probably would not have occurred 'but for' the negligent conduct of the defendant." *Id.*

Wealth first relies upon the Decision to demonstrate that Fox Rothschild's alleged tardiness and alleged failure to file the correct type of petition caused his detention by ICE, but the Decision clearly states that the O-1 Petition was denied solely because he could not prove an extraordinary ability in athletics or other fields. The Decision is not based upon, and does not even identify any issues with, the timing of the filing of the O-1 Petition or the type of petition that Fox Rothschild filed. Wealth also relies upon the Department of Homeland

Security's Notice to Appear, which is likewise silent on the timing or type of the filing of the O-1 Petition and simply states that Wealth has continued to reside in the United States beyond the duration of his permitted stay. Indeed, USCIS warned Wealth in the Decision nearly a year before he was detained that he could be subject to consequences for remaining in the United States beyond his stay, ***and Wealth acknowledges in the SAC that he received notice of the Decision on June 24, 2021***. SAC at ¶ 44.

To the extent that Wealth claims that Fox Rothschild somehow failed to submit certain information to USCIS in connection with the O-1 Petition, his own allegations belie such a claim. Wealth acknowledges that he fully cooperated with Defendants and provided them with all supporting documents and information for the O-1 Petition. SAC at ¶ 166. Furthermore, the SAC does not -- because it cannot -- specifically identify any information and documents that Fox Rothschild failed to request from him or submit to USCIS that would have caused USCIS to instead grant the O-1 Petition.

These same allegations also demonstrate that Fox Rothschild's alleged failure to seek reconsideration of the Decision caused him to later be detained by ICE. Without any allegation that Wealth possessed or provided certain additional information that would further bolster the O-1 Petition, there is

simply nothing new for USCIS to consider in any reconsideration application that would have caused USCIS to instead grant the O-1 Petition.

Lastly, Wealth also cannot plead that Fox Rothschild was the proximate cause of the financial harm he allegedly suffered from Amabile's actions while he was detained by ICE.  Wealth recognizes that Fox Rothschild terminated Amabile's employment in January 2022.  SAC at ¶ 45.  ICE did not detain Wealth, however, until April 29, 2022, months after Fox Rothschild terminated its employment of her.  Amabile's alleged independent actions after the termination of her employment cannot be imputed to Fox Rothschild, and Fox Rothschild can in no way be held liable for her post-termination actions.

Accordingly, because Wealth has not pled, and is unable to plead, that Fox Rothschild breached a duty to him, or that its alleged misconduct was the proximate cause of any damages he sustained, the Court should dismiss Count Six of the SAC as against Wealth.

### B. Fox Rothschild Did Not Have An Attorney-Client Relationship With Markevich And His Alleged Damages Were Not Proximately Caused By Fox Rothschild.

Markevich's legal malpractice claim against Fox Rothschild first fails because he has not pled, and cannot credibly allege, any facts demonstrating the existence of an attorney-client relationship between him and Fox Rothschild. Unlike Wealth, Markevich does not -- because he cannot -- identify any signed

retainer agreement or other contract between him and the law firm, or any invoices for legal services that Fox Rothschild ever sent to him. While Markevich alleges that he spoke with Bahal about obtaining a visa, he acknowledges that he obtained a visa on his own in 2017 without any attorney assistance. He claims that he spoke again with Bahal in 2020 based *only* on a teleconference invite *dated January 17, 2017*. Even if he did speak with Bahal then, he did not heed the alleged suggestion that he marry a United States citizen and then seek to obtain a visa as her spouse. When he allegedly later spoke with Amabile in October 2021, he does not allege any agreement or communication with any Fox Rothschild attorney evidencing any attorney-client relationship.

To the extent any such attorney-client relationship existed, however, Markevich cannot sufficiently plead that the damages he allegedly sustained would not have occurred but for Fox Rothschild's improper advice to marry his girlfriend and seek visa status as her spouse. First, as a matter of law, the spouse of a United States citizen may be eligible for naturalization if certain criteria are met. 8 C.F.R. § 319.1. Second, Markevich's allegation that he was directed to find a citizen and marry her to then be able to apply for a visa (i.e., engage in some sort of sham marriage) should not be accepted as true given (1) his own acknowledgment that he then had a girlfriend and thus did not need to find a random citizen; and (2) the Checklist he was provided by Amabile that clearly

demonstrates that he must show a genuine, truthful marriage to apply for a visa as the spouse of a United States citizen.  In any event, Markevich claims that he did not follow any such suggestion rendered to him, and consequently, there can be no damages resulting from a disregard of the suggestion.

Lastly, like Wealth, Markevich also cannot plead that Fox Rothschild was the proximate cause of the financial harm he allegedly suffered from Amabile's actions concerning his father's attempt to come to the United States.  Fox Rothschild terminated Amabile's employment in January 2022, but Markevich's father did not allegedly attempt to leave for the United States until March 2022. Again, Amabile's alleged independent actions after the termination of her employment cannot be imputed to Fox Rothschild, and Fox Rothschild can in no way be held liable for her post-termination actions.

Accordingly, because Markevich has not pled, and is unable to plead, that he and Fox Rothschild had an attorney-client relationship, or that its alleged misconduct was the proximate cause of damages he sustained, the Court should also dismiss Count Six of the SAC as against Markevich.

## II.   THE COURT SHOULD DISMISS THE FIRST, SECOND AND FIFTH COUNTS OF THE SAC BECAUSE THEY ARE DUPLICATIVE OF THE SIXTH COUNT OF THE SAC

Plaintiffs assert several duplicative causes of action against Fox Rothschild based on the exact same alleged misconduct.  The underlying claim

-- that Fox Rothschild, as attorneys retained by Plaintiffs, owed Plaintiffs a duty of care to act in accordance with standards applicable to legal professionals and breached its duty of care to Plaintiffs -- is by its very nature a claim for professional negligence/legal malpractice. **In accordance with well-settled New Jersey law, the equally flimsy and duplicative First, Second and Fifth Counts of the SAC, all of which are premised upon an alleged breach of an alleged duty of care, should be dismissed.**

Under New Jersey law, courts will not permit a plaintiff to pursue "separate" claims that duplicate other claims in the complaint. New Jersey courts look beyond "the label placed on the action" and focus on "the nature of the legal inquiry." *Couri v. Gardner*, 173 N.J. 328, 340 (2002); *Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn*, 410 N.J. Super. 510, 540 (App. Div. 2009).

Specifically, duplicative claims of legal malpractice are analyzed under the same authority and deserve the same fate. Plaintiffs in legal malpractice actions, including Wealth and Markevich, often use multiple labels to style what is essentially a claim of malpractice. An allegation of legal malpractice is routinely, but improperly, pled alternatively as breach of contract, professional negligence and breach of fiduciary duty. Except in rare instances not applicable here, each alternative cause of action is subject to the same treatment as the

malpractice claim, often dismissal, because there is no independent basis for such claims to survive.

This Court has not hesitated to dismiss claims duplicative of legal malpractice claims. *See, e.g., O'Keefe v. Friedman & Friedman, Ltd.*, 2018 WL 1535234, at *6 (D.N.J. March 29, 2018) ("[I]n the context of legal malpractice, a tort claim and a breach of contract claim are not alternative theories of recovery for the same conduct, and the claims must be based on distinct conduct."); *Cohen v. Horn,* 2022 WL 1718051, at *7 (D.N.J. May 27, 2022) (dismissing claims of breach of contract, breach of fiduciary duty and negligence as duplicative of legal malpractice claims); *Lopez-Siguenza v. Roddy*, 2014 WL 4854452, at *7 (D.N.J. Sept. 30, 2014) ("To permit a generalized claim for breach of contract to proceed, when the breach is apparently based solely upon the attorney's malpractice, would . . . be duplicative of the malpractice claim."); *Fink v. Kirchner*, 2013 WL 1952303, at *3 (D.N.J. May 8, 2013) (dismissing breach of contract and breach of fiduciary duty claims because they were based on the identical allegations that formed legal malpractice claim); *see also Cortez v. Gindhart*, 435 N.J. Super. 589, 608 (App. Div. 2014) (affirming dismissal of breach of fiduciary duty claim where the "only fiduciary relationship identified is that of attorney and client and the breach of fiduciary duty is only identified as 'the aforementioned conduct'"); Mallen, 1 Legal Malpractice § 8:1 (2022 ed.) (stating that "[b]ecause alternative theories are often based on the

same factual allegations as a negligence cause of action, such claims frequently are treated as redundant and are disregarded").

Count One of the SAC stating a breach of contract claim is redundant because it repeats the same alleged misconduct underlying Plaintiffs' legal malpractice claim in Count Six. Wealth alleges that Fox Rothschild breached its obligations under the Retainer Agreement when it failed to timely and properly file the O-1 Petition, and failed to seek reconsideration of the Decision, resulting in ICE's detention of Wealth. *See* SAC at Count One. These alleged failures are the same failures supporting Wealth's legal malpractice claim. Markevich does not even allege the existence of a contract between him and Fox Rothschild, but even if he did, he alleges that Fox Rothschild is liable for failing to file any visa application for him, the same allegation underlying his legal malpractice claim. Where, as here, Plaintiffs have failed to identify any separate facts or conduct upon which their breach of contract claim could be based, the Court should dismiss Count One of the SAC as duplicative of Count Six asserting legal malpractice.

Plaintiffs' negligence claim (Count Two) is also nothing more than a re-styled defective legal malpractice claim based upon alleged breaches of a duty of care owed to Plaintiffs that proximately caused them to suffer damages. To pursue a negligence claim, Plaintiffs must show that Fox Rothschild owed them a duty of care. The elements of a negligence claim that Wealth must establish

are well-settled: "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 221 N.J. 36, 51 (2015). For the same reasons set forth above, Wealth cannot sufficiently plead that he suffered any damages proximately caused by Fox Rothschild. Markevich cannot sufficiently plead that Fox Rothschild owed him a duty of care absent any attorney-client relationship between them, or that it proximately caused him any damages after he chose not to pursue any suggestion it made to him. Without a duty of care and/or proximate causation, as a matter of law, Plaintiffs likewise cannot proceed with a negligence claim. Moreover, this claim simply restates a classic claim for legal malpractice already asserted by Plaintiffs in Count Six. The Court should therefore dismiss the Second Count of the SAC as a matter of law and as duplicative of the Sixth Count.

Lastly, Plaintiffs' Fifth Count vaguely asserts that Fox Rothschild "had a fiduciary duty to act in the Plaintiff's best interests," but intentionally and negligently failed to do so. SAC, Count Five at ¶¶ 231-233. Plaintiffs do not refer to a specific action that purportedly constitutes a breach of any fiduciary duty. *Id.*, Count Five. As Plaintiffs expressly state, their breach of fiduciary duty claim is based on exactly the same factual allegations as their legal malpractice claim in Count Six. Plaintiffs' breach of fiduciary duty claim should also be dismissed because, as established in Point I, Fox Rothschild did not

proximately cause any of their alleged damages, and because the claim is not premised on conduct different from the conduct underlying their legal malpractice claim. Where, as here, Plaintiffs have failed to identify a separate fiduciary relationship other than that of attorney and client and have failed to identify any separate facts or conduct upon which their claim for breach of fiduciary duty could be based, Plaintiffs' Fifth Count should also be dismissed as duplicative of their Sixth Count asserting legal malpractice.

## III. THE COURT SHOULD DISMISS THE SECOND COUNT OF THE SAC BECAUSE PLAINTIFFS MAKE NO EFFORT TO PLEAD A NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM

Count Two of the SAC is also captioned as a negligent infliction of emotional distress claim. Plaintiffs, however, make no effort to even address the elements of such a claim. Accordingly, to the extent that Plaintiffs have asserted a negligent infliction of emotional distress claim, the Court should also dismiss this claim with prejudice.

To pursue a negligent infliction of emotional distress claim, Plaintiffs must establish that: (a) Fox Rothschild owed them a duty of reasonable care; (b) Fox Rothschild breached that duty; (c) they suffered severe emotional distress; and (d) Fox Rothschild's breach of duty was the proximate cause of the injury. *Dello Russo v. Nagel*, 358 N.J. Super. 254, 269 (App. Div. 2003). "Whether the defendant has a duty of care to the plaintiff depends on whether it was

foreseeable that the plaintiff would be seriously, mentally distressed." *Id.* at 269-70.  In legal malpractice actions, emotional distress damages should not be awarded without a showing of egregious or extraordinary circumstances. *Gautam v. De Luca*, 215 N.J. Super. 388, 399 (App. Div. 1987).

Plaintiffs make no effort to plead any of the requisite elements of a negligent infliction of emotional distress claim against Fox Rothschild.  SAC at Count Two, ¶¶ 173-182.  They also fail to allege any extraordinary or egregious circumstances that would potentially warrant recovery of damages from Fox Rothschild in this legal malpractice case.  Consequently, the Court should dismiss this aspect of Count Two of the SAC if in fact it has been pled.

## IV.  THE COURT SHOULD DISMISS THE THIRD COUNT OF THE SAC BECAUSE THE FRAUD CLAIM LACKS THE REQUISITE SPECIFICITY

Plaintiffs have asserted a fraud claim against Fox Rothschild in Count Three of the SAC but their claim fails to set forth any specifics of Fox Rothschild's allegedly fraudulent conduct.  Consequently, the Court should dismiss Plaintiffs' fraud claim because it is pled with no specificity in contravention of the Federal Rules of Civil Procedure.

Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  To satisfy this standard, the plaintiff must plead or allege the date, time and place of the

alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

Plaintiffs' allegations underlying their fraud claim fail to meet the required degree of specificity. Plaintiffs contend that Amabile represented herself to them as a licensed attorney despite the fact that she was not an attorney, and that Fox Rothschild misrepresented her status or failed to inform them that Amabile was not an attorney. Plaintiffs, however, do not provide any facts/basis to support these allegations. They do not identify any dates on which Amabile supposedly told them she was an attorney, the method of communications by which she told them she was an attorney, what type of attorney she represented herself to be, or any other related information. With respect to Wealth, despite sending a lengthy e-mail to Fox Rothschild's Deputy General Counsel complaining about what occurred, he never referred to Amabile as being an attorney and only referred to Bahal as an attorney. SAC at ¶ 136.

Plaintiffs compound these failures by failing to specify Fox Rothschild's alleged misconduct based on Amabile's alleged misrepresentations. Plaintiffs again do not identify any dates on which Fox Rothschild supposedly told them that Amabile was an attorney, the specific Fox Rothschild attorneys who made such alleged misrepresentations, the method of communications by which any of its attorneys told them that Amabile was an attorney, any documents it

prepared identifying her as an attorney, or any other related information. Plaintiffs also do not identify any Fox Rothschild attorney who supposedly knew that Amabile was representing herself as an attorney but failed to tell them that she was not an attorney. Indeed, the Retainer Agreement with Wealth and invoices sent to him do not identify Amabile as an attorney, and the signature block in e-mails from Amabile to Plaintiffs do not identify her as an attorney.

The SAC is also devoid of any specificity demonstrating that, if true, Plaintiffs' supposed reliance on these alleged misrepresentations was reasonable. Plaintiffs do not allege that they took any action whatsoever to verify Amabile's alleged representations that she was a licensed attorney.

Without any specificity or consistency, Fox Rothschild is unfairly left to speculate as to the factual basis supporting a serious fraud claim against it. Consequently, the Court should dismiss the Third Count of the SAC.

## V.   THE COURT SHOULD DISMISS THE FOURTH AND SEVENTH COUNTS OF THE SAC BECAUSE THE RICO CLAIMS ALSO LACK THE REQUISITE SPECIFICITY

Plaintiffs have asserted both a New Jersey RICO and a federal RICO claim against Fox Rothschild in Counts Four and Seven of the SAC but their claims again do not set forth any specifics of Fox Rothschild's alleged "pattern of racketeering activity" supporting the claims. To the contrary, the differences in Wealth's and Markevich's allegations demonstrate no existence of any pattern.

Consequently, the Court should dismiss Plaintiffs' RICO claims because they are neither pled with any specificity in contravention of the Federal Rules of Civil Procedure nor do they establish a "pattern" of racketeering activity.

The elements of a civil claim under federal RICO are: (1) conduct (2) of enterprise (3) through pattern (4) of racketeering activity, and (5) injury in plaintiff's business or property as result of alleged racketeering activity. *Poling v. K. Hovnanian Enters.*, 99 F. Supp. 2d 502, 507 (D.N.J. 2000). The Third Circuit has noted that the New Jersey Supreme Court explicitly relies upon federal case law and legislative history in interpreting the New Jersey RICO statute. *Cetel v. Kirwan Fin. Group*, 460 F.3d 494, 510 (3d. Cir. 2006).

Pursuant to 18 U.S.C. § 1961(5), a pattern of racketeering activity requires at least two predicate acts of "racketeering activity." *Poling*, 99 F. Supp. 2d at 508. Plaintiffs assert that Defendants committed multiple acts of mail fraud and wire fraud in violation of the federal RICO statute. When the alleged predicate acts include mail fraud and wire fraud, the allegations must be pled with specificity pursuant to Rule 9(b). *Id.* Specifically, the plaintiff must plead with specificity the circumstances of the alleged fraud, including the date, time, and place wherein the fraud occurred, or other facts that contain sufficient precision to place the defendants on notice of the allegations with which they are charged. *Id.* "Vague or conclusory allegations of fraud will not survive a motion to dismiss." *Id.*

Plaintiffs' federal RICO claim is devoid of *any* precise information sufficient to place Fox Rothschild on notice regarding the alleged predicate acts of fraud. There is no date, time, or place alleged in the SAC to contextualize Plaintiffs' vague allegations of fraud. SAC at ¶¶ 258-284. Plaintiffs claim that Defendants' RICO "enterprise" has existed for almost fifteen years prior to Bahal's tenure at Fox Rothschild, but there is no further information about the nature of the alleged "criminal enterprise," when it was formed, or the pattern that has developed since its formation. *Id.* at ¶ 264. Moreover, Plaintiffs improperly utilize Amabile's alleged actions against them to establish the supposed predicate acts of fraud against Fox Rothschild. *Id.* at ¶¶ 259, 288-294. Amabile allegedly committed the fraudulent acts against Plaintiffs -- withdrawing funds from Wealth's investment account, stealing money and property from his apartment, opening and using credit cards under his name, and purporting to assist Markevich with his father's entrance to the United States -- several months *after* Fox Rothschild terminated her employment with the firm. *Id.* at ¶¶ 63-73, 100-114. Thus, Amabile could not have acted as part of an "enterprise" with Fox Rothschild after the firm terminated her employment and ended any relationship with her. *Id.* at ¶¶ 63-73, 100-114, 136.

Plaintiffs also do not have a valid RICO claim under New Jersey law because the incidents they plead to establish Defendants' criminal conduct -- namely, Amabile's fraudulent acts against Wealth in May 2022 and against Markevich in

March 2022 -- again were allegedly committed after she had been terminated from the law firm and without Fox Rothschild's involvement or knowledge.

Wealth further alleges that Fox Rothschild engaged in criminal conduct by stealing $20,000 from him for legal services never rendered. *Id.* at ¶ 212. Wealth's own allegations belie this contention, as he fully acknowledges that Fox Rothschild filed the O-1 Petition, and the Retainer Agreement he relies upon in the SAC clearly states that Fox Rothschild was charging him a flat fee of $13,000 to prepare the O-1 Petition, and charge him additionally for services such as responding to an RFE.

Lastly, Wealth attempts to infer conspiratorial conduct among all Defendants by insinuating that they reported Wealth to ICE. *Id.* at ¶¶ 141-142. This is nothing more than a bald assertion devoid of any logical or factual support and should be disregarded by the court.  While courts must accept well-pleaded facts as true on a motion to dismiss, they are not required to accept bald assertions pled in a complaint. *In re Burlington*, 114 F.3d at 1429-30.  It would be nonsensical for Fox Rothschild to report Wealth to ICE because (1) if it told ICE that Wealth was illegally in the country because, as according to Wealth, it untimely filed the O-1 Petition, it would essentially be admitting liability; and (2) Wealth owed Fox Rothschild unpaid legal fees and Fox Rothschild would be far less likely to be able to collect those fees from him if he were detained by ICE or deported from the country.  SAC at ¶¶ 155-157.

Lastly, the vast difference between Markevich's allegations and Wealth's allegations further demonstrate that Plaintiffs cannot sustain RICO claims based on an alleged "pattern of racketeering activity."  Markevich did not execute a retainer agreement, did not receive any invoices for legal services, claims that he made payments to Amabile for services that were never performed, and does not claim that Amabile discussed opening credit card accounts for him or stole his personal property or other assets.  On the other hand, Wealth did execute a retainer agreement, did receive Fox Rothschild invoices for legal services and does acknowledge that Fox Rothschild filed the O-1 Petition on his behalf, and claims that Amabile did discuss opening credit card accounts for him and did steal his personal property and other assets.  Plaintiffs have thereby also failed to allege a pattern of alleged misconduct committed by Fox Rothschild that could support viable RICO claims.

## VI.   THE   COURT   SHOULD   STRIKE   ALL   IMPERTINENT, SCANDALOUS AND IMMATERIAL ALLEGATIONS OF THE SAC

In the event that the Court allows Plaintiffs to proceed on any Counts of the SAC, the Court should strike paragraphs 50, 55-61, 115, 145 and 196, and page 8 from the SAC, as they do not bear on any causes of action in the SAC.

Rule 12(f) permits a "court [to] strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  The purpose of a motion to strike is to save time and expense through the excision of matter from the pleadings that will not affect the outcome of the case. *Bristol-Myers Squibb Co.*

*v. IVAX Corp.*, 77 F. Supp. 2d 606, 619 (D.N.J. 2000).  The movant must show that the challenged allegations "have no possible relation to the controversy and may cause prejudice to one of the parties, or . . . the allegations confuse the issues." *Tonka Corp. v. Rose Art Indus.*, 836 F. Supp. 200, 217 (D.N.J. 2000).

### Paragraphs 50 and 115

These paragraphs of the SAC contain photographs of Amabile and Bahal, and allegations regarding Amabile's arrest for allegedly fraudulently obtaining prescription medication.  Needless to say, the physical appearance of these parties has no bearing on any issue in this case.  The criminal complaint against Amabile is wholly unrelated to any of the theft that Plaintiffs have alleged she engaged in, and was filed long after Fox Rothschild terminated her employment.

### Paragraph 145

In this paragraph of the SAC, Wealth accuses the Deputy General Counsel of failing to investigate unsubstantiated claims that Amabile stole from him, and failed to warn other clients about Amabile.  Wealth, of course, has no knowledge of privileged communications between Fox Rothschild and its other clients, and its relationship with other clients also has no relevance to this matter.  Furthermore, Amabile's alleged theft of Wealth's funds and property took place after Fox Rothschild terminated her employment, and Fox Rothschild has no knowledge of the veracity of those accusations.

**Paragraphs 55-61, 196 and Page 8**

Lastly, these paragraphs and page of the SAC falsely allege that Amabile engaged in the unauthorized practice of law while employed by Fox Rothschild, and that the Committee on the Unauthorized Practice of Law is investigating her. Wealth admits in the SAC that Amabile "was not the person who filed my case," and also compliments the work that she performed. *Id.* at ¶ 136. Additionally, in the very letter that Plaintiffs rely upon concerning the alleged investigation, the Committee asserts that it is "***without jurisdiction to conduct an investigation at this point in time***." Plaintiffs' allegation also does not serve as the basis of any of their claims against Fox Rothschild, because to prevail in an action based on a claim of unauthorized practice of law, a plaintiff must show that he suffered an "ascertainable loss" as a result of the unauthorized practice of law. *Johnson v. McClellan*, 468 N.J. Super. 563, 585 (App. Div. 2021); *see also Banker v. Davidson, Dawson & Clark LLP*, 2023 WL 2620057, at *4 (App. Div. March 24, 2023) ("[S]tanding alone, violation of [the statute governing the unauthorized practice of law] does not subject defendants to civil liability.").

## CONCLUSION

For all of the foregoing reasons, defendant Fox Rothschild LLP respectfully requests that the Court grant its motion to dismiss the SAC with

prejudice or, in the alternative, to strike all impertinent, scandalous and immaterial allegations from the SAC.

Respectfully submitted,

Dated: January 12, 2024          By:   */s/ Brian J. Molloy*
                                  Brian J. Molloy, Esq.
                                  Daniel J. Kluska, Esq.
                                  Immanuel Adeola, Esq.
                                  WILENTZ, GOLDMAN & SPITZER, P.A.
                                  90 Woodbridge Center Drive
                                  Suite 900, Box 10
                                  Woodbridge, New Jersey 07095
                                  Telephone: (732) 855-6083
                                  bmolloy@wilentz.com
                                  dkluska@wilentz.com
                                  iadeola@wilentz.com
                                  *Attorneys for Defendant Fox Rothschild LLP*