**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ABUCHI RAYMOND WEALTH and STANISLAV MARKEVICH<br><br>     Plaintiffs,<br><br>v.<br><br>FOX ROTHSCHILD LLP, ALKA BAHAL, KRISTEN M. AMABILE, JOHN AND JANE DOES (1-10), ABC CORPS. (1-10),<br><br>     Defendants. | CIVIL ACTION NO. 2:23-CV-03194<br><br>Motion Day:  February 20, 2024 |

---

**DEFENDANT KRISTEN M. AMABILE'S**
**BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

---

GREENBAUM, ROWE, SMITH & DAVIS LLP
75 Livingston Avenue
Suite 301
Roseland, New Jersey 07068
(973) 535-1600
*Attorneys for Defendant Kristen M. Amabile*

On the Brief:
  Mary E. Toscano, Esq.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................................... 1

BRIEF FACTUAL STATEMENT ................................................................................................. 2

LEGAL STANDARD OF REVIEW ............................................................................................ 4

    A.    Motions to Dismiss Under Rule 12(b)(1) .................................................................... 4

    B.    Motions to Dismiss Under Rule 12(b)(6) .................................................................... 4

ARGUMENT .................................................................................................................................. 7

I.    COUNTS FOUR AND SEVEN MUST BE DISMISSED BECAUSE THEY FAIL TO
PROPERLY STATE A RICO CLAIM ............................................................................. 7

    A.    Count Seven Must be Dismissed Pursuant to Rule 12(b)(6) ...................................... 8

        1.    The SAC Fails to Properly State a Claim Pursuant to 18 U.S.C. § 1962(a) ............... 8

        2.    The SAC Fails to Properly State a Claim Pursuant to 18 U.S.C. § 1962(c) ............... 9

          i.    The SAC Fails to Plead a Distinct Person and Enterprise. .................................... 10

         ii.    The SAC Fails to Establish a Pattern of Racketeering ........................................... 12

        3.    The SAC Fails to Sufficiently Allege Predicate Acts to Establish Racketeering
Activities .................................................................................................................... 15

        4.    Plaintiffs Fail to Properly Allege Proximate Cause and Therefore Have No Standing to
Bring a RICO Claim ................................................................................................... 17

        5.    Since the SAC Fails to Allege a RICO Claim, It Likewise Fails to Allege a Conspiracy
to Violate RICO .......................................................................................................... 18

        6.    Because Any Further Amendments Would Be Futile, Count Seven Should Be
Dismissed with Prejudice ........................................................................................... 19

    B.    Count Four Must be Dismissed Pursuant to Rule 12(b)(6) For the Same Reasons as
Count Seven. ............................................................................................................... 20

II.   ABSENT COUNT SEVEN, THIS COURT HAS NO JURISDICTION OVER THE REMAINING COUNTS, AND THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE CLAIMS ............... 20

    A.   This Court Lacks Federal Diversity Jurisdiction ......................................................... 20

    B.   This Court Should Decline to Exercise Supplemental Jurisdiction ............................. 22

III.   COUNT ONE MUST BE DISMISSED BECAUSE IT PROPERLY FAILS TO STATE A CLAIM ..................................................................................................................................... 24

    A.   Amabile Cannot be Individually Liable to Wealth for Legal Services Performed by Fox Rothschild ................................................................................................................... 24

    B.    There Was No Contract Between Amabile and Markevich; Regardless, There Was No Breach of Contract ....................................................................................................... 25

IV.   AMABILE ADOPTS AND JOINS ALL ARGUMENTS RAISED BY DEFENDANT FOX ROTHSCHILD AND ALSO REQUESTS THAT ALL IMPERTINENT, SCANDALOUS AND IMMATERIAL ALLEGATIONS OF THE COMPLAINT BE STRIKEN .............. 27

CONCLUSION .................................................................................................................... 28

## TABLE OF AUTHORITIES

**Page**

**Cases**

*29 Magnum v. Archdiocese of Phila.*,
   253 Fed. Appx. 224 (3d Cir. 2007) ...................................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................4, 5, 14

*Ass'n of N.J. Chiropractors, Inc. v. Horizon Healthcare Servs.*,
   No. 16-8400, 2017WL 2560350 (D.N.J. June 13, 2017) (unpublished) ...............24

*Banks v. Wolk*,
   918 F.2d 418 (3d Cir. 1990) ...................................................................8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..........................................................................5

*Boyle v. United States*,
   556 U.S. 938 (2009) ..........................................................................10

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) .................................................................6

*Care One Mgmt., LLC v. United Healthcare Workers E., SEIU 1199*,
   No. 12-6371, 2019 WL 5541410 (D.N.J. Oct. 28, 2019) ...............................19

*Cedric Kushner Promotions, Ltd. v. King*,
   533 U.S. 158 (2001) ..........................................................................10

*Cetel v.Kirwan Fin. Grp., Inc.*,
   460 F.3d 494 (3d Cir. 2006) ...................................................................20

*Columbia Gas Transmission Corp. v. Tarbuck*,
   62 F.3d 538 (3d Cir. 1995) ...................................................................21

*Const. Party of Pa. v. Aichele*,
   757 F.3d 347 (3d Cir. 2014) ...................................................................4

*Cuciak v. Prison Health Care Serv., Inc.*,
   No. CIV. 05-1860 (GEB), 2006 WL 1228582 (D.N.J. May 5, 2006) ...................27

*Davis v. Wells Fargo*,
   824 F.3d 333 (3d Cir. 2016) ...................................................................4

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
  No. CIV. A. 07-2860 (GEB), 2008 WL 5413105 (D.N.J. Dec. 23, 2008) ............................19

*Emcore Corp. v. PricewaterhouseCoopers LLP*,
  102 F. Supp. 2d 237 (D.N.J. 2000) ........................................................................................19

*Estrada v. Johnson & Johnson*,
  No. CV 16-7492 (FLW), 2017 WL 2999026 (D.N.J. July 14, 2017), *aff'd sub nom. In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278 (3d Cir. 2018)................................................................................28

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
  545 U.S. 546 (2005)................................................................................................................22

*Farmers & Merchants Nat. Bank v. San Clemente Fin. Grp. Sec., Inc.*,
  174 F.R.D. 572 (D.N.J. 1997)...................................................................................................9

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007)......................................................................................................6

*Germinaro v. Fid. Nat'l Title Ins. Co.*,
  737 F. App'x 96 (3d Cir. 2018) ..............................................................................................13

*Giles v. Phelan, Hallinan & Schmieg, L.L.P.*,
  901 F. Supp. 2d 509 (D.N.J. 2012) ........................................................................................28

*Gordon v. Pasquarello*,
  No. CV 22-1565, 2023 WL 2505538 (E.D. Pa. Mar. 14, 2023)..............................................23

*Gov. Employees Ins. Co. et al. v. Serge Menkin, Md. et al.*,
  CV-23-2184, 2023 WL 9039567 (D.N.J. Dec. 30, 2023).........................................................6

*Gross v. Waywell*,
  628 F. Supp. 2d 475 (S.D.N.Y. 2009).......................................................................................8

*H.J. Inc. v. Northwestern Bell Telephone Co.*,
  492 U.S. 229 (1989).........................................................................................................12, 14

*Hedges v. Musco*,
  204 F.3d 109 (3d Cir. 2000)....................................................................................................23

*Hindes v. Castle*,
  937 F.2d 868 (3d Cir. 1991)..............................................................................................13, 14

*Hughes v. Consol-Pennsylvania Coal Co.*,
  945 F.2d 594 (3d Cir. 1991)..............................................................................................13, 14

*In Re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256, 276–77 (3d Cir. 2006) ......................................................6

*J. Fitzpatrick & Co. v. Solna*,
    No. CIV. 89-2668 (CSF), 1991 WL 186661 (D.N.J. Sept. 5, 1991) ......................................25

*Jannuzzio v. Danby*,
    No. 22-CV-01189, 2022 WL 2541678 (E.D. Pa. July 7, 2022)...........................................18

*Jones v. Intelli-Check, Inc.*,
    274 F. Supp. 2d 615 (D.N.J. 2003) ......................................................5

*Judon v. Travelers Prop. Cas. Co. of Am.*,
    773 F.3d 495 (3d Cir. 2014)...........................................21

*Kaiser v. Stewart*,
    No. 96–6643, 1997 WL 476455 (E.D. Pa. Aug. 19, 1997)...................................11

*Kehr Packages, Inc. v. Fidelcor, Inc.*,
    926 F.2d 1406 (3d Cir. 1991)...........................................8, 11

*Ketner v. Widell*,
    No. 5:20-cv-6360, 2021 WL 2808829 (E.D. Pa. July 6, 2021) ...........................................15

*Kolar v. Preferred Real Est. Invs., Inc.*,
    361 F. App'x 354 (3d Cir. 2010) ......................................................9

*Liberty Bell Bank v. Rogers*,
    726 F. App'x 147 (3d Cir. 2018) ......................................................13

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993)...........................................18

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
    800 F.3d 99 (3d Cir. 2015)...........................................21

*Marshall-Silver Constr. Co. v. Mendel*,
    894 F.2d 593 (3d Cir. 1990)...........................................14

*Martin v. DHL Express (USA), Inc.*,
    580 F. Supp. 3d 66 (D.N.J. 2022) ......................................................26

*Mattern v. City of Sea Isle*,
    131 F. Supp. 3d 305 (D.N.J. 2015) ......................................................23

*McCann v. Newman Irrevocable Trust*,
    458 F.3d 281, 286 (3d Cir. 2006) ......................................................21

*Metcalf v. PaineWebber Inc.*,
  886 F. Supp. 503 (W.D. Pa. 1995), *aff'd*, 79 F.3d 1138 (3d Cir. 1996) ...................................9

*Meritcare Inc. v. St. Paul Mercury Ins. Co.*,
  166 F.3d 214 (3d Cir. 1999), *abrogated by Exxon Mobil Corp.*, 545 U.S. 546 .....................22

*Morse v. Lower Merion Sch. Dist.*,
  132 F.3d 902, 907 n.8 (3d Cir. 1997) ......................................................................................5

*N. Sound Capital LLC v. Merck & Co.*,
  938 F.3d 482 (3d Cir. 2019)....................................................................................................23

*NN&R, Inc. v. One Beacon Ins. Group*,
  362 F. Supp. 2d 514 (D.N.J. 2005) ...........................................................................................5

*Oakwood Labs., LLC v. Thanoo*,
  No. 17-5090, 2017WL 572393 (D.N.J. Nov. 28, 2017) (unpublished) ...............................4, 5

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
  834 F.3d 481 (3d Cir. 2016)......................................................................................................6

*Perry v. Gold & Laine, P.C.*,
  371 F. Supp. 2d 622 (D.N.J. 2005) ...........................................................................................5

*Phillips v. Allegheny*,
  515 F.3d 224 (3d Cir. 2008).....................................................................................................19

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) .................................................................................................................12

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
  30 F.3d 339, 344 (2d Cir. 1994) ..............................................................................................11

*Rose v. Bartle*,
  871 F.2d 331, 357–58 (3d Cir. 1989) ........................................................................................8

*Schmidt v. Fleet Bank*,
  16 F. Supp. 2d 340 (S.D.N.Y. 1998)..........................................................................................8

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479, 483 (1985) ..........................................................................................................9

*Shelton v. Restaurant.com, Inc.*,
  214 N.J. 419 (2013) .................................................................................................................26

*Simmerman v. Corino*,
  804 F. Supp. 644 (D.N.J. 1992), *aff'd*, 16 F.3d 405 (3d Cir. 1993) ........................................17

*Spiteri v. Russo*,
No. 2780, 2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013)..........................................7

*St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*,
967 F.3d 295 (3d Cir. 2020)....................................................................................18

*State v. Ball*,
141 N.J. 142, 160–63 (1995) ..................................................................................20

*State v. Cagno*,
409 N.J. Super. 552 (App. Div. 2009) .....................................................................20

*Suber v. Chrysler Corp.*,
104 F.3d 578 (3d Cir. 1997)....................................................................................21

*Sunlight Elec. Contracting Co. v. Turchi*,
918 F. Supp. 2d 392 (E.D. Pa. 2013) ......................................................................17

*Tabas v. Tabas*,
47 F.3d 1280 (3d Cir. 1995)..............................................................................13, 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308, 322-23 (2007) ....................................................................................6

*Trinity Indus. v. Chi. Bridge & Iron Co.*,
735 F.3d 131 (3d Cir. 2013)....................................................................................23

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*,
140 F.3d 478 (3d Cir. 1998)....................................................................................27

*United States v. Bergrin*,
650 F.3d 257 (3d Cir. 2011)..............................................................................12, 13

*United States v. Turkette*,
452 U.S. 576 (1981)................................................................................................10

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
454 U.S. 464, 474 (1982) ........................................................................................27

*Varrallo v. Hammond Inc.*,
94 F.3d 842 (3d Cir. 1996)......................................................................................25

*Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
489 U.S. 468, 474 (1989) ........................................................................................26

*Wade v. Amanda Rinkleur & Assoc., Inc.*,
2006 WL 709607 (N.J. Super. App. Div., March 17, 2006)...................................20

*Warth v. Seldin*,
    422 U.S. 490, 498-99 (1975) ................................................................................28

*Washington v. Hovensa LLC*,
    652 F.3d 340 (3d Cir. 2011)................................................................................21

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007)................................................................................19

*Zavala v. Wal-Mart Stores, Inc.*,
    447 F. Supp. 2d 379 (D.N.J. 2006), *aff'd*, 691 F.3d 527 (3d Cir. 2012)...........10, 11

**Rules**

Fed. R. Civ. P. 8(a)(2)..............................................................................................5

Fed.R.Civ.P. 15(a) ..................................................................................................19

Rule 9(b) .....................................................................................................6, 15, 16

Rule 12(b)(1)..............................................................................................................4

Rule 12(b)(6)..................................................................1, 4, 5, 6, 8, 19, 20, 25

**Statutes**

18 U.S.C. § 1343 .....................................................................................................17

18 U.S.C. § 1961(1) .................................................................................................15

18 U.S.C. § 1961(3) ...................................................................................................9

18 U.S.C. § 1961(4) ...................................................................................................9

18 U.S.C. § 1961(5) .................................................................................................12

18 U.S.C. § 1962(a) ........................................................................................1, 7, 8, 9

18 U.S.C. § 1962(c) .....................................................1, 7, 9, 10, 11, 12, 13, 18

18 U.S.C. § 1962(d) ...........................................................................1, 7, 18, 19

28 U.S.C. § 1332 .....................................................................................................20

28 U.S.C. § 1332(a)(1)............................................................................................21

28 U.S.C. § 1367(a) ................................................................................................22

28 U.S.C. § 1367(c)(3).............................................................................................22

Federal Racketeer Influenced and Corrupt Organizations Act ........................................................7

N.J.S.A. 2C:41–4(c) ........................................................................................................20

N.J.S.A. 2C:41–4(d) ........................................................................................................20

RICO § 1962 ........................................................................................................18

**Other Authorities**

United States Constitution Article III ........................................................................................22

14B Wright, Miller & Cooper,
   *Federal Practice and Procedure* § 3704, at 134 (1994) ........................................22

Defendant Kristen M. Amabile ("Amabile") respectfully submits this Brief in support of her motion to dismiss the Second Amended Complaint ("SAC") filed by Plaintiffs Abuchi Raymond Wealth ("Wealth") and Stanislav Markevich ("Markevich") (collectively, "Plaintiffs"). Amabile also respectfully joins in the Motion to Dismiss or in the Alternative to Strike Impertinent Allegations filed by Defendant Fox Rothschild ("Fox Rothschild"), *see* Docket Entry 39, and the Motion to Dismiss Second Amended Complaint Pursuant to Rule 12(b)(6) filed by Defendant Alka Bahal ("Bahal"), *see* Docket Entry 40, and hereby adopts and incorporates by reference herein the facts and arguments made by Defendants Fox Rothschild and Bahal in support of their respective motions.  To avoid burdening the Court with duplicative briefing, Amabile raises only those additional arguments that were not presented to the Court by either Fox Rothschild or Bahal, or that pertain to Amabile alone.

## PRELIMINARY STATEMENT

This Court should dismiss all of Plaintiffs' claims against Amabile.  Even taking all assertions in the Second Amended Complaint as true, Plaintiffs do not set forth allegations that support any claim against Amabile for which relief may be granted:

***First***, Plaintiffs' federal RICO claims under 18 U.S.C. § 1962 (a), (c) and (d) fail.  Plaintiffs fail to allege any injury from the use or investment of racketeering-derived income, and therefore their §1962(a) claim must be dismissed.  Next, Plaintiffs fail to adequately plead a § 1962 (c) claim because they do not meet the distinctiveness requirement, satisfy the continuity requirement, establish a pattern of racketeering activity or set forth that the alleged RICO violation was the proximate cause of Plaintiffs' injuries.  As such, Plaintiffs' § 1962 (c) claim must be dismissed. Without either a sufficient § 1962 (a) or § 1962 (c) claim, there can be no conspiracy to commit a RICO violation, and therefore Plaintiffs' § 1962 (d) claim must also fail.

**Second**, this Court should not exercise supplemental jurisdiction over Plaintiffs' state law claims against Amabile for breach of contract (Count One), negligence and negligent infliction of emotional distress (Count Two), fraud (Count Three), and breach of fiduciary duty (Count Five). The only claim over which this Court arguably maintains original jurisdiction is Plaintiffs' federal RICO claim, as there is no federal diversity jurisdiction and the Plaintiffs fail to establish that the amount in controversy is over $75,000. As stated above, however, the federal RICO claim is insufficiently pled. Therefore, Plaintiffs' federal RICO claim is the only claim over which this Court may exercise original jurisdiction and upon which Plaintiffs' state law claims may be pendent to establish supplemental jurisdiction. Because the federal claim against Defendants should be dismissed, there is a presumption against a court exercising supplemental jurisdiction, especially where Plaintiffs' state law claims also fail, as they do here.

**Third**, Plaintiffs' state law claims are woefully lacking and are based on bare, conclusory allegations.  First and foremost, there is no indication that Amabile is responsible for the filing of Wealth's visa petition, and therefore she cannot be responsible for a breach of contract or a breach of fiduciary duty.  Likewise, there is no allegation that Markevich retained the professional legal services of either Fox Rothschild or Amabile.  For these reasons, and the reasons set forth in the motions to dismiss submitted by Fox Rothschild and Bahal, the state claims must be dismissed.

## BRIEF FACTUAL STATEMENT

Until January 2022, Amabile was employed by Fox Rothschild, most recently as a paralegal and Immigration Administrator for Fox Rothchild's Corporate Immigration Practice.  *See* SAC, ¶ 45; Docket Entry 35-1; 35-2 at ¶ 19.  As this Court well knows and can take judicial notice of the same, law firms employ lawyers, paralegals and other support staff to service their clients.  Equally well known and subject to judicial notice is the reality in the legal profession that not every potential client who meets with a law firm ultimately decides to hire that law firm. The telltale sign

of whether a client has hired a law firm is whether the parties have entered into a retainer agreement.  Here, while Wealth engaged Fox Rothschild to represent him, SAC, ¶ 18, ¶ 25, Markevich did not.  In fact, Markevich admittedly filed his own visa petition, SAC, ¶ 79, ¶ 82, ¶ 84.  Furthermore, as conceded by Wealth, Amabile did not file Wealth's O-1 visa petition.  SAC, ¶ 136.

While Plaintiffs painstakingly attempt to paint Amabile in a pejorative light by including salacious, conclusory and irrelevant allegations in the SAC, the reality is that the Plaintiffs befriended Amabile.  SAC, ¶ 79; ¶ 83.  As such, in times of crisis, both Wealth and Markevich reached out to Amabile, as a friend, for help.  SAC, ¶ 62; ¶¶ 85-86; ¶¶ 99-100.  Wealth contacted Amabile to assist him with retaining a lawyer after Wealth was detained by ICE following criminal charges for alleged sexual contact, making it clear that – contrary to Wealth's baseless and conclusory claims otherwise – Amabile never portrayed herself as a lawyer to Wealth.  *See* Declaration of Mary E. Toscano, Esq. dated January 25, 2024.

Likewise, Markevich contacted Amabile after his visa application was denied and when Russia invaded Ukraine to see if she could assist his father with leaving Ukraine.  Ignoring the fact that there was no retainer agreement between Markevich and Fox Rothschild (or Markevich and Amabile for that matter), Markevich wants this Court to draw the unwarranted inference that a teleconference arranged among himself, Amabile and Bahal in January 2017 establishes that Markevich retained Fox Rothschild <u>after</u> his visa petition was denied in or around June 2020. SAC, ¶ 85, ¶ 88.  But, the alleged facts do not support such a conclusory leap.  Even taking the alleged facts as true, as this Court must, it defies common sense and is internally inconsistent within the four corners of the SAC that Markevich's petition would have been denied in June 2020, but he waited until October 2021 to purportedly pay Amabile to file a visa application.  *Id*. at ¶ 97.  In

sum, Plaintiffs fall short of pleading sufficient claims, and this Court should reject the Plaintiffs'

conclusory allegations against Amabile and grant her motion to dismiss the SAC.

## <u>LEGAL STANDARD OF REVIEW</u>

### A.  Motions to Dismiss Under Rule 12(b)(1)

In resolving a Rule 12(b)(1) motion, a court first determines whether the motion presents

a "facial" or "factual" attack on subject matter jurisdiction.  *See Const. Party of Pa. v. Aichele*, 757

F.3d 347, 357 (3d Cir. 2014).  To establish a facial attack, one must show that a claim on its face

"is insufficient to invoke the subject matter jurisdiction of the court," *id*. at 358, and does not

dispute the facts alleged in the complaint, *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

A court reviewing a facial attack must "consider the allegations of the complaint and documents

referenced therein and attached thereto, in the light most favorable to the plaintiff." *Const. Party*

*of Pa.*, 757 F.3d at 358.

The facial attack here mandates that the Court should dismiss Plaintiffs' SAC because there

is no federal diversity and – after dismissal of Count Seven for the reasons set forth below – there

will be no federal question pending before the Court.  Without either diversity jurisdiction or a

federal question, this Court should decline to exercise supplemental jurisdiction over Plaintiffs'

state claims, dismiss the SAC and remand it to state court to address Plaintiffs' state claims.

### B.  Motions to Dismiss Under Rule 12(b)(6)

Dismissal of a claim under Rule 12(b)(6) is appropriate if the claim does not "contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Oakwood Labs., LLC v. Thanoo*, No. 17-5090, 2017WL 572393, at *3 (D.N.J. Nov. 28, 2017)

(unpublished) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also*

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court "should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the nonmovant, plaintiff's allegations state a legal claim." *NN&R, Inc. v. One Beacon Ins. Group*, 362 F. Supp. 2d 514, 518 (D.N.J. 2005).

The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.  Although in deciding this motion, the Court must "accept well-pleaded allegations as true for the purposes of the motion," the Court need not accept a pleading consisting of nothing more than "formulaic recitation of the elements of a cause of action," "bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations." *Oakwood Labs*, 2017 WL 5762393, at *3 (*citing Iqbal*, 556 U.S. at 678-79); *see Perry v. Gold & Laine, P.C*., 371 F. Supp. 2d 622, 626 (D.N.J. 2005) (*citing Morse v. Lower Merion Sch. Dist*., 132 F.3d 902, 907 n.8 (3d Cir. 1997)) ("courts can and should reject 'legal conclusions,' 'unsupported conclusions,' 'unwarranted references,' 'unwarranted deductions,' 'footless conclusions of law,' and 'sweeping legal conclusions in the form of actual allegations.'"); *Jones v. Intelli-Check, Inc.,* 274 F. Supp. 2d 615, 625 (D.N.J. 2003) (noting that the court is "not required to credit bald assertions or legal conclusions alleged in the complaint.").  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and if the Complaint "pleads facts that are 'merely consistent with' [defendant's] liability," the claims "stop[ ] short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678.

Finally, in deciding the sufficiency of the factual allegations under Rule 12(b)(6), the Court may "consider the [allegations] in [their] entirety, as well as other sources courts ordinarily examine when ruling on a Rule 12(b)(6) motion to dismiss, in particular, documents incorporated into the [allegations] by reference, and matters of which a court may take judicial notice." *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016) (*quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citation and quotation omitted) (the court may consider a "document integral to or explicitly relied upon in the complaint … without converting the motion to dismiss into one for summary judgment").

Moreover, where a plaintiff alleges fraud claims – such as the instant matter – the Plaintiffs are subject to a heightened pleading standard in accordance with Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  A court may grant a motion to dismiss a fraud-based claim under Rule 12(b)(6) if the plaintiffs fail to plead with the required particularity.  *See Frederico v. Home Depot*, 507 F.3d 188, 200–02 (3d Cir. 2007).  Such particularity must include "sufficient details to put the defendant "on notice of the precise misconduct with which it is charged." *See Gov. Employees Ins. Co. et al. v. Serge Menkin, Md. et al.*, CV-23-2184 (ZNQ) (JBD), 2023 WL 9039567, at *3 (D.N.J. Dec. 30, 2023).  "At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *Id.* (*citing In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006)).

**ARGUMENT**

I.     **COUNTS FOUR AND SEVEN MUST BE DISMISSED BECAUSE THEY FAIL TO PROPERLY STATE A RICO CLAIM**

Plaintiffs allege that Fox Rothschild, Bahal and Amabile (collectively "Defendants") have violated the New Jersey Racketeer Influenced and Corrupt Organizations ("RICO") Act, in violation of New Jersey State Annotated Title 2C, Chapter 41-1 (Count Four) and the Federal Racketeer Influenced and Corrupt Organizations Act, in violation of Title 18, United States Code, Section 1962 (a), (c)-(d) (Count Seven).  SAC, ¶ 13, ¶¶ 207-226; ¶¶ 251-299.  Plaintiffs allege both that: a) Fox Rothschild served as the enterprise, *see id*. at ¶ 214, and that Bahal and Amabile were the "persons" carrying out the "pattern of racketeering activity," *id*. at ¶ 215; or (b) "[i]n the alternative, Defendants Amabile, Bahal, Fox, JOHN DOES 1-10, and ABC CORPORATIONS 1-10, … which constituted an association-in-fact enterprise, conducted, or participated, directly or indirectly, in the conduct of that enterprise's affairs through a pattern of racketeering activity."  *Id*. at ¶ 216, ¶ 257.  Plaintiffs further allege that all Defendants engaged in a pattern of racketeering. In support of their claim, the Plaintiffs allege that Amabile and others committed, *inter alia*, the following predicate acts:

- The use of mail and interstate wires to send immigration marketing materials to clients, submit visa petitions and applications and apply for credit card accounts using Wealth's information. SAC, ¶¶ 63-74; ¶ 271.
- The use of the mail to obtain payments from Plaintiff Markevich.  SAC, ¶ 287.
- The use of the mail and wires to open bank accounts and open credit cards using Plaintiff Wealth's information as well as receive credit cards containing Amabile's name.  SAC, ¶ 287-89.
- The use of wires to make purchases using fraudulently acquired funds.  SAC, ¶¶ 291-92.
- The use of wires to transmit false and fraudulent information.  SAC, ¶ 293.

A plaintiff's burden is high when pleading civil RICO allegations. "Courts look with particular scrutiny at claims for a civil RICO, given the statute's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies." *Spiteri v.*

*Russo*, No. 2780, 2013 WL 4806960, at *45 (E.D.N.Y. Sept. 7, 2013).  Since RICO's breadth can have unintended consequences in civil suits, courts should "strive to flush out frivolous RICO allegations at an early stage of the litigation" and "lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998). "RICO simply was not designed by Congress to encompass many of the creative, and even extraordinary, if not outrageous uses for which plaintiffs have labored the statute." *Gross v. Waywell*, 628 F. Supp. 2d 475, 480–81 (S.D.N.Y. 2009). It is with this backdrop that the Court should view Plaintiffs' legally deficient RICO claims.

### A.  Count Seven Must be Dismissed Pursuant to Rule 12(b)(6)

#### 1.  The SAC Fails to Properly State a Claim Pursuant to 18 U.S.C. § 1962(a)

Plaintiffs claim that Defendants violated 18 U.S.C. § 1962(a) because they "unlawfully increased their profits by making fraudulent claims that undocumented immigrants … can increase their chances of securing a Visa by opening credit card accounts" and "by making fraudulent claims to undocumented immigrants … that wire transferring thousands of dollars to them would increase their chances of obtaining a visa for them and their loved ones overseas."  SAC, ¶254; ¶¶ 258-259.  However, such allegations fall short of establishing the elements of a Section 1962(a) claim for the reasons set forth below.  As a result, Plaintiffs' RICO claim under 18 U.S.C. § 1962(a) must fail.

To assert a Section 1962(a) claim, "a plaintiff must allege injury specifically from the use or investment of income in the named enterprise." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411 (3d Cir. 1991) (*quoting Rose v. Bartle*, 871 F.2d 331, 357–58 (3d Cir. 1989); *see Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir. 1990) (Section 1962(a) prohibits "any person who has received any income derived ... from a pattern of racketeering activity" from using that money to

acquire, establish or operate any enterprise that affects interstate commerce).  Here, the injury stems from the allegedly fraudulent activities of Amabile that either consisted of alleged direct payments to Amabile's Zelle account or events that occurred after Amabile left her employment at Fox Rothchild.  "The Third Circuit has consistently held that private plaintiffs suing on the basis of a §1962(a) violation must allege injury from the use or investment of racketeering-derived income, rather than simply pleading injury from the pattern of racketeering activity itself." *Metcalf v. PaineWebber Inc.*, 886 F. Supp. 503, 508 (W.D. Pa. 1995), *aff'd*, 79 F.3d 1138 (3d Cir. 1996).

Here, Plaintiffs have not alleged anywhere in the SAC that Defendants' subsequent investment of the funds it received in connection with the visa petitions at issue here harmed them in any manner.  "It is not enough to argue, under § 1962(a), that a defendant is a corporation that derives profits from racketeering activity, reinvests some of its profits into its business, and continues business by committing new racketeering acts against a plaintiff-victim … because that would eviscerate the distinction between § 1962(a) and § 1962(c)." *Farmers & Merchants Nat. Bank v. San Clemente Fin. Grp. Sec., Inc.*, 174 F.R.D. 572, 582 (D.N.J. 1997).  Thus, Plaintiffs' § 1962(a) claim must be dismissed.

### 2.   The SAC Fails to Properly State a Claim Pursuant to 18 U.S.C. § 1962(c)

To assert a Section 1962(c) claim, one must establish: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Kolar v. Preferred Real Est. Invs., Inc*., 361 F. App'x 354, 362 (3d Cir. 2010) (*citing Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 483 (1985)).  Under RICO, a "person" is defined as: "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3).  An enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  An association-in-fact enterprise may be

pled by showing: (i) that there exists an ongoing organization, formal or informal; (ii) that the various associates of the organization function as a continuing unit; and (iii) that the organization has an existence separate and apart from the alleged pattern of racketeering activity. *See United States v. Turkette*, 452 U.S. 576, 583 (1981). An association-in-fact enterprise "must have at least three structural features: [i] a purpose, [ii] relationships among those associated with the enterprise, and [iii] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

As set forth more fully below, the SAC fails to satisfy the distinctiveness requirement or sufficiently plead a pattern of racketeering activity.

### i. The SAC Fails to Plead a Distinct Person and Enterprise.

Section 1962(c) contains what is known as a distinctiveness requirement. The Supreme Court has held that the language of § 1962(c) creates a pleading requirement of distinctness: "to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *see also Zavala v. Wal-Mart Stores, Inc.*, 447 F. Supp. 2d 379, 383 (D.N.J. 2006) ("If the members of the enterprise are the same as the persons, the distinctness requirement has not been met, as the 'person' and the 'enterprise' must not be identical."), *aff'd*, 691 F.3d 527 (3d Cir. 2012). When a corporation is involved, the analysis expands. In the context of an allegation involving a corporate entity, a plaintiff asserts a valid claim under Section 1962(c) when he alleges that a corporate owner or employee who is distinct from the corporation itself "conducts the corporation's affairs in a RICO-forbidden way." *Kushner*, 533 U.S. at 163. In such a situation, the owner or employee is the "person," and the corporation is the "enterprise ." *Id*. However, a claim that the corporation is the

"person" and the corporation together with its employees and agents is the "enterprise," will not withstand a motion to dismiss. *Id*. at 164 (*citing Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994)).  Similarly, a reference to the corporation as both the "person" and as the "enterprise" within a complaint is a fatal defect. *See Zavala*, 447 F. Supp. 2d at 383–84.

Here, the SAC impermissibly names "the persons" as "each Defendant," and the "RICO enterprise" as "an association, in fact, of persons, including each Defendant." SAC, ¶¶ 260-261. That is, Amabile, Bahal and Fox Rothschild are alleged to be both the persons and the enterprise. *See Kehr Packages, Inc.*, 926 F.2d at 1411 (dismissing § 1962(c) claim against defendants also named as the enterprise); *Kaiser v. Stewart*, No. 96–6643, 1997 WL 476455, at *9 (E.D. Pa. Aug. 19, 1997) (finding that, where corporations and individuals were named as defendant "persons," and identical group was identified as association-in-fact enterprise, RICO claim failed distinctiveness requirement).  RICO specifies that the "person" commits the predicate acts: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity … ." 18 U.S.C. § 1962(c).  Since Amabile, Bahal and Fox Rothschild all allegedly engaged in the racketeering activity, and also constitute the alleged enterprise, the RICO person and RICO enterprise are identical. The enterprise is the same as the person, merely referred to by a different name. This is impermissible, and Plaintiffs' RICO claim must accordingly be dismissed.

Finally, unlike Bahal, there is no allegation that Amabile participated in the operation or management of the enterprise itself.  To prove a claim under 1962(c), Plaintiffs must allege with particularity that Amabile "participate[d], directly or indirectly, in the conduct of such enterprise's

affairs," and had "some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  It is clear based on the alleged facts in the SAC that Amabile worked for Bahal, who supervised her during her employment at Fox Rothschild.  Indeed, Plaintiffs' entire legal malpractice claim (Count Six) is premised on the theory that Bahal failed to supervise Amabile, and Bahal failed to properly advise Wealth as the partner on the engagement.  Plaintiffs cannot have it both ways.  The Supreme Court has explicitly stated that "one is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself." *Id*. at 183. Therefore, Plaintiffs' SAC fails to allege a theory of liability as against Amabile under § 1962(c) that is plausible on its face.

### ii.   The SAC Fails to Establish a Pattern of Racketeering

A pattern of racketeering activity "requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).  In *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989), the Supreme Court stressed that a plaintiff must show also "that the racketeering acts are related, and that they amount to or pose a threat of continued criminal activity." *Id*. at 239 (emphasis in original).  Put another way, it is not enough to plead a mere pattern of racketeering activity; instead, a plaintiff must establish two additional elements: (1) relatedness and (2) continuity. *See United States v. Bergrin*, 650 F.3d 257, 267 (3d Cir. 2011).

Relatedness is defined as follows: "the criminal activities 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Id*. (citation omitted).

Continuity may be characterized as closed or open.  *See id*. (citation omitted). Closed-ended continuity is "a closed period of repeated conduct ... [that] can be established 'by proving a series of related predicates extending over a substantial period of time.'" *Germinaro v. Fid. Nat'l Title Ins. Co.*, 737 F. App'x 96, 102 (3d Cir. 2018) (internal quotation marks and citation omitted). The meaning of "substantial" has not been clearly defined, but a pattern of activity alleged to have lasted more than three years has been declared substantial. *See Tabas v. Tabas*, 47 F.3d 1280, 1294 (3d Cir. 1995) (citations omitted); *Liberty Bell Bank v. Rogers*, 726 F. App'x 147, 155 (3d Cir. 2018) ("[H]e engaged in an overall scheme that extended from at least 2010 to 2013, a period of time sufficient to satisfy the continuity requirement of RICO.") (*citing Tabas*, 47 F.3d at 1294).

Open-ended continuity, by contrast, consists of "past conduct that by its nature projects into the future with a threat of repetition." *Bergrin*, 650 F.3d at 267 (internal quotation marks and citation omitted).  The threat of repetition "exists when the predicate acts are a part of defendant's 'regular way of doing business' ... [or the] defendant operates a 'long-term association that exists for criminal purposes.'" *Hughes v. Consol-Pennsylvania Coal Co*., 945 F.2d 594, 610 (3d Cir. 1991) (citation omitted).

Plaintiffs have not asserted claims sufficient to establish a "pattern" of racketeering activity because the alleged pattern of racketeering activity set forth in the SAC fails to satisfy the continuity requirement.  18 U.S.C. § 1962(c); *see Hindes v. Castle,* 937 F.2d 868, 872 (3d Cir. 1991) (noting to be considered a pattern, predicate criminal acts must (1) be related, and (2) establish, or pose a threat of, "continuing" activity).

Here, the SAC fails to allege predicate acts of sufficient duration to meet the closed-ended continuity standard.   Plaintiffs allege that "[u]pon information and belief, this RICO enterprise has existed for almost 15 years prior to Defendant Fox acquiring Defendant Bahal's solo

practitioner immigration practice and continues to expand and operate pursuant to agreements entered between and amongst Defendants and other unnamed coconspirators." SAC, ¶ 264. Yet, such a conclusory allegation is insufficient to meet Plaintiffs' burden. Plaintiffs fail to make any specific allegations of any predicate acts committed outside the period of October 2021 through May 2022 – an eight-month period. SAC, ¶¶ 62-73.[1] However, the Supreme Court has noted that "predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement." *H.J. Inc.,* 492 U.S at 242. The Third Circuit has noted that "conduct lasting no more than twelve months did not meet the standard for closed-ended continuity." *Tabas,* 47 F.3d at 1293; *Hughes,* 945 F.2d at 610–11 (stating conduct lasting twelve months insufficient to establish closed-ended continuity); *Hindes,* 937 F.2d at 875 (finding eight month period of predicate acts without a threat of future criminal conduct does not satisfy continuity requirement); *Marshall-Silver Constr. Co. v. Mendel*, 894 F.2d 593, 597-98 (3d Cir. 1990) (finding a seven month, single-victim, single-injury scheme does not satisfy continuity requirement). Therefore, the SAC fails to allege a continuous pattern of racketeering activity on the basis of a closed-ended period.

Similarly, the SAC fails to establish open-ended continuity, which requires a threat of continuing racketeering activity. *H.J. Inc.,* 492 U.S. at 241-43. A threat of continuing activity may exist where the circumstances suggest that the predicate acts are a regular way of conducting business and likely to be repeated. *Tabas,* 47 F.3d at 1295; *Hughes,* 945 F.2d at 610. While Plaintiffs baselessly allege that the "pattern of racketeering continues to this day," SAC, ¶ 276, the

---

[1] Although the alleged facts in the SAC must be accepted as true by the Court in evaluating Amabile's motion to dismiss, the Court can – and should – consider all of the facts and exhibits incorporated into the SAC to determine the plausibility of Plaintiffs' allegations. For instance, Markevich claims that he was notified about the denial of his visa in June 2020. ¶ 85. However, he purportedly did not take any action to address his lack of legal status until wiring money to Amabile via Zelle in October 2021 and failed to inquire about his application until March 2022. ¶¶ 94-97; ¶ 108. When read together, these alleged facts require the sort of sweeping conclusion and unwarranted inferences that should not be relied upon to allow a claim to proceed. *See Iqbal,* 556 U.S. at 678-79.

allegations in the SAC – taken as true – prove otherwise.  Amabile's employment at Fox Rothschild ceased in January 2022.  SAC, ¶ 45.  Bahal sued Amabile in June 2022, clearly signaling the end of any working relationship between them.  *See* Docket Entry 35-2.  Further, Bahal departed Fox Rothschild in December 2023.  SAC, ¶ 165.  Since none of the Defendants currently represent Wealth or Markevich (or ever represented Markevich in the first place) or are still employed at Fox Rothschild, there is no threat that Defendants can or will continue to engage in a continued pattern of racketeering activity in furtherance of the enterprise, as alleged in the SAC.  Accordingly, Counts Four and Seven should be dismissed with prejudice for failing to meet the continuity requirement.

### 3.    The SAC Fails to Sufficiently Allege Predicate Acts to Establish Racketeering Activities

Even if this Court were to find that Plaintiffs' allegations sufficiently meet the continuity requirement, which they do not, the predicate acts alleged to establish a pattern of racketeering fail to support a RICO claim.  Section 1961 provides an extensive list of racketeering activities, encapsulating a bevy of crimes, some containing fraudulent actions, such as mail and wire fraud. 18 U.S.C. § 1961(1).  If a plaintiff alleges racketeering activities rooted in fraud, as set forth above, he or she must satisfy Federal Rule of Civil Procedure 9(b), which states: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Specifically, this means a plaintiff "must describe the circumstances of the alleged fraud with precise allegations of date, time, or place or otherwise use some means of injecting precision and some measure of substantiation into their allegations of fraud."  *Ketner v. Widell*, No. 5:20-cv-6360, 2021 WL 2808829, at *8 (E.D. Pa. July 6, 2021) (internal quotation marks and citation omitted).

First, the allegation that any of the Defendants distributed "fraudulent advertising" or "misleading information" is nothing more than a conclusory legal conclusion without any particularized, detailed factual support as required by Rule 9(b).  SAC, ¶ 272.  Plaintiffs only referenced a checklist for those seeking to legitimately obtain immigration status through marriage – something that is hardly fraudulent or misleading on its face.  *See* Docket Entry 35-11.

Wealth claims that Amabile opened credit cards without his authorization after she unlawfully obtained access to his apartment on or about May 6, 2021.  However, the same exhibit that Wealth relies upon to point the finger at Amabile also proves that Wealth requested that at least one additional individual be given access to his apartment, namely Jamie Simcoe. SAC, ¶ 70.  Furthermore, when Wealth emails his landlord five weeks later revoking Amabile's access to his apartment, Wealth fails to mention that she was not supposed to have access previously.  *See id.*  This is precisely the sort of bald accusations that should be rejected, especially where they are contradicted by the very documentation submitted by Wealth in support of his alleged claims.

Furthermore, Plaintiffs fail to allege with particularity how the mails were used in furtherance of the alleged scheme to defraud.  Rather, there is a conclusory allegation that somehow Amabile is responsible for the mailing of credit cards in her name to Wealth's apartment, *see* SAC ¶¶ 67-69, Docket Entries 35-4 and 35-5, without any particularity as to how she "had" certain "credit card[s] delivered to Mr. Wealth's residence in Toms River, NJ."  *Id.*  In addition, there is a conclusory allegation regarding the use of the mail to obtain payments from Plaintiff Markevich, *see* SAC, ¶ 287, yet the SAC makes clear that Amabile supposedly only requested payments via Zelle, which Markevich alleges he paid via electronic means, namely Zelle.  *See id.* at ¶ 97.

-16-

Plaintiffs are only left to rely upon two or more alleged acts of wire fraud as constituting the racketeering activity, which equally fail. Wire fraud consists of the following elements: "(1) the existence of a scheme to defraud; (2) the participation by the defendant in the particular scheme with the specific intent to defraud; and (3) the use of ... wire communications in furtherance of the fraudulent scheme." *Sunlight Elec. Contracting Co. v. Turchi,* 918 F. Supp. 2d 392, 402 (E.D. Pa. 2013) (internal quotation marks and citations omitted). The underlying scheme "must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *Id.* (internal quotation marks and citations omitted). Further, the wire fraud statute specifically highlights that the wire fraud must be "in interstate or foreign commerce." 18 U.S.C. § 1343.

Here, the SAC fails to allege with particularity the fraudulent scheme to obtain money or property by false pretenses that involved an interstate wire. As the SAC makes clear, a visa petition was filed for Wealth by mail, and it was not filed by Amabile. Moreover, it is unclear what fraud was perpetrated on Markevich, who Amabile was clearly assisting as a friend, as opposed to providing professional services. *See* SAC, ¶ 86 (Markevich called Amabile "to seek advice on his immigration status, Visa applications and next steps to secure a Visa," but there is no allegation that Markevich retained Fox Rothschild or Amabile; rather, there is an allegation that he disregarded the advice provided, *see id.* at ¶ 93), ¶ 95 (assisting Markevich for "free"). As such, Plaintiffs' allegations of mail and wire fraud cannot stand. *See Simmerman v. Corino*, 804 F. Supp. 644, 657 (D.N.J. 1992), *aff'd*, 16 F.3d 405 (3d Cir. 1993).

**4.    Plaintiffs Fail to Properly Allege Proximate Cause and Therefore Have No Standing to Bring a RICO Claim**

A plaintiff bringing a civil RICO claim must allege an injury to business or property and "that a RICO predicate offense not only was a 'but for' cause of injury, but was the proximate

cause as well." *St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 300 (3d Cir. 2020) (internal citation and quotation omitted).  In pleading proximate cause, one must show that the injury was from "the defendants' § 1962 RICO violation." *Jannuzzio v. Danby*, No. 22-CV-01189, 2022 WL 2541678, at *8 (E.D. Pa. July 7, 2022).  However, in the RICO context, "the focus [of proximate causation] is on the directness of the relationship between the conduct and the harm" rather than "the concept of foreseeability."  *St. Luke's Health Network, Inc.*, 967 F.3d at 300 (internal citation and quotation omitted).

Plaintiffs' allegations in the instant matter fail to create standing because, as analyzed above, they are unable to sufficiently plead that there was an enterprise or a pattern of racketeering activity.  In failing to meet these two elements of a Section 1962(c) claim, Plaintiffs do not plausibly allege a RICO violation.  Moreover, for the reasons set forth in Defendant Fox Rothschild's and Defendant Bahal's Motions to Dismiss the Second Amended Complaint, none of the alleged predicate acts are the proximate cause of Wealth's detention by ICE or the denial of Markevich's petition, which he filed on his own.  As a result, Plaintiffs have no standing because there is no causal connection between an alleged violation of Section 1962(c) and Plaintiffs' harm. In other words, Plaintiffs have suffered no direct injury from a RICO violation.

### 5.    Since the SAC Fails to Allege a RICO Claim, It Likewise Fails to Allege a Conspiracy to Violate RICO

18 U.S.C. § 1962(d) makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  Where, as here, the complaint fails to properly allege a RICO claim, a conspiracy to commit RICO claim also fails. *See 29 Magnum v. Archdiocese of Phila.*, 253 Fed. Appx. 224, 229 (3d Cir. 2007) ("Any claim under section 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153,

1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."); *Care One Mgmt., LLC v. United Healthcare Workers E., SEIU 1199*, No. 12-6371, 2019 WL 5541410, at \*10 (D.N.J. Oct. 28, 2019) (same).

Moreover, a corporation cannot conspire with its agents and/or employees under § 1962(d). *See Dist. 1199P Health & Welfare Plan v. Janssen*, *L.P.*, No. CIV. A. 07-2860 (GEB), 2008 WL 5413105, at \*14 (D.N.J. Dec. 23, 2008).  An alleged intra-corporate conspiracy comprised solely of a corporation acting in concert with its officers and employees should not be considered as involving separate actors conspiring under the law. *See Emcore Corp. v. PricewaterhouseCoopers LLP*, 102 F. Supp. 2d 237, 266 (D.N.J. 2000).  The decision that a RICO conspiracy claim cannot stand where a corporation is alleged essentially to have done nothing more than act in concert with its officers and employees, stems from the premise that "[a] corporation, legally conceived, is only one person" under RICO. *See Id*.  Thus, Plaintiffs' conspiracy to commit RICO claim should be dismissed.

### 6.    Because Any Further Amendments Would Be Futile, Count Seven Should Be Dismissed with Prejudice

As this Court well knows, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  The opportunity to amend must be provided even if the plaintiff does not seek leave to amend. *Id*.  While a court shall freely grant leave to amend, Fed.R.Civ.P. 15(a), the Court has discretion to deny the opportunity to amend a complaint if an "amendment would cause undue delay or prejudice, or that amendment would be futile[.]" *Winer Family Trust v. Queen*, 503 F.3d 319, 330–31 (3d Cir. 2007) (internal quotation marks omitted).  For the reasons set forth above, namely the Plaintiffs inability to meet the various

requirements of a RICO claim, namely distinctiveness, continuity, a pattern of racketeering activity and proximate cause, any opportunity to amend the complaint for a third time would be futile. Accordingly, the SAC should be dismissed with prejudice.

**B.  Count Four Must be Dismissed Pursuant to Rule 12(b)(6) For the Same Reasons as Count Seven.**

Plaintiffs' New Jersey State RICO claim also fails to withstand scrutiny for the same reasons set forth in Point II.A, above. *See Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 510 (3d Cir. 2006) ("[T]he New Jersey Supreme Court believe[s] the New Jersey RICO statute was and should be consistent with the federal RICO statute."); N.J.S.A. 2C:41–4(c).  A claim under New Jersey's RICO statute "requires the existence of an enterprise; that the enterprise consist of an organization engaged in a high degree of planning, cooperation, and coordination; that the properly defined enterprise engaged in, or its activities affect, trade or commerce; that a defendant was employed by or associated with the enterprise; and that defendant participated through a pattern of racketeering activity separate from the enterprise." *Wade v. Amanda Rinkleur & Assoc., Inc.*, 2006 WL 709607, at *2 (N.J. Super. App. Div., March 17, 2006) (*citing State v. Ball*, 141 N.J. 142, 160–63 (1995)). A "[p]attern of racketeering activity" requires "[e]ngaging in at least two incidents of racketeering conduct" that "embrace criminal conduct" and are "interrelated." *State v. Cagno,* 409 N.J. Super. 552, 597, (App. Div. 2009) (*quoting* N.J.S.A. 2C:41-1(d)).  For the same reasons that Plaintiffs' federal RICO claim fails, Plaintiffs state RICO claim fails, as well.

**II.   ABSENT COUNT SEVEN, THIS COURT HAS NO JURISDICTION OVER THE REMAINING COUNTS, AND THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE CLAIMS**

**A.   This Court Lacks Federal Diversity Jurisdiction**

Pursuant to 28 U.S.C. § 1332, federal district courts have original jurisdiction of all civil

actions "between ... citizens of different States" where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Thus, to invoke diversity jurisdiction in this case, Plaintiffs must establish that the matter is between citizens of different states and that the amount in controversy, exclusive of interest and costs, exceeds $75,000. *Id.*

First, Plaintiffs failed to allege complete diversity between all plaintiffs and defendants. "A party's citizenship is determined by her domicile, and 'the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning.'" *Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011) (*quoting McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006)). Notably, Wealth, Amabile and Bahal are all citizens of New Jersey. *See* SAC ¶¶ 1, 4-5. As such, there is no federal diversity jurisdiction because "no plaintiff may be a citizen of the same state as any defendant." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (internal citation and quotation omitted).

Second, Plaintiffs failed to establish that the amount in controversy exceeded $75,000. As the party invoking the Court's jurisdiction, Plaintiffs have the burden to prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. *See Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 506–07 (3d Cir. 2014). To determine whether Plaintiffs have met their burden, courts generally rely on the plaintiffs' good faith allegations of the amount in controversy contained in the complaint. *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995); *see also Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997). It is clear on the face of the SAC that neither Wealth nor Markevich has alleged damages in excess of $75,000; rather, Wealth claims his damages are approximately $20,000 (which include the supposed payment of a $13,000 flat retainer fee and approximately $11,000 that was allegedly

stolen from Plaintiff Wealth's apartment) and Markevich estimates his damages are over $10,000. *See* SAC, ¶¶ 11, 31, 40, 63, 145, 155, 202.[2]  At most, Plaintiffs claim that -collectively – their damages are "over $40,000." *Id*. at ¶ 267.  There must be at least one claim that meets the amount-in controversy requirement for the court to have diversity jurisdiction over the entire case.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005) ("[T]he well-pleaded complaint contains at least one claim that satisfies the amount-in-controversy requirement, and there are no other relevant jurisdictional defects, the district court, beyond all question, has original jurisdiction over that claim. The presence of other claims in the complaint, over which the district court may lack original jurisdiction, is of no moment.").  Nor can the claims be aggregated to meet the amount-in-controversy requirement.  *See Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 218 (3d Cir. 1999), *abrogated by Exxon Mobil Corp*., 545 U.S. 546, 558-59 (*quoting* 14B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3704, at 134 (1994)) ("[T]he rule is 'long-standing and seemingly well-settled ... that the claims of several plaintiffs, if they are separate and distinct, cannot be aggregated for purposes of determining the amount in controversy.'").  As such, this Court lacks federal diversity jurisdiction, and the SAC should be dismissed.

### B.     This Court Should Decline to Exercise Supplemental Jurisdiction

A court should exercise supplemental jurisdiction over state claims only when "they form part of the same case or controversy under Article III of the United States Constitution" with respect to the claims over which the court has original jurisdiction. 28 U.S.C. § 1367(a).  Here, the

---

[2] While Plaintiffs allege that Amabile is the subject of a lawsuit for allegedly stealing $80,000 from Bahal and Fox Rothschild through an employee expense account, neither Wealth nor Markevich have standing to assert that claim on Fox Rothschild's behalf or on behalf of Fox Rothschild's clients.  Moreover, while Wealth alleges that he was billed for close to $22,000 in fees, *see* SAC ¶ 155, he does not claim to have paid those fees (nor could he).  Accordingly, the claim at issue does not exceed $75,000.

only claims over which this Court arguably has original jurisdiction (assuming Plaintiffs' allegations properly set forth a claim) are Plaintiffs' federal RICO claims against Defendants.

However, for the reasons set forth above, Plaintiffs' RICO claims as alleged in Count Seven fail to properly state a claim. *See* Part II.A, *supra*.  Unfortunately for Plaintiffs, their allegations do not meet the elements of the asserted RICO claim.  Accordingly, their RICO claim should be dismissed.  Although Plaintiffs also have alleged claims under state law along with the RICO claim, because the RICO claim is the only basis for federal jurisdiction and there is no diversity of citizenship between the parties to support federal jurisdiction over the state law claims, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. Consequently, Defendant Amabile's Motion to Dismiss the SAC should be granted in its entirety. *See, e.g., Gordon v. Pasquarello*, No. CV 22-1565, 2023 WL 2505538, at *2 (E.D. Pa. Mar. 14, 2023)

"A district court can decline to exercise supplemental jurisdiction . . . where 'the district court has dismissed all claims over which it has original jurisdiction,'" *Trinity Indus. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 135 (3d Cir. 2013) (*quoting* 28 U.S.C. § 1367(c)(3)), and there is a presumption that courts should do so. *N. Sound Capital LLC v. Merck & Co.*, 938 F.3d 482, 494 n.11 (3d Cir. 2019) (citations omitted). "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000). Moreover, where, as here, the dismissal of federal claims occurs at an early stage in the litigation, courts should decline to exercise supplemental jurisdiction over plaintiffs' state law claims. *See Mattern v. City of Sea Isle*, 131 F. Supp. 3d 305, 320 (D.N.J. 2015) ("Where the federal

claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims."); *Ass'n of N.J. Chiropractors, Inc. v. Horizon Healthcare Servs.*, No. 16-8400, 2017 WL 2560350, at *5 (D.N.J. June 13, 2017) (unpublished) (same). Thus, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

### III.   COUNT ONE MUST BE DISMISSED BECAUSE IT PROPERLY FAILS TO STATE A CLAIM

#### A.   Amabile Cannot be Individually Liable to Wealth for Legal Services Performed by Fox Rothschild

Wealth alleges that Amabile is in breach of contract because Wealth's O-1 petition was filed late and Defendants failed to advise Wealth about filing for alternative visas.  SAC, ¶¶ 167-168.  Until January 2022, Amabile was employed by Fox Rothschild as a paralegal. *See* SAC, ¶ 45; Docket Entry 37-2 at ¶ 19. At some point during her employment at Fox Rothschild, Amabile also held the title of Immigration Coordinator, as evidenced by her Fox Rothschild email signature block.  *See* Docket Entry 37-1.  Although Wealth does not allege that Amabile was responsible for filing his O-1 petition, or that he contracted with Amabile individually, he nonetheless sues her in her individual capacity for a breach of contract claim related to the retainer agreement entered into by Bahal on behalf of Fox Rothschild and Wealth.  SAC, ¶ 162.

However, the SAC fails to allege any way in which Amabile acted outside the scope of her employment with respect to the legal services provided to Wealth as outlined in the retainer agreement itself with respect to the O-1 visa petition or other related immigration services.  In fact, Wealth concedes in the SAC that Amabile was supervised by Bahal, and Bahal filed the petition. SAC, ¶ 44(c), ¶ 119.  The Third Circuit has held that an employee falls outside the scope of his or her employment if the employee "acts for personal motives, out of malice, beyond his authority,

-24-

or otherwise not in good faith in the corporate interest." *Varrallo v. Hammond Inc.*, 94 F.3d 842, 849 n. 11 (3d Cir. 1996). Therefore, absent some allegation that Amabile committed some tortious or fraudulent act outside the scope of her employment with respect to the O-1 petition, she cannot be individually liable for the performance of duties carried out on behalf of an employer. *See J. Fitzpatrick & Co. v. Solna*, No. CIV. 89-2668 (CSF), 1991 WL 186661, at *11 (D.N.J. Sept. 5, 1991) (finding that "under New Jersey law, an employee of a company is individually liable for any tort he commits and cannot shield himself or herself behind the corporate entity simply because he or she acted on behalf of the employer."). Accordingly, Count One as to Amabile fails to properly state a claim and must be dismissed pursuant to Rule 12(b)(6).

### B. There Was No Contract Between Amabile and Markevich; Regardless, There Was No Breach of Contract

As noted by Defendant Fox Rothschild in its Motion to Dismiss the Second Amended Complaint (the "Motion"), the SAC fails to allege that there was any retainer agreement – or any other agreement – that any of the Defendants would file a petition on Markevich's behalf. *See* SAC, ¶¶ 78-92. Indeed, Markevich concedes that he filed the petition himself, *see id.* at ¶ 82, and only sought to obtain legal counsel after the petition was denied in June 2020. *See id.* at ¶ 86. At most, the allegations establish that – in June 2020 – Amabile attempted to review what Markevich already filed on his own to determine what, if anything, could be done, yet Markevich rejected their recommendation to marry a United States Citizen. *See id.* at ¶ 112 (After Amabile requested a "status on the rest of the info," Markevich responded "Hello! Please find attached what I uploaded to Kiteworks (O-1, Eb-1a, Invoices, Achievements etc., planned activities for 2020-2023[)]," referring to the petition and visa application Markevich had filed on his own); *id.* at ¶¶ 89, 93. Indeed, Markevich alleges that – 15 months after his visa application was denied in June 2020 – Amabile offered to help Markevich file his O-1B "reinstatement" and "EB1-A together for

free and all Plaintiff Markevich needed was the filing fees of 1400 + 700 + 460." *See id* at ¶ 95, for which Amabile <u>requested</u> payment via Zelle and Markevich allegedly paid, although Markevich failed to include proof of payment in the SAC. *See id* at ¶ 97.

"[T]he interpretation of private contracts is ordinarily a question of state law ... ." *Martin v. DHL Express (USA), Inc*., 580 F. Supp. 3d 66, 72 (D.N.J. 2022) (*quoting Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ*., 489 U.S. 468, 474 (1989)). Under New Jersey law, a contract is formed through "offer, acceptance, consideration, and performance by both parties." *Shelton v. Restaurant.com, Inc.*, 214 N.J. 419, 439 (2013). "There are four elements to a claim of breach of contract: first, that the parties entered into a contract containing certain terms; second, that [the] plaintiff did what the contract required [the plaintiff] to do; third, that [the] defendant did not do what the contract required [the defendant] to do, defined as a breach of the contract; and fourth, that [the] defendant's breach, or failure to do what the contract required, caused a loss to the plaintiff." *Martin*, 580 F. Supp. 3d at 72 (*citing Woytas v. Greenwood Tree Experts, Inc.*, 237 N.J. 501 (2019)) (internal quotations omitted).

Here, there are no contractual terms, and even if there were, Markevich fails to establish the proximate cause between Amabile's alleged failure to file "for free" certain applications and any injury sustained by Markevich. As the SAC clearly provides, Markevich filed his own visa petition, which was denied in June 2020. He was out of status and, according to the SAC, did not seek to address his illegal immigration status until Amabile allegedly contacted him in October 2021. Thus, Plaintiff Markevich's allegations fail to establish a breach of contract between him and Amabile because there is no evidence of any proximate cause between Amabile's supposed agreement to file Markevich's O-1B "reinstatement" and "EB1-A together for free," SAC, ¶ 95, and Markevich's injury, namely the denial of Markevich's immigration petition in June 2020.

Likewise, there is no evidence of any proximate cause between Amabile's supposed agreement to file Markevich's O-1B "reinstatement" and "EB1-A together for free," SAC, ¶ 95, and Markevich's illegal immigration status well over a year <u>after</u> his visa application had been denied.  As such, Count One must be dismissed.

IV.    **AMABILE ADOPTS AND JOINS ALL ARGUMENTS RAISED BY DEFENDANT FOX ROTHSCHILD AND ALSO REQUESTS THAT ALL IMPERTINENT, SCANDALOUS AND IMMATERIAL ALLEGATIONS OF THE COMPLAINT BE STRIKEN**

Amabile respectfully asks that this court allow her to join in the arguments made by Defendant Fox Rothschild in support of its Motion, including Defendant Fox Rothschild's request to strike impertinent, scandalous and immaterial allegations.  *See* Docket Entry 39; *see also Cuciak v. Prison Health Care Serv., Inc.*, No. CIV. 05-1860 (GEB), 2006 WL 1228582, at *1 n. 1 (D.N.J. May 5, 2006) (granting co-defendants request to join in the arguments raised by their co-defendants "in the interest of judicial economy.").  In addition to those facts outlined by Fox Rothschild in its Motion, such as the offensive and untrue claim that Amabile is being investigated for the unlicensed practice of law, s*ee* SAC at p. 8, Amabile also requests that the court strike any factual allegations involving Markevich's father.  *See* SAC at ¶¶ 99-107.  Markevich does not have standing to assert claims on behalf of his father, as Markewich is not the person who suffered the alleged injuries, namely an inability to flee Ukraine via Poland to the United States.[3]  *See e.g. Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 485 (3d Cir. 1998) (*citing Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982)) (internal citation omitted) ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of

---

[3] Notably, there is no allegation of any exchange of money between Markevich and Amabile to assist Markevich's father with his efforts to flee Ukraine.

third parties."); *Estrada v. Johnson & Johnson*, No. CV 16-7492 (FLW), 2017 WL 2999026, at *3

(D.N.J. July 14, 2017), *aff'd sub nom. In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales*

*Pracs. & Liab. Litig.*, 903 F.3d 278 (3d Cir. 2018) (*citing Warth v. Seldin*, 422 U.S. 490, 498-99

(1975)) ("The seminal standing question is 'whether the plaintiff has 'alleged such a personal stake

in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to

justify exercise of the court's remedial powers on his behalf.'"); *see e.g., Giles v. Phelan, Hallinan*

*& Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 529 (D.N.J. 2012) (granting a motion to strike where the

Amended Complaint was "replete with allegations that pertain to parties that [were] not present in

th[e] case…").

## **CONCLUSION**

For the foregoing reasons, Amabile respectfully request that this Court grant (i) Defendant

Amabile's motion to dismiss Plaintiffs' Second Amended Complaint, (ii) grant Defendant Fox

Rothschild's motion to dismiss Plaintiffs' Second Amended Complaint, or in the Alternative to

Strike Impertinent Allegations, (iii) grant Defendant Bahal's motion to dismiss Plaintiffs' Second

Amended Complaint, and (iv) other and further relief as this Court deems just and proper.

**GREENBAUM, ROWE, SMITH & DAVIS, LLP**

By: _____

    Mary E. Toscano
    75 Livingston Avenue
    Roseland, New Jersey 07068
    (973) 577-1822
    mtoscano@greenbaumlaw.com
    *Attorneys for Defendant Kirsten Amabile*

Dated:  January 25, 2024