# EXHIBIT # A



# T. A. BLACKBURN LAW

### TYRONE A. BLACKBURN

MEMBER OF
NY & NJ BAR

FEDERAL MEMBERSHIP
EDNY, SDNY, NDNY, & DNJ

1242 EAST 80TH STREET, 3RD FLOOR
BROOKLYN, NY 11236

April 3, 2023

Honorable Matt Platkin
Office of the Attorney General
State of New Jersey
Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08611

**Re: Criminal Referral**

Dear Mr. Attorney General:

My firm represents two individuals who have all been victims of the law firm, Fox Rothschild, LLP ("Fox"), and their employees Alka Bahal, Esq. ("Bahal") and Kristen Amabile ("Amabile"). In all, within the past year, I have been contacted via phone by over five individuals with eerily similar allegations that Fox, Amabile, and Bahal have engaged in rampant immigration fraud, theft of their client's money, and theft of their client's identity. In addition to these claims, Fox and Bahal allowed and encouraged their office administrator, Amabile to present herself as a licensed attorney to my clients and their friends and family.

It is my belief that Fox, Amabile, and Bahal have established a pattern and practice of criminal activity that reflects a possible RICO enterprise. On or about June 29, 2022, Bahal sued Amabile in the Superior Court of New Jersey Law Division, Morris County, Docket No. Mor-L-1117-22 to recover $80,000.00 Amabile stole from Fox's clients (***See* Attachment A, the Morris County Complaint**).

Ironically, after a close reading of the pleading, you will realize that Amabile stole $160,000 in goods and cash from Fox clients. It is also important to note that as of October 12, 2022, Amabile was arrested in Denville Township in New Jersey for fraudulently obtaining prescription medication (***See* Attachment B, the Gavel Case Nos. 22001356 and 22001459**).

In response to the Bahals lawsuit, on November 7, 2022, Amabile filed a Counterclaim and Third-Party Complaint naming Fox, Catherine Wadhwani, Esq., Ali Brodie, Esq., and Brian Frey as defendants. In her lawsuit, Amabile provides disturbing details of Fox, Bahal, Catherine Wadhwani, Esq., Ali Brodie, Esq., and Brian Frey engaging in what can only be described as an orchestrated criminal enterprise.

 347-342-7432 ✉ tblackburn@tablackburnlaw.com ⟳ TABlackburnlaw.com

1

# T. A. BLACKBURN LAW

Amabile, accuses Bahal of purchasing her a burner phone as a tool to hide her criminal activity. Amabile also details the process Fox, Bahal, Catherine Wadhwani, Esq., Ali Brodie, Esq., and Brian Frey implement to defraud their clients out of their money.  In the relevant part, Amabile states:

1. The Plaintiff (Bahal) had a practice of failing to reimburse Fox Rothschild clients for overpayments made by said clients.
2. Instead of reimbursing overpayments made by clients, Plaintiff would retain the payment and create bogus invoices at or near the end of the billing year for a flat fee amount equal to the amount of the overpayments.
3. The zero balance invoice would not be sent to the client, but the funds being held by Plaintiff/Fox Rothschild would be applied to the fictitious/fraudulent invoices.
4. Plaintiff and Third-Party Defendant Fox Rothschild were the sole beneficiaries of the fraudulent invoicing scheme.
5. The result of the improper practice was to inflate Plaintiff's client originations/provide more revenue for Fox Rothschild, thereby making Plaintiff eligible for an even larger year-end bonus and more equity shares.
6. Plaintiff advised Defendant Amabile that this was standard practice at Fox Rothschild.
7. Plaintiff also had a practice of obtaining reimbursement for fraudulent expenses.
8. Under Fox Rothschild's policy, certain attorneys are permitted to write off client expenses (costs/disbursements) up to a certain dollar amount ("write off authority").
9. Plaintiff was one of the individuals with such write-off authority.
10. Amabile did not have such write-off authority and gained no benefit from the fraudulent practice.
11. Plaintiff used her write-off authority to charge her personal expenses to Fox Rothschild clients, obtain reimbursement from Fox Rothschild for the expenditures, and then write off the expenses so the clients would not see the fraudulent expense entries.

(*See* **Attachment C, Amabile Counterclaim and Third-Party**).

As if this was not bad enough, my suspicions of a RICO enterprise were solidified when Amabile filed a motion to enforce judgment against Fox and Bahal.  (*See* **Attachment D, Amabile Motion to Enforce Judgment**).  You will notice that Fox offered to pay Amabile $150,000 cash if she signed a nondisclosure agreement concerning her whistleblower claims detailed in **Attachment C**.  Fox also promised that they would get Bahal to dismiss her lawsuit against Amabile.  I find it highly suspicious that Fox, a national Law Firm with over 1000 attorneys, would pay a former employee $150,000 cash after accusing that employee of stealing over $160,000 in goods and cash.

This screams COVERUP!

I believe that Fox, Amabile, Bahal, and possibly Catherine Wadhwani, Esq., Ali Brodie, Esq., and Brian Frey were all members of a criminal RICO enterprise which have stolen millions of dollars



# T. A. BLACKBURN LAW

from unsuspecting clients for more than 20 years.  Additionally, I believe that their actions may be a violation of the following criminal codes:

- Criminal Fraud: N.J.S.A. 2C:21-1
    - Forgery
    - Identity theft
    - Mail and Wire Fraud
    - Credit Card Fraud
- New Jersey's RICO Act: NJSA 2C:41-2
- Money Laundering: 2C:21-25
- Unauthorized Practice of Law: N.J.S.A. 2C:21-22
- Theft by unlawful taking or disposition: N.J.S.A. 2C:20-3, and
- Theft by deception: N.J.S.A. 2C:20-4

**Conclusion**:
As of the date of this letter, my office has been vetting two additional victims who have come forward with claims of immigration fraud and stolen funds.

This matter's breadth and complexity require your jurisdictional powers and resources to tackle and end the stream depravity committed by Fox, Bahal, and Amabile.  My clients and their witnesses are prepared to speak with investigators and prosecutors from your office.

Thank you for your time and consideration.

Kind regards,

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC.

CC:
United States Department Of Justice

# Attachment # A

LOUIS H. MIRON (014861985)
Attorney at Law
123 North Union Avenue
Suite 103
Cranford, New Jersey 07016
(908) 233-9555
Attorney for Plaintiff Alka Bahal

| | |
|---|---|
| ALKA BAHAL,<br><br>                    Plaintiff,<br><br>          vs.<br><br>KRISTEN M. AMABILE,<br><br>                    Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MORRIS COUNTY<br><br>DOCKET NO. MOR-L-    -22<br><br>CIVIL ACTION<br><br>**COMPLAINT** |

Plaintiff Alka Bahal, residing at 9 Sheldon Court, East Hanover, New Jersey, by way of Complaint against Defendant Kristen M. Amabile ("Amabile"), says:

1.    Defendant Amabile is an individual, and upon information and belief, resides at 61 Nicole Drive, Denville, New Jersey.

2.    At all relevant times, Plaintiff and Amabile worked together at a law firm in the State of New Jersey (the "Law Firm").

3.    In connection with their working at the Law Firm, Plaintiff authorized Amabile to use Plaintiff's personal credit card to charge business expenses incurred on behalf of Plaintiff.

4.    Plaintiff's business expenses were reimbursable to her by the Law Firm.

5.    Without Plaintiff's knowledge or authorization, Amabile began charging her own personal expenses to Plaintiff's personal credit card.  These personal expenses were not for the Law Firm's business, for the Law Firm's clients, and were not reimbursable by the Law Firm.

6.    Plaintiff learned that Amabile charged over $44,000 for Amabile's own personal expenses to Plaintiff's credit card without Plaintiff's knowledge or authorization.

7.    Amabile also submitted reimbursement invoices to the Law Firm for expenses incurred by and for Plaintiff but retained the reimbursement proceeds for her own use rather than forward the Law Firm reimbursement payments to Plaintiff.

8.    Plaintiff confronted Amabile concerning Amabile's unauthorized use of Plaintiff's personal credit card and they entered into a verbal agreement for Amabile to repay all her improper personal charges

to Plaintiff, who paid the credit card bills in the normal course (the "Agreement").

9.    Pursuant to the terms of the Agreement, Plaintiff and Amabile agreed that Amabile would repay Plaintiff in several payments, including with the assistance of Amabile's mother, who Amabile represented was prepared to loan her $10,000 to pay down her debt to Plaintiff.

10.   Contrary to the terms of the Agreement, Amabile only paid $3,500 to Plaintiff and has refused to pay more money towards the substantial debt.

11.   Amabile has failed to comply with the terms of the Agreement and has refused to pay additional monies in connection with her unauthorized use of Plaintiff's personal credit card for Amabile's personal expenses.

12.   As a result, Plaintiff paid to the credit card company and thus has incurred approximately $40,000 in losses as a direct and proximate result of Amabile's wrongful conduct.

### FIRST COUNT
### (Breach of Contract)

13.    Plaintiff repeats and re-alleges each and every statement contained in Paragraphs 1 through 12 as if fully set forth herein.

14.    Amabile has breached the Agreement and has failed to make the required payments that Amabile agreed to make to Plaintiff for Amabile's unauthorized use of Plaintiff's personal credit card.

15.    Plaintiff has demanded compliance and payment, but Amabile has refused and payment has not been made.

16.    Plaintiff has fulfilled all her obligations under the Agreement.

17.    Plaintiff has been damaged thereby.


WHEREFORE, Plaintiff demands judgment against Amabile for compensatory damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

**SECOND COUNT**
**(Violation of the Fiduciary Duty)**

18.   Plaintiff repeats and re-alleges each and every statement contained in Paragraphs 1 through 17 as if fully set forth herein.

19.   Amabile, as a paralegal performing services on matters for Plaintiff, a member of the Law Firm, owes and continues to owe to Plaintiff a fiduciary duty in connection with the expenditure of Law Firm funds and Plaintiff's personal funds.

20.   Upon information and belief, Amabile expended Law Firm funds for her own personal expenses without the Law Firm's knowledge or authorization.

21.   Amabile breached and violated the fiduciary duties owed to Plaintiff, proximately causing Plaintiff to sustain losses, costs and damages.

WHEREFORE, Plaintiff demands judgment against Amabile, for compensatory damages, punitive damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

**THIRD COUNT**
**(Violation of the Covenant of Good Faith and Fair Dealing)**

22.   Plaintiff repeats and re-alleges each and every statement contained in Paragraphs 1 through 21 as if fully set forth herein.

23.   Plaintiff and Amabile, as parties to the Agreement, are each bound by a duty of good faith and fair dealing in both the performance and enforcement of the Agreement.

24.   Amabile may be liable for a breach of the covenant of good faith and fair dealing even if she does not violate an express term of the Agreement.

25.   Amabile owed and continues to owe to Plaintiff a duty of good faith with respect to her agreement to repay Plaintiff for all Amabile's unauthorized charges on Plaintiff's personal credit card, for which Plaintiff has paid the credit card company in full.

26.   Amabile acted in bad faith, and intentionally breached and violated the duties owed to Plaintiff and denied Plaintiff the benefit of the bargain originally intended when she and Plaintiff entered into the Agreement.

6

27.   Plaintiff has sustained compensatory and consequential damages as a direct and foreseeable result of Amabile's breaching the covenant of good faith and fair dealing.

WHEREFORE, Plaintiff demands judgment against Amabile, for compensatory damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

### FOURTH COUNT
### (Unjust Enrichment)

28.   Plaintiff repeats and re-alleges each and every statement contained in Paragraphs 1 through 27 as if fully set forth herein.

29.   Amabile was unjustly enriched, and there are monies due and owing to the Plaintiff from Amabile.

30.   Plaintiff has been damaged thereby.

WHEREFORE, Plaintiff demands judgment against Amabile, for compensatory damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

**FIFTH COUNT**
**(Fraud)**

31.  Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 30 as if fully set forth herein.

32.  During the relevant period, Amabile engaged in an unlawful course of conduct in which she knowingly, recklessly and/or negligently made representations to Plaintiff concerning Amabile's use of Plaintiff's personal credit card, and Amabile's agreement to repay Plaintiff for the unauthorized use of Plaintiff's personal credit card for Amabile's personal expenses that acted as a fraud upon Plaintiff.

33.  Amabile knowingly, recklessly and/or negligently made misrepresentations or omissions of material fact to Plaintiff upon which Plaintiff reasonably relied and which achieved Amabile's objective of maximizing the pecuniary gain for herself through charging her personal expenses to Plaintiff's personal credit card without Plaintiff's knowledge or authorization, and failing to repay Plaintiff as Amabile promised.

34.   Amabile knew or should have known that these representations related to material facts and information upon which Plaintiff was reasonably relying.

35.   The representations and omissions of material fact made by Amabile were made with the intention that Plaintiff would rely upon them.

36.   Amabile's conduct was violative of federal and state anti-fraud laws and constitutes common law fraud.

37.   Amabile engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon Plaintiff by engaging in the conduct described herein.

38.   Plaintiff incurred substantial damages as a direct and proximate result of the fraudulent conduct of Amabile.  Amabile is, therefore, liable for these damages.

39.   At all relevant times, Amabile acted willfully, outrageously, maliciously and with the specific intent to defraud and harm Plaintiff and to benefit herself, such that a significant award of punitive damages is also appropriate.

WHEREFORE, Plaintiff demands judgment against Amabile, for compensatory damages, punitive damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

**SIXTH COUNT**
**(Conversion)**

40.   Plaintiff repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 39 as if fully set forth herein.

41.   As a direct and proximate result of Amabile's conduct described herein, Amabile has received substantial pecuniary benefits from the substantial sums she charged to Plaintiff's personal credit card without Plaintiff's knowledge or authorization.

42.   Amabile has failed to repay Plaintiff for the improper charges made by Amabile to on Plaintiff's personal credit card, for which Plaintiff has paid the credit card company in full.

43.   Amabile's conduct constitutes an improper conversion of Plaintiff's property (i.e., money).

44.   As a direct and proximate result of Amabile's actions, Amabile has been unjustly enriched with substantial proceeds at the expense and/or detriment of Plaintiff.

45.   Plaintiff incurred substantial damages as a direct and proximate result of Amabile's actions.


WHEREFORE, Plaintiff demands judgment against Amabile, for compensatory damages, punitive damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

Louis H. Miron
Attorney for Plaintiff Alka Bahal

Date:   June 29, 2022

.LOUIS H. MIRON

11

## CERTIFICATION PURSUANT TO RULE 4:5-1

I hereby certify that the matter in controversy is not the subject of any other action pending in any court and is likewise not the subject of any pending arbitration proceeding.  I further certify that I have no knowledge of any contemplated action or arbitration proceeding which is contemplated regarding the subject matter of this action and that I am not aware of any other parties who should be joined in this action.

Louis H. Miron
Attorney for Plaintiff Alka
Bahal

Date:  June 29, 2022

LOUIS H. MIRON

## DESIGNATION OF TRIAL COUNSEL

Louis H. Miron is hereby designated as trial counsel for Plaintiff in the above-captioned matter.

Louis H. Miron
Attorney for Plaintiff Alka
Bahal

Date:  June 29, 2022

LOUIS H. MIRON

12

# Civil Case Information Statement

**Case Details: MORRIS | Civil Part Docket# L-001117-22**

**Case Caption:** BAHAL ALKA  VS AMABILE KRISTEN

**Case Initiation Date:** 06/29/2022

**Attorney Name:** LOUIS H MIRON

**Firm Name:** LOUIS H. MIRON

**Address:** 123 NORTH UNION AVE. STE 103
CRANFORD NJ 07016

**Phone:** 9082339555

**Name of Party:** PLAINTIFF : Bahal, Alka

**Name of Defendant's Primary Insurance Company**
(if known): None

**Case Type:** CONTRACT/COMMERCIAL TRANSACTION

**Document Type:** NJ eCourts Case Initiation Confirmation

**Jury Demand:** NONE

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Alka Bahal? NO**

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Business

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
    **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

06/29/2022
Dated

/s/ LOUIS H MIRON
Signed

# Attachment # B

# COMPLAINT - SUMMONS

| COMPLAINT NUMBER | | | |
|---|---|---|---|
| 1408 | S | 2022 | 000142 |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

*THE STATE OF NEW JERSEY VS.*

**KRISTEN M AMABILE**

DENVILLE TWP MUNICIPAL COURT
1 SAINT MARY'S PLACE
DENVILLE                  NJ  07834-0000
973-625-8300   COUNTY OF: **MORRIS**

ADDRESS: **61 NICOLE DRIVE**

**DENVILLE                        NJ 07834-0000**

| # of CHARGES | CO-DEFTS | POLICE CASE #: |
|---|---|---|
| 1 | | 2022-23444 |

DEFENDANT INFORMATION
SEX: **F**  EYE COLOR: **BROWN**           DOB: **12/11/1979**
DRIVER'S LIC. #. **A57004377462792**                    DL STATE:  **NJ**
SOCIAL SECURITY #: **xxx-xx-x377**        SBI #:
TELEPHONE #: **917-504-6533** (C)
LIVESCAN PCN #:

COMPLAINANT NAME: **DET   Z LANCASTER**
**1 ST. MARY'S PLACE**
**ATTN RECORD BUREAU**
**DENVILLE                  NJ   07834**

By certification or on oath, the complainant says that to the best of his/her knowledge, information and belief the named defendant on or about **09/28/2022 in      DENVILLE TWP             ,    MORRIS       County, NJ** did:
WITHIN THE JURISDICTION OF THIS COURT, ACQUIRE OR OBTAIN POSSESSION OF A
CONTROLLED DANGEROUS SUBSTANCE OR CONTROLLED SUBSTANCE ANALOG BY
MISREPRESENTATION, FRAUD, FORGERY, DECEPTION OR SUBTERFUGE, SPECIFICALLY BY
UTILIZING THE PERSONAL INFORMATION OF ANTHONY DENOIA IN ORDER TO OBTAIN
PRESCRIPTIONS FROM DR. JACOB LEIVENT FOR 30MG OF AMPHETAMINE SALT (ADDERALL). IN
VIOLATION OF N.J.S. 2C:35-13, A CRIME OF THE THIRD DEGREE.

**in violation of:**

| Original Charge | 1) **2C:35-13** | 2) | 3) |
|---|---|---|---|
| Amended Charge | | | |

## CERTIFICATION:

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Signed: _____ **DET Z LANCASTER** _____  Date: **10/12/2022**

**The complaining witness is a law enforcement officer and a judicial probable cause determination is not required prior to the issuance of this Complaint-Summons.**

**SUMMONS**
YOU ARE HEREBY SUMMONED to appear before the  Superior Court      in the county of:   MORRIS

at the following address:  MORRIS SUPERIOR COURT

WASHINGTON & COURT STREETS              P.O. BOX 910                        MORRISTOWN            NJ 07963-0910

If you fail to appear on the date and at the time stated below, a warrant may be issued for your arrest.

Date of Arrest:              Appearance Date:  **11/02/2022**   Time: **11:30AM**   Phone: **862-397-5700**

Signature of Person Issuing Summons: _____  **DET      Z LANCASTER** _____  Date: **10/12/2022**

| ❑ **Domestic Violence – Confidential** | ❑ **Related Traffic Tickets or Other Complaints** | ❑ **Serious Personal Injury/ Death Involved** |
|---|---|---|

**Special conditions of release:**
❑  **No phone, mail or other personal contact w/victim**
❑  **No possession firearms/weapons**
❑  **Other** (specify):

## ORIGINAL

**Page 1  of 7**

NJ/CDR1 1/1/2017

# COMPLAINT – SUMMONS (Court Action)

| COMPLAINT NUMBER | | | | STATE V. | |
|---|---|---|---|---|---|
| **1408** | **S** | **2022** | **000142** | | **KRISTEN M AMABILE** |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. | | |

| **FTA Bail Information** | | Date Bail Set: | | Amount Bail Set: $_____   by:_____ | ❏ Bail Recog. Attached |
|---|---|---|---|---|---|
| Released on Bail | R.O.R. | Committed Default | Committed w/o Bail | Place Committed: | Date Referred to County Prosecutor: _____ |

| Date of First Appearance: 11/02/2022 | ❏ Advised of Rights by_____ | Defendant Desires Counsel:  ❏ Yes   ❏ No |
|---|---|---|

| **Prosecuting Attorney Information** | | | | **Defense Counsel Information** | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Name:** | | | | **Name:** | | | | | |
| State | County | Municipal | Other | None | Retained | Public Def | Assigned | Waived | Other |

| Original Charge | 1) **2C:35-13** | 2) | 3) |
|---|---|---|---|
| Amended Charge | | | |
| Waiver Indt/Jury | | | |
| Plea/Date of Plea | Plea:          Date: | Plea:          Date: | Plea:          Date: |
| Adjudication (* see code) | Finding Code:          Date: | Finding Code:          Date: | Finding Code:          Date: |
| Jail Term | Jail time credit | Susp. Imp | Jail time credit | Susp. Imp | Jail time credit | Susp. Imp |
| Probation Term | | Susp. Imp | | Susp. Imp | | Susp. Imp |
| Cond. Discharge Term | | | |
| Community Service | | | |
| D/L Suspension Term | | | |
| Fines/Costs | Fines:          Costs: | Fines:          Costs: | Fines:          Costs: |
| VCCB/SNSF | VCCB:          SNSF: | VCCB:          SNSF: | VCCB:          SNSF: |
| DEDR/Lab Fee | DEDR:          LAB: | DEDR:          LAB: | DEDR:          LAB: |
| CD Fee/Drug Ed Fnd | CD:          DAEF: | CD:          DAEF: | CD:          DAEF: |
| DV Surch/Other Fees | DV:          Other: | DV:          Other: | DV:          Other: |
| Restitution Beneficiary:_____ | | | |

**Miscellaneous Information, Adjournments, Companion Complaints, Co-Defendants, Case Notes:**

\* Finding Codes
1 – Guilty
2 – Not Guilty
3 – Dismissed – Other
4 – Guilty but Merged
5 – Dismissed-Rule
6 – Dismissed Lack of Prosecution
7 – Dismissed – Pros Motion/Vic Req
8 – Conditional Discharge
D – Dismissed- Prosecutor Discretion
M – Dismissed- Mediation
P - Dismissed-Plea  Agreement
S – Disposed at Superior
W – Dismissed-False ID

**Related Traffic Tickets and Complaints:**

| | **ORIGINAL - Court Action** |
|---|---|
| JUDGE'S SIGNATURE                    DATE | **Page 2 of 7**          NJ/CDR1 1/1/2017 |

# COMPLAINT - SUMMONS (DEFENDANT'S COPY)

**COMPLAINT NUMBER**

| 1408 | S | 2022 | 000142 |
|------|---|------|--------|
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

*THE STATE OF NEW JERSEY*
*VS.*

**KRISTEN M AMABILE**

DENVILLE TWP MUNICIPAL COURT
1 SAINT MARY'S PLACE
DENVILLE          NJ  07834-0000
973-625-8300   COUNTY OF: **MORRIS**

ADDRESS :
**61 NICOLE DRIVE**

**DENVILLE              NJ 07834-0000**

| # of CHARGES | CO-DEFTS | POLICE CASE #: |
|---|---|---|
| 1 | | 2022-23444 |

DEFENDANT INFORMATION
SEX: **F**  EYE COLOR: **BROWN**     DOB: **12/11/1979**
DRIVER'S LIC. #. **A57004377462792**          DL STATE: **NJ**
SOCIAL SECURITY #: **xxx-xx-x377**   SBI #:
TELEPHONE #: **917-504-6533 (C )**
LIVESCAN PCN #:

COMPLAINANT
NAME:        **DET      Z LANCASTER**

By certification or on oath, the complainant says that to the best of his/her knowledge, information and belief the named defendant on or about **09/28/2022** in        **DENVILLE TWP**              ,     **MORRIS**     County, NJ did:
WITHIN THE JURISDICTION OF THIS COURT, ACQUIRE OR OBTAIN POSSESSION OF A
CONTROLLED DANGEROUS SUBSTANCE OR CONTROLLED SUBSTANCE ANALOG BY
MISREPRESENTATION, FRAUD, FORGERY, DECEPTION OR SUBTERFUGE, SPECIFICALLY BY
UTILIZING THE PERSONAL INFORMATION OF ANTHONY DENOIA IN ORDER TO OBTAIN
PRESCRIPTIONS FROM DR. JACOB LEIVENT FOR 30MG OF AMPHETAMINE SALT (ADDERALL). IN
VIOLATION OF N.J.S. 2C:35-13, A CRIME OF THE THIRD DEGREE.

**in violation of:**

| Original Charge | 1) **2C:35-13** | 2) | 3) |
|---|---|---|---|
| Amended Charge | | | |

## CERTIFICATION:

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment

**DET Z LANCASTER**                                          **10/12/2022**

Signed: _____   Date:_____

The complaining witness is a law enforcement officer and a judicial probable cause determination is not required prior to the issuance of this Complaint-Summons.

**SUMMONS**
YOU ARE HEREBY SUMMONED to appear before the      Superior Court          in the county of:    MORRIS

at the following address:   MORRIS SUPERIOR COURT

WASHINGTON & COURT STREETS            P.O. BOX 910                  **MORRISTOWN**        NJ 07963-0910

If you fail to appear on the date and at the time stated below, a warrant may be issued for your arrest.

Date of Arrest:              Appearance Date: **11/02/2022**   Time: **11:30AM**   Phone: **862-397-5700**

Signature of Person Issuing Summons: _____   **DET      Z LANCASTER** _____   Date: **10/12/2022**

| ❏ **Domestic Violence – Confidential** | ❏ **Related Traffic Tickets or Other Complaints** | ❏ **Serious Personal Injury/ Death Involved** |
|---|---|---|

**Special conditions of release:**
❏  **No phone, mail or other personal contact w/victim**
❏  **No possession firearms/weapons**
❏  **Other** (specify):

**COMPLAINT - SUMMONS (DEFENDANT'S COPY)**

**Page 3  of 7**                    NJ/CDR1 1/1/2017

# RETURN OF SERVICE INFORMATION

| COMPLAINT NUMBER | | | |
|---|---|---|---|
| **1408** | **S** | **2022** | **000142** |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

## *THE STATE OF NEW JERSEY*
## *VS.*
### KRISTEN M AMABILE

DENVILLE TWP MUNICIPAL COURT
1 SAINT MARY'S PLACE
DENVILLE          NJ  07834-0000
973-625-8300  COUNTY OF: **MORRIS**

ADDRESS :
  **61 NICOLE DRIVE**

  **DENVILLE             NJ 07834-0000**

| # of CHARGES | CO-DEFTS | POLICE CASE #: |
|---|---|---|
| 1 | | 2022-23444 |

COMPLAINANT DET    Z LANCASTER
NAME:       1 ST. MARY'S PLACE
            ATTN RECORD BUREAU
            DENVILLE          NJ  07834

DEFENDANT INFORMATION
SEX: **F**  EYE COLOR: **BROWN**      DOB: 12/11/1979
DRIVER'S LIC. #. A57004377462792      DL STATE: **NJ**
SOCIAL SECURITY # xxx-xx-x377    SBI #:
TELEPHONE #: 917-504-6533 (C)
LIVESCAN PCN #:

By certification or on oath, the complainant says that to the best of his/her knowledge, information and belief the named defendant on or about 09/28/2022 in          DENVILLE TWP          ,     MORRIS     County, NJ did:
WITHIN THE JURISDICTION OF THIS COURT, ACQUIRE OR OBTAIN POSSESSION OF A CONTROLLED DANGEROUS SUBSTANCE OR CONTROLLED SUBSTANCE ANALOG BY MISREPRESENTATION, FRAUD, FORGERY, DECEPTION OR SUBTERFUGE, SPECIFICALLY BY UTILIZING THE PERSONAL INFORMATION OF ANTHONY DENOIA IN ORDER TO OBTAIN PRESCRIPTIONS FROM DR. JACOB LEIVENT FOR 30MG OF AMPHETAMINE SALT (ADDERALL). IN VIOLATION OF N.J.S. 2C:35-13, A CRIME OF THE THIRD DEGREE.

**in violation of:**

| Original Charge | 1) **2C:35-13** | 2) | 3) |
|---|---|---|---|

| Check √ | **Certification by Police Regarding Complaint-Summons** |
|---|---|
| ✔ | I certify that I served the complaint-summons by delivering a copy to the defendant personally. |
| | I certify that I personally served the complaint-summons by leaving a copy at the defendant's usual place of abode with a competent member of the  household of the age 14 or over _____<br>Name of family member over 14 years of age |
| | I certify that I mailed a copy of the complaint-summons by ordinary mail to the defendant at his or her last known address. _____<br>Defendant's last known address |
| | I certify that I served the complaint-summons by delivering a copy to a person authorized to receive service of process on the defendant's behalf. _____<br>Name and title of authorized person |
| | Other manner of service: I certify that I served the complaint-summons in the following manner: _____ |
| | I certify that I was unable to serve the complaint-summons. |

Signed: **DET  Z LANCASTER DENVILLE TWP   POLICE DEPT**     Date of Action: _____ **10/12/2022** _____
         Name, Title and Department of Officer

## RETURN OF SERVICE INFORMATION

Page 4  of 7                                          NJ/CDR1 1/1/2017

# Affidavit of Probable Cause

| COMPLAINT NUMBER | | | |
|---|---|---|---|
| **1408** | **S** | **2022** | **000142** |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

DENVILLE TWP MUNICIPAL COURT
1 SAINT MARY'S PLACE
DENVILLE                    NJ  07834-0000
973-625-8300        COUNTY OF: **MORRIS**

*THE STATE OF NEW JERSEY*
*VS.*
**KRISTEN M AMABILE**

ADDRESS:
   **61 NICOLE DRIVE**

   **DENVILLE                    NJ  07834-0000**

| # of CHARGES | CO-DEFTS | POLICE CASE #: |
|---|---|---|
| 1 | | 2022-23444 |

COMPLAINANT NAME: DET   Z LANCASTER
1 ST. MARY'S PLACE
ATTN RECORD BUREAU
DENVILLE                    NJ  07834

DEFENDANT INFORMATION
SEX: **F**  EYE COLOR: **BROWN**      DOB: **12/11/1979**
DRIVER'S LIC. #. **A57004377462792**         DL STATE: **NJ**
SOCIAL SECURITY #: **xxx-xx-x377**     SBI #:
TELEPHONE #: **917-504-6533  (C)**
LIVESCAN PCN #:

Purpose: This Affidavit/Certification is to more fully describe the facts of the alleged offense so that a judge or authorized judicial officer may determine probable cause.

1. Description of relevant facts and circumstances which support probable cause that (1) the offense(s) was committed <u>and</u> (2) the defendant is the one who committed it:

On 9/28/22, Denville Police responded to 61 Nicole Drive for the report of an emotionally disturbed person, who was later identified as Kristen M. Amabile. During the on scene investigation, several prescription bill bottles belonging to Anthony Denoia and Kathleen Ancheta were turned over to police by Kristen's husband, George Amabile. The prescription bottles were for Adderall and Xanax and each had been prescribed by Dr. Jacob Leivent. While speaking with Kathleen and Anthony, they stated they were not patients of Dr. Leivent and had not given Kristen permission to use their personal information to obtain the medication. Anthony stated that Kristen had previously asked his permission to use his personal information to obtain Adderoll, however he stated he declined. The pill bottles with Kathleen's name had the address of 61 Nicole Drive, Denville, which was Kristen's address. Dr. Leivent provided screen shots from two phone number stating they were Anthony and Kathleen, asking for prescription refills. Each phone number was confirmed by Kristen's mother, Maria Smith to belong to Kristen. The phone number used to communicate with Dr. Leivent from an actor stating they were Anthony was used to contact Kristen directly. The two most recent Adderoll prescription that were filled for Anthony Denoia were picked up from the Denville CVS but a white BMW which appeared identical to a vehicle that is registered to Kristen and was observed parked in her driveway. Additionally, George stated that Kristen had stated that she was "pretending" to be Kathleen while seeing Dr. Leivent, in order to obtain medication.

**Affidavit of Probable Cause**

**Page 5  of 7**                                1/1/2017

# Affidavit of Probable Cause

| COMPLAINT NUMBER | | | |
|---|---|---|---|
| **1408** | **S** | **2022** | **000142** |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

### *THE STATE OF NEW JERSEY*
### *VS.*
### KRISTEN M AMABILE

2. I am aware of the facts above because: (Included, but not limited to: your observations,statements of eyewitnesses, defendant's admission, etc.)

I was the officer who conducted the follow up investigation.

3. If victim was injured, provide the extent of the injury:

Certification:

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Signed: ___DET Z LANCASTER LAW ENFORCEMENT OFFICER___   Date: ___10/12/2022___

| | Affidavit of Probable Cause |
|---|---|
| | **Page 6  of 7** |

1/1/2017

# Preliminary Law Enforcement Incident Report

**COMPLAINT NUMBER**

| 1408 | S | 2022 | 000142 |
|------|---|------|--------|
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

*THE STATE OF NEW JERSEY*
*VS.*
**KRISTEN M AMABILE**

DENVILLE TWP MUNICIPAL COURT
1 SAINT MARY'S PLACE
DENVILLE          NJ  07834-0000
973-625-8300  COUNTY OF: MORRIS

ADDRESS :
**61 NICOLE DRIVE**

**DENVILLE**                    **NJ 07834-0000**

| # of CHARGES | CO-DEFTS | POLICE CASE #: |
|---|---|---|
| 1 | | 2022-23444 |

DEFENDANT INFORMATION
SEX: **F**  EYE COLOR: **BROWN**        DOB: **12/11/1979**
DRIVER'S LIC. #. **A57004377462792**          DL STATE:   **NJ**
SOCIAL SECURITY #: **xxx-xx-x377**   SBI #:
TELEPHONE #: **917-504-6533**  (C)
LIVESCAN PCN #:

COMPLAINANT
NAME: DET    Z LANCASTER
1 ST. MARY'S PLACE
ATTN RECORD BUREAU
DENVILLE          NJ  07834

---

**Purpose:** The Preliminary Law Enforcement Incident Report (PLEIR) is intended to document basic information known to the officer at the time of its preparation. It is recognized that additional relevant information will emerge as an investigation continues. The PLEIR shall be in addition to, not in lieu of, any regular police arrest, incident, or investigation reports. Note that the PLEIR is specific to each defendant charged in an investigation.

-Another law enforcement officer(s) personally observed the offense, List the officer(s) and their badge#
  Zurlo 75

-The charge was based on the observations/statements made by an eyewitness(es).
      •The witness statement(s) were recorded via:
          *Body-Worn Camera

-Physical evidence was seized/recovered:
      •CDS:
              *Prescription Drugs

-Child(ren) were present at the time of the offense and:
      •Other/Explain Children were present

-The defendant appeared to be under the influence of drugs or alcohol at the time of the offense.

-The complaining officer/agency have reason to believe that the defendant is drug-dependent. Basis were:
      •Information from family/friends

-The case involves CDS and the evidence was recovered via:
      •Other/Explain Provided by husband

---

**Certification:**
I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Signed: __**DET Z LANCASTER LAW ENFORCEMENT OFFICER**__        Date: __10/12/2022__

# COMPLAINT - SUMMONS

| COMPLAINT NUMBER | | | |
|---|---|---|---|
| **1435** | **S** | **2022** | **000132** |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

*THE STATE OF NEW JERSEY*
*VS.*

**KRISTEN M AMABILE**

**ROCKAWAY TWP MUNICIPAL COURT**
**65 MT HOPE RD**
**ROCKAWAY            NJ  07866-0000**
**973-627-9000**  COUNTY OF: **MORRIS**

ADDRESS:
**61 NICOLE DR**

**DENVILLE            NJ  07834-0000**

| # of CHARGES | CO-DEFTS | POLICE CASE #: |
|---|---|---|
| 1 | | 2022-23241 |

DEFENDANT INFORMATION
SEX: **F**  EYE COLOR: **BROWN**     DOB: **12/11/1979**
DRIVER'S LIC. #: **A57004377462792**         DL STATE:   **NJ**
SOCIAL SECURITY #: **xxx-xx-x377**    SBI #: **688010H**
LIVESCAN PCN #: **143501007548**

COMPLAINANT NAME:
**DET. T    TAFFIN**
**65 MOUNT HOPE RD**
**ATTN WARRANTS**
**ROCKAWAY            NJ  07866**

TELEPHONE #: **973-886-3827** (C)

By certification or on oath, the complainant says that to the best of his/her knowledge, information and belief the named defendant on or about **08/23/2022 in            ROCKAWAY TWP          ,     MORRIS      County, NJ** did:
WITHIN THE JURISDICTION OF THIS COURT, DID OBTAIN ANY PERSONAL IDENTIFYING INFORMATION PERTAINING TO ANOTHER PERSON AND USE THAT INFORMATION, IN ORDER TO ASSUME THE IDENTITY OF OR REPRESENT HIMSELF AS ANOTHER PERSON, WITHOUT THAT PERSON'S AUTHORIZATION AND WITH THE PURPOSE TO FRAUDULENTLY OBTAIN OR ATTEMPT TO OBTAIN A BENEFIT OR SERVICES, OR AVOID THE PAYMENT OF DEBT OR OTHER LEGAL OBLIGATION BY USING THE NAME OF THE OTHER PERSON; SPECIFICALLY BY OBTAINING 5 PRESCRIPTION PILL BOTTLES (AMPHETAMINE ASPARTATE X3, DEXTROAMPHETAMINE X 1, & ALPRAZOLAM X1) WITH THE IDENTITY OF THE VICTIM K.A. AT THE RANDOLPH PHARMACY LOCATED AT 124 ROUTE 10 IN RANDOLPH NJ DURING THE TIME PERIOD OF JULY 2021 THROUGH AUGUST 2022 IN VIOLATION OF N.J.S.A. 2C:21-17A(4) IMPERSONATION, A CRIME OF THE FOURTH DEGREE.

in violation of:

| Original Charge | 1) **2C:21-17A(4)** | 2) | 3) |
|---|---|---|---|
| Amended Charge | | | |

## CERTIFICATION:

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Signed: _____  **DET. T    TAFFIN**                        Date: __**10/28/2022**__

The complaining witness is a law enforcement officer and a judicial probable cause determination is not required prior to the issuance of this Complaint-Summons.

**SUMMONS**

YOU ARE HEREBY SUMMONED to appear before the   Superior Court      in the county of:   MORRIS

at the following address:   MORRIS SUPERIOR COURT

**WASHINGTON & COURT STREETS**              **P.O. BOX 910**                    **MORRISTOWN**        **NJ 07963-0910**

If you fail to appear on the date and at the time stated below, a warrant may be issued for your arrest.

Date of Arrest: **10/28/2022**   Appearance Date: **11/16/2022**   Time: **11:30AM**   Phone: **862-397-5700**

Signature of Person Issuing Summons: _____   **DET. T    TAFFIN**                     Date: __**10/28/2022**__

| ❑ **Domestic Violence – Confidential** | ❑ **Related Traffic Tickets or Other Complaints** | ❑ **Serious Personal Injury/ Death Involved** |
|---|---|---|

| Special conditions of release: | |
|---|---|
| ❑ **No phone, mail or other personal contact w/victim** | **ORIGINAL** |
| ❑ **No possession firearms/weapons** | |
| ❑ **Other** (specify): | **Page 1  of 7** |

NJ/CDR1 1/1/2017

# COMPLAINT – SUMMONS (Court Action)

| COMPLAINT NUMBER | | | | STATE V. | |
|---|---|---|---|---|---|
| **1435** | **S** | **2022** | **000132** | | |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. | | **KRISTEN M AMABILE** |

**FTA Bail Information** | Date Bail Set: | Amount Bail Set: $_____ by:_____ | ☐ Bail Recog. Attached

| Released on Bail | R.O.R. | Committed Default | Committed w/o Bail | Place Committed: | Date Referred to County Prosecutor: _____ |
|---|---|---|---|---|---|

| Date of First Appearance: | **11/16/2022** | ☐ Advised of Rights by_____ | Defendant Desires Counsel: ☐ Yes   ☐ No |
|---|---|---|---|

| **Prosecuting Attorney Information** | **Defense Counsel Information** |
|---|---|
| Name: | Name: |

| State | County | Municipal | Other | None | Retained | Public Def | Assigned | Waived | Other |
|---|---|---|---|---|---|---|---|---|---|

| | 1) | | 2) | | 3) | |
|---|---|---|---|---|---|---|
| Original Charge | **2C:21-17A(4)** | | | | | |
| Amended Charge | | | | | | |
| Waiver Indt/Jury | | | | | | |
| Plea/Date of Plea | Plea:      Date: | | Plea:      Date: | | Plea:      Date: | |
| Adjudication (* see code) | Finding Code:      Date: | | Finding Code:      Date: | | Finding Code:      Date: | |
| Jail Term | | Jail time credit | Susp. Imp | Jail time credit | Susp. Imp | Jail time credit | Susp. Imp |
| Probation Term | | | Susp. Imp | | Susp. Imp | | Susp. Imp |
| Cond. Discharge Term | | | | | | |
| Community Service | | | | | | |
| D/L Suspension Term | | | | | | |
| Fines/Costs | Fines:      Costs: | | Fines:      Costs: | | Fines:      Costs: | |
| VCCB/SNSF | VCCB:      SNSF: | | VCCB:      SNSF: | | VCCB:      SNSF: | |
| DEDR/Lab Fee | DEDR:      LAB: | | DEDR:      LAB: | | DEDR:      LAB: | |
| CD Fee/Drug Ed Fnd | CD:      DAEF: | | CD:      DAEF: | | CD:      DAEF: | |
| DV Surch/Other Fees | DV:      Other: | | DV:      Other: | | DV:      Other: | |
| Restitution Beneficiary:_____ | | | | | | |

**Miscellaneous Information, Adjournments, Companion Complaints, Co-Defendants, Case Notes:**

**Related Traffic Tickets and Complaints:**

**\* Finding Codes**
1 – Guilty
2 – Not Guilty
3 – Dismissed – Other
4 – Guilty but Merged
5 – Dismissed-Rule
6 – Dismissed Lack of Prosecution
7 – Dismissed – Pros Motion/Vic Req
8 – Conditional Discharge
D – Dismissed- Prosecutor Discretion
M – Dismissed- Mediation
P - Dismissed-Plea  Agreement
S – Disposed at Superior
W – Dismissed-False ID

| JUDGE'S SIGNATURE | DATE | **ORIGINAL - Court Action** |
|---|---|---|
| | | **Page 2 of 7**   NJ/CDR1 1/1/2017 |

# COMPLAINT - SUMMONS (DEFENDANT'S COPY)

## COMPLAINT NUMBER

| 1435 | S | 2022 | 000132 |
|------|---|------|--------|
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

ROCKAWAY TWP MUNICIPAL COURT
65 MT HOPE RD
ROCKAWAY                NJ  07866-0000
973-627-9000   COUNTY OF: **MORRIS**

| # of CHARGES | CO-DEFTS | POLICE CASE #: |
|---|---|---|
| 1 | | 2022-23241 |

COMPLAINANT
NAME:      **DET. T      TAFFIN**

### THE STATE OF NEW JERSEY
### VS.
**KRISTEN M AMABILE**

ADDRESS :
**61 NICOLE DR**

**DENVILLE              NJ 07834-0000**

DEFENDANT INFORMATION
SEX: **F** EYE COLOR: **BROWN**        DOB: **12/11/1979**
DRIVER'S LIC. #. **A57004377462792**            DL STATE: **NJ**
SOCIAL SECURITY #: **xxx-xx-x377**   SBI #: **688010H**
TELEPHONE #: **973-886-3827  (C )**
LIVESCAN PCN #:   **143501007548**

By certification or on oath, the complainant says that to the best of his/her knowledge, information and belief the named
defendant on or about **08/23/2022** in          **ROCKAWAY TWP**          ,       **MORRIS**       County, **NJ** did:
WITHIN THE JURISDICTION OF THIS COURT, DID OBTAIN ANY PERSONAL IDENTIFYING
INFORMATION PERTAINING TO ANOTHER PERSON AND USE THAT INFORMATION, IN ORDER TO
ASSUME THE IDENTITY OF OR REPRESENT HIMSELF AS ANOTHER PERSON, WITHOUT THAT
PERSON'S AUTHORIZATION AND WITH THE PURPOSE TO FRAUDULENTLY OBTAIN OR ATTEMPT TO
OBTAIN A BENEFIT OR SERVICES, OR AVOID THE PAYMENT OF DEBT OR OTHER LEGAL
OBLIGATION BY USING THE NAME OF THE OTHER PERSON; SPECIFICALLY BY OBTAINING 5
PRESCRIPTION PILL BOTTLES (AMPHETAMINE ASPARTATE X3, DEXTROAMPHETAMINE X 1, &
ALPRAZOLAM X1) WITH THE IDENTITY OF THE VICTIM K.A. AT THE RANDOLPH PHARMACY
LOCATED AT 124 ROUTE 10 IN RANDOLPH NJ DURING THE TIME PERIOD OF JULY 2021
THROUGH AUGUST 2022 IN VIOLATION OF N.J.S.A. 2C:21-17A(4) IMPERSONATION, A CRIME
OF THE FOURTH DEGREE.

**in violation of:**

| Original Charge | 1) **2C:21-17A(4)** | 2) | 3) |
|---|---|---|---|
| Amended Charge | | | |

## CERTIFICATION:

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully
false, I am subject to punishment

Signed: _____   **DET. T   TAFFIN**   Date: **10/28/2022**

The complaining witness is a law enforcement officer and a judicial probable cause determination is not required prior to the
issuance of this Complaint-Summons.

SUMMONS
YOU ARE HEREBY SUMMONED to appear before the      Superior Court      in the county of:    MORRIS

at the following address:  MORRIS SUPERIOR COURT

WASHINGTON & COURT STREETS              P.O. BOX 910              MORRISTOWN          NJ 07963-0910

If you fail to appear on the date and at the time stated below, a warrant may be issued for your arrest.

Date of Arrest:   **10/28/2022**   Appearance Date:   **11/16/2022**   Time: **11:30AM**   Phone: **862-397-5700**

Signature of Person Issuing Summons: _____   **DET. T   TAFFIN**   Date: **10/28/2022**

| ❑  **Domestic Violence – Confidential** | ❑  **Related Traffic Tickets or Other Complaints** | ❑  **Serious Personal Injury/ Death Involved** |
|---|---|---|

Special conditions of release:
❑  **No phone, mail or other personal contact w/victim**
❑  **No possession firearms/weapons**
❑  **Other** (specify):

**COMPLAINT - SUMMONS (DEFENDANT'S COPY)**

# RETURN OF SERVICE INFORMATION

| COMPLAINT NUMBER | | | |
|---|---|---|---|
| **1435** | **S** | **2022** | **000132** |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

*THE STATE OF NEW JERSEY*
*VS.*
**KRISTEN M AMABILE**

ROCKAWAY TWP MUNICIPAL COURT
65 MT HOPE RD
ROCKAWAY              NJ  07866-0000
973-627-9000 COUNTY OF: **MORRIS**

ADDRESS :
   **61 NICOLE DR**

**DENVILLE**              **NJ 07834-0000**

| # of CHARGES 1 | CO-DEFTS | POLICE CASE #: 2022-23241 |
|---|---|---|

DEFENDANT INFORMATION
SEX: **F**  EYE COLOR: **BROWN**     DOB: 12/11/1979
DRIVER'S LIC. #. A57004377462792          DL STATE:  **NJ**
SOCIAL SECURITY # xxx-xx-x377   SBI #: **688010H**
TELEPHONE #: **973-886-3827** (C)
LIVESCAN PCN #: **143501007548**

COMPLAINANT NAME: **DET. T     TAFFIN**
65 MOUNT HOPE RD
ATTN WARRANTS
ROCKAWAY              NJ  07866

By certification or on oath, the complainant says that to the best of his/her knowledge, information and belief the named defendant on or about **08/23/2022** in          **ROCKAWAY TWP**       ,   **MORRIS**   County, NJ did:
WITHIN THE JURISDICTION OF THIS COURT, DID OBTAIN ANY PERSONAL IDENTIFYING INFORMATION PERTAINING TO ANOTHER PERSON AND USE THAT INFORMATION, IN ORDER TO ASSUME THE IDENTITY OF OR REPRESENT HIMSELF AS ANOTHER PERSON, WITHOUT THAT PERSON'S AUTHORIZATION AND WITH THE PURPOSE TO FRAUDULENTLY OBTAIN OR ATTEMPT TO OBTAIN A BENEFIT OR SERVICES, OR AVOID THE PAYMENT OF DEBT OR OTHER LEGAL OBLIGATION BY USING THE NAME OF THE OTHER PERSON; SPECIFICALLY BY OBTAINING 5 PRESCRIPTION PILL BOTTLES (AMPHETAMINE ASPARTATE X3, DEXTROAMPHETAMINE X 1, & ALPRAZOLAM X1) WITH THE IDENTITY OF THE VICTIM K.A. AT THE RANDOLPH PHARMACY LOCATED AT 124 ROUTE 10 IN RANDOLPH NJ DURING THE TIME PERIOD OF JULY 2021 THROUGH AUGUST 2022 IN VIOLATION OF N.J.S.A. 2C:21-17A(4) IMPERSONATION, A CRIME OF THE FOURTH DEGREE.

**in violation of:**

| Original Charge | 1) **2C:21-17A(4)** | 2) | 3) |
|---|---|---|---|

| Check √ | **Certification by Police Regarding Complaint-Summons** |
|---|---|
| ✔ | I certify that I served the complaint-summons by delivering a copy to the defendant personally. |
|  | I certify that I personally served the complaint-summons by leaving a copy at the defendant's usual place of abode with a competent member of the  household of the age 14 or over _____<br>Name of family member over 14 years of age |
|  | I certify that I mailed a copy of the complaint-summons by ordinary mail to the defendant at his or her last known address. _____<br>Defendant's last known address |
|  | I certify that I served the complaint-summons by delivering a copy to a person authorized to receive service of process on the defendant's behalf. _____<br>Name and title of authorized person |
|  | Other manner of service: I certify that I served the complaint-summons in the following manner: _____ |
|  | I certify that I was unable to serve the complaint-summons. |

Signed: **DET. T  TAFFIN ROCKAWAY TWP POLICE DEPT**     Date of Action: _____ **10/28/2022** _____
Name, Title and Department of Officer

## RETURN OF SERVICE INFORMATION

**Page 4  of 7**                    NJ/CDR1 1/1/2017

# Affidavit of Probable Cause

| COMPLAINT NUMBER | | | |
|---|---|---|---|
| **1435** | **S** | **2022** | **000132** |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

*THE STATE OF NEW JERSEY*
*VS.*
**KRISTEN M AMABILE**

ROCKAWAY TWP MUNICIPAL COURT
65 MT HOPE RD
ROCKAWAY                    NJ  07866-0000
973-627-9000    COUNTY OF: **MORRIS**

ADDRESS:
**61 NICOLE DR**

**DENVILLE**                    **NJ  07834-0000**

| # of CHARGES | CO-DEFTS | POLICE CASE #: |
|---|---|---|
| 1 | | 2022-23241 |

DEFENDANT INFORMATION
SEX: **F**  EYE COLOR: **BROWN**        DOB: **12/11/1979**
DRIVER'S LIC. #. **A57004377462792**                DL STATE: **NJ**
SOCIAL SECURITY #: **xxx-xx-x377**    SBI #: **688010H**
TELEPHONE #: **973-886-3827  ( C)**
LIVESCAN PCN #: **143501007548**

COMPLAINANT NAME: **DET. T      TAFFIN**
**65 MOUNT HOPE RD**
**ATTN WARRANTS**
**ROCKAWAY                    NJ   07866**

Purpose: This Affidavit/Certification is to more fully describe the facts of the alleged offense so that a judge or authorized judicial officer may determine probable cause.

1. Description of relevant facts and circumstances which support probable cause that (1) the offense(s) was committed <u>and</u> (2) the defendant is the one who committed it:

On September 28, 2022 Denville Police Department Officers responded to 61 Nicole Drive in Denville NJ.  Denville PD met with defendant and family members on scene.  Family members on scene provided numerous prescription pill bottles made out to several other unknown people.  Through their investigation, it was determined that defendant utilized victim K.A.'s personal information to fraudulently obtain prescriptions from Dr. Jacob Leivent out of Brooklyn NY.  Defendant's phone number was utilized to contact Dr. Leivent to request prescriptions to be filled at Randolph Pharmacy.  An unknown female who identified herself as the victim K.A. called Randolph Pharmacy to allow a "driver" to pick up the prescriptions, and a white BMW sedan was observed picking up the prescriptions at the drive through pharmacy window.  A white BMW sedan is registered to defendant and is parked at 61 Nicole Drive in Denville NJ.  The prescription pill bottle with victim's name on it, and the address of 61 Nicole Drive in Denville was recovered by Denville Police Department.  Victim was a client of defendant's at a law firm, Fox Rothchild Law Firm in Morristown NJ which confirmed that defendant had access to victim and other clients personal identifying information.

**Affidavit of Probable Cause**

# Affidavit of Probable Cause

| COMPLAINT NUMBER | | | | THE STATE OF NEW JERSEY |
|---|---|---|---|---|
| 1435 | S | 2022 | 000132 | *VS.* |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. | **KRISTEN M AMABILE** |

2. I am aware of the facts above because: (Included, but not limited to: your observations,statements of eyewitnesses, defendant's admission, etc.)

3. If victim was injured, provide the extent of the injury:

**N/A.**

Certification:

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Signed: __DET. T  TAFFIN LAW ENFORCEMENT OFFICER__     Date: ___10/28/2022___

# Preliminary Law Enforcement Incident Report

| COMPLAINT NUMBER | | | |
|---|---|---|---|
| **1435** | **S** | **2022** | **000132** |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

*THE STATE OF NEW JERSEY*
*VS.*
**KRISTEN M AMABILE**

ROCKAWAY TWP MUNICIPAL COURT
65 MT HOPE RD
ROCKAWAY          NJ  07866-0000
973-627-9000  COUNTY OF: MORRIS

ADDRESS :
**61 NICOLE DR**

**DENVILLE**                    **NJ  07834-0000**

| # of CHARGES | CO-DEFTS | POLICE CASE #: |
|---|---|---|
| 1 | | 2022-23241 |

DEFENDANT INFORMATION
SEX: **F**  EYE COLOR: **BROWN**          DOB: **12/11/1979**
DRIVER'S LIC. #. **A57004377462792**          DL STATE:   **NJ**
SOCIAL SECURITY #: **xxx-xx-x377**    SBI #: **688010H**
TELEPHONE #: **973-886-3827**  (**C**)
LIVESCAN PCN #: **143501007548**

COMPLAINANT NAME: **DET. T      TAFFIN**
**65 MOUNT HOPE RD**
**ATTN WARRANTS**
**ROCKAWAY**            **NJ  07866**

**Purpose:** The Preliminary Law Enforcement Incident Report (PLEIR) is intended to document basic information known to the officer at the time of its preparation.  It is recognized that additional relevant information will emerge as an investigation continues.  The PLEIR shall be in addition to, not in lieu of, any regular police arrest, incident, or investigation reports. Note that the PLEIR is specific to each defendant charged in an investigation.

-The defendant was known to the victim as:
  •Other/Explain Client

-Physical evidence was seized/recovered:
  •CDS:
        *Prescription Drugs

-The complaining officer/agency have reason to believe that the defendant is drug-dependent. Basis were:
  •Information from family/friends

-The case involves CDS and the evidence was recovered via:
  •Other/Explain Recovered by Denville PD

Certification:
I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Signed: ____ **DET. T    TAFFIN LAW ENFORCEMENT OFFICER** ____    Date: ____ **10/28/2022** ____

# Attachment # C

Dominick Bratti, Esq. (016541987)
BRATTI GREENAN LLC
1040 Broad Street, Suite 104
Shrewsbury, NJ  07702
(732) 852-2711
Attorneys for Defendant,
Kristen M. Amabile

---

| | |
|---|---|
| ALKA BAHAL<br><br>                     Plaintiff,<br><br>      v.<br><br>KRISTEN M. AMABILE<br><br>                  Defendant,<br>      v.<br><br>ALKA BAHAL, FOX ROTHSCHILD, LLP,<br>CATHERINE WADHWANI, ALI BRODIE,<br>BRIAN FREY and JOHN and JANE DOES 1-<br>10,<br><br>          Counterclaim Defendant and<br>          Third Party Defendants | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MORRIS COUNTY<br>DOCKET NO. MRS-L-001117-22<br><br>Civil Action<br><br><br><br>**ANSWER, AFFIRMATIVE DEFENSES,<br>COUNTERCLAIM AND<br>THIRD PARTY COMPLAINT<br>OF DEFENDANT KRISTEN AMABILE** |

Defendant Kristen M. Amabile ("Defendant") states in Answer to Plaintiff's Complaint as follows:

## AS TO THE PARTIES

1.      Defendant admits the allegations contained in Paragraph 1 of the Complaint.

2.      Defendant denies the allegations contained in Paragraph 2 of the Complaint except to admit that Defendant was employed by Plaintiff and worked for Plaintiff and at the law firm of Fox Rothschild, LLP of which Plaintiff is an equity partner/owner.

3.      Defendant denies the allegations contained in Paragraph 3 of the Complaint except to admit that Plaintiff authorized Defendant to use credit cards for expenses incurred by Plaintiff, Defendant and/or Fox Rothschild, LLP.

4.      Defendant admits the allegations contained in Paragraph 4 of the Complaint.

5.      Defendant denies the allegations contained in Paragraph 5 of the Complaint.

6.      Defendant denies the allegations contained in Paragraph 6 of the Complaint.

7.      Defendant denies the allegations contained in Paragraph 7 of the Complaint.

8.      Defendant denies the allegations contained in Paragraph 8 of the Complaint.

9.      Defendant denies the allegations contained in Paragraph 9 of the Complaint.

10.     Defendant denies the allegations contained in Paragraph 10 of the Complaint.

11.     Defendant denies the allegations contained in Paragraph 11 of the Complaint.

12.     Defendant denies the allegations contained in Paragraph 12 of the Complaint.

### AS TO COUNT I

13.     Defendant repeats and realleges each of its responses to Paragraphs 1 through 13 of the Complaint as if set forth at length herein.

14.     Defendant denies the allegations contained in Paragraph 14 of the Complaint.

15.     Defendant denies the allegations contained in Paragraph 15 of the Complaint.

16.     Defendant denies the allegations contained in Paragraph 16 of the Complaint.

17.     Defendant denies the allegations contained in Paragraph 17 of the Complaint.

**WHEREFORE,** Defendant requests judgment dismissing the Complaint against her with prejudice, together with her attorneys' fees and costs of suit.

## AS TO COUNT II

18.     Defendant repeats and realleges each of its responses to Paragraphs 1 through 17 of the Complaint as if set forth at length herein.

19.     Defendant denies the allegations contained in Paragraph 19 of the Complaint.

20.     Defendant denies the allegations contained in Paragraph 20 of the Complaint.

21.     Defendant denies the allegations contained in Paragraph 21 of the Complaint.

**WHEREFORE,** Defendant requests judgment dismissing the Complaint against her with prejudice, together with its attorneys' fees and costs of suit.

## AS TO COUNT III

22.     Defendant repeats and realleges each of its responses to Paragraphs 1 through 21 of the Complaint as if set forth at length herein.

23.     Defendant denies the allegations contained in Paragraph 23 of the Complaint.

24.     Defendant denies the allegations contained in Paragraph 24 of the Complaint.

25.     Defendant denies the allegations contained in Paragraph 25 of the Complaint.

26.     Defendant denies the allegations contained in Paragraph 26 of the Complaint.

27.     Defendant denies the allegations contained in Paragraph 27 of the Complaint.

**WHEREFORE,** Defendant requests judgment dismissing the Complaint against her with prejudice, together with its attorneys' fees and costs of suit.

## <u>AS TO COUNT IV</u>

28.     Defendant repeats and realleges each of its responses to Paragraphs 1 through 27 of the Complaint as if set forth at length herein.

29.     Defendant denies the allegations contained in Paragraph 29 of the Complaint.

30.     Defendant denies the allegations contained in Paragraph 30 of the Complaint.

**WHEREFORE,** Defendant requests judgment dismissing the Complaint against her with prejudice, together with her attorneys' fees and costs of suit.

## AS TO COUNT V

31.     Defendant repeats and realleges each of its responses to Paragraphs 1 through 30 of the Complaint as if set forth at length herein.

32.     Defendant denies the allegations contained in Paragraph 32 of the Complaint.

33.     Defendant denies the allegations contained in Paragraph 33 of the Complaint.

34.     Defendant denies the allegations contained in Paragraph 34 of the Complaint.

35.     Defendant denies the allegations contained in Paragraph 35 of the Complaint.

36.     Defendant denies the allegations contained in Paragraph 36 of the Complaint.

37.     Defendant denies the allegations contained in Paragraph 37 of the Complaint.

38.     Defendant denies the allegations contained in Paragraph 38 of the Complaint.

39.     Defendant denies the allegations contained in Paragraph 39 of the Complaint.

**WHEREFORE,** Defendant requests judgment dismissing the Complaint against her with prejudice, together with her attorneys' fees and costs of suit.

## AS TO COUNT VI

40.     Defendant repeats and realleges each of its responses to Paragraphs 1 through 39 of the Complaint as if set forth at length herein.

41.     Defendant denies the allegations contained in Paragraph 41 of the Complaint.

42.     Defendant denies the allegations contained in Paragraph 42 of the Complaint.

43.     Defendant denies the allegations contained in Paragraph 43 of the Complaint.

44.     Defendant denies the allegations contained in Paragraph 44 of the Complaint.

45.     Defendant denies the allegations contained in Paragraph 45 of the Complaint.

**WHEREFORE,** Defendant requests judgment dismissing the Complaint against her with prejudice, together with her attorneys' fees and costs of suit.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which an award of punitive damages can be granted.

### THIRD AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which an award of attorneys' fees can be granted.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff has waived any claim she may have, which is denied, to seek relief against Defendants.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff is estopped and barred by her own conduct from recovering any relief.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims, or the damages she may recover, are barred or at least reduced by her failure to mitigate damages.

### SEVENTH AFFIRMATIVE DEFENSE

This court lacks subject matter jurisdiction.

### EIGHTH AFFIRMATIVE DEFENSE

The Complaint and/or individual claims contained therein is/are barred by the applicable statutes of limitation.

### NINTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part by Plaintiff's own contributory and/or comparative fault.

### TENTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part by the doctrine of laches.

### ELEVENTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part by the defense of accord and satisfaction.

### TWELFTH AFFIRMATIVE DEFENSE

The only contract between Plaintiff and Defendant was a Settlement Agreement resolving all claims between the parties which Plaintiff breached by filing the instant lawsuit.

### THIRTEETH AFFIRMATIVE DEFENSE

The Complaint is barred by the insufficiency of process and/or insufficiency of service of process.

### FOURTEETH AFFIRMATIVE DEFENSE

Defendant did not owe any fiduciary or other duty to Plaintiff.  To the extent that any such duty was owed by Defendant, which is denied, Defendant fulfilled such duty.

### FIFTEENTH AFFIRMATIVE DEFENSE

The allegations contained in Plaintiff's Complaint constitute frivolous claims and Defendant reserves her right to seek appropriate relief regarding same.

**WHEREFORE,** Defendant requests judgment dismissing the Complaint against her with prejudice, together with her attorneys' fees and costs of suit.

## COUNTERCLAIM AND THIRD PARTY COMPLAINT

Defendant/Counterclaimant, Kristen M. Amabile ("Defendant" or "Amabile"), by way of Counterclaim against Plaintiff Alka Bahal ("Plaintiff") and Third Party Complaint against Third Party Defendants Fox Rothschild, LLP ("Fox Rothschild" "Third Party Defendant Fox Rothschild" or the "Firm"), Catherine Wadhwani ("Third Party Defendant Wadhwani" or "Wadhwani"), Ali Brodie ("Brodie" or "Third Party Defendant Brodie") and Brian Frey ("Frey" or "Third Party Defendant Frey") collectively hereinafter ("Third Party Defendants") states as follows:

## THE PARTIES

1.      Defendant/Counterclaimant, Kristen Amabile is a resident of the State of New Jersey and resides at 61 Nicole Drive, Denville, New Jersey.

2.      Plaintiff Alka Bahal is a resident of the State of New Jersey residing at 9 Sheldon Court, East Hanover, New Jersey.

3.      Third Party Defendant Fox Rothschild is a Limited Liability Partnership doing business in New Jersey with an office located at 49 Market Street, Morristown, New Jersey.

4.      Plaintiff Alka Bahal is an equity partner/shareholder/owner of Fox Rothschild and one of three Co-Chairs of the firm's immigration practice.

5.      Third Party Defendant Catherine Wadhwani ("Third Party Defendant Wadhwani" or "Wadhwani") is a partner of Fox Rothschild and one of three Co-Chairs of the Firm's immigration practice.

6.      Third Party Defendant Ali Brodie ("Brodie" or "Third Party Defendant Brody") is a partner of Fox Rothschild and one of three Co-Chairs of the Firm's immigration practice.

7.      Third Party Defendant Brian Frey ("Frey" or "Third Party Defendant Frey") is a resident of the State of New Jersey, residing at 9 Sheldon Court, East Hanover, New Jersey.

## **STATEMENT OF FACTS**

8.      Amabile is a former employee of Fox Rothschild.

9.      Prior to the termination of her employment, Amabile had been employed by Fox Rothschild or its predecessor in interest for approximately twenty two (22) years.

10.      Amabile began working as a receptionist for the law firm of Grotta, Glassman and Hoffman in or about 2000.

11.      In or about 2006, Grotta, Glassman and Hoffman merged with Third Party Defendant Fox Rothschild.

12.      Throughout her employment, Amabile's work performance was exemplary.

13.      Throughout her employment, Amabile was promoted a number of times.

14.      At the time of her termination, Amabile held the position of Practice Group Administrator for the Firm's Immigration Group.

15.      Prior to engaging in the protected conduct set forth herein, Amabile was never subject to any disciplinary action by Fox Rothschild.

16.      Prior to engaging in the protected conduct set forth herein, Amabile never received any written disciplinary action.

17.      Prior to engaging in the protected conduct set forth herein, Amabile never received a negative employee evaluation.

18.      During her employment, Amabile reported almost exclusively to Plaintiff.

19.      Plaintiff was almost exclusively responsible for training Ms. Amabile as an immigration paralegal.

20.     From the time Amabile started reporting to Plaintiff, Plaintiff made clear to Amabile that any disloyalty to Bahal would result in Amabile's termination.

21.     It was also made clear that Fox Rothschild's management personnel, including but not limited to senior members of the firm's Human Resources Department, sided with Plaintiff and that any complaints lodged against Plaintiff would be futile.

22.     This message was reinforced over the years by the number of paralegals and other support staff who were terminated by Plaintiff (or at her direction) and the circumstances under which they were terminated.

23.     Amabile also witnessed Plaintiff fabricating reasons for the termination of employees and fabricating and/or manipulating documentary evidence to justify said terminations.

24.     Plaintiff would also blame staff and others for mistakes she made so that she could avoid any negative repercussions.

25.     Throughout Amabile's employment, Plaintiff claimed to be Amabile's best friend and was friendly with Amabile's family members, including Amabile's mother.

26.     Fox Rothschild's Immigration Department was led by three co-chairs.

27.     Plaintiff was one of the three co-chairs of Fox Rothschild's Immigration Department.

28.     In or about 2018, Amabile was advised that she would be promoted to the position of Practice Group Administrator for the Firm's Immigration Department.

29.     Amabile was also advised that her compensation would be increased commensurate with the promotion.

30.     In or about 2019, a harassment complaint was lodged by Ali Brodie against one of the Co-Chairs of Fox Rothschild's Immigration Department, Third Party Defendant Wadhwani, in accordance with Fox Rothschild's anti-bullying policy.

31.     In conjunction with the investigation of the harassment complaint, Plaintiff required Amabile to surreptitiously gather information related to the harassment complaint and to provide the information she gathered to Fox Rothschild.

32.     Plaintiff directed Amabile to surreptitiously interview paralegals who reported to Catherine Wadhwani regarding Wadhwani's treatment of them.

33.     Plaintiff's directions to Amabile were witnessed by other Fox Rothschild employees.

34.     Amabile complied with Plaintiff's direction.

35.     In or about 2019, Amabile spoke with Fox Rothschild's General Counsel's office and participated in the investigation being conducted as to the harassment complaint.

36.     Amabile's participation in the harassment investigation was protected conduct under the law.

37.     As a result of Amabile's participation in the harassment investigation, Amabile was retaliated against and subject to a hostile work environment by Fox Rothschild.

38.     In or about 2020, Amabile also complained about, objected to and/or refused to participate in conduct by Fox Rothschild and/or its attorneys, including but not limited to Plaintiff's conduct, which she reasonably believed to be illegal, unethical and/or improper contrary to public policy.

39.     In or about 2020, Defendant Amabile reasonably believed that Fox Rothschild's handling of an I-9 audit for a client (hereinafter referred to as "WP" or "Client #1")

was improper, contrary to public policy and in violation of applicable federal law, rules and/or regulations.

40.     Defendant Amabile objected to such conduct.

41.     Amabile advised Plaintiff that she believed Fox Rothschild's handling of the I-9 audit for Client #1 was improper and violated applicable federal law, rules and/or regulations.

42.     The I-9 audit in question was overseen by Fox Rothschild attorney Third Party Defendant Brodie.

43.     Amabile advised Plaintiff of the impropriety regarding the I-9 audit of Client #1 because Plaintiff was a Co-Chair of the Immigration Department.

44.     Rather than addressing the issue as a principal of Fox Rothschild (and a Co-Chair of the Immigration Department), Plaintiff required Amabile to send a watered down version of her complaint via e-mail to Third Party Defendant Brodie who was responsible for WP's I-9 audit and the improper conduct with respect to said audit.

45.     Plaintiff insisted upon reading and editing the e-mail prior to Amabile sending it.

46.     Following Amabile's e-mailed complaint, Fox Rothschild's retaliation against Amabile increased, and Amabile's workplace became even more hostile.

47.     Following her complaint regarding the I-9 audit of Client #1, Amabile received the first and only written disciplinary warning of her of career at Fox Rothschild.

48.     Following her complaint regarding the I-9 audit of Client #1, Amabile received the first and only negative employment evaluation of her of career at Fox Rothschild.

49.     Following Amabile's e-mailed complaint, Fox Rothschild increased Plaintiff's workload to an extent that made it difficult for her to keep up with the assigned work.

50.     Thereafter, Plaintiff and other Fox Rothschild attorneys/employees continued to violate applicable law and public policy with regard to an I-9 audit performed by Fox Rothschild as to another client (hereinafter referred to as "EH" or "Client #2").

51.     Plaintiff was herself directly responsible for and involved in the I-9 audit for Client #2.

52.     Once again, Amabile complained directly to Plaintiff that Fox Rothschild's conduct with respect to the I-9 audit for Client #2 was improper, contrary to public policy and violated applicable federal law and/or rules and regulations.

53.     In particular, Amabile complained about specific conduct by Fox Rothschild which she reasonably believed to be improper and/or illegal.

54.     No remedial action was taken by Plaintiff and/or Fox Rothschild with regard to the I-9 Audits as to WP and/or EH.

55.     Plaintiff admitted on a number of occasions that Fox Rothschild was retaliating against Amabile.

56.     In particular, Plaintiff told Amabile that Ali Brodie/Fox Rothschild were retaliating against Amabile due to her complaint regarding  Client #1's I-9 audit.

57.     Thereafter, Plaintiff repeated numerous times that Ms. Brodie/Fox Rothschild was retaliating against Amabile.

58.     Plaintiff prompted Amabile on a number of occasions to file suit against Fox Rothschild/Brodie regarding the retaliation.

59.    Plaintiff also directed Amabile to lodge an anonymous false complaint with the Internal Revenue Service and the employer of Ms. Brodie's husband (Gregg) accusing him of financial improprieties.

60.    Amabile knew the assertion of a false complaint was illegal and improper.

61.    Amabile objected to and refused to participate in such conduct.

62.    Initially, Amabile attempted to avoid following Plaintiff's direction without having Plaintiff retaliate against her by stating that she could not make a false complaint as directed because she was afraid the call because would be traced back to her.

63.    In response to Amabile's objection, Plaintiff bought her an allegedly untraceable "burner phone" and again director Amabile to make the anonymous complaint.

64.    Amabile again refused to make the call.

65.    In hindsight, Amabile believes that Plaintiff was prompting her to take certain actions set forth above, including but not limited to, suing Fox Rothschild and/or Ali Brodie and making false allegations about Brodie's husband so as to negatively affect Ms. Bahal's rivals (the other two co-chairs of the Immigration Department) and/or to put an even bigger target on Amabile's back.

66.    Plaintiff had a practice of failing to reimburse Fox Rothschild clients for overpayments made by said clients.

67.    Instead of reimbursing overpayments made by clients, Plaintiff would retain the payment and create bogus invoices at or near the end of the billing year for a flat fee amount equal to the amount of the overpayments.

68.    The zero balance invoice would not be sent to the client, but the funds being held by Plaintiff/Fox Rothschild would be applied to the fictitious/fraudulent invoices.

69.     Plaintiff and Third Party Defendant Fox Rothschild were the sole beneficiaries of the fraudulent invoicing scheme.

70.     The result of the improper practice was to inflate Plaintiff's client originations/provide more revenue for Fox Rothschild thereby making Plaintiff eligible for an even larger year-end bonus and more equity shares.

71.     Plaintiff advised Defendant Amabile that this was standard practice at Fox Rothschild.

72.     Plaintiff also had a practice of obtaining reimbursement for fraudulent expenses.

73.     Under Fox Rothschild's policy, certain attorneys are permitted to write off client expenses (costs/disbursements) up to a certain dollar amount ("write off authority").

74.     Plaintiff was one of the individuals with such write off authority.

75.     Amabile did not have such write off authority and gained no benefit from the fraudulent practice.

76.     Plaintiff used her write off authority to charge her personal expenses to Fox Rothschild clients, obtain reimbursement from Fox Rothschild for the expenditures and then write off the expenses so the clients would not see the fraudulent expense entries.

77.     Because of Plaintiff's comments and prior conduct, Amabile knew that any complaint regarding Bahal's conduct would be futile.

78.     Although Amabile continued to believe that any formal complaint regarding Plaintiff would be futile, she decided that as Practice Group Administrator, she could no longer turn a blind eye to unethical and improper conduct by Plaintiff.

79.     Amabile refused to participate in the fraudulent invoice scheme.

80.     Amabile refused to participate in the fraudulent expense scheme.

81.     During the last year to eighteen months of her employment, Amabile ceased reviewing or having anything to do with the creation or review of any invoices whatsoever.

82.     Amabile also requested of Fox's Human Resources Department that she be transferred to another Fox Rothschild location so as to avoid being involved with Plaintiff's improper and harassing behavior of Plaintiff.

83.     The request was denied.

84.     The transfer request was also reported back to Plaintiff, which had the foreseeable effect of increasing Plaintiff's hostility and retaliatory conduct towards Amabile.

85.     Members of Fox Rothschild clearly knew or should have known of Plaintiff's misconduct.

86.     To date, Fox Rothschild has still not taken any disciplinary action against Plaintiff with regard to such misconduct.

87.     As a result of the protected activity set forth above, Plaintiff and Fox Rothschild, through its attorneys and other employees, relentlessly retaliated against Plaintiff.

88.     Amabile was given unreasonable work assignemnet/deadlines.

89.     Fox Rothschild set unreasonable deadlines for the completion of Plaintiff's work.

90.     There was no business justification for the short deadlines imposed upon Amabile.

91.     Although Amabile was required to provide care and comfort to her family members while her aunt was in hospice care, Fox Rothschild denied Amabile's reasonable requests for short extensions of time and/or more realistic deadlines.

92.     Fox Rothschild's purported reasons for denying the requested extensions were false.

93.     Fox Rothschild's purported reasons for denying the requested extensions were a pre-text for retaliation.

94.     Amabile was required to work longer hours.

95.     Although Amabile rose to the challenge and billed substantially more hours (and made more money for Plaintiff and Fox Rothschild), her compensation decreased.

96.     Despite Amabile's increased productivity and billable hours, Fox failed to pay any Amabile year-end bonus.

97.     Amabile was banned from being physically present at Fox Rothschild's offices.

98.     Although Fox Rothschild claimed that Amabile was precluded from physically reporting to work as a health and safety measure, it still required Plaintiff to meet with clients in person at offsite locations.

99.     Although Plaintiff and other members of Fox Rothschild's management were aware that Amabile was required to provide care and comfort to her family members while her aunt was in hospice care due to a terminal illness, Fox Rothschild failed to advise Amabile of her right to take family leave under the New Jersey Family Leave Act prior to the termination of Amabile's employment.

100.    Only following the termination of Amabile's employment, did Third Party Defendant Brodie tell Amabile that she could have/should have taken family and medical leave during her aunt's terminal illness.

101.    Third Party Defendant Brian Frey is Plaintiff's husband.

102.    Frey is not an employee of Fox Rothschild.

103.    On or about January 19, 2022, Frey advised Defendant via a telephone call that Fox Rothschild was out to get her, was terminating her employment, and suggested that she sue the Firm.

104.    Thereafter, Amabile spoke with Plaintiff who confirmed that Amabile would be getting a call from Fox Rothschild to officially terminate her.

105.    When Amabile asked why she was being terminated, Plaintiff again told Amabile that Fox Rothschild/Ali Brodie were retaliating against her due to her complaint about the I-9 audit for Client #1 and that was what got her terminated.

106.    During the telephone call with Plaintiff, Amabile asked Plaintiff what she should do.

107.    Plaintiff advised Amabile to cry and ask a lot of questions.

108.    During the telephone call, Plaintiff said that the termination was improper, that she would help Amabile and was on her side.

109.    Contrary to her comments, Plaintiff actively instigated and/or facilitated the retaliatory termination of Amabile's employment.

110.    Amabile participated in a telephone call on January 24, 2022 with representatives of Fox Rothschild's Human Resources Department and was advised that her employment was being terminated.

111.    One of the Fox Rothschild's employee's on the call was Ms. Elizabeth Kryst.

112.    During the telephone call, Amabile asked why she was being terminated.

113.    Ms. Kryst stated only that Amabile was being terminated for "a combination of things," including the Firm's investigation regarding Amabile's health and vaccine status.

114.    When asked what other factors were allegedly considered, Ms. Kryst refused to answer.

115.    Thereafter, when Amabile questioned, through legal counsel, why her employment was being terminated, Fox Rothschild's General Counsel, Thomas Paradise, responded that he did not know the reason but denied that Amabile's health/vaccine status had anything to do with her termination.

116.    To date, and except as set forth in the above paragraphs, Amabile has not been advised why her employment was terminated.

117.    Subsequent to Amabile's termination, Plaintiff began repeatedly calling Amabile and sending her offensive text messages.

118.    At the time of her termination, Amabile had been working remotely and was in possession of certain property belonging to Fox Rothschild.

119.    At the time of her termination, Amabile had been working remotely and Fox Rothschild was in possession of certain property belonging to Defendant Amabile which had been left in Amabile's office.

120.    In conjunction with her termination, Amabile was advised by Fox Rothschild's Human Resources Department to coordinate the exchange of her personal property and Firm's property with the Firm's Office Administrator, Ms. Elli Albert.

121.    These instructions were consistent with Fox Rothschild's usual practice regarding the exchange of property following a termination of employment.

122.    Amabile attempted to coordinate the exchange of property with Ms. Albert as she had been directed.

123.    Ms. Albert failed to cooperate with Amabile in the exchange of property in accordance with Fox Rothschild's usual practice.

124.    Instead, Plaintiff and Third Party Defendant Frey repeatedly attempted to contact Amabile via phone, text and in person.

125.    Amabile complained that Plaintiff was attempting to harass, bully and intimidate her.

126.    By e-mail dated January 27, 2022, Amabile reported Plaintiff's conduct to Ms. Albert.

127.    Amabile also advised Ms. Albert that given Plaintiff's conduct, she was "extremely uncomfortable" dealing with Plaintiff or Frey directly.

128.    In her January 27, 2022 e-mail, Amabile repeated that she was advised by Fox Rothschild to deal with Albert regarding the return of property/exchange of her belongings, and she requested that the Firm's original instructions regarding the exchange of property be followed.

129.    Amabile also specifically advised Albert that she was not comfortable with Plaintiff's plan to send her husband (Third Party Defendant Brian Frey) to her house to collect/deliver property.

130.    Ms. Albert completely ignored Amabile's repeated pleas.

131.    Ms. Albert did not respond to Amabile's January 27, 2022 e-mail.

132.     Neither Ms. Albert nor anyone at Fox Rothschild took any action to investigate Amabile's complaint of post-employment harassment by Plaintiffor stop the improper conduct.

133.     Instead, Plaintiff and Mr. Frey were allowed to continue to harass Amabile.

134.     Plaintiff and Mr. Frey were also allowed by Fox Rothschild to take possession of Amabile's property, remove it from Fox Rothschild's offices and put it in their personal vehicle.

135.     On Monday, January 31, 2022, having had no response from Ms. Albert, Plaintiff again wrote to Ms. Albert stating that given the concerns expressed in her January 27th e-mail, she found this conduct to be completely inappropriate.

136.     Amabile also advised Ms. Albert that she did not want to be forced to have contact with Plaintiff and her husband.

137.     In her January 31, 2022, Amabile also requested that that Albert "Please contact (her/Amabile) regarding the exchange of property which can (and should) be done without Alka and her husband coming to my house."

138.     Albert did not respond to Amabile's January 31, 2022 e-mail.

139.     Neither Albert nor anyone at Fox Rothschild took any action to investigate the conduct of Plaintiff and Mr. Frey and/or to stop their improper conduct.

140.     Instead, via a text message on February 2, 2022, Ms. Albert again directed Amabile to deal directly with Plaintiff regarding the return of Amabile's personal property.

141.     Plaintiff became aware that Defendant Amabile had an opportunity for a position with US Immigration and Customs Enforcement ("ICE").

142.    Fox Rothschild's policy regarding communications with prospective employers of former employees is to only confirm the former employee's dates of employment and the positions held.

143.    This policy is standard practice followed by Fox Rothschild.

144.    The purpose of the policy is to avoid potential claims of defamation and/or tortious interference with a business opportunity by former employees.

145.    Immediately prior to, and again following Amabile's termination, Plaintiff asked Amabile if she would be pursuing the job opportunity with ICE.

146.    In response, Amabile stated that she would need to explore that opportunity as well as others.

147.    Thereafter, Plaintiff contacted the two ICE representatives with whom Amabile had communicated regarding the job opportunity and advised them that Amabile had been terminated by her/Fox Rothschild and that Plaintiff had ended her personal friendship with Amabile.

148.    There was no legitimate business reason for Plaintiff to make these unsolicited statements to Amabile's prospective employer.

149.    Plaintiff made the statements for the purpose of interfering with Amabile's employment opportunities and causing Defendant Amabile to suffer further damage and emotional distress.

150.    As a result of Plaintiff's conduct, Amabile was unable to continue to pursue a position with ICE.

151.    Amabile complained to Fox Rothschild that Plaintiff's comments to ICE were improper and contrary to Fox Rothschild's stated policy and usual practice.

152.    In response, Fox Rothschild's General Counsel, Thomas Paradise, stated that Plaintiff's statements about Amabile were truthful and that there was nothing improper about Plaintiff's statements.

153.    Fox Rothschild failed to take any action with regard to Plaintiff's comments about Amabile or to stop Plaintiff from making similar comments to others in the future.

154.    In February 2022, funeral services were held for Amabile's aunt.

155.    Plaintiff was aware of the date and time of the funeral services.

156.    Plaintiff texted Amabile's mother during the funeral service feigning to believe that Amabile's aunt was still alive.

157.    The foreseeable result of this was to cause Amabile's mother to question why Amabile's friend and boss did not know that her aunt had died.

158.    As a result of Plaintiff's actions, Amabile was required to tell her mother (on the day of her mother's sister's funeral) that she had been fired by Fox Rothschild.

159.    This caused both Amabile and her mother significant emotional distress.

160.    Amabile's employment with Fox Rothschild was terminated effective January 24, 2022.

161.    By letter dated February 2, 2022, Defendant, through legal counsel, asserted claims against Plaintiff and Fox Rothschild for, among other things, wrongful termination in violation of the Conscientious Employee Protection Act ("CEPA") and the New Jersey Law Against Discrimination ("NJLAD").

162.    In response to the letter, Fox Rothschild's General Counsel, Thomas Paradise, contacted counsel for Defendant, and settlement negotiations began.

163.     Mr. Paradise articulated potential counterclaims against Defendant on behalf of Plaintiff and Fox Rothschild.

164.     In particular, Mr. Paradise claimed that Defendant had improperly billed expenses both to Fox Rothschild and to a credit card held by Plaintiff.

165.     Thereafter, Fox Rothschild proposed to settle the dispute via an agreement by which Amabile would be paid a lump sum of One Hundred and Fifty Thousand Dollars ($150,000.00) in exchange for a mutual release of claims and Amabile's agreement to cooperate with Fox Rothschild's alleged investigation of financial discrepancies, alleged billing/expense improprieties and/or violations of Firm policy.

166.     Amabile accepted the terms proposed by Fox Rothschild

167.     Amabile's counsel confirmed Defendant's acceptance of the settlement via email to Thomas Paradise dated April 4, 2022.

168.     Counsel's email dated April 4, 2022 also confirmed the material terms of the settlement agreement.

169.     Counsel's e-mail of April 4, 2022 stated "Tom, This will confirm that following our conversation today, I spoke with me client and have authority to settle this matter on the terms that we discussed.  In particular, a lump sum payment of $150,000 and full mutual releases with a provision that Ms. Amabile will cooperate with Fox with regard to its investigation of financial discrepancies, alleged billing / expense improprieties and/or violations of firm policy."

170.     On April 11, 2022, Mr. Paradise called Amabile's counsel to advise that he wanted an opportunity to determine if Plaintiff wanted to participate in the mutual releases.

171.    During the April 11, 2022 telephone call, Mr. Paradise stated that regardless of what Plaintiff decided, the settlement agreement between Fox Rothschild and Amabile was confirmed.

172.    During the April 11, 2022 telephone call, Mr. Paradise stated several times that due to vacation/scheduling issues, he would not be able to get back to counsel for a week or so, but that the deal was confirmed.

173.    During the April 11, 2022 telephone call, Mr. Paradise stated "You will not hear from me for a week, but you can tell your client that she has a deal."

174.    By e-mail dated April 11, 2022, the settlement and the fact that Fox Rothschild would provide a proposed written agreement was again confirmed in writing.

175.    Amabile's counsel's April 11, 2022 e-mail to Mr. Paradise stated, "Tom, This will confirm our conversation today in which we agreed to settle this matter for a lump sum payment of $150,000 and full mutual releases with a provision that Ms. Amabile will cooperate with Fox with regard to its investigation of financial discrepancies, alleged billing / expense improprieties and/or violations of firm policy.  You will be providing a proposed agreement for review, but we understand that due to vacation/scheduling issues that will not occur this week."

176.    Mr. Paradise thereafter confirmed that he had authority to act on behalf of Plaintiff as well as Fox Rothschild.

177.    By e-mail dated April 22, 2022, Mr. Paradise advised "I just heard back from Alka Bahal that she wants to be a part of the mutual releases.  I will get you a draft agreement next week."

178.    On May 6, 2022, Mr. Paradise forwarded a settlement agreement to Amabile's legal counsel.

179.    The settlement agreement forwarded by Mr. Paradise identified Plaintiff and Fox Rothschild collectively as "Employer."

180.    On May 31, 2022, counsel for Plaintiff proposed certain language changes to the agreement and forwarded a redlined copy of the agreement to Mr. Paradise.

181.    On June 14, 2022, after not receiving any response from Mr. Paradise for two weeks, Amabile's counsel wrote to Mr. Paradise asking when the parties could expect to have an executed agreement.

182.    On June 22, 2022, Mr. Paradise called Amabile's counsel and stated that Plaintiff and Fox Rothschild would not proceed with the settlement because Fox Rothschild had learned that a subpoena was allegedly being issued regarding alleged conduct by Amabile.

183.    Defendant's counsel indicated that the parties had a deal and that Defendant would file a motion to enforce the agreement.

184.    Mr. Paradise became agitated and yelled that counsel could always do what he has to do, but added "Maybe we will take your client's deposition in jail."

185.    On June 24, 2022, Mr. Paradise called Defendant's counsel and left a message to "apologize for raising my voice and losing my temper."

186.    In the June 24, 2022 voice message, Mr. Paradise claimed that "it was a bad day for me, and I'm sure that it was not a great day for you."

187.    On or about June 29, 2022, Plaintiff filed a Complaint in the Superior Court of New Jersey, Law Division, Morris County, entitled Alka Bahal v. Kristen M. Amabile, Docket No. MRS-L-001117-22.

188.    Plaintiff's Complaint asserts claims based upon Plaintiff's ownership interest in Fox Rothschild, LLP and/or her status as an equity partner of Fox Rothschild.

## <u>COUNT I</u>

**(Declaratory Judgment That the Parties' Settlement Agreement is
Binding and Enforceable as to Plaintiff and Third Party Defendant Fox Rothschild)**

189.    Defendant repeats and realleges each and every allegation contained in Paragraphs 1 through 188 of this Counterclaim and Third Party Complaint as if fully set forth herein.

190.    Defendant reached a settlement agreement with Third Party Defendant Fox Rothschild.

191.    The material terms of the settlement were that Defendant would be paid a lump sum payment of $150,000.00; that the parties would execute full mutual releases and that Defendant would cooperate with Fox with regard to its investigation of financial discrepancies, alleged billing/expense improprieties and/or violations of firm policy.

192.    The settlement agreement is/was binding upon Fox Rothschild.

193.    The settlement agreement is/was binding upon Fox Rothschild regardless of whether Plaintiff also agreed to the material terms of the agreement.

194.    After Defendant and Fox Rothschild entered into the settlement agreement, Plaintiff also agreed to become a party to the agreement.

**WHEREFORE**, Defendant requests that the Court enter judgment:

(a)  Enforcing the settlement agreement between the parties;

(b)  Entering Declaratory Judgment That the Parties' Settlement Agreement is Binding and Enforceable;

(c)  Awarding Plaintiff her reasonable attorneys' fees and costs incurred in seeking enforcement of the settlement; and

(d) Granting Plaintiff such other and further relief as the Court deems just and proper.

## COUNT II

**(Breach of Contract as against Plaintiff and Third Party Defendant Fox Rothschild)**

195.    Defendant repeats and realleges each and every allegation contained in Paragraphs 1 through 194 of this Complaint as if fully set forth herein.

196.    Fox Rothschild has breached the settlement agreement which it entered into with Defendant.

197.    Plaintiff has breached the settlement agreement which she entered into with Defendant.

198.    As a direct and proximate result of beaches of agreement by Plaintiff and Third Party Defendant Fox Rothschild, Defendant has incurred damages.

**WHEREFORE**, cause having been shown, Defendant demands judgment against Plaintiff and Third Party Defendant Fox Rothschild and seeks the following relief:

(a)    compensatory damages;

(b)    consequential damages;

(c)    incidental damages;

(d)    interest; and

(e)    such other relief as the Court may deem equitable and just.

<u>**COUNT III**</u>

**(Violation of the New Jersey Law Against Discrimination:  Unlawful Retaliation as against Plaintiff and Third Party Defendant Fox Rothschild)**

199.    Defendant repeats and realleges each and every allegation contained in Paragraphs 1 through 198 of this Counterclaim and Third Party Complaint as if fully set forth herein.

200.    Third Party Defendant Fox Rothschild is an employer under the New Jersey Law Against Discrimination, (the "NJLAD") <u>N.J.S.A.</u> 10:5-5(e).

201.    By and through the conduct described above, Plaintiff and Third Party Defendant Fox Rothschild retaliated against Defendant Amabile due to her participation in an investigation of alleged harassment by a Fox Rothschild in violation of the NJLAD, <u>N.J.S.A.</u> 10:5-1 <u>et</u> <u>seq.</u>

202.    As a result of Third Party Defendant Fox Rothschild's unlawful conduct, Defendant Amabile has suffered, and continues to suffer, economic losses, emotional distress, and other such damages compensable under the LAD.

203.    Third Party Defendants and Plaintiff's conduct constitutes actual participation in egregious behavior and/or willful indifference by upper management to such egregious conduct in violation of Defendant's rights, that is sufficient to subject Third Party Defendant Fox Rothschild to punitive damages under the LAD and <u>Lehmann v. Toys 'R' Us, Inc.</u>, 132 N.J. 587, 625 (1993).

**WHEREFORE,** Defendant Amabile demands judgment against Third Party Defendant Fox Rothschild for harm suffered as a result of the unlawful retaliation in violation of the NJLAD as follows:

  (a) Full compensation for back pay, benefits and remuneration, with interest;

  (b) Full compensation for front pay, benefits and other remuneration, with interest;

  (c) Compensatory and consequential damages;

  (d) Emotional distress damages;

  (e) Punitive damages;

  (f) Prejudgment and post-judgment interest;

  (g) Reasonable attorneys' fees and costs, with appropriate enhancement pursuant to <u>Rendine v. Pantzer</u>, 141 N.J. 292 (1995); and

  (h) Such other legal or equitable relief as the Court may deem just and proper.

### <u>COUNT IV</u>

**(Aiding and Abetting Liability as against Plaintiff and Third Party Defendants Brodie Wadhwani and Frey)**

204. Defendant repeats and realleges each and every allegation contained in Paragraphs 1 through 203 of this Counterclaim and Third Party Complaint as if fully set forth herein.

205. Plaintiff and Third Party Defendants Brody, Wadhwani and Frey engaged in conduct that aided and abetted Third-Party Defendant Fox Rothschild in its unlawful retaliation, termination and/or post-employment treatment of Defendant Amabile in violation of <u>N.J.S.A.</u> 10:5-12(e).

206. As a result of the unlawful aiding and abetting by Plaintiff and Third Party Defendants Brodie, Wadhwani and Frey, Defendant Amabile has suffered damages.

**WHEREFORE**, Defendant Amabile demands judgment against Plaintiff Bahal and Third Party Defendants Brodie, Wadhwani and Frey for harm suffered as a result of retaliation against Defendant Amabile in violation of the NJLAD and the as follows:

        (a)     Full compensation for back pay, benefits and remuneration, with interest;

        (b)     Full compensation for front pay, benefits and other remuneration, with interest;

        (c)     Compensatory and consequential damages;

        (d)     Emotional Distress damages;

        (e)     Punitive damages;

        (f)     Prejudgment and post-judgment interest;

        (g)     Reasonable attorneys' fees and costs, with appropriate enhancement pursuant to Rendine v. Pantzer, 141 N.J. 292 (1995); and

        (h)     Such other legal or equitable relief as the Court may deem just and proper.

## COUNT V

**(Violation of the Conscientious Employee Protection Act ("CEPA"):  Unlawful Retaliation as against Plaintiff and Third Party Defendant Fox Rothschild)**

207.    Defendant repeats and realleges each and every allegation contained in Paragraphs 1 through 206 of this Counterclaim and Third Party Complaint as if fully set forth herein.

208.    At all times relevant herein, Defendant was Plaintiff and Third-Party Defendant Fox Rothschild's employee as that term is defined by the Conscientious Employee Protection Act, N.J.S.A. 34:19-1, et seq. ("CEPA").

209.    At all relevant times herein, Plaintiff and Third-Party Defendant Fox Rothschild were Defendant Amabile's employer as that term is defined by CEPA.

210.    Defendant objected to and refused to participate in fraudulent and/or illegal conduct.

211.    Defendant's conduct constituted protected activity.

212.    Defendant's employment was terminated by Plaintiff and Third Party Defendant Fox Rothschild as a result of her engaging in the aforementioned protected activity.

213.    Defendant's termination constitutes retaliation in violation of CEPA.

214.    As a result of Plaintiff and Third-Party Defendant Fox Rothschild's unlawful conduct, Amabile has suffered and continues to suffer humiliation, embarrassment, economic loss, and other such damages.

215.    Plaintiff and Third-Party Defendant Fox Rothschild's conduct also constitutes actual participation in egregious behavior and/or willful indifference to such egregious conduct by upper-level management in violation of Defendant's rights, that is sufficient to subject Plaintiff and Third-Party Defendant Fox Rothschild to punitive damages under the CEPA.

WHEREFORE, Defendant demands judgment against Plaintiff and Third-Party Defendant Fox Rothschild for harm suffered as a result of retaliation against Defendant Amabile in violation of CEPA as follows:

(a)     Full compensation for back pay, benefits and remuneration, with interest;

(b)     Full compensation for front pay, benefits and other remuneration, with interest;

(c)     Compensatory and consequential damages;

       (d)       Emotional Distress damages;

       (e)       Punitive damages;

       (f)       Prejudgment and post-judgment interest;

       (g)       Reasonable attorneys' fees and costs, with appropriate enhancement pursuant to <u>Rendine v. Pantzer</u>, 141 N.J. 292 (1995); and

       (h)       Such other legal or equitable relief as the Court may deem just and proper.


## <u>COUNT VI</u>

### (Violation of the New Jersey Family Leave Act:  Interference with Rights as against Third Party Defendant Fox Rothschild)

216.    Defendant repeats and realleges each and every allegation contained in Paragraphs 1 through 215 of this Counterclaim and Third Party Complaint as if fully set forth herein.

217.    Third Party Defendant Fox Rothschild is an employer under the New Jersey Family Leave Act (the "NJFLA"), <u>N.J.S.A.</u> 34:11B-3(f); <u>N.J.A.C.</u> 13:14-1.2.

218.    Plaintiff and other members of Fox Rothschild management were aware that Amabile was required to provide care and comfort to her family members while her aunt was in hospice care due to a terminal illness.

219.    Third Party Defendant Fox Rothschild failed to advise Defendant Amabile of her right to take family leave under the NJFLA prior to the termination of Amabile's employment.

220.    Defendant was not advised of her rights under the NJFLA.

221.   Third Party Defendant Fox Rothschild's failure to give notice to Defendant violates the NJFLA which required Third Party Defendant Fox Rothschild to inform Defendant of her rights to NJFLA leave so she could make an informed decision about taking NJFLA leave.

222.   Third Party Defendant Fox Rothschild's violation of the NJFLA's notice requirements and the termination of Defendant's employment have interfered with the rights guaranteed to Defendant under the NJFLA.

223.   Third Party Defendant Fox Rothschild's conduct constitutes a violation of the New Jersey Family Leave Act, N.J.S.A. 34:11B-1 *et seq.*

224.   As a result of Third Party Defendant Fox Rothschild's actions, Plaintiff has suffered and continues to suffer humiliation, embarrassment, economic loss, and other such damages.

225.   Third Party Defendant Fox Rothschild's conduct constitutes actual participation in egregious behavior and/or willful indifference to such egregious conduct by upper-level management that is sufficient to subject Defendant to punitive damages.

WHEREFORE, Defendant demands judgment against Plaintiff and Third-Party Defendant Fox Rothschild for harm suffered as a result of retaliation against Plaintiff in violation of CEPA as follows:

(a)   Full compensation for back pay, benefits and remuneration, with interest;

(b)   Full compensation for front pay, benefits and other remuneration, with interest;

(c)   Compensatory and consequential damages;

(d)   Emotional Distress damages;

(e)    Liquidated Damages

(f)    Punitive damages;

(g)    Prejudgment and Post-judgment interest;

(h)    Reasonable attorneys' fees and costs;

(i)    Such other legal or equitable relief as the Court may deem just

and proper.

## COUNT VII

**(Tortious Interference with Prospective Employment as against Plaintiff and Third
Party Defendant Fox Rothschild)**

226.    Defendant repeats and realleges each and every allegation contained in

Paragraphs 1 through 225 of this Counterclaim and Third Party Complaint as if fully set forth

herein.

227.    Plaintiff knew that Defendant Amabile was pursuing a job opportunity for

a position with US Immigration and Customs Enforcement ("ICE").

228.    Plaintiff made unsolicited statements regarding Defendant to Amabile's

prospective employer for the purpose of interfering with Amabile's employment opportunities and

causing Defendant Amabile to suffer further damage and emotional distress.

229.    Plaintiff made these statements as a partner of Third-Party Defendant Fox

Rothschild.

230.    As a result of Plaintiff's conduct, Amabile was unable to continue to pursue

a position with ICE.

231.    By their conduct, Plaintiff and Third Party Defendant Fox Rothschild tortiously interfered with Defendant's prospective employment.

232.    As a direct and proximate result of Plaintiff and Third Party Defendant Fox Rothschild's tortious interference, Defendant has incurred damages.

**WHEREFORE**, cause having been shown, Defendant demands judgment against Plaintiff and Third Party Defendant Fox Rothschild for such tortious interference and seeks the following relief:

(a)  Compensatory and consequential damages;

(b)  interest;

(c)  emotional distress damages;

(d)  Punitive damages;  and

(e)  such other relief as the Court may deem equitable and just.

## COUNT VIII

### (Intentional Infliction of Emotional Distress as against Plaintiff)

233.    Defendant repeats and realleges each and every allegation contained in Paragraphs 1 through 232 of this Counterclaim and Third Party Complaint as if fully set forth herein, Defendant was subjected to the tort of intentional infliction of emotional distress by Plaintiff.

234.    Plaintiff deliberately texted Defendant's mother during Defendant's aunt's funeral service feigning to believe that Amabile's aunt was still alive.

235.    By this conduct, Plaintiff engaged in extreme and outrageous conduct toward Defendant in deliberate and reckless disregard of the high probability that emotional distress would follow.

236.    Plaintiff's actions were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and are regarded as atrocious and utterly intolerable in a civilized community.

237.    As a direct result of Plaintiff's conduct, Defendant suffered emotional distress such that no reasonable person could be expected to endure it.

238.    Plaintiff is liable in damages to Defendant for all injuries caused by their intentional infliction of emotional distress.

239.    Plaintiff's actions were committed with actual malice or accompanied by a wanton and willful disregard of Defendant, who foreseeably might be harmed by those acts.

240.    As a result of Plaintiff's conduct, Defendant has suffered and/or continues to suffer, emotional distress, economic loss, and other damages.

**WHEREFORE**, cause having been shown, Defendant demands judgment against Plaintiff for intentional infliction of emotional distress and seeks the following relief:

(a)    Compensatory and consequential damages;

(b)    emotional distress damages;

(c)    incidental damages;

(f)    Punitive damages;  and

(g)    such other relief as the Court may deem equitable and just.

## <u>COUNT IX</u>

**(Post-Employment Retaliation in Violation of the NJLAD as against Third Party
Defendant Fox Rothschild)**

241.    Defendant repeats and realleges each and every allegation contained in
Paragraphs 1 through 240 of this Counterclaim and Third Party Complaint as if fully set forth
herein

242.    Third Party Defendant Fox Rothschild is an employer under the New Jersey
Law Against Discrimination, (the "NJLAD") <u>N.J.S.A.</u> 10:5-5(e).

243.    Following the termination of her employment, Defendant asserted claims
against Plaintiff and Third Party Defendant Fox Rothschild for, among other things, wrongful
termination in violation of the NJLAD.

244.    Following the termination of Amabile's employment, Plaintiff, Third-Party
Defendant Frey, and Third-Party Defendant Fox Rothschild retaliated against and harassed
Defendant.

245.    Third-Party Defendant Fox Rothschild further retaliated against and
harassed Defendant by ignoring her complaints of post-employment harassment and by forcing
her to deal directly with Plaintiff and Third-Party Defendant Frey with respect to the exchange of
her personal property and Firm property.

246.    Third-Party Defendant Fox Rothschild, by and through Plaintiff, further
retaliated against and harassed Defendant by contacting Defendant's mother during her aunt's
funeral.

247.    Third-Party Defendant Fox Rothschild, by and through Plaintiff, also retaliated against and harassed Defendant by interfering in Defendant's employment opportunities with ICE.

248.    By and through the conduct described above, Plaintiff and Third Party Defendant Fox Rothschild retaliated against Defendant Amabile due to her assertion of NJLAD claims in violation of the NJLAD, N.J.S.A. 10:5-1 et seq.

249.    As a result of Third Party Defendant Fox Rothschild's unlawful conduct, Defendant Amabile has suffered, and continues to suffer, economic losses, emotional distress, and other such damages compensable under the LAD.

250.    Third Party Defendant's and Plaintiff's conduct constitutes actual participation in egregious behavior and/or willful indifference by upper management to such egregious conduct in violation of Defendant's rights, that is sufficient to subject Third Party Defendant Fox Rothschild to punitive damages under the LAD and Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 625 (1993).

**WHEREFORE,** Defendant Amabile demands judgment against Third Party Defendant Fox Rothschild for harm suffered as a result of the unlawful retaliation in violation of the NJLAD as follows:

    (a)    Full compensation for back pay, benefits and remuneration, with interest;

    (b)    Full compensation for front pay, benefits and other remuneration, with interest;

    (c)    Compensatory and consequential damages;

    (d)    Emotional distress damages;

(e)     Punitive damages;

(f)     Prejudgment and post-judgment interest;

(g)     Reasonable attorneys' fees and costs, with appropriate enhancement pursuant to <u>Rendine v. Pantzer</u>, 141 N.J. 292 (1995); and

(h)     Such other legal or equitable relief as the Court may deem just and proper.

## **COUNT X**

**(Aiding and Abetting Liability for Post-Employment Retaliation as against Plaintiff Bahal and Third Party Frey)**

251.    Defendant repeats and realleges each and every allegation contained in Paragraphs 1 through 250 of this Counterclaim and Third Party Complaint as if fully set forth herein.

252.    Plaintiff and Third Party Defendant Frey engaged in conduct that aided and abetted Third-Party Defendant Fox Rothschild in its unlawful post-employment retaliation of Defendant Amabile in violation of <u>N.J.S.A.</u> 10:5-12(e).

253.    As a result of the unlawful aiding and abetting by Plaintiff and Third Party Defendant Frey, Defendant Amabile has suffered damages.

**WHEREFORE**, Defendant Amabile demands judgment against Plaintiff Bahal and Third Party Defendant Frey for harm suffered as a result of retaliation against Defendant Amabile in violation of the NJLAD and the as follows:

(a)     Full compensation for back pay, benefits and remuneration, with interest;

(b)     Full compensation for front pay, benefits and other remuneration, with interest;

       (c)     Compensatory and consequential damages;

       (d)     Emotional Distress damages;

       (e)     Punitive damages;

       (f)     Prejudgment and post-judgment interest;

       (g)     Reasonable attorneys' fees and costs, with appropriate enhancement pursuant to Rendine v. Pantzer, 141 N.J. 292 (1995); and

       (h)     Such other legal or equitable relief as the Court may deem just and proper.

## COUNT XI

### (Breach of Implied Covenant of Good Faith and Fair Dealing as against Plaintiff and Third Party Defendant Fox Rothschild)

254.    Defendant repeats and realleges each and every allegation contained in Paragraphs 1 through 253 of this Counterclaim and Third Party Complaint as if fully set forth herein.

255.    There exists in every contract an implied covenant of good faith and fair dealing.

256.    By their conduct, Plaintiff and Third Party Defendant Fox Rothschild have breached the implied covenant of good faith and fair dealing.

257.    As a direct and proximate result of Plaintiff and Third Party Defendant Fox Rothschild's breach of the implied covenant of good faith and fair dealing, Defendant has incurred damages.

**WHEREFORE**, cause having been shown, Defendant demands judgment against Plaintiff and Third Party Defendant Fox Rothschild and seeks the following relief:

      (a)     compensatory damages;

      (b)     consequential damages;

      (c)     interest; and

      (d)     such other relief as the Court may deem equitable and

just.


BRATTI GREENAN LLC
Attorneys for Defendant,
Kristen M. Amabile

DOMINICK BRATTI


DATED: November 7, 2022

## JURY DEMAND

Defendant demands a jury trial as to all issues so triable.

BRATTI GREENAN LLC
Attorneys for Defendant
Kristen M. Amabile

_____
DOMINICK BRATTI

DATED: November 7, 2022

## DESIGNATION OF TRIAL COUNSEL

Please take notice that pursuant to Rule 4:25-4, Defendant hereby designates Dominick

Bratti, Esq. as trial counsel in this matter.

BRATTI GREENAN LLC
Attorneys for Defendant
Kristen M. Amabile

_____
DOMINICK BRATTI

DATED: November 7, 2022

## CERTIFICATION PURSUANT TO __RULE 4:5-1__

I hereby certify that the matter in controversy is not, to my knowledge, the subject of any other pending action or arbitration proceeding, and that no action or arbitration proceeding is contemplated by Defendant at this time.  I am not aware of any other parties who should be joined in this action at this time.

BRATTI GREENAN LLC
Attorneys for Defendant
Kristen M. Amabile

DOMINICK BRATTI

DATED: November 7, 2022

**DEMAND PURSUANT TO <u>RULE</u> 4:5-2**

Pursuant to <u>Rule</u> 4:5-2, Defendant hereby demands that Plaintiff furnish a written statement of the amount of damages claimed by Plaintiff as to each Count of the Complaint within five (5) days of this written demand.

BRATTI GREENAN LLC
Attorneys for Defendant
Kristen M. Amabile

_____
DOMINICK BRATTI

DATED: November 7, 2022

**DEMAND PURSUANT TO <u>RULE</u> 4:18-2**

Pursuant to <u>Rule</u> 4:18-2, Defendant hereby demands that Plaintiff produce all documents referred to in the Complaint within five (5) days of this written demand.

BRATTI GREENAN LLC
Attorneys for Defendant
Kristen M. Amabile

_____
DOMINICK BRATTI

DATED: November 7, 2022

## CERTIFICATION OF SERVICE

I hereby certify that a true and correct copy of the foregoing Answer of Defendant; Affirmative Defenses; Counterclaim and Third Party Complaint, Designation of Trial Counsel Pursuant to R. 4:25-4; Certification Pursuant to R. 4:5-1; and Demands Pursuant to R. 4:5-2 and R. 4:18-2 were served upon counsel for the Plaintiff within the time consented to by counsel.

BRATTI GREENAN LLC
Attorneys for Defendant
Kristen M. Amabile

_____
DOMINICK BRATTI

DATED: November 7, 2022

# Attachment # D

Dominick Bratti, Esq. (016541987)
BRATTI GREENAN LLC
1040 Broad Street, Suite 104
Shrewsbury, NJ  07702
(732) 852-2711
Attorneys for Defendant,
Kristen Amabile

|  | SUPERIOR COURT OF NEW JERSEY |
|---|---|
|  | LAW DIVISION |
|  | MORRIS COUNTY |
|  | DOCKET NO.  MRS-L-001117-22 |

-----------------------------------------------------X
                              :

ALKA BAHAL                     :

        Plaintiff,      :                  Civil Action

                              :

v.                            :       **CERTIFICATION OF**

                              :    **DOMINICK BRATTI, ESQ.**

KRISTEN M. AMABILE     :

                              :

        Defendant.     :

-----------------------------------------------------X

Dominick Bratti, Esq., of full age, hereby certifies as follows:

        1.      I am a member of the law firm of Bratti Greenan LLC, attorneys for Defendant Kristen Amabile ("Ms. Amabile" or "Defendant") in the above-captioned matter.  As such, I am fully familiar with the facts set forth herein.  I make this Certification in support of Defendant's Motion to Dismiss Plaintiff's Complaint and Enforce the Settlement Agreement between the Parties pursuant to <u>Rule</u> 4:6-2(e) (failure to state a claim upon which relief can be granted) and <u>Rule</u> 4:6-2(f) (failure to join a party without whom the action cannot proceed).

2.     Defendant Kristen Amabile is a former employee of Fox Rothschild, LLP (the "Firm" or "Fox") and held the position of Practice Group Administrator for the Firm's Immigration Group prior to the termination of my employment effective January 24, 2022.

3.      Alka Bahal (Plaintiff herein) is an equity partner/owner of Fox Rothschild, LLP residing at 9 Sheldon Court, East Hanover, New Jersey.

4.     By letter dated February 2, 2022, Ms. Amabile, through legal counsel, asserted claims against Fox Rothschild, LLP and Plaintiff Bahal for, among other things, wrongful termination in violation of the Conscientious Employee Protection Act ("CEPA") and the New Jersey Law Against Discrimination ("NJLAD").

5.     In response to the letter, Fox's General Counsel, Thomas Paradise, contacted me, and initiated settlement negotiations began.

6.     Ms. Amabile claimed, among other things, that Ms. Bahal and Fox had engaged in improper business practices, including but not limited to, improper billing practices and that they had retaliated against her for objecting to/refusing to participate in same.

7.     Ms. Amabile also alleged that Ms. Bahal and her husband were continuing to harass her post-termination.

8.     In response, Ms. Bahal and Fox claimed that Ms. Amabile had improperly billed expenses both to Fox and to a credit card held by Ms. Bahal.

9.     Thereafter, the parties reached a settlement by which Ms. Bahal and Fox would pay Ms. Amabile a lump sum amount in exchange for a mutual release of claims and her agreement to cooperate with Fox's investigation of financial discrepancies, alleged billing / expense improprieties and/or violations of firm policy.

10.     By e-mail dated April 4, 2022 to Mr. Paradise, I confirmed the terms we had agreed upon and that they were acceptable to my client. My e-mail of April 4, 2022 stated "Tom, This will confirm that following our conversation today, I spoke with me client and have authority to settle this matter on the terms that we discussed.  In particular, a lump sum payment of $150,000 and full mutual releases with a provision that Ms. Amabile will cooperate with Fox with regard to its investigation of  financial discrepancies, alleged billing / expense improprieties and/or violations of firm policy."  A true and exact copy of my e-mail of April 4, 2022 is attached hereto as Exhibit A.

11.     On April 11, 2022, Mr. Paradise called me to advise that he wanted an opportunity to determine if Ms. Bahal wanted to participate in the mutual releases, but that regardless of what Ms. Bahal decided, the settlement agreement between Fox and Ms. Amabile was confirmed.

12.     During the April 11, 2022 telephone call, Mr. Paradise stated several times that due to vacation/scheduling issues, he would not be able to get back to me for a week or so, but that the deal was confirmed.  Mr. Paradise stated "You will not hear from me for a week, but you can tell your client that she has a deal."

13.     By e-mail dated April 11, 2022, I again confirmed the terms of the settlement and the fact that Fox would provide a proposed written agreement.

14.     My April 11, 2022 e-mail to Mr. Paradise stated, "Tom, This will confirm our conversation today in which we agreed to this matter for a lump sum payment of $150,000 and full mutual releases with a provision that Ms. Amabile will cooperate with Fox with regard to its investigation of financial discrepancies, alleged billing / expense improprieties and/or violations of firm policy.  You will be providing a proposed agreement for review, but we understand that

due to vacation/scheduling issues that will not occur this week." A true and exact copy of my e-mail of April 11, 2022 is attached hereto as Exhibit B.

15.     By e-mail dated April 22, 2022, Mr. Paradise advised "I just heard back from Alka Bahal that she wants to be a part of the mutual releases. I will get you a draft agreement next week." A true and exact copy of Mr. Paradise's e-mail of April 22, 2022 is attached hereto as Exhibit C.

16.     When Mr. Paradise failed to provide a draft release by May 4, 2022, I wrote to him to inquire when we could expect to receive a draft settlement agreement. A true and exact copy of my e-mail of May 4, 2022 is attached hereto as Exhibit D.

17.     By e-mail dated May 4, 2022, Mr. Paradise responded that the delay was due to him testing positive for COVID and that he expected to have a the draft settlement agreement by Friday [May 6, 2022]. A true and exact copy of Mr. Paradise's e-mail of May 4, 2022 is attached hereto as Exhibit E.

18.     On May 6, 2022, Mr. Paradise forwarded a draft Settlement Agreement to me. A true and exact copy of the email and draft settlement agreement provided by Mr. Paradise is attached hereto as Exhibit F.

19.     On May 31, 2022, I proposed certain language changes to the agreement and forwarded a redlined copy of the agreement to Mr. Paradise. A true and exact copy of my e-mail of May 31, 2022 and the attached redlined agreement is attached hereto as Exhibit G.

20.     On June 14, 2022, after not receiving any response from Mr. Paradise for two weeks, I wrote to Mr. Paradise asking when the parties could expect to have an executed agreement. A true and exact copy of my e-mail of June 14, 2022 is attached hereto as Exhibit H.

21.     On June 22, 2022, Mr. Paradise called me and stated that Fox Rothschild and Plaintiff Bahal would not proceed with the settlement.

22.     When I indicated that the parties had a deal and that I would file a motion to enforce the agreement, Mr. Paradise became agitated and yelled that I could always do what I have to do, but added "Maybe we will take your client's deposition in jail."

23.     On June 24, 2022, Mr. Paradise left me a voice message to "apologize for raising my voice and losing my temper" claiming that "it was a bad day for me and I'm sure that it was not a great day for you."

24.     A true and exact copy of Plaintiff's Complaint in this case is attached hereto as Exhibit I.

25.     Plaintiff's Complaint in the case at bar asserts claims on behalf of both Plaintiff and Fox Rothschild, LLP although Plaintiff fails to identify the law firm by name.

26.     Nevertheless, The Complaint fails to name Fox Rothschild, LLP as a party to the action.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

BRATTI GREENAN LLC
Attorneys for Plaintiff,
Kristen Amabile

By:  _____
     DOMINICK BRATTI

Dated: August 12, 2022

5

# EXHIBIT A

**Annemarie Greenan**

| | |
|---|---|
| **From:** | Dominick Bratti |
| **Sent:** | Monday, April 4, 2022 4:39 PM |
| **To:** | Paradise, Thomas D. |
| **Cc:** | Annemarie Greenan |
| **Subject:** | RE: Amabile vs. Fox Rothschild LLP |

Tom,

This will confirm that following our conversation today, I spoke with me client and have authority to settle this matter on the terms that we discussed.  In particular, a lump sum payment of $150,000 and full mutual releases with a provision that Ms. Amabile will cooperate with Fox with regard to its investigation of  financial discrepancies, alleged billing / expense improprieties and/or violations of firm policy.

**Dominick Bratti, Esq**  |  Bratti Greenan LLC

(732) 852-2711 Ext. 1 |  dbratti@brattigreenan.com

1040 Broad Street, Suite 104   |  Shrewsbury, NJ 07702



# EXHIBIT B

## Annemarie Greenan

| | |
|---|---|
| **From:** | Dominick Bratti |
| **Sent:** | Monday, April 11, 2022 4:05 PM |
| **To:** | Thomas D. Paradise (Tparadise@foxrothschild.com) |
| **Cc:** | Annemarie Greenan |
| **Subject:** | RE: Amabile/Fox Rothschild LLP |

Tom,

This will confirm our conversation today in which we agreed to this matter for a lump sum payment of $150,000 and full mutual releases with a provision that Ms. Amabile will cooperate with Fox with regard to its investigation of  financial discrepancies, alleged billing / expense improprieties and/or violations of firm policy. You will be providing a proposed agreement for review, but we understand that due to vacation/scheduling issues that will not occur this week.

**Dominick Bratti, Esq** | Bratti Greenan LLC
(732) 852-2711 Ext. 1 | dbratti@brattigreenan.com
1040 Broad Street, Suite 104  | Shrewsbury, NJ 07702



# EXHIBIT C

**Annemarie Greenan**

---

**From:** Paradise, Thomas D. [mailto:TParadise@foxrothschild.com]
**Sent:** Friday, April 22, 2022 11:46 AM
**To:** Dominick Bratti <dbratti@brattigreenan.com>
**Subject:** Settlement


Dominick,
I just heard back from Alka Bahal that she wants to be a part of the mutual releases.  I will get you a draft agreement
next week.

**Thomas D. Paradise**
**General Counsel**
**(he/him/his)**
**Fox Rothschild LLP**
1301 Atlantic Avenue
Midtown Building, Suite 400
Atlantic City, NJ  08401-7212
(215) 299-2774 – direct
(609) 348-6834 – fax
Tparadise@foxrothschild.com
www.foxrothschild.com


This email contains information that may be confidential and/or privileged. If you are not the intended recipient,
or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any
contents in this email. If you have received this email in error, please immediately notify the sender at Fox
Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

# EXHIBIT D

**Annemarie Greenan**

| | |
|---|---|
| **From:** | Dominick Bratti |
| **Sent:** | Wednesday, May 4, 2022 9:19 AM |
| **To:** | Paradise, Thomas D. |
| **Cc:** | Annemarie Greenan |
| **Subject:** | RE: Settlement |

Tom,

I hope all is well with you.  When can we expect to see the draft settlement agreement?

**Dominick Bratti, Esq** | Bratti Greenan LLC

(732) 852-2711 Ext. 1 | dbratti@brattigreenan.com

1040 Broad Street, Suite 104 | Shrewsbury, NJ 07702



**From:** Dominick Bratti
**Sent:** Friday, April 22, 2022 11:56 AM
**To:** Paradise, Thomas D. <TParadise@foxrothschild.com>
**Cc:** 'Annemarie Greenan (Agreenan@brattigreenan.com)' <Agreenan@brattigreenan.com>
**Subject:** RE: Settlement

Tom,

Thanks for the update.  Have a good weekend.

**Dominick Bratti, Esq** | Bratti Greenan LLC

(732) 852-2711 Ext. 1 | dbratti@brattigreenan.com

1040 Broad Street, Suite 104 | Shrewsbury, NJ 07702



**From:** Paradise, Thomas D. [mailto:TParadise@foxrothschild.com]
**Sent:** Friday, April 22, 2022 11:46 AM
**To:** Dominick Bratti <dbratti@brattigreenan.com>
**Subject:** Settlement

Dominick,
I just heard back from Alka Bahal that she wants to be a part of the mutual releases.  I will get you a draft agreement
next week.

**Thomas D. Paradise**
**General Counsel**
**(he/him/his)**
**Fox Rothschild LLP**
1301 Atlantic Avenue
Midtown Building, Suite 400
Atlantic City, NJ  08401-7212
(215) 299-2774 – direct
(609) 348-6834 – fax
Tparadise@foxrothschild.com
www.foxrothschild.com

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

# EXHIBIT E

**Annemarie Greenan**

| | |
|---|---|
| **From:** | Paradise, Thomas D. <TParadise@foxrothschild.com> |
| **Sent:** | Wednesday, May 4, 2022 10:45 AM |
| **To:** | Dominick Bratti |
| **Cc:** | Annemarie Greenan |
| **Subject:** | RE: Settlement |

Dominick,
I tested positive for Covid last week and I have not been able to work at 100%.  I am hoping to have it for you on Friday.  Sorry for the delay.
Tom

**Thomas D. Paradise**
General Counsel
(he/him/his)
**Fox Rothschild LLP**
1301 Atlantic Avenue
Midtown Building, Suite 400
Atlantic City, NJ  08401-7212
(215) 299-2774 – direct
(609) 348-6834 – fax
Tparadise@foxrothschild.com
www.foxrothschild.com

**From:** Dominick Bratti <dbratti@brattigreenan.com>
**Sent:** May 4, 2022 9:19 AM
**To:** Paradise, Thomas D. <TParadise@foxrothschild.com>
**Cc:** Annemarie Greenan <agreenan@brattigreenan.com>
**Subject:** [EXT] RE: Settlement

Tom,

I hope all is well with you.  When can we expect to see the draft settlement agreement?

**Dominick Bratti, Esq** | Bratti Greenan LLC

(732) 852-2711 Ext. 1 | dbratti@brattigreenan.com

1040 Broad Street, Suite 104  | Shrewsbury, NJ 07702



**From:** Dominick Bratti
**Sent:** Friday, April 22, 2022 11:56 AM
**To:** Paradise, Thomas D. <TParadise@foxrothschild.com>
**Cc:** 'Annemarie Greenan (Agreenan@brattigreenan.com)' <Agreenan@brattigreenan.com>
**Subject:** RE: Settlement

1

Tom,

Thanks for the update.  Have a good weekend.

**Dominick Bratti, Esq** |  Bratti Greenan LLC

(732) 852-2711 Ext. 1 |  dbratti@brattigreenan.com

1040 Broad Street, Suite 104   |  Shrewsbury, NJ 07702



---

**From:** Paradise, Thomas D. [mailto:TParadise@foxrothschild.com]
**Sent:** Friday, April 22, 2022 11:46 AM
**To:** Dominick Bratti <dbratti@brattigreenan.com>
**Subject:** Settlement


Dominick,
I just heard back from Alka Bahal that she wants to be a part of the mutual releases.  I will get you a draft agreement next week.

**Thomas D. Paradise**
**General Counsel**
**(he/him/his)**
**Fox Rothschild LLP**
1301 Atlantic Avenue
Midtown Building, Suite 400
Atlantic City, NJ  08401-7212
(215) 299-2774 – direct
(609) 348-6834 – fax
Tparadise@foxrothschild.com
www.foxrothschild.com

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.


This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

# EXHIBIT F

**Annemarie Greenan**

---

**Subject:**                       Settlement Agreement
**Attachments:**             KA and AB and FR Agreement (05.22)(133804968.1)-C.doc

**From:** "Paradise, Thomas D." <TParadise@foxrothschild.com>
**Date:** May 6, 2022 at 2:17:16 PM EDT
**To:** Dominick Bratti <dbratti@brattigreenan.com>
**Subject: Settlement Agreement**

Dominick,
Attached is the Agreement you requested.  Please have your client execute a copy and return it to me for execution by Alka and me.  If you have any questions, please let me know.  Thank you for your cooperation.
Tom

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

## AGREEMENT

This Agreement (the "Agreement") is by and among KRISTIN AMABILE ("you," "Amabile" or the "Employee") and ALKA BAHAL ("Bahal") and FOX ROTHSCHILD LLP ("we," "us" or the "Employer").

### Background

A.      Amabile's employment with Employer as an immigration administrator terminated on January 24, 2022.

B.      Amabile has advised Employer that she believes that she has certain claims against us; we deny that such claims are valid.

C.      Bahal was Amabile's supervisor. Bahal and Amabile have agreed to execute mutual releases with respect to each other.

C.      You and we acknowledge that each has considered the advisability of litigating these claims; and all parties acknowledge that the process of litigating claims or pursuing administrative remedies creates uncertainty and expense, and that it is in our mutual interest to amicably resolve any disputes which may exist concerning Employee's employment with Employer and to provide for the manner in which they will hereafter conduct themselves in relation to each other and that it is in their best interests to resolve all claims.

### Terms of Agreement

Except as specifically outlined in this Agreement, the Employer, Bahal and the Employee have agreed to fully and finally settle all claims which Employee may have against the Employer and all related persons and entities and which Employee and Bahal may have against each other. Accordingly, in consideration of their mutual promises as set forth herein below and intending to be legally bound hereby, the Employer and the Employee agree as follows:

1.      **Termination of Employment**.  Employee's employment with Employer was terminated as of January 24, 2022.

2.      **Consideration; Payment.**  Provided that you agree to the terms set out below and provided that there is no revocation, Employer will pay you and your counsel the total amount of One Hundred Fifty Thousand Dollars ($150,000.00) ("Payment") in settlement of all of your claims as described in this Agreement. In consideration of this payment, you agree that Employer will owe you no further amounts or other employee benefits, including but not limited to wages, incentive compensation, vacation pay, expense reimbursement, medical benefits, and other compensation or claims of any nature whatsoever, except as specifically outlined in this Agreement.  You acknowledge that the amount identified above is in full settlement of all potential claims, and that you will have no claim for costs, attorneys' fees or other amounts incurred in connection with the settlement of potential claims.

3.     **Timing of Payment.**   The Payment set forth in Paragraph will be made following Employer's receipt of this Agreement signed by you, completed and signed W-9 Forms from you and your counsel, and provided that there is no revocation.   The payment will be made within five business days following the expiration of the revocation period set forth in paragraph 7(f).    The Payment set forth in Paragraph 2 will be issued payable jointly to you and to "Bratti Greenan LLC." The Payment will be sent to your counsel on account of non-wage compensatory damages and counsel fees.

4.     **Taxes.** You acknowledge that you are fully responsible for all income, withholding and other individual taxes due with respect to amounts paid under this Agreement.  We are permitted to report the payment made pursuant to this Agreement to the appropriate federal, state and local taxing authorities, as we believe necessary or appropriate, including the filing of Form 1099s with the Internal Revenue Service.

We specifically make no representations as to the tax implications of the payments made pursuant to this Agreement, and you confirm that you have consulted with appropriate tax advisors to confirm issues related to taxability.  If we incur any liability (including taxes, penalties, interest, costs, expenses and attorneys' fees) due to Amabile's fault as a result of failing to withhold any taxes on the Payment, you will reimburse us for such liability.  We will not be obligated to contest any order or ruling requiring us to pay any taxing authority for failure to properly withhold taxes.

5.     **No Determination of Validity of Claims.**  Although this Agreement resolves all issues between us and you relating to any alleged violation of any policies, laws or regulations, this Agreement does not constitute an adjudication or finding on the merits of any claims by you, and will not be construed as an admission by us of any such violation, wrongdoing or liability of whatever nature.  This Agreement and any settlement discussions shall not be admissible in any proceeding as evidence or an admission by us of any violation of any policy, law or regulation.  This Agreement may be introduced in any proceeding to enforce the Agreement, subject to an order to keep its terms confidential.  Employer is entering into this Agreement solely because it is desirous of settling all of your potential claims and thereby avoiding further expense and legal fees**.**

6.     **Your General Release of Claims Against Employer.**  In exchange for the payments and other benefits which we have given to you in this Agreement, you — for yourself, heirs, executors, administrators, successors and assigns and all other representatives — agree to give up and waive all claims of any nature whatsoever which you may have either directly or indirectly, whether known or unknown**,** from the beginning of time until the date of this Agreement.  This waiver of claims applies to all claims against us and any entity otherwise related to us (including all predecessors, affiliates, successors and assigns), and specifically including Fox Rothschild LLP and all other entities related to Fox Rothschild LLP, and  as well as to anyone or any entity associated with or representing us and all related companies in the past or present, such as officers, partners, principals, attorneys, contract attorneys, employees (including but not limited to Alka Bahal), plan administrators, trustees, fiduciaries, insurers, legal representatives, principals and agents (all such entities and individuals are called "Related Persons").

The claims you are waiving include, but are not limited to, any and all actions, suits, demands, obligations, agreements, or proceedings of any kind, whether known or unknown at this time, arising out

2

133804968.1

of, or connected with, your employment with us and/or termination of your employment, from the beginning of time until the date of this Agreement including, but not limited to all matters in law, in equity, in contract, or in tort, or pursuant to statute, including damages, claims, judgments, interest, attorneys' fees, compensatory damages, punitive damages, liquidated damages, costs and expenses and, without limiting the generality of the foregoing, to all claims arising under Title VII of the Civil Rights Act of 1964 (as amended), the Civil Rights Act of 1991 (as amended), the Family and Medical Leave Act (as amended), the Americans With Disabilities Act (as amended), the Genetic Information Nondiscrimination Act, 24 U.S.C. §1981 ("Section 1981"), and the Pennsylvania Human Relations Act, any breach of contract claims (whether written or oral, express or implied), claims arising out of any offer letter or similar document, estoppel claims, claims for invasion of privacy, claims for loss of consortium, claims for duress, claims of discrimination, defamation or slander claims, claims of retaliation, claims of wrongful or constructive discharge or termination, claims for breach of promise, claims of negligence, claims of impairment of economic opportunity or loss of business opportunity, claims of emotional distress, claims of fraud or misrepresentation, claims of promissory estoppel, claims of unfair labor practices; claims under the Employee Retirement Income Security Act of 1974 (as amended) (excluding claims for vested benefits); claims for benefits including, but not limited to, life insurance, accidental death & disability insurance, sick leave or other employer provided plan or program; claims for reimbursement; claims for wages; claims for vacation or other leave time; claims relating to 401(k) or profit sharing plans (excluding claims for vested benefits); claims for, or arising out of the offering of, group health insurance coverage  or the use of information obtained by us as a result of the offering of group health insurance coverage; claims against the Employer Health Plan as defined under the Health Insurance Portability and Accountability Act; claims under the New Jersey Law Against Discrimination, the New Jersey Conscientious Employee Protection Act, the New Jersey Discrimination in Wages Law, the New Jersey Security and Financial Empowerment Act, the New Jersey Temporary Disability Benefits and Family Leave Insurance Law, the New Jersey Earned Sick Leave Law, the New Jersey Domestic Partnership Act, the New Jersey Family Leave Act, the New Jersey Wage Payment Act, the New Jersey Wage Theft Law, the New Jersey Equal Pay Law, the New Jersey Occupational Safety and Health Law, the New Jersey False Claims Act, the New Jersey Smokers' Rights Law, the New Jersey Genetic Privacy Act, the New Jersey Fair Credit Reporting Act, the New Jersey Emergency Responder Leave Law, the New Jersey Compassionate Use Medical Cannabis Act, the New Jersey Secure Choice Savings Program, the retaliation provisions of the New Jersey Workers' Compensation Law, and any federal, state, local, and/or municipal statute, law, amendment, directive, order, and/or regulation enacted in response to the COVID-19 pandemic; or any other federal, state, or local law, statute, or ordinance affecting your employment with or separation from employment with the Employer. Nothing herein shall constitute a waiver of Employee's right to file a claim for unemployment compensation.

You represent that you are unaware, after consultation with legal counsel, of any claims that you might have which may not be waived or released under the terms of applicable law. You also represent that neither you nor anyone on your behalf has filed any complaint, suit or charge with any court or administrative agency regarding employment with Employer or its termination or against any Released Parties.  You further agree and covenant that should any person, organization or other entity file, charge, claim, sue or cause or permit to be filed any civil action, suit, or legal proceeding involving any such matter occurring at any time in the past, you will not seek or accept any personal relief in such civil action, suit or legal proceeding.

This release does not apply to the consideration for this Agreement and any claims that the controlling law clearly states may not be released by settlement.

133804968.1

**You acknowledge that we have agreed to give you the payment described in this Agreement only if you sign this Agreement and comply with Paragraph 9 below and give up any claims which you may have against us and do not revoke this Agreement.** BY SIGNING THIS AGREEMENT, YOU ARE GIVING UP ALL CLAIMS WHICH YOU MAY HAVE AGAINST US AND ANY RELATED PERSONS OR ENTITY, except as described in this Agreement.

7.     **Knowing and Voluntary Release of Age Discrimination Claims.**  Amabile acknowledges and agrees that she is waiving any claims under the Age Discrimination in Employment Act and that she agrees that

(a)     she is receiving consideration for this Agreement which is in addition to anything of value to which she otherwise would have been entitled; and

(b)     she fully understands the terms of this Agreement and enters into it voluntarily without any coercion on the part of any person or entity; and

(c)     she was given adequate time to consider all implications and to freely and fully consult with and seek the advice of whomever she deemed appropriate and has done so; and

(d)     she was advised in writing and had the opportunity to consult with an attorney before signing this Agreement; and

(e)     she was advised in writing that she had twenty-one (21) calendar days within which to consider this Agreement before signing it; and

(f)     she has seven (7) calendar days after executing this AGREEMENT within which to revoke the Agreement. If the seventh day is a weekend or national holiday, Amabile has until the next business day to revoke. If Amabile elects to revoke this Agreement, Amabile agrees to notify General Counsel Thomas D. Paradise by email at (tparadise@foxrothschild.com) and in writing sent to Paradise at Fox Rothschild LLP, 1301 Atlantic Avenue, Midtown Building, Suite 400, Atlantic City, NJ  08401-7212 for overnight delivery advising of her revocation. Any determination of whether Amabile's revocation was timely shall be determined by the date of actual receipt by Thomas D. Paradise. A timely revocation shall make this Agreement null, and void and Employer shall have no obligations hereunder.

8.     **General Release of Legal Claims by Amabile Against Bahal**.   In consideration of their mutual promises in this Agreement, Amabile agrees to unconditionally release and forever discharge Bahal from any and all causes of action, suits, damages, claims, judgments, interest, attorney fees, costs and expenses whatsoever, including but not limited to those relating to, or in connection with, Amabile's employment by Employer, either directly or indirectly, whether known or unknown, for, upon or by reason of any matter, cause or thing whatsoever, and also including, but not limited to, any breach of contract claims, estoppel claims, impairment of economic opportunity, interference with contractual relations, infliction of emotional harm or any other tort claims, claims relating to Amabile's employment as well as any claims which Amabile may have against Bahal arising under or in connection with any and all local, state or federal ordinances, statutes, or common law to and including the date of execution

4

hereof. Except as specifically excluded herein, Amabile hereby acknowledges and agrees that this general release includes all claims she ever had, now has or which her heirs, agents, executors or assigns, or any of them, hereafter can, shall or may have, for or by reason of any cause, matter or thing whatsoever arising at any time up to and including the date that Amabile signs this Agreement. Amabile acknowledges and agrees that she is forgoing, to the maximum extent permitted by law, any and all rights that she might have under any federal, state or local law to file lawsuits in any court against Bahal. Amabile further represents that, neither she nor anyone on her behalf has filed any suits, claims, or the like regarding her employment with Employer or against Bahal. The only exclusion from this general release provision is a claim that some term of this Agreement has been violated or claims which cannot be waived under controlling law.

9.      **General Release of Legal Claims by Bahal Against Amabile**.   In consideration of their mutual promises in this Agreement, Bahal agrees to unconditionally release and forever discharge Amabile from any and all causes of action, suits, damages, claims, judgments, interest, attorney fees, costs and expenses whatsoever, including but not limited to those relating to, or in connection with, Amabile's employment by Employer, either directly or indirectly, whether known or unknown, for, upon or by reason of any matter, cause or thing whatsoever, and also including, but not limited to, any breach of contract claims, estoppel claims, impairment of economic opportunity, interference with contractual relations, infliction of emotional harm or any other tort claims, claims relating to Amabile's employment as well as any claims which Bahal may have against Amabile arising under or in connection with any and all local, state or federal ordinances, statutes, or common law to and including the date of execution hereof. Except as specifically excluded herein, Bahal hereby acknowledges and agrees that this general release includes all claims she ever had, now has or which her heirs, agents, executors or assigns, or any of them, hereafter can, shall or may have, for or by reason of any cause, matter or thing whatsoever arising at any time up to and including the date that Bahal signs this Agreement.   Bahal acknowledges and agrees that she is forgoing, to the maximum extent permitted by law, any and all rights that she might have under any federal, state or local law to file lawsuits in any court against Amabile. Bahal further represents that, neither she nor anyone on her behalf has filed any suits, claims, or the like regarding her employment with Employer or against Amabile. The only exclusion from this general release provision is a claim that some term of this Agreement has been violated or claims which cannot be waived under controlling law.

10.      **General Release of Legal Claims by Fox Rothschild LLP Against Amabile**.   In consideration of their mutual promises in this Agreement, Fox Rothschild LLP agrees to unconditionally release and forever discharge Amabile from any and all causes of action, suits, damages, claims, judgments, interest, attorney fees, costs and expenses whatsoever, including but not limited to those relating to, or in connection with, Amabile's employment by Employer, either directly or indirectly, whether known or unknown, for, upon or by reason of any matter, cause or thing whatsoever, and also including, but not limited to, any breach of contract claims, estoppel claims, impairment of economic opportunity, interference with contractual relations, infliction of emotional harm or any other tort claims, claims relating to Amabile's employment as well as any claims which Fox Rothschild LLP may have against Amabile arising under or in connection with any and all local, state or federal ordinances, statutes, or common law to and including the date of execution hereof. Except as specifically excluded herein, Fox Rothschild LLP hereby acknowledges and agrees that this general release includes all claims it ever had, now has or which its predecessors, affiliates, successors and assigns, or any of them, hereafter can, shall or may have, for or by reason of any cause, matter or thing whatsoever arising at any

133804968.1

time up to and including the date that Fox Rothschild LLP signs this Agreement.   Fox Rothschild LLP acknowledges and agrees that it is foregoing, to the maximum extent permitted by law, any and all rights that it might have under any federal, state or local law to file lawsuits in any court against Amabile.  Fox Rothschild LLP further represents that, neither it nor anyone on its behalf has filed any suits, claims, or the like regarding her employment with Employer or against Amabile.  The only exclusion from this general release provision is a claim that some term of this Agreement has been violated or claims which cannot be waived under controlling law.

11.   **Disclosure of Facts.** Employer demands, and Employee agrees, that Employee will make a full, accurate, complete, and truthful disclosure of all of the facts that she is aware of that relate to:

      i)       inaccuracies in billing to any of Employer's clients,

      ii)      improper practices engaged in by Employer or persons connected with Employer regarding billing, invoices, expenses and/or client charges,

      iii)     bills and expenses identified by Employer, and

      iv)     any other improprieties that Employee observed or is aware of with relation to the business practices of Employer, any of its related entities, or any persons connected with Employer.

Employee shall make such disclosures through her legal counsel to a person or persons designated by Employer's counsel which shall include responding in full to written interrogatories.

12.   **Cooperation**. Employee agrees to cooperate with the Employer regarding any pending or subsequently filed litigation, claims, or other disputes involving the Employer that relate to matters within the knowledge or responsibility of Employee during Employee's employment with the Employer. Employer will reimburse Employee for all reasonable out-of-pocket costs, lost wages (which includes use of paid leave time) and expenses in connection with the cooperation. Employee's required cooperation may include appearing from time to time at the Employer's offices or its attorneys' offices for conferences and interviews, and in general providing the Employer and its attorneys with the full benefit of Employee's knowledge with respect to any such matter. Employee agrees to cooperate in a timely fashion and at times that are agreeable to both parties. Employer and Employee will make their best efforts to schedule any such cooperation at a mutually agreeable time so that it will not interfere with Employee's employment.

13.   **Law Which Applies to This Agreement.**  This Agreement will be governed, construed, interpreted and enforced based on the laws of the State of New Jersey.

14.   **Termination of and No Future Employment.**  You forever waive and relinquish all rights to assert any claim for recall, reemployment, tenure, seniority or any privileges with Fox Rothschild LLP and covenant not to apply or reapply for employment with Fox Rothschild LLP.  You agree not to accept future employment with us, including employment through a temporary employment agency or other independent contractor.

15.   **Consultation with Attorney.**  You acknowledge that you have consulted with an attorney regarding your claims; that you have had sufficient time to consider the decision not to pursue the

133804968.1

alleged claims or to enter into a settlement with us; and that you have entered into this settlement after consultation with your attorney.  You have not relied on any representations made by us or our agents, except as outlined in this Agreement.

16.    **No Derogatory Comments; No Defamation.**  You agree not to make any defamatory comments about us or any of our employees, partners or agents or any Related Persons.   You agree to take no action to disparage Released Parties by your conduct or remarks, whether in writing or orally or other form of public statements, media releases or comments, regardless of their form (whether in print, orally, visually, by recorded means, through website, Facebook, Twitter, Instagram, or any other electronic means or social media platform), to any person or entity regarding Employer and/or the Related Persons.  Amabile agrees that she will not make statements for public dissemination accusing Employer or any of its employees, partners, attorneys or agents or any Released Parties of any wrongful, improper, discriminatory, retaliatory, fraudulent, deceitful, unlawful or unfair conduct or to otherwise disparage them in any way.

17.    **Complete Defense.**  Employee understands that Employer or Related Persons may plead this Agreement as a complete defense to any claim against Employer or Related Persons which hereafter may be asserted by you or other persons or agencies acting on your behalf in any suit or claim against Employer or Related Persons.

18.    **Confidentiality.**   Except to the extent necessary to sue for enforcement of this Agreement or to the extent you are compelled to do so by the law, you agree that you will keep the terms and amount of this Agreement forever completely confidential and that you will not hereafter disclose any information concerning this Agreement to anyone except to say that, "The matter has been resolved," provided, however, that you may make such disclosures to your attorney, your accountant, and taxing authorities, each of whom will be informed of and agree to be bound by this confidentiality clause, or other such nondisclosures as may be required by law.  Unless otherwise compelled by law, Amabile also agrees not to make or publish any statements or communications to or with the press or to the media or anyone else regarding the substance or negotiation of this Agreement provided, however, that Amabile may make such disclosures to legal counsel, accountants and taxing authorities, each of whom will be informed of and agree to be bound by this confidentiality provision.  Amabile agrees to treat the terms and conditions of this Agreement as confidential and shall not disclose the terms and conditions of this Agreement other than to her attorney and shall take all reasonable steps necessary to preserve the confidentiality of the terms and conditions hereof and safeguard them against their unauthorized disclosure. This paragraph shall be enforceable in any court of competent jurisdiction, and the parties agree that said court may award such relief as may be appropriate. In the event that you receive any subpoena or other directive that requires the disclosure of any information concerning this settlement, you shall immediately notify your legal counsel who shall in turn immediately notify Employer's General Counsel.

Amabile acknowledges and agrees that, in the course of her employment with Employer, she had access to confidential information. For purposes of this Agreement, "Confidential Information" shall mean information and materials that are non-public, proprietary and constitute trade secrets of Employer or client information, as well as non-public information concerning Bahal. Amabile further warrants and represents that she has not compromised, corrupted, misappropriated, damaged or inappropriately shared, uploaded, or downloaded data belonging or relating to Employer, any client affiliated with

133804968.1

Employer, or Bahal.  Amabile warrants and represents that she will not make use of any Confidential Information for the benefit of herself or others, or to the detriment of any of them.  Excluding her providing Employer information pursuant to her obligations as set forth in this Agreement, including the sections concerning "Disclosure of Facts" and "Cooperation" above, Amabile acknowledges and agrees that she has a continuing obligation to refrain from disclosing any such Confidential Information to third parties and that such disclosure, or breach of these representations and warranties, would constitute a breach of this Agreement, giving Employer a cause of action against her for such breach, in addition to any other rights that it has under applicable law.

19.     **No Publicity**. You agree that you will not, directly or indirectly, either personally or through your counsel or others, issue or cause to be issued any oral or written or other form of public statements, media releases or comments, regardless of their form (whether in print, orally, visually, by recorded means, through website, Facebook, Twitter, Instagram, or any other electronic means or social media platform), including without limitation any communication, interviews and/or statements to any person including any member of the media (including without limitation any print, broadcast or electronic media), concerning any party to this Agreement or concerning the resolution of your claims and the terms, conditions and provisions of same.  In the event that you receive any subpoena or other directive that requires the disclosure of any information concerning this resolution or relating to your employment with Employer, you shall immediately notify your legal counsel who shall notify the Employer's General Counsel.  Nothing set forth herein shall prevent any party from providing truthful testimony under oath, under compulsion of subpoena or other judicial, administrative or legal process, or as otherwise may be required by law.  This non-publicity provision shall survive and be given full force and effect separately from any valid or invalid, enforceable or unenforceable or operative or inoperative term, condition of provision of this agreement.

20.     **Fees and Costs.**  Except as set forth in this Agreement, each party shall bear her or its own attorneys' fees and costs.

21.     **Violation of Agreement.**  If you violate any of the terms of this Agreement, our obligation to make payment will stop immediately, and you will be required to return any payment which you have already received.  We also have the right to bring an action to recover damages for the full amount of our loss or damages resulting from your violation.  In such an event, your release of claims against us and any related person or entity, as outlined in this Agreement, will continue to apply.  If we incur any attorneys' fees or other costs as a result of you violating this Agreement, you agree to reimburse us for those fees and costs.

22.     **Return of Property.**  Amabile represents and covenants that she has returned to Employer all of its  property (including but not limited to all keys or entry cards to Employer's offices, all equipment, documents, client information, written information, forms, formulae, plans, documents or other written or computer material or data, software or firmware, records, or copies of the same, belonging to Employer or any client affiliated with Employer) which are in her possession or control, including but not limited to all originals, copies and summaries of any of Employer's Confidential Information.

23.     **Prior Agreements Not Enforceable.**  This Agreement contains the entire agreement of the parties regarding this matter; and any prior representations, promises or agreements (whether oral or

133804968.1

written) which are not in this Agreement are superseded and not enforceable.  The terms of this Agreement may not be altered, amended or waived except by another written agreement signed by you, your counsel and Employer's General Counsel.

24.    **Severability.**  The parties agree that each provision of this Agreement is severable and, further, that if any term or provision is held to be invalid, void or unenforceable by a court of competent jurisdiction or by an administrative agency for any reason whatsoever, such ruling shall not affect the validity of the remainder of this Agreement.

25.    **Understanding of Terms.**  You acknowledge that you have read this Agreement completely, and fully understand the terms, nature and effect of this Agreement, which you voluntarily execute in good faith.

26.    **No Assignment.**  Except as otherwise herein expressly provided, this Agreement shall inure to the benefit of, and be binding upon Employee, her heirs, successors and executors, upon Bahal, her heirs, successors and executors and upon Employer, its successors and assigns.  Employee represents that she has not assigned or in any other manner conveyed any right or claim that she has or may have to any third party, and Employee further agrees not to assign or convey to any assignee for any reason any right or claim covered by this Agreement for consideration, monetary or other, to be received by her hereunder.

27.    **Counterparts.**  Duplicate copies of this Agreement may be signed, and each copy will be considered an original document, but when taken together, all copies will constitute one Agreement.

IN WITNESS WHEREOF, the parties hereto have made and signed this AGREEMENT as follows:

EMPLOYEE:

_____
Kristin Amabile
Dated:  May   , 2022

_____
Alka Bahal, Esquire
Dated:  May   , 2022

FOX ROTHSCHILD LLP

By: _____
Dated:  May   , 2022

9

# EXHIBIT G

**Annemarie Greenan**

| | |
|---|---|
| **From:** | Dominick Bratti |
| **Sent:** | Tuesday, May 31, 2022 2:55 PM |
| **To:** | Paradise, Thomas D. |
| **Cc:** | Annemarie Greenan |
| **Subject:** | RE: Settlement Agreement |
| **Attachments:** | KA and AB and FR Agreement with DB  (05.26)(133804968.1)-C.doc |

Tom,

Attached is the redlined version of the agreement with our changes.

**Dominick Bratti, Esq**  |  Bratti Greenan LLC

(732) 852-2711 Ext. 1 |  dbratti@brattigreenan.com

1040 Broad Street, Suite 104   |  Shrewsbury, NJ 07702



**From:** Paradise, Thomas D. <TParadise@foxrothschild.com>
**Sent:** Thursday, May 12, 2022 1:38 PM
**To:** Dominick Bratti <dbratti@brattigreenan.com>
**Cc:** Annemarie Greenan <agreenan@brattigreenan.com>
**Subject:** Re: Settlement Agreement


Sounds good to me. Hope you are doing something fun.

**From:** Dominick Bratti <dbratti@brattigreenan.com>
**Sent:** Thursday, May 12, 2022 1:07:33 PM
**To:** Paradise, Thomas D. <TParadise@foxrothschild.com>
**Cc:** Annemarie Greenan <agreenan@brattigreenan.com>
**Subject:** [EXT] RE: Settlement Agreement

Tom,

I am out of the office until mid next week.  I will get you my comments after that

**Dominick Bratti, Esq**  |  Bratti Greenan LLC

(732) 852-2711 Ext. 1 |  dbratti@brattigreenan.com

1040 Broad Street, Suite 104   |  Shrewsbury, NJ 07702



**From:** Paradise, Thomas D. <TParadise@foxrothschild.com>
**Sent:** Wednesday, May 11, 2022 3:25 PM
**To:** Dominick Bratti <dbratti@brattigreenan.com>
**Subject:** Settlement Agreement


Dominick:
I just wanted to confirm you received the settlement agreement I sent you last Friday?  No rush, I am only confirming it was not caught up in your spam folder.  Thanks.
Tom

**Thomas D. Paradise**
**General Counsel**
**(he/him/his)**
**Fox Rothschild LLP**
1301 Atlantic Avenue
Midtown Building, Suite 400
Atlantic City, NJ  08401-7212
(215) 299-2774 – direct
(609) 348-6834 – fax
Tparadise@foxrothschild.com
www.foxrothschild.com


This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.


This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

## AGREEMENT

This Agreement (the "Agreement") is by and among KRISTEIN AMABILE ("you," "Amabile" or the "Employee") and ALKA BAHAL ("Bahal") and FOX ROTHSCHILD LLP ("Fox") (collectively referred to as "we," "us" or the "Employer").

### Background

A.   Amabile's employment with Employer as an Iimmigration Aadministrator terminated on January 24, 2022.

B.   Amabile has advised Employer that she believes that she has certain claims against us; we deny that such claims are valid.

C.   Bahal was at times Amabile's supervisor. Bahal and Amabile have agreed to execute mutual releases with respect to each other.

C.   You and we acknowledge that each party has considered the advisability of litigating these claims; and all parties acknowledge that the process of litigating claims or pursuing administrative remedies creates uncertainty and expense, and that it is in our mutual interest to amicably resolve any disputes which may exist concerning and/or in any way relating to Employee's employment with Employer and to provide for the manner in which they will hereafter conduct themselves in relation to each other and that it is in their best interests to resolve all claims.

### Terms of Agreement

Except as specifically outlined in this Agreement, Fox the Employer, Bahal and the Employee have agreed to fully and finally settle all claims which Employee and the Employer may have against each other the Employer and all related persons and entities and which Employee and Bahal may have against each other. Accordingly, in consideration of their mutual promises as set forth herein below and intending to be legally bound hereby, the parties Employer and the Employee agree as follows:

1.   **Termination of Employment**.  Employee's employment with Employer was terminated as of January 24, 2022.

2.   **Consideration; Payment.**  Provided that you agree to the terms set out below and provided that there is no revocation, Fox Employer will pay you and your counsel the total amount of One Hundred Fifty Thousand Dollars ($150,000.00) ("Payment") in settlement of all of your claims as described in this Agreement. In consideration of this payment, you agree that Employer will owe you no further amounts or other employee benefits, including but not limited to wages, incentive compensation, vacation pay, expense reimbursement, medical benefits, and other compensation or claims of any nature whatsoever, except as specifically outlined in this Agreement.  You acknowledge that the amount identified above is in full settlement of all potential claims, and that you will have no claim for costs,

133804968.1

attorneys' fees or other amounts incurred in connection with the settlement of potential claims except as otherwise set forth in this Agreement.

    3.    **Timing of Payment.**  The Payment set forth in Paragraph will be made following Fox's ~~Employer's~~ receipt of this Agreement signed by you, completed and signed W-9 Forms from you and your counsel, and provided that there is no revocation.  The payment will be made within five business days following the expiration of the revocation period set forth in paragraph 7(f).  The Payment set forth in Paragraph 2 will be issued payable ~~jointly to you and~~ to "Bratti Greenan LLC as Attorneys for Kristen Amabile."  The Payment will be sent to your counsel on account of non-wage compensatory damages and counsel fees.

    4.    **Taxes.** You acknowledge that you are fully responsible for all income, withholding and other individual taxes due with respect to amounts paid under this Agreement.  We are permitted to report the payment made pursuant to this Agreement to the appropriate federal, state and local taxing authorities, as we believe necessary or appropriate, including the filing of Form 1099s with the Internal Revenue Service.

  We specifically make no representations as to the tax implications of the payments made pursuant to this Agreement, and you confirm that you have consulted with appropriate tax advisors to confirm issues related to taxability.  ~~If we incur any liability (including taxes, penalties, interest, costs, expenses and attorneys' fees) due to Amabile's fault as a result of failing to withhold any taxes on the Payment, you will reimburse us for such liability.  We will not be obligated to contest any order or ruling requiring us to pay any taxing authority for failure to properly withhold taxes.~~

    5.    **No Determination of Validity of Claims.** ~~Although this Agreement resolves all issues between us and you relating to any alleged violation of any policies, laws or regulations, this~~ This Agreement does not constitute an adjudication or finding on the merits of any claims by any party ~~you~~, and will not be construed as an admission by any party ~~us~~ of any such alleged violation, wrongdoing or liability of whatever nature.  This Agreement and any settlement discussions shall not be admissible in any proceeding as evidence or an admission by any party ~~us~~ of any violation of any policy, law or regulation.  This Agreement may be introduced in any proceeding to enforce the Agreement ~~, subject to an order to keep its terms confidential.  Employer is~~ The parties are entering into this Agreement solely because they are ~~it is~~ desirous of settling all ~~of your~~ potential claims between the Employer and you and thereby avoiding further expense and legal fees**.**

    6.    **Your General Release of Claims Against Employer.**  In exchange for the payments and other benefits which we have given to you in this Agreement, you — for yourself, heirs, executors, administrators, successors and assigns and all other representatives — agree to give up and waive all claims of any nature whatsoever which you may have either directly or indirectly, whether known or unknown**,** from the beginning of time until the date of this Agreement.  This waiver of claims applies to all claims against us and any and all ~~any entity otherwise related to us (including all~~ of our predecessors, affiliates, successors and assigns~~)~~, and specifically including Fox Rothschild LLP ~~and all other entities related to Fox Rothschild LLP~~, and  as well as to anyone or any entity associated with or representing us and all ~~related companies in the~~ past or present ~~, such as~~ officers, partners, principals, attorneys, contract attorneys, employees (including but not limited to Alka Bahal), plan administrators, trustees, fiduciaries,

2

insurers, legal representatives, principals and agents (all such entities and individuals are called "Related Persons").

The claims you are waiving include, but are not limited to, any and all actions, suits, demands, obligations, agreements, or proceedings of any kind, however denominated, civil or criminal, whether known or unknown at this time, arising out of, or connected with, your employment with us and/or termination of your employment, from the beginning of time until the date of this Agreement including, but not limited to all matters in law, in equity, in contract, or in tort, or pursuant to statute, including damages, claims, judgments, interest, attorneys' fees, compensatory damages, punitive damages, liquidated damages, costs and expenses and, without limiting the generality of the foregoing, to all claims arising under Title VII of the Civil Rights Act of 1964 (as amended), the Civil Rights Act of 1991 (as amended), the Family and Medical Leave Act (as amended), the Americans With Disabilities Act (as amended), the Genetic Information Nondiscrimination Act, 24 U.S.C. §1981 ("Section 1981"), and the Pennsylvania Human Relations Act,  any breach of contract claims (whether written or oral, express or implied), claims arising out of any offer letter or similar document, estoppel claims, claims for invasion of privacy, claims for loss of consortium, claims for duress, claims of discrimination, defamation or slander claims, claims of retaliation, claims of wrongful or constructive discharge or termination, claims for breach of promise, claims of negligence,  claims of impairment of economic opportunity or loss of business opportunity, claims of emotional distress, claims of fraud, theft, misappropriation  or misrepresentation, claims of promissory estoppel, claims of unfair labor practices; claims under the Employee Retirement Income Security Act of 1974 (as amended) (excluding claims for vested benefits); claims for benefits including, but not limited to, life insurance, accidental death & disability insurance, sick leave or other employer provided plan or program; claims for reimbursement; claims for wages; claims for vacation or other leave time; claims relating to 401(k) or profit sharing plans (excluding claims for vested benefits); claims for, or arising out of the offering of, group health insurance coverage  or the use of information obtained by us as a result of the offering of group health insurance coverage; claims against the Employer Health Plan as defined under the Health Insurance Portability and Accountability Act; claims under the New Jersey Law Against Discrimination, the New Jersey Conscientious Employee Protection Act, the New Jersey Discrimination in Wages Law, the New Jersey Security and Financial Empowerment Act, the New Jersey Temporary Disability Benefits and Family Leave Insurance Law, the New Jersey Earned Sick Leave Law, the New Jersey Domestic Partnership Act, the New Jersey Family Leave Act, the New Jersey Wage Payment Act, the New Jersey Wage Theft Law, the New Jersey Equal Pay Law, the New Jersey Occupational Safety and Health Law, the New Jersey False Claims Act, the New Jersey Smokers' Rights Law, the New Jersey Genetic Privacy Act, the New Jersey Fair Credit Reporting Act, the New Jersey Emergency Responder Leave Law, the New Jersey Compassionate Use Medical Cannabis Act, the New Jersey Secure Choice Savings Program, the retaliation provisions of the New Jersey Workers' Compensation Law, and any federal, state, local, and/or municipal statute, law, amendment, directive, order, and/or regulation enacted in response to the COVID-19 pandemic; or any other federal, state, or local law, statute, or ordinance affecting your employment with or separation from employment with the Employer. Nothing herein shall constitute a waiver of Employee's right to file a claim for unemployment compensation.

You represent that you are unaware, after consultation with legal counsel, of any claims that you might have which may not be waived or released under the terms of applicable law. You also represent that neither you nor anyone on your behalf has filed any complaint, suit or charge with any court, authority or administrative agency regarding employment with Employer or its/their termination of your employment or against any Released Parties.  You further agree and covenant that should any person,

133804968.1

organization or other entity file, charge, claim, sue or cause or permit to be filed any civil action, suit, or legal proceeding involving any such matter occurring at any time in the past, you will not seek or accept any personal relief in such civil action, suit or legal proceeding.

This release does not apply to the consideration for this Agreement and any claims that the controlling law clearly states may not be released by settlement.

**You acknowledge that we have agreed to give you the payment described in this Agreement only if you sign this Agreement and comply with Paragraph 89 below and give up any claims which you may have against us and do not revoke this Agreement.** BY SIGNING THIS AGREEMENT, YOU ARE GIVING UP ALL CLAIMS WHICH YOU MAY HAVE AGAINST US AND ANY RELATED PERSONS OR ENTITY AND WE ARE GIVING UP ANY CLAIMS WHICH WE MAY HAVE AGAINST YOU, except as described in this Agreement.

7.    **Knowing and Voluntary Release of Age Discrimination Claims.**  Amabile acknowledges and agrees that she is waiving any claims under the Age Discrimination in Employment Act and that she agrees that

(a)    she is receiving consideration for this Agreement which is in addition to anything of value to which she otherwise would have been entitled; and

(b)    she fully understands the terms of this Agreement and enters into it voluntarily without any coercion on the part of any person or entity; and

(c)    she was given adequate time to consider all implications and to freely and fully consult with and seek the advice of whomever she deemed appropriate and has done so; and

(d)    she was advised in writing and had the opportunity to consult with an attorney and/or advisor of her choosing before signing this Agreement; and

(e)    she was advised in writing that she had twenty-one (21) calendar days within which to consider this Agreement before signing it; and

(f)        she has seven (7) calendar days after executing this AGREEMENT within which to revoke the Agreement. If the seventh day is a weekend or national holiday, Amabile has until the next business day to revoke. If Amabile elects to revoke this Agreement, Amabile agrees to notify General Counsel Thomas D. Paradise by email at (tparadise@foxrothschild.com) and in writing sent to Paradise at Fox Rothschild LLP, 1301 Atlantic Avenue, Midtown Building, Suite 400, Atlantic City, NJ 08401-7212 for overnight delivery advising of her revocation. Any determination of whether Amabile's revocation was received shall be determined by the date of actual receipt by Thomas D. Paradise. A timely revocation shall make this Agreement null, and void and Employer shall have no obligations hereunder.

8.    **General Release of Legal Claims by Amabile Against Bahal.**  In consideration of their mutual promises in this Agreement, Amabile agrees to unconditionally release and forever discharge Bahal from any and all causes of action, suits, damages, claims, judgments, interest, attorney fees, costs

Formatted: Number, Space After:  0 pt

4

133804968.1

and expenses whatsoever, including but not limited to those relating to, or in connection with, Amabile's employment by Employer, either directly or indirectly, whether known or unknown, for, upon or by reason of any matter, cause or thing whatsoever and however denominated, civil or criminal, and also including, but not limited to, sounding in tort or any breach of contract claims, estoppel claims, impairment of economic opportunity, interference with contractual relations, infliction of emotional harm or any other tort claims, claims for breach of promise, claims of negligence, claims of impairment of economic opportunity or loss of business opportunity, claims of emotional distress, claims of fraud, theft, misappropriation or misrepresentation, claims relating to Amabile's employment as well as any claims which Amabile may have against Bahal arising under or in connection with any and all local, state or federal ordinances, statutes, or common law to and including the date of execution hereof. Except as specifically excluded herein, Amabile hereby acknowledges and agrees that this general release includes all claims she ever had, now has or which her heirs, agents, executors or assigns, or any of them, hereafter can, shall or may have, for or by reason of any cause, matter or thing whatsoever arising at any time up to and including the date that Amabile signs this Agreement. Amabile acknowledges and agrees that she is forgoing, to the maximum extent permitted by law, any and all rights that she might have under any federal, state or local law to file lawsuits in any court against Bahal. Amabile further represents that, neither she nor anyone on her behalf has filed any suits, claims, or the like regarding her employment with Employer or against Bahal. The only exclusion from this general release provision is a claim that some term of this Agreement has been violated or claims which cannot be waived under controlling law.

8. 9.  General Release of Legal Claims by Bahal Against Amabile. In consideration of their mutual promises in this Agreement, Bahal on behalf of herself and any related agrees to unconditionally release and forever discharge Amabile from any and all causes of action, suits, damages, claims, judgments, interest, attorney fees, costs and expenses whatsoever and however denominated, civil or criminal, including but not limited to those relating to, or in connection with, Amabile's employment by Employer, either directly or indirectly, whether known or unknown, for, upon or by reason of any matter, cause or thing whatsoever, and also including, but not limited to sounding in tort or breach of contract claims, estoppel claims, impairment of economic opportunity, interference with contractual relations, infliction of emotional harm or any other tort claims, claims for breach of promise, claims of negligence, claims of impairment of economic opportunity or loss of business opportunity, claims of emotional distress, claims of fraud, theft, misappropriation or misrepresentation, , any breach of contract claims, estoppel claims, impairment of economic opportunity, interference with contractual relations, infliction of emotional harm or any other tort claims, claims relating to Amabile's employment as well as any claims which Bahal may have against Amabile arising under or in connection with any and all local, state or federal ordinances, statutes, or common law to and including the date of execution hereof. Except as specifically excluded herein, Bahal hereby acknowledges and agrees that this general release includes all claims she ever had, now has or which her heirs, agents, executors or assigns, or any of them, hereafter can, shall or may have, for or by reason of any cause, matter or thing whatsoever arising at any time up to and including the date that Bahal signs this Agreement. Bahal acknowledges and agrees that she is forgoing, to the maximum extent permitted by law, any and all rights that she might have under any federal, state or local law to file lawsuits in any court against Amabile. Bahal further represents that, neither she nor anyone on her behalf has filed any suits, claims, or the like regarding her employment with Employer or against Amabile. The only exclusion from this general release provision is a claim that some term of this Agreement has been violated or claims which cannot be waived under controlling law. Bahal represents that she is unaware of any claims she might have

133804968.1

Formatted: Font: Not Bold

which may not be waived or released under the terms of applicable law. Bahal also represents that neither she nor anyone on her behalf has filed any complaint, suit or charge with any court, authority or administrative agency regarding Amabile and/or her employment with Employer.  This release does not apply to the consideration for this Agreement and any claims that the controlling law clearly states may not be released by settlement.

9. 10.  General Release of Legal Claims by Fox Rothschild LLP Against Amabile.   In consideration of their mutual promises in this Agreement, Fox Rothschild LLP agrees to unconditionally release and forever discharge Amabile from any and all causes of action, suits, damages, claims, judgments, interest, attorney fees, costs and expenses whatsoever and however denominated, civil or criminal, including but not limited to those relating to, or in connection with, Amabile's employment by Employer, either directly or indirectly, whether known or unknown, for, upon or by reason of any matter, cause or thing whatsoever, and also including, but not limited to, any breach of contract claims, estoppel claims, impairment of economic opportunity, interference with contractual relations, infliction of emotional harm or any other tort claims, claims relating to Amabile's employment as well as any claims which Fox Rothschild LLP may have against Amabile arising under or in connection with any and all local, state or federal ordinances, statutes, or common law to and including the date of execution hereof. Except as specifically excluded herein, Fox Rothschild LLP hereby acknowledges and agrees that this general release includes all claims it ever had, now has or which its predecessors, affiliates, successors and assigns, or any of them, hereafter can, shall or may have, for or by reason of any cause, matter or thing whatsoever arising at any time up to and including the date that Fox Rothschild LLP signs this Agreement.   Fox Rothschild LLP acknowledges and agrees that it is forgoing, to the maximum extent permitted by law, any and all rights that it might have under any federal, state or local law to file lawsuits in any court against Amabile.  Fox Rothschild LLP further represents that, neither it nor anyone on its behalf has filed any suits, claims, or the like regarding her employment with Employer or against Amabile.  The only exclusion from this general release provision is a claim that some term of this Agreement has been violated or claims which cannot be waived under controlling law. Employer represents that it is unaware of any claims that it might have which may not be waived or released under the terms of applicable law. Employer also represent that neither it nor anyone on its behalf has filed any complaint, suit or charge with any court, authority or administrative agency regarding Amabile and/or her employment with Employer. This release does not apply to the consideration for this Agreement and any claims that the controlling law clearly states may not be released by settlement.

10.  **Disclosure of Facts.** Employer demands, and Employee agrees, that Employee will make a full, accurate, complete, and truthful disclosure of all of the facts that she is aware of that relate to:

    i)    inaccuracies in billing to any of Employer's clients,
    ii)   improper practices engaged in by Employer or persons connected with Employer regarding billing, invoices, expenses and/or client charges,
    iii)  bills and expenses identified by Employer, and
    iv)   any other improprieties that Employee observed or is aware of with relation to the business practices of Employer, any of its related entities, or any persons connected with Employer.

6

133804968.1

~~Employee shall make such disclosures through her legal counsel to a person or persons designated by Employer's counsel which shall include responding in full to written interrogatories.~~

11.   **Cooperation.** Following receipt of the Settlement Amount, Employee agrees to cooperate with the Fox~~Employer~~ regarding its investigation of client billing, improper practices engaged in by Employer or persons connected with Employer, bills and expenses identified by Employer and improprieties that Employee observed or became aware of within the scope of her employment with Employer regarding  the business practices of Employer, any of its  related entities or other persons connected with Employer. Employee further agrees to cooperate with Fox regarding any pending or subsequently filed litigation, claims, or other legal disputes involving the Employer that relate to matters within the knowledge or responsibility of Employee during Employee's employment with the Employer. Employer will reimburse Employee for all reasonable out-of-pocket costs, lost wages (which includes use of paid leave time) and expenses in connection with the cooperation. Employee's required cooperation may include appearing from time to time at the Employer's offices or its attorneys' offices for conferences and interviews, and in general providing the Employer and its attorneys with the full benefit of Employee's knowledge with respect to any such matter. Employee agrees to cooperate in a timely fashion and at times that are agreeable to both parties. Employer and Employee will make their best efforts to schedule any such cooperation at a mutually agreeable time so that it will not interfere with Employee's employment.

12.   Indemnification of Amabile by Fox.  Fox shall indemnify and hold Amabile harmless from any and all claims, causes of action, suits, damages,  judgments, interest, attorney fees, costs and expenses whatsoever asserted by any third party, including but not limited to any claim by client or former client of Fox and, including but not limited to any Related Party (including Bahal or any member of her family) and which in any way  relates to or is connected with Amabile's employment by Employer, either directly or indirectly. This indemnification by Fox shall specifically include, but shall not be limited to, and claim by Bahal and/or any member of her family arising out of Amabile's cooperation with  Fox's investigation as set forth in Paragraph 11 of this Agreement.

13.   **Law Which Applies to This Agreement.**  This Agreement will be governed, construed, interpreted and enforced based on the laws of the State of New Jersey.

14.   **Termination of and No Future Employment.**  You forever waive and relinquish all rights to assert any claim for recall, reemployment, tenure, seniority or any privileges with Fox Rothschild LLP and covenant not to knowingly apply or reapply for employment with Fox Rothschild LLP.  You agree not to knowingly accept future employment with us, including employment through a temporary employment agency or other independent contractor.

15.   **Consultation with Attorney and/or Advisor of Your Choice.**  You acknowledge that you have the right to consult with an attorney and/or advisor of your choosing, have been advised of such right in writing and that you have consulted with an attorney regarding your claims; that you have had sufficient time to consider the decision not to pursue the alleged claims or to enter into a settlement with us~~; and that you have entered into this settlement after consultation with your attorney.~~  You have not relied on any representations made by us or our agents, except as outlined in this Agreement.

7

133804968.1

16.   **No Derogatory Comments; No Defamation.** ~~You~~ The parties agree not to make any defamatory comments about ~~us~~ any party or any of ~~its/their~~ ~~our~~ employees, partners or agents or any Related Persons. The parties further ~~You~~ agree to take no action to disparage each other by ~~Released Parties by your~~ conduct or remarks, whether in writing or orally or other form of public statements, media releases or comments, regardless of their form (whether in print, orally, visually, by recorded means, through website, Facebook, Twitter, Instagram, or any other electronic means or social media platform), to any person or entity ~~regarding Employer and/or the Related Persons. Amabile~~ The parties agree~~s~~ that ~~they~~ she will not make statements accusing any party and/or their respective, representatives, ~~for public dissemination accusing Employer or any of its~~ employees, partners, attorneys ~~or agents or any Released Parties~~ of any wrongful, improper, discriminatory, retaliatory, fraudulent, deceitful, unlawful or unfair conduct or to otherwise disparage them in any way. This provision shall not apply to statement made by, or information provided by, Amabile in conjunction with her cooperation in the Fox investigation as set forth in Paragraph 11 of this Agreement

17.   **Complete Defense.** The parties each ~~Employee~~ understand~~s~~ that ~~they~~ ~~Employer~~ or their released parties ~~Related Persons~~ may plead this Agreement as a complete defense to any claim against them ~~Employer or Related Persons~~ which hereafter may be asserted by any party, their respective agents, employees and/or Related Persons. ~~you or other persons or agencies acting on your behalf in any suit or claim against Employer or Related Persons.~~

18.   **Confidentiality.** Except to the extent necessary to sue for enforcement of this Agreement or to the extent they ~~you~~ are compelled to do so by the law, the parties ~~you~~ agree t~~o~~ ~~hat you will~~ keep the terms and amount of this Agreement forever completely confidential and that they~~you~~ will not hereafter disclose any information concerning this Agreement to anyone except to say that, "The matter has been resolved," provided, however, that the parties ~~you~~ may make such disclosures to their respective ~~your~~ attorney~~s~~, ~~your~~ accountant~~s~~, and/or to taxing authorities, each of whom will be informed of and agree to be bound by this confidentiality clause, or other such nondisclosures as may be required by law. Unless otherwise compelled by law, the parties ~~Amabile~~ also agrees not to make or publish any statements or communications to or with any governmental and/or administrative agency or authority and/or to~~the~~ press or to the media or anyone else regarding the genesis, underlying facts/claims, terms, substance or negotiation~~s~~ of this Agreement provided, however, that the parities~~Amabile~~ may make such disclosures to legal counsel, accountants and taxing authorities, each of whom will be informed of and agree to be bound by this confidentiality provision. The parties ~~Amabile~~ agree~~s~~ to treat the terms and conditions of this Agreement as confidential and shall not disclose the terms and conditions of this Agreement other than as provided herein ~~to her attorney~~ and shall take all reasonable steps necessary to preserve the confidentiality of the terms and conditions hereof and safeguard them against their unauthorized disclosure. This paragraph shall be enforceable in any court of competent jurisdiction, and the parties agree that said court may award such relief as may be appropriate. In the event that any party you receive~~s~~ any subpoena or other directive that requires the disclosure of any information concerning this settlement and/or the underlying claims/facts related thereto, they~~you~~ shall immediately notify legal ~~your~~ legal counsel for all parties via e-mail directed to _____ (Add e-mail addresses of respective counsel)~~who shall in turn immediately notify Employer's General Counsel~~.

Amabile and Bahal acknowledge~~s~~ and agree~~s~~ that, in the course of their her employment with Employer, they have ~~she~~ had access to confidential information. For purposes of this Agreement, "Confidential Information" shall mean information and materials that are non-public, proprietary and constitute trade

8

133804968.1

secrets of Employer or client information, as well as non-public information concerning Bahal and Amabile. Amabile and Bahal further warrants and represents that they have she has not knowing compromised, corrupted, misappropriated, damaged or inappropriately shared, uploaded, or downloaded data belonging or relating to Employer, any client affiliated with Employer, or Amabile and Bahal. Amabile and Bahal warrants and represents that they have not and she will not make use of any Confidential Information for the benefit of themselves herself or others, or to the detriment of any of them. Except as to use or disclosures made in conjunction with and during the course of their employment with Fox and/or in conjunction with disclosures made in conjunction with the Fox investigation as set forth in Paragraph 11 of this Agreement, Excluding her providing Employer information pursuant to her obligations as set forth in this Agreement, including the sections concerning "Disclosure of Facts" and "Cooperation" above, Amabile and Bahal acknowledges and agrees that they have she has a continuing obligation to refrain from disclosing any such Confidential Information of any party to third parties and that such disclosure, or breach of these representations and warranties, would constitute a breach of this Agreement, giving rise to the aggrieved party Employer a cause of action against her for such breach; in addition to any other rights that it has under applicable law.

19.  **No Publicity**.  The parties You agree that they you will not, directly or indirectly, either personally or through legal your counsel or others, issue or cause to be issued any oral or written or other form of public statements, media releases or comments, regardless of their form (whether in print, orally, visually, by recorded means, through website, Facebook, Twitter, Instagram, or any other electronic means or social media platform), including without limitation any communication, interviews and/or statements to any person including any member of the media (including without limitation any print, broadcast or electronic media), concerning any party to this Agreement or concerning the resolution of your claims and the terms, conditions and provisions of same and/or the factual basis for same.  In the event that any party you receives any subpoena or other directive that requires the disclosure of any information concerning this Agreement and/or the underlying claims/facts related thereto, they shall immediately notify legal   counsel for all parties via e-mail directed to _____ (Add e-mail addresses of respective counsel) this resolution or relating to your employment with Employer, you shall immediately notify your legal counsel who shall notify the Employer's General Counsel.  Nothing set forth herein shall prevent any party from providing truthful testimony under oath, under compulsion of subpoena or other judicial, administrative or legal process, or as otherwise may be required by law. This non-publicity provision shall survive and be given full force and effect separately from any valid or invalid, enforceable or unenforceable or operative or inoperative term, condition of provision of this agreement.

20.  **Fees and Costs.**  Except as set forth in this Agreement, each party shall bear her or its own attorneys' fees and costs.

21.  **Violation of Agreement.**  If you violate any of the terms of this Agreement, our obligation to make payment will stop immediately, and you will be required to return any payment which you have already received.  We also have the right to bring an action to recover damages for the full amount of our loss or damages resulting from your violation.  In such an event, your release of claims against us and any related person or entity, as outlined in this Agreement, will continue to apply.  If we incur any attorneys' fees or other costs as a result of you violating this Agreement, you agree to reimburse us for those fees and costs.

9

22 21 **Return of Property.**  Amabile represents and covenants that to she has returned to Fox Employer any and all of its  property (including, but not limited to, all keys or entry cards to Employer's offices, all equipment, documents, client information, written information, forms, formulae, plans, documents or other written or computer material or data, software or firmware, records, or copies of the same, belonging to Fox Employer or any client of Fox affiliated with Employer) which is are in her possession or control, including but not limited to all originals, copies and summaries of any of Employer's Confidential Information. Fox represents and covenants to return to Amabile any and all of her property (including, but not limited to, personal items and personal contact information created by/belonging to Amabile which is located at/stored at Fox)

23 22 **Prior Agreements Not Enforceable.**  This Agreement contains the entire agreement of the parties regarding this matter; and any prior representations, promises or agreements (whether oral or written) which are not in this Agreement are superseded and not enforceable.  The terms of this Agreement may not be altered, amended or waived except by another written agreement signed by the parties. you, your counsel and Employer's General Counsel.

24 23 **Severability.**  The parties agree that each provision of this Agreement is severable and, further, that if any term or provision is held to be invalid, void or unenforceable by a court of competent jurisdiction or by an administrative agency for any reason whatsoever, such ruling shall not affect the validity of the remainder of this Agreement.

25 24 **Understanding of Terms.**  The parties each You acknowledge that they you have read this Agreement completely. and fully understand the terms, nature and effect of this Agreement, which is being you voluntarily executed in good faith.

26 25 **No Assignment.**  Except as otherwise herein expressly provided, this Agreement shall inure to the benefit of, and be binding upon Employee, her heirs, successors and executors, upon Bahal, her heirs, successors and executors and upon Employer, its successors and assigns.  The parties each Employee represents that they have she has not assigned or in any other manner conveyed any right or claim that they have she has or may have to any third party, and Employee they further agrees not to assign or convey to any assignee for any reason any right or claim covered by this Agreement for consideration, monetary or other wise. to be received by her hereunder.

27 26 **Counterparts.**  Duplicate copies of this Agreement may be signed in counterparts, and each copy will be considered an original document, but when taken together, all copies will constitute one Agreement.

IN WITNESS WHEREOF, the parties hereto have made and signed this AGREEMENT as follows:

EMPLOYEE:


_____
Kristein Amabile
Dated:  May    , 2022


10

133804968.1

_____

Alka Bahal, Esquire
Dated:  May   , 2022

FOX ROTHSCHILD LLP

By: _____
Dated:  May   , 2022

11

133804968.1

# EXHIBIT H

**Annemarie Greenan**

| | |
|---|---|
| **From:** | Dominick Bratti |
| **Sent:** | Tuesday, June 14, 2022 11:24 PM |
| **To:** | Paradise, Thomas D. |
| **Cc:** | Annemarie Greenan |
| **Subject:** | RE: Settlement Agreement |

Tom,

Per your request, I sent you the settlement agreement on May 31, 2022.  Please advise as to when we can expect an executed copy.

Thanks,

**Dominick Bratti, Esq** | Bratti Greenan LLC
(732) 852-2711 Ext. 1 | dbratti@brattigreenan.com
1040 Broad Street, Suite 104  | Shrewsbury, NJ 07702



# EXHIBIT I

LOUIS H. MIRON (014861985)
Attorney at Law
123 North Union Avenue
Suite 103
Cranford, New Jersey 07016
(908) 233-9555
Attorney for Plaintiff Alka Bahal

| | |
|---|---|
| ALKA BAHAL,<br><br>            Plaintiff,<br><br>      vs.<br><br>KRISTEN M. AMABILE,<br><br>            Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MORRIS COUNTY<br><br>DOCKET NO. MOR-L-    -22<br><br>CIVIL ACTION<br><br>**COMPLAINT** |

Plaintiff Alka Bahal, residing at 9 Sheldon Court, East Hanover, New Jersey, by way of Complaint against Defendant Kristen M. Amabile ("Amabile"), says:

1.    Defendant Amabile is an individual, and upon information and belief, resides at 61 Nicole Drive, Denville, New Jersey.

2.    At all relevant times, Plaintiff and Amabile worked together at a law firm in the State of New Jersey (the "Law Firm").

3.    In connection with their working at the Law Firm, Plaintiff authorized Amabile to use Plaintiff's personal credit card to charge business expenses incurred on behalf of Plaintiff.

4.    Plaintiff's business expenses were reimbursable to her by the Law Firm.

5.    Without Plaintiff's knowledge or authorization, Amabile began charging her own personal expenses to Plaintiff's personal credit card.  These personal expenses were not for the Law Firm's business, for the Law Firm's clients, and were not reimbursable by the Law Firm.

6.    Plaintiff learned that Amabile charged over $44,000 for Amabile's own personal expenses to Plaintiff's credit card without Plaintiff's knowledge or authorization.

7.    Amabile also submitted reimbursement invoices to the Law Firm for expenses incurred by and for Plaintiff but retained the reimbursement proceeds for her own use rather than forward the Law Firm reimbursement payments to Plaintiff.

8.    Plaintiff confronted Amabile concerning Amabile's unauthorized use of Plaintiff's personal credit card and they entered into a verbal agreement for Amabile to repay all her improper personal charges

2

to Plaintiff, who paid the credit card bills in the normal course (the "Agreement").

9.    Pursuant to the terms of the Agreement, Plaintiff and Amabile agreed that Amabile would repay Plaintiff in several payments, including with the assistance of Amabile's mother, who Amabile represented was prepared to loan her $10,000 to pay down her debt to Plaintiff.

10.   Contrary to the terms of the Agreement, Amabile only paid $3,500 to Plaintiff and has refused to pay more money towards the substantial debt.

11.   Amabile has failed to comply with the terms of the Agreement and has refused to pay additional monies in connection with her unauthorized use of Plaintiff's personal credit card for Amabile's personal expenses.

12.   As a result, Plaintiff paid to the credit card company and thus has incurred approximately $40,000 in losses as a direct and proximate result of Amabile's wrongful conduct.

3

## FIRST COUNT
### (Breach of Contract)

13.   Plaintiff repeats and re-alleges each and every statement contained in Paragraphs 1 through 12 as if fully set forth herein.

14.   Amabile has breached the Agreement and has failed to make the required payments that Amabile agreed to make to Plaintiff for Amabile's unauthorized use of Plaintiff's personal credit card.

15.   Plaintiff has demanded compliance and payment, but Amabile has refused and payment has not been made.

16.   Plaintiff has fulfilled all her obligations under the Agreement.

17.   Plaintiff has been damaged thereby.


WHEREFORE, Plaintiff demands judgment against Amabile for compensatory damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

4

**SECOND COUNT**
**(Violation of the Fiduciary Duty)**

18.   Plaintiff repeats and re-alleges each and every statement contained in Paragraphs 1 through 17 as if fully set forth herein.

19.   Amabile, as a paralegal performing services on matters for Plaintiff, a member of the Law Firm, owes and continues to owe to Plaintiff a fiduciary duty in connection with the expenditure of Law Firm funds and Plaintiff's personal funds.

20.   Upon information and belief, Amabile expended Law Firm funds for her own personal expenses without the Law Firm's knowledge or authorization.

21.   Amabile breached and violated the fiduciary duties owed to Plaintiff, proximately causing Plaintiff to sustain losses, costs and damages.


WHEREFORE, Plaintiff demands judgment against Amabile, for compensatory damages, punitive damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

**THIRD COUNT**
**(Violation of the Covenant of Good Faith and Fair Dealing)**

22.   Plaintiff repeats and re-alleges each and every statement contained in Paragraphs 1 through 21 as if fully set forth herein.

23.   Plaintiff and Amabile, as parties to the Agreement, are each bound by a duty of good faith and fair dealing in both the performance and enforcement of the Agreement.

24.   Amabile may be liable for a breach of the covenant of good faith and fair dealing even if she does not violate an express term of the Agreement.

25.   Amabile owed and continues to owe to Plaintiff a duty of good faith with respect to her agreement to repay Plaintiff for all Amabile's unauthorized charges on Plaintiff's personal credit card, for which Plaintiff has paid the credit card company in full.

26.   Amabile acted in bad faith, and intentionally breached and violated the duties owed to Plaintiff and denied Plaintiff the benefit of the bargain originally intended when she and Plaintiff entered into the Agreement.

27.  Plaintiff has sustained compensatory and consequential damages as a direct and foreseeable result of Amabile's breaching the covenant of good faith and fair dealing.

WHEREFORE, Plaintiff demands judgment against Amabile, for compensatory damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

## FOURTH COUNT
### (Unjust Enrichment)

28.  Plaintiff repeats and re-alleges each and every statement contained in Paragraphs 1 through 27 as if fully set forth herein.

29.  Amabile was unjustly enriched, and there are monies due and owing to the Plaintiff from Amabile.

30.  Plaintiff has been damaged thereby.

WHEREFORE, Plaintiff demands judgment against Amabile, for compensatory damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

7

**FIFTH COUNT**
**(Fraud)**

31.   Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 30 as if fully set forth herein.

32.   During the relevant period, Amabile engaged in an unlawful course of conduct in which she knowingly, recklessly and/or negligently made representations to Plaintiff concerning Amabile's use of Plaintiff's personal credit card, and Amabile's agreement to repay Plaintiff for the unauthorized use of Plaintiff's personal credit card for Amabile's personal expenses that acted as a fraud upon Plaintiff.

33.   Amabile knowingly, recklessly and/or negligently made misrepresentations or omissions of material fact to Plaintiff upon which Plaintiff reasonably relied and which achieved Amabile's objective of maximizing the pecuniary gain for herself through charging her personal expenses to Plaintiff's personal credit card without Plaintiff's knowledge or authorization, and failing to repay Plaintiff as Amabile promised.

34. Amabile knew or should have known that these representations related to material facts and information upon which Plaintiff was reasonably relying.

35. The representations and omissions of material fact made by Amabile were made with the intention that Plaintiff would rely upon them.

36. Amabile's conduct was violative of federal and state anti-fraud laws and constitutes common law fraud.

37. Amabile engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon Plaintiff by engaging in the conduct described herein.

38. Plaintiff incurred substantial damages as a direct and proximate result of the fraudulent conduct of Amabile. Amabile is, therefore, liable for these damages.

39. At all relevant times, Amabile acted willfully, outrageously, maliciously and with the specific intent to defraud and harm Plaintiff and to benefit herself, such that a significant award of punitive damages is also appropriate.

9

WHEREFORE, Plaintiff demands judgment against Amabile, for compensatory damages, punitive damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

**SIXTH COUNT**
**(Conversion)**

40.  Plaintiff repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 39 as if fully set forth herein.

41.  As a direct and proximate result of Amabile's conduct described herein, Amabile has received substantial pecuniary benefits from the substantial sums she charged to Plaintiff's personal credit card without Plaintiff's knowledge or authorization.

42.  Amabile has failed to repay Plaintiff for the improper charges made by Amabile to on Plaintiff's personal credit card, for which Plaintiff has paid the credit card company in full.

43.  Amabile's conduct constitutes an improper conversion of Plaintiff's property (i.e., money).

10

44.  As a direct and proximate result of Amabile's actions, Amabile has been unjustly enriched with substantial proceeds at the expense and/or detriment of Plaintiff.

45.  Plaintiff incurred substantial damages as a direct and proximate result of Amabile's actions.


WHEREFORE, Plaintiff demands judgment against Amabile, for compensatory damages, punitive damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

Louis H. Miron
Attorney for Plaintiff Alka
Bahal

Date:  June 29, 2022

.LOUIS H. MIRON

11

## CERTIFICATION PURSUANT TO RULE 4:5-1

I hereby certify that the matter in controversy is not the subject of any other action pending in any court and is likewise not the subject of any pending arbitration proceeding.  I further certify that I have no knowledge of any contemplated action or arbitration proceeding which is contemplated regarding the subject matter of this action and that I am not aware of any other parties who should be joined in this action.

Louis H. Miron
Attorney for Plaintiff Alka
Bahal

Date:  June 29, 2022

LOUIS H. MIRON

## DESIGNATION OF TRIAL COUNSEL

Louis H. Miron is hereby designated as trial counsel for Plaintiff in the above-captioned matter.

Louis H. Miron
Attorney for Plaintiff Alka
Bahal

Date:  June 29, 2022

LOUIS H. MIRON

# Civil Case Information Statement

**Case Details: MORRIS | Civil Part Docket# L-001117-22**

**Case Caption:** BAHAL ALKA  VS AMABILE KRISTEN

**Case Initiation Date:** 06/29/2022

**Attorney Name:** LOUIS H MIRON

**Firm Name:** LOUIS H. MIRON

**Address:** 123 NORTH UNION AVE. STE 103
CRANFORD NJ 07016

**Phone:** 9082339555

**Name of Party:** PLAINTIFF : Bahal, Alka

**Name of Defendant's Primary Insurance Company**
(if known): None

**Case Type:** CONTRACT/COMMERCIAL TRANSACTION

**Document Type:** NJ eCourts Case Initiation Confirmation

**Jury Demand:** NONE

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Alka Bahal? NO**

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Business

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

06/29/2022
Dated

/s/ LOUIS H MIRON
Signed



# T. A. Blackburn Law

### TYRONE A. BLACKBURN

---

MEMBER OF
NY & NJ BAR

---

FEDERAL MEMBERSHIP
EDNY, SDNY, NDNY, & DNJ

---

1242 EAST 80TH STREET, 3RD FLOOR
BROOKLYN, NY 11236

April 5, 2023

Honorable Merrick B. Garland
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington DC 20530

**Re: Criminal Referral**

Dear Mr. Attorney General:

My firm represents two individuals who have all been victims of the law firm, Fox Rothschild, LLP ("Fox"), and their employees Alka Bahal, Esq. ("Bahal") and Kristen Amabile ("Amabile"). In all, within the past year, I have been contacted via phone by over five individuals with eerily similar allegations that Fox, Amabile, and Bahal have engaged in rampant immigration fraud, theft of their client's money, and theft of their client's identity. In addition to these claims, Fox and Bahal allowed and encouraged their office administrator, Amabile to present herself as a licensed attorney to my clients and their friends and family.

It is my belief that Fox, Amabile, and Bahal have established a pattern and practice of criminal activity that reflects a possible RICO enterprise. On or about June 29, 2022, Bahal sued Amabile in the Superior Court of New Jersey Law Division, Morris County, Docket No. Mor-L-1117-22 to recover $80,000.00 Amabile stole from Fox's clients (**See Attachment A, the Morris County Complaint**).

Ironically, after a close reading of the pleading, you will realize that Amabile stole $160,000 in goods and cash from Fox clients. It is also important to note that as of October 12, 2022, Amabile was arrested in Denville Township in New Jersey for fraudulently obtaining prescription medication (**See Attachment B, the Gavel Case Nos. 22001356 and 22001459**).

In response to the Bahals lawsuit, on November 7, 2022, Amabile filed a Counterclaim and Third-Party Complaint naming Fox, Catherine Wadhwani, Esq., Ali Brodie, Esq., and Brian Frey as defendants. In her lawsuit, Amabile provides disturbing details of Fox, Bahal, Catherine Wadhwani, Esq., Ali Brodie, Esq., and Brian Frey engaging in what can only be described as an orchestrated criminal enterprise.

Amabile, accuses Bahal of purchasing her a burner phone as a tool to hide her criminal activity. Amabile also details the process Fox, Bahal, Catherine Wadhwani, Esq., Ali Brodie, Esq., and

 

# T. A. BLACKBURN LAW

Brian Frey implement to defraud their clients out of their money.  In the relevant part, Amabile states:

1.  The Plaintiff (Bahal) had a practice of failing to reimburse Fox Rothschild clients for overpayments made by said clients.
2.  Instead of reimbursing overpayments made by clients, Plaintiff would retain the payment and create bogus invoices at or near the end of the billing year for a flat fee amount equal to the amount of the overpayments.
3.  The zero balance invoice would not be sent to the client, but the funds being held by Plaintiff/Fox Rothschild would be applied to the fictitious/fraudulent invoices.
4.  Plaintiff and Third-Party Defendant Fox Rothschild were the sole beneficiaries of the fraudulent invoicing scheme.
5.  The result of the improper practice was to inflate Plaintiff's client originations/provide more revenue for Fox Rothschild, thereby making Plaintiff eligible for an even larger year-end bonus and more equity shares.
6.  Plaintiff advised Defendant Amabile that this was standard practice at Fox Rothschild.
7.  Plaintiff also had a practice of obtaining reimbursement for fraudulent expenses.
8.  Under Fox Rothschild's policy, certain attorneys are permitted to write off client expenses (costs/disbursements) up to a certain dollar amount ("write off authority").
9.  Plaintiff was one of the individuals with such write-off authority.
10. Amabile did not have such write-off authority and gained no benefit from the fraudulent practice.
11. Plaintiff used her write-off authority to charge her personal expenses to Fox Rothschild clients, obtain reimbursement from Fox Rothschild for the expenditures, and then write off the expenses so the clients would not see the fraudulent expense entries.

(*See* **Attachment C, Amabile Counterclaim and Third-Party**).

As if this was not bad enough, my suspicions of a RICO enterprise were solidified when Amabile filed a motion to enforce judgment against Fox and Bahal.  (*See* **Attachment D, Amabile Motion to Enforce Judgment**).  You will notice that Fox offered to pay Amabile $150,000 cash if she signed a nondisclosure agreement concerning her whistleblower claims detailed in **Attachment C**.  Fox also promised that they would get Bahal to dismiss her lawsuit against Amabile.  I find it highly suspicious that Fox, a national Law Firm with over 1000 attorneys, would pay a former employee $150,000 cash after accusing that employee of stealing over $160,000 in goods and cash.

This screams COVERUP!

I believe that Fox, Amabile, Bahal, and possibly Catherine Wadhwani, Esq., Ali Brodie, Esq., and Brian Frey were all members of a criminal RICO enterprise which have stolen millions of dollars from unsuspecting clients for more than 20 years.  Additionally, I believe that their actions may be a violation of the following federal criminal codes:



# T. A. BLACKBURN LAW

- Criminal Fraud: 18 U.S. Code § 1341
  - Forgery
  - Identity theft
  - Mail and Wire Fraud
  - Credit Card Fraud
- Federal RICO Act: 18 U.S.C. §§ 1961-68
- Money Laundering: 18 U.S. Code § 1956
- Unauthorized Practice of Law: 37 CFR § 11.505
- Immigration Marriage Fraud: 8 U.S.C. 1325(c) And 18 U.S.C. 1546
- Embezzlement: 18 U.S. Code § 641, and
- Fraud And Misuse of Visas, Permits, And Related Documents, And False Personation: 18 U.S.C. 1546

**Conclusion**:
As of the date of this letter, my office has been vetting two additional victims who have come forward with claims of immigration fraud and stolen funds.

This matter's breadth and complexity require your jurisdictional powers and resources to tackle and end the stream depravity committed by Fox, Bahal, and Amabile. My clients and their witnesses are prepared to speak with investigators and prosecutors from your office.

Thank you for your time and consideration.

Kind regards,

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC.

CC:
New Jersey Attorney Generals Office



347-342-7432     tblackburn@tablackburnlaw.com     TABlackburnlaw.com

# Attachment # A

LOUIS H. MIRON (014861985)
Attorney at Law
123 North Union Avenue
Suite 103
Cranford, New Jersey 07016
(908) 233-9555
Attorney for Plaintiff Alka Bahal

| | |
|---|---|
| ALKA BAHAL, | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION |
| Plaintiff, | MORRIS COUNTY |
| vs. | DOCKET NO. MOR-L-     -22 |
| KRISTEN M. AMABILE, | CIVIL ACTION |
| Defendant. | **COMPLAINT** |

Plaintiff Alka Bahal, residing at 9 Sheldon Court, East Hanover, New Jersey, by way of Complaint against Defendant Kristen M. Amabile ("Amabile"), says:

1.    Defendant Amabile is an individual, and upon information and belief, resides at 61 Nicole Drive, Denville, New Jersey.

2.    At all relevant times, Plaintiff and Amabile worked together at a law firm in the State of New Jersey (the "Law Firm").

3.    In connection with their working at the Law Firm, Plaintiff authorized Amabile to use Plaintiff's personal credit card to charge business expenses incurred on behalf of Plaintiff.

4.    Plaintiff's business expenses were reimbursable to her by the Law Firm.

5.    Without Plaintiff's knowledge or authorization, Amabile began charging her own personal expenses to Plaintiff's personal credit card.  These personal expenses were not for the Law Firm's business, for the Law Firm's clients, and were not reimbursable by the Law Firm.

6.    Plaintiff learned that Amabile charged over $44,000 for Amabile's own personal expenses to Plaintiff's credit card without Plaintiff's knowledge or authorization.

7.    Amabile also submitted reimbursement invoices to the Law Firm for expenses incurred by and for Plaintiff but retained the reimbursement proceeds for her own use rather than forward the Law Firm reimbursement payments to Plaintiff.

8.    Plaintiff confronted Amabile concerning Amabile's unauthorized use of Plaintiff's personal credit card and they entered into a verbal agreement for Amabile to repay all her improper personal charges

2

to Plaintiff, who paid the credit card bills in the normal course (the "Agreement").

9. Pursuant to the terms of the Agreement, Plaintiff and Amabile agreed that Amabile would repay Plaintiff in several payments, including with the assistance of Amabile's mother, who Amabile represented was prepared to loan her $10,000 to pay down her debt to Plaintiff.

10. Contrary to the terms of the Agreement, Amabile only paid $3,500 to Plaintiff and has refused to pay more money towards the substantial debt.

11. Amabile has failed to comply with the terms of the Agreement and has refused to pay additional monies in connection with her unauthorized use of Plaintiff's personal credit card for Amabile's personal expenses.

12. As a result, Plaintiff paid to the credit card company and thus has incurred approximately $40,000 in losses as a direct and proximate result of Amabile's wrongful conduct.

3

**FIRST COUNT**
**(Breach of Contract)**

13.   Plaintiff repeats and re-alleges each and
every statement contained in Paragraphs 1 through 12 as
if fully set forth herein.

14.   Amabile has breached the Agreement and has
failed to make the required payments that Amabile
agreed to make to Plaintiff for Amabile's unauthorized
use of Plaintiff's personal credit card.

15.   Plaintiff has demanded compliance and
payment, but Amabile has refused and payment has not
been made.

16.   Plaintiff has fulfilled all her obligations
under the Agreement.

17.   Plaintiff has been damaged thereby.


WHEREFORE, Plaintiff demands judgment against
Amabile for compensatory damages, interest, costs of
suit, attorney's fees, and such other relief as the
Court deems fair and equitable.

4

**SECOND COUNT**
**(Violation of the Fiduciary Duty)**

18.   Plaintiff repeats and re-alleges each and every statement contained in Paragraphs 1 through 17 as if fully set forth herein.

19.   Amabile, as a paralegal performing services on matters for Plaintiff, a member of the Law Firm, owes and continues to owe to Plaintiff a fiduciary duty in connection with the expenditure of Law Firm funds and Plaintiff's personal funds.

20.   Upon information and belief, Amabile expended Law Firm funds for her own personal expenses without the Law Firm's knowledge or authorization.

21.   Amabile breached and violated the fiduciary duties owed to Plaintiff, proximately causing Plaintiff to sustain losses, costs and damages.


WHEREFORE, Plaintiff demands judgment against Amabile, for compensatory damages, punitive damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

**THIRD COUNT**
**(Violation of the Covenant of Good Faith and Fair Dealing)**

22.   Plaintiff repeats and re-alleges each and every statement contained in Paragraphs 1 through 21 as if fully set forth herein.

23.   Plaintiff and Amabile, as parties to the Agreement, are each bound by a duty of good faith and fair dealing in both the performance and enforcement of the Agreement.

24.   Amabile may be liable for a breach of the covenant of good faith and fair dealing even if she does not violate an express term of the Agreement.

25.   Amabile owed and continues to owe to Plaintiff a duty of good faith with respect to her agreement to repay Plaintiff for all Amabile's unauthorized charges on Plaintiff's personal credit card, for which Plaintiff has paid the credit card company in full.

26.   Amabile acted in bad faith, and intentionally breached and violated the duties owed to Plaintiff and denied Plaintiff the benefit of the bargain originally intended when she and Plaintiff entered into the Agreement.

27.   Plaintiff has sustained compensatory and consequential damages as a direct and foreseeable result of Amabile's breaching the covenant of good faith and fair dealing.

WHEREFORE, Plaintiff demands judgment against Amabile, for compensatory damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

## FOURTH COUNT
### (Unjust Enrichment)

28.   Plaintiff repeats and re-alleges each and every statement contained in Paragraphs 1 through 27 as if fully set forth herein.

29.   Amabile was unjustly enriched, and there are monies due and owing to the Plaintiff from Amabile.

30.   Plaintiff has been damaged thereby.

WHEREFORE, Plaintiff demands judgment against Amabile, for compensatory damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

7

**FIFTH COUNT**
**(Fraud)**

31.   Plaintiff repeats and realleges the
allegations contained in Paragraphs 1 through 30 as if
fully set forth herein.

32.   During the relevant period, Amabile engaged
in an unlawful course of conduct in which she
knowingly, recklessly and/or negligently made
representations to Plaintiff concerning Amabile's use
of Plaintiff's personal credit card, and Amabile's
agreement to repay Plaintiff for the unauthorized use
of Plaintiff's personal credit card for Amabile's
personal expenses that acted as a fraud upon Plaintiff.

33.   Amabile knowingly, recklessly and/or
negligently made misrepresentations or omissions of
material fact to Plaintiff upon which Plaintiff
reasonably relied and which achieved Amabile's
objective of maximizing the pecuniary gain for herself
through charging her personal expenses to Plaintiff's
personal credit card without Plaintiff's knowledge or
authorization, and failing to repay Plaintiff as
Amabile promised.

34.   Amabile  knew or should have known that these representations related to material facts and information upon which Plaintiff was reasonably relying.

35.   The representations and omissions of material fact made by Amabile were made with the intention that Plaintiff would rely upon them.

36.   Amabile's conduct was violative of federal and state anti-fraud laws and constitutes common law fraud.

37.   Amabile engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon Plaintiff by engaging in the conduct described herein.

38.   Plaintiff incurred substantial damages as a direct and proximate result of the fraudulent conduct of Amabile.  Amabile is, therefore, liable for these damages.

39.   At all relevant times, Amabile acted willfully, outrageously, maliciously and with the specific intent to defraud and harm Plaintiff and to benefit herself, such that a significant award of punitive damages is also appropriate.

WHEREFORE, Plaintiff demands judgment against Amabile, for compensatory damages, punitive damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

**SIXTH COUNT**
**(Conversion)**

40.   Plaintiff repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 39 as if fully set forth herein.

41.   As a direct and proximate result of Amabile's conduct described herein, Amabile has received substantial pecuniary benefits from the substantial sums she charged to Plaintiff's personal credit card without Plaintiff's knowledge or authorization.

42.   Amabile has failed to repay Plaintiff for the improper charges made by Amabile to on Plaintiff's personal credit card, for which Plaintiff has paid the credit card company in full.

43.   Amabile's conduct constitutes an improper conversion of Plaintiff's property (i.e., money).

44.  As a direct and proximate result of Amabile's actions, Amabile has been unjustly enriched with substantial proceeds at the expense and/or detriment of Plaintiff.

45.  Plaintiff incurred substantial damages as a direct and proximate result of Amabile's actions.

WHEREFORE, Plaintiff demands judgment against Amabile, for compensatory damages, punitive damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

Louis H. Miron
Attorney for Plaintiff Alka
Bahal

Date:  June 29, 2022

.LOUIS H. MIRON

11

## CERTIFICATION PURSUANT TO RULE 4:5-1

I hereby certify that the matter in controversy is not the subject of any other action pending in any court and is likewise not the subject of any pending arbitration proceeding.  I further certify that I have no knowledge of any contemplated action or arbitration proceeding which is contemplated regarding the subject matter of this action and that I am not aware of any other parties who should be joined in this action.

Louis H. Miron
Attorney for Plaintiff Alka
Bahal

Date:   June 29, 2022

LOUIS H. MIRON

## DESIGNATION OF TRIAL COUNSEL

Louis H. Miron is hereby designated as trial counsel for Plaintiff in the above-captioned matter.

Louis H. Miron
Attorney for Plaintiff Alka
Bahal

Date:   June 29, 2022

LOUIS H. MIRON

# Civil Case Information Statement

**Case Details: MORRIS | Civil Part Docket# L-001117-22**

**Case Caption:** BAHAL ALKA  VS AMABILE KRISTEN

**Case Initiation Date:** 06/29/2022

**Attorney Name:** LOUIS H MIRON

**Firm Name:** LOUIS H. MIRON

**Address:** 123 NORTH UNION AVE. STE 103
CRANFORD NJ 07016

**Phone:** 9082339555

**Name of Party:** PLAINTIFF : Bahal, Alka

**Name of Defendant's Primary Insurance Company**
(if known): None

**Case Type:** CONTRACT/COMMERCIAL TRANSACTION

**Document Type:** NJ eCourts Case Initiation Confirmation

**Jury Demand:** NONE

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Alka Bahal? NO**

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Business

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
        **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
        **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO   **Title 59?** NO   **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

06/29/2022
Dated

/s/ LOUIS H MIRON
Signed

# Attachment # B

# COMPLAINT - SUMMONS

| COMPLAINT NUMBER | | | |
|---|---|---|---|
| **1408** | **S** | **2022** | **000142** |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

## THE STATE OF NEW JERSEY
### VS.
**KRISTEN M AMABILE**

**DENVILLE TWP MUNICIPAL COURT**
**1 SAINT MARY'S PLACE**
DENVILLE           NJ  07834-0000
**973-625-8300**  COUNTY OF: **MORRIS**

ADDRESS:
**61 NICOLE DRIVE**

DENVILLE               NJ 07834-0000

| # of CHARGES | CO-DEFTS | POLICE CASE #: |
|---|---|---|
| 1 | | 2022-23444 |

DEFENDANT INFORMATION
SEX: **F**  EYE COLOR: **BROWN**   DOB: **12/11/1979**
DRIVER'S LIC. #. **A57004377462792**          DL STATE:  **NJ**
SOCIAL SECURITY #: **xxx-xx-x377**   SBI #:
TELEPHONE #: **917-504-6533** (C)
LIVESCAN PCN #:

COMPLAINANT NAME: **DET  Z LANCASTER**
**1 ST. MARY'S PLACE**
**ATTN RECORD BUREAU**
DENVILLE               NJ  07834

By certification or on oath, the complainant says that to the best of his/her knowledge, information and belief the named
defendant on or about **09/28/2022 in**         **DENVILLE TWP**        ,   **MORRIS**     County, **NJ** did:
WITHIN THE JURISDICTION OF THIS COURT, ACQUIRE OR OBTAIN POSSESSION OF A
CONTROLLED DANGEROUS SUBSTANCE OR CONTROLLED SUBSTANCE ANALOG BY
MISREPRESENTATION, FRAUD, FORGERY, DECEPTION OR SUBTERFUGE, SPECIFICALLY BY
UTILIZING THE PERSONAL INFORMATION OF ANTHONY DENOIA IN ORDER TO OBTAIN
PRESCRIPTIONS FROM DR. JACOB LEIVENT FOR 30MG OF AMPHETAMINE SALT (ADDERALL). IN
VIOLATION OF N.J.S. 2C:35-13, A CRIME OF THE THIRD DEGREE.

**in violation of:**

| Original Charge | 1) **2C:35-13** | 2) | 3) |
|---|---|---|---|
| Amended Charge | | | |

## CERTIFICATION:

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false,
I am subject to punishment.

Signed: _____  **DET Z LANCASTER** _____  Date: **10/12/2022**

**The complaining witness is a law enforcement officer and a judicial probable cause determination is not required prior to the
issuance of this Complaint-Summons.**

**SUMMONS**
YOU ARE HEREBY SUMMONED to appear before the  Superior Court    in the county of:   MORRIS

at the following address:  MORRIS SUPERIOR COURT

WASHINGTON & COURT STREETS          P.O. BOX 910                MORRISTOWN          NJ 07963-0910

If you fail to appear on the date and at the time stated below, a warrant may be issued for your arrest.

Date of Arrest:           Appearance Date: **11/02/2022**  Time: **11:30AM**  Phone: **862-397-5700**

Signature of Person Issuing Summons: _____  **DET    Z LANCASTER** _____  Date: **10/12/2022**

| ☐ **Domestic Violence – Confidential** | ☐ **Related Traffic Tickets or Other Complaints** | ☐ **Serious Personal Injury/ Death Involved** |
|---|---|---|

**Special conditions of release:**
☐  **No phone, mail or other personal contact w/victim**
☐  **No possession firearms/weapons**
☐  **Other** (specify):

## ORIGINAL

# COMPLAINT – SUMMONS (Court Action)

| COMPLAINT NUMBER | | | | STATE V. | |
|---|---|---|---|---|---|
| **1408** | **S** | **2022** | **000142** | | **KRISTEN M AMABILE** |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. | | |

| **FTA Bail Information** | | Date Bail Set: | | Amount Bail Set: $_____ | by:_____ | ❑  Bail Recog. Attached |
|---|---|---|---|---|---|---|
| Released on Bail | R.O.R. | Committed Default | Committed w/o Bail | Place Committed: | | Date Referred to County Prosecutor: _____ |

| Date of First Appearance: | 11/02/2022 | ❑  Advised of Rights by_____ | Defendant Desires Counsel: ❑ Yes  ❑ No |
|---|---|---|---|

| **Prosecuting Attorney Information** | **Defense Counsel Information** |
|---|---|
| Name: | Name: |

| State | County | Municipal | Other | None | Retained | Public Def | Assigned | Waived | Other |
|---|---|---|---|---|---|---|---|---|---|

| | 1) **2C:35-13** | 2) | 3) |
|---|---|---|---|
| Original Charge | | | |
| Amended Charge | | | |
| Waiver Indt/Jury | | | |
| Plea/Date of Plea | Plea:          Date: | Plea:          Date: | Plea:          Date: |
| Adjudication (* see code) | Finding Code:          Date: | Finding Code:          Date: | Finding Code:          Date: |

| Jail Term | | Jail time credit | Susp. Imp | | Jail time credit | Susp. Imp | | Jail time credit | Susp. Imp |
|---|---|---|---|---|---|---|---|---|---|
| Probation Term | | | Susp. Imp | | | Susp. Imp | | | Susp. Imp |
| Cond. Discharge Term | | | | | | | | | |
| Community Service | | | | | | | | | |
| D/L Suspension Term | | | | | | | | | |
| Fines/Costs | Fines:       Costs: | | | Fines:       Costs: | | | Fines:       Costs: | | |
| VCCB/SNSF | VCCB:       SNSF: | | | VCCB:       SNSF: | | | VCCB:       SNSF: | | |
| DEDR/Lab Fee | DEDR:       LAB: | | | DEDR:       LAB: | | | DEDR:       LAB: | | |
| CD Fee/Drug Ed Fnd | CD:       DAEF: | | | CD:       DAEF: | | | CD:       DAEF: | | |
| DV Surch/Other Fees | DV:       Other: | | | DV:       Other: | | | DV:       Other: | | |
| Restitution Beneficiary:_____ | | | | | | | | | |

**Miscellaneous Information, Adjournments, Companion Complaints, Co-Defendants, Case Notes:**

**Related Traffic Tickets and Complaints:**

* Finding Codes
1 – Guilty
2 – Not Guilty
3 – Dismissed – Other
4 – Guilty but Merged
5 – Dismissed-Rule
6 – Dismissed Lack of Prosecution
7 – Dismissed – Pros Motion/Vic Req
8 – Conditional Discharge
D – Dismissed- Prosecutor Discretion
M – Dismissed- Mediation
P  - Dismissed-Plea  Agreement
S – Disposed at Superior
W – Dismissed-False ID

| | ORIGINAL - Court Action |
|---|---|
| JUDGE'S SIGNATURE                DATE | **Page 2 of 7**          NJ/CDR1 1/1/2017 |

# COMPLAINT - SUMMONS (DEFENDANT'S COPY)

| COMPLAINT NUMBER | | | |
|---|---|---|---|
| **1408** | **S** | **2022** | **000142** |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

*THE STATE OF NEW JERSEY*
*VS.*
**KRISTEN M AMABILE**

DENVILLE TWP MUNICIPAL COURT
1 SAINT MARY'S PLACE
DENVILLE          NJ  07834-0000
973-625-8300          COUNTY OF: **MORRIS**

ADDRESS:
**61 NICOLE DRIVE**

**DENVILLE          NJ 07834-0000**

| # of CHARGES | CO-DEFTS | POLICE CASE #: |
|---|---|---|
| 1 | | 2022-23444 |

DEFENDANT INFORMATION
SEX: **F**  EYE COLOR: **BROWN**      DOB: **12/11/1979**
DRIVER'S LIC. #. **A57004377462792**      DL STATE: **NJ**
SOCIAL SECURITY #: **xxx-xx-x377**   SBI #:
TELEPHONE #: **917-504-6533  (C )**
LIVESCAN PCN #:

COMPLAINANT
NAME:      **DET      Z LANCASTER**

By certification or on oath, the complainant says that to the best of his/her knowledge, information and belief the named defendant on or about **09/28/2022 in      DENVILLE TWP          ,     MORRIS** County, **NJ** did:
WITHIN THE JURISDICTION OF THIS COURT, ACQUIRE OR OBTAIN POSSESSION OF A CONTROLLED DANGEROUS SUBSTANCE OR CONTROLLED SUBSTANCE ANALOG BY MISREPRESENTATION, FRAUD, FORGERY, DECEPTION OR SUBTERFUGE, SPECIFICALLY BY UTILIZING THE PERSONAL INFORMATION OF ANTHONY DENOIA IN ORDER TO OBTAIN PRESCRIPTIONS FROM DR. JACOB LEIVENT FOR 30MG OF AMPHETAMINE SALT (ADDERALL). IN VIOLATION OF N.J.S. 2C:35-13, A CRIME OF THE THIRD DEGREE.

**in violation of:**

| | 1) | 2) | 3) |
|---|---|---|---|
| Original Charge | **2C:35-13** | | |
| Amended Charge | | | |

## CERTIFICATION:

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment

**DET Z LANCASTER**                                    10/12/2022
Signed: _____    Date:_____

The complaining witness is a law enforcement officer and a judicial probable cause determination is not required prior to the issuance of this Complaint-Summons.

**SUMMONS**
YOU ARE HEREBY SUMMONED to appear before the      Superior Court      in the county of:    MORRIS
at the following address:  MORRIS SUPERIOR COURT
WASHINGTON & COURT STREETS            P.O. BOX 910            MORRISTOWN            NJ 07963-0910
If you fail to appear on the date and at the time stated below, a warrant may be issued for your arrest.

Date of Arrest:          Appearance Date: **11/02/2022**   Time: **11:30AM**   Phone: **862-397-5700**

Signature of Person Issuing Summons: _____   **DET      Z LANCASTER** _____   Date: **10/12/2022**

| ❑ **Domestic Violence – Confidential** | ❑ **Related Traffic Tickets or Other Complaints** | ❑ **Serious Personal Injury/ Death Involved** |
|---|---|---|

**Special conditions of release:**
❑ **No phone, mail or other personal contact w/victim**
❑ **No possession firearms/weapons**
❑ **Other** (specify):

**COMPLAINT - SUMMONS (DEFENDANT'S COPY)**

NJ/CDR1 1/1/2017

# RETURN OF SERVICE INFORMATION

| COMPLAINT NUMBER | | | |
|---|---|---|---|
| **1408** | **S** | **2022** | **000142** |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

### *THE STATE OF NEW JERSEY*
### *VS.*
**KRISTEN M AMABILE**

DENVILLE TWP MUNICIPAL COURT
1 SAINT MARY'S PLACE
DENVILLE          NJ  07834-0000
973-625-8300  COUNTY OF: **MORRIS**

ADDRESS :
  **61 NICOLE DRIVE**

  **DENVILLE          NJ 07834-0000**

| # of CHARGES | CO-DEFTS | POLICE CASE #: |
|---|---|---|
| 1 | | 2022-23444 |

DEFENDANT INFORMATION
SEX: **F**  EYE COLOR: **BROWN**      DOB: 12/11/1979
DRIVER'S LIC. #. **A57004377462792**          DL STATE: **NJ**
SOCIAL SECURITY # xxx-xx-x377      SBI #:
TELEPHONE #: **917-504-6533  (C)**
LIVESCAN PCN #:

COMPLAINANT DET     **Z LANCASTER**
NAME:     1 ST. MARY'S PLACE
          ATTN RECORD BUREAU
          DENVILLE          NJ  07834

By certification or on oath, the complainant says that to the best of his/her knowledge, information and belief the named defendant on or about **09/28/2022** in              **DENVILLE TWP**          ,   **MORRIS    County, NJ** did:
WITHIN THE JURISDICTION OF THIS COURT, ACQUIRE OR OBTAIN POSSESSION OF A
CONTROLLED DANGEROUS SUBSTANCE OR CONTROLLED SUBSTANCE ANALOG BY
MISREPRESENTATION, FRAUD, FORGERY, DECEPTION OR SUBTERFUGE, SPECIFICALLY BY
UTILIZING THE PERSONAL INFORMATION OF ANTHONY DENOIA IN ORDER TO OBTAIN
PRESCRIPTIONS FROM DR. JACOB LEIVENT FOR 30MG OF AMPHETAMINE SALT (ADDERALL). IN
VIOLATION OF N.J.S. 2C:35-13, A CRIME OF THE THIRD DEGREE.

**in violation of:**

| Original Charge | 1) **2C:35-13** | 2) | 3) |
|---|---|---|---|

| Check √ | Certification by Police Regarding Complaint-Summons |
|---|---|
| ✔ | I certify that I served the complaint-summons by delivering a copy to the defendant personally. |
|  | I certify that I personally served the complaint-summons by leaving a copy at the defendant's usual place of abode with a competent member of the  household of the age 14 or over _____  Name of family member over 14 years of age |
|  | I certify that I mailed a copy of the complaint-summons by ordinary mail to the defendant at his or her last known address. _____  Defendant's last known address |
|  | I certify that I served the complaint-summons by delivering a copy to a person authorized to receive service of process on the defendant's behalf. _____  Name and title of authorized person |
|  | Other manner of service: I certify that I served the complaint-summons in the following manner: _____ |
|  | I certify that I was unable to serve the complaint-summons. |

Signed: **DET  Z LANCASTER DENVILLE TWP   POLICE DEPT**          Date of Action: _____ **10/12/2022** _____
          Name, Title and Department of Officer

## RETURN OF SERVICE INFORMATION

# Affidavit of Probable Cause

| COMPLAINT NUMBER | | | |
|---|---|---|---|
| **1408** | **S** | **2022** | **000142** |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

DENVILLE TWP MUNICIPAL COURT
1 SAINT MARY'S PLACE
DENVILLE                    NJ  07834-0000
973-625-8300          COUNTY OF: **MORRIS**

| # of CHARGES | CO-DEFTS | POLICE CASE #: |
|---|---|---|
| 1 | | **2022-23444** |

COMPLAINANT NAME: DET    Z LANCASTER
1 ST. MARY'S PLACE
ATTN RECORD BUREAU
DENVILLE                    NJ   07834

---

*THE STATE OF NEW JERSEY*
*VS.*
**KRISTEN M AMABILE**

ADDRESS:
**61 NICOLE DRIVE**

**DENVILLE**                    **NJ 07834-0000**

DEFENDANT INFORMATION
SEX: **F**  EYE COLOR: **BROWN**      DOB: **12/11/1979**
DRIVER'S LIC. #. **A57004377462792**                DL STATE:  **NJ**
SOCIAL SECURITY #: **xxx-xx-x377**      SBI #:
TELEPHONE #: **917-504-6533  (C)**
LIVESCAN PCN #:

---

Purpose: This Affidavit/Certification is to more fully describe the facts of the alleged offense so that a judge or authorized judicial officer may determine probable cause.

---

1. Description of relevant facts and circumstances which support probable cause that (1) the offense(s) was committed and (2) the defendant is the one who committed it:

On 9/28/22, Denville Police responded to 61 Nicole Drive for the report of an emotionally disturbed person, who was later identified as Kristen M. Amabile. During the on scene investigation, several prescription bill bottles belonging to Anthony Denoia and Kathleen Ancheta were turned over to police by Kristen's husband, George Amabile. The prescription bottles were for Adderall and Xanax and each had been prescribed by Dr. Jacob Leivent. While speaking with Kathleen and Anthony, they stated they were not patients of Dr. Leivent and had not given Kristen permission to use their personal information to obtain the medication. Anthony stated that Kristen had previously asked his permission to use his personal information to obtain Adderoll, however he stated he declined. The pill bottles with Kathleen's name had the address of 61 Nicole Drive, Denville, which was Kristen's address. Dr. Leivent provided screen shots from two phone number stating they were Anthony and Kathleen, asking for prescription refills. Each phone number was confirmed by Kristen's mother, Maria Smith to belong to Kristen. The phone number used to communicate with Dr. Leivent from an actor stating they were Anthony was used to contact Kristen directly. The two most recent Adderoll prescription that were filled for Anthony Denoia were picked up from the Denville CVS but a white BMW which appeared identical to a vehicle that is registered to Kristen and was observed parked in her driveway. Additionally, George stated that Kristen had stated that she was "pretending" to be Kathleen while seeing Dr. Leivent, in order to obtain medication.

---

**Affidavit of Probable Cause**

1/1/2017

# Affidavit of Probable Cause

| COMPLAINT NUMBER | | | | THE STATE OF NEW JERSEY |
|---|---|---|---|---|
| **1408** | **S** | **2022** | **000142** | *VS.* |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. | **KRISTEN M AMABILE** |

2. I am aware of the facts above because: (Included, but not limited to: your observations,statements of eyewitnesses, defendant's admission, etc.)

I was the officer who conducted the follow up investigation.

3. If victim was injured, provide the extent of the injury:

Certification:
I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Signed: DET Z LANCASTER LAW ENFORCEMENT OFFICER      Date: 10/12/2022

# Preliminary Law Enforcement Incident Report

| COMPLAINT NUMBER | | | |
|---|---|---|---|
| **1408** | **S** | **2022** | **000142** |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

*THE STATE OF NEW JERSEY*
*VS.*
**KRISTEN M AMABILE**

**DENVILLE TWP MUNICIPAL COURT**
**1 SAINT MARY'S PLACE**
**DENVILLE           NJ  07834-0000**
**973-625-8300**  COUNTY OF: **MORRIS**

ADDRESS :
**61 NICOLE DRIVE**

**DENVILLE                          NJ  07834-0000**

| # of CHARGES | CO-DEFTS | POLICE CASE #: |
|---|---|---|
| 1 | | **2022-23444** |

DEFENDANT INFORMATION
SEX: **F**  EYE COLOR: **BROWN**       DOB: **12/11/1979**
DRIVER'S LIC. #. **A57004377462792**              DL STATE:  **NJ**
SOCIAL SECURITY #: **xxx-xx-x377**    SBI #:
TELEPHONE #: **917-504-6533**  (**C**)
LIVESCAN PCN #:

COMPLAINANT NAME: DET    **Z LANCASTER**
**1 ST. MARY'S PLACE**
**ATTN RECORD BUREAU**
**DENVILLE              NJ  07834**

**Purpose:** The Preliminary Law Enforcement Incident Report (PLEIR) is intended to document basic information known to the officer at the time of its preparation.  It is recognized that additional relevant information will emerge as an investigation continues.  The PLEIR shall be in addition to, not in lieu of, any regular police arrest, incident, or investigation reports. Note that the PLEIR is specific to each defendant charged in an investigation.

-Another law enforcement officer(s) personally observed the offense, List the officer(s) and their badge#
   Zurlo 75

-The charge was based on the observations/statements made by an eyewitness(es).
        •The witness statement(s) were recorded via:
                *Body-Worn Camera

-Physical evidence was seized/recovered:
        •CDS:
                *Prescription Drugs

-Child(ren) were present at the time of the offense and:
        •Other/Explain Children were present

-The defendant appeared to be under the influence of drugs or alcohol at the time of the offense.

-The complaining officer/agency have reason to believe that the defendant is drug-dependent. Basis were:
        •Information from family/friends

-The case involves CDS and the evidence was recovered via:
        •Other/Explain Provided by husband

Certification:
I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Signed: ___ **DET Z LANCASTER LAW ENFORCEMENT OFFICER** ___   Date: ___ **10/12/2022** ___

# COMPLAINT - SUMMONS

| COMPLAINT NUMBER | | | |
|---|---|---|---|
| 1435 | S | 2022 | 000132 |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

*THE STATE OF NEW JERSEY VS.*

**KRISTEN M AMABILE**

ROCKAWAY TWP MUNICIPAL COURT
65 MT HOPE RD
ROCKAWAY          NJ 07866-0000
973-627-9000  COUNTY OF: **MORRIS**

ADDRESS: **61 NICOLE DR**

**DENVILLE**          NJ **07834-0000**

| # of CHARGES | CO-DEFTS | POLICE CASE #: |
|---|---|---|
| 1 | | 2022-23241 |

DEFENDANT INFORMATION
SEX: **F**  EYE COLOR: **BROWN**     DOB: **12/11/1979**
DRIVER'S LIC. #: **A57004377462792**          DL STATE: **NJ**
SOCIAL SECURITY #: **xxx-xx-x377**  SBI #: **688010H**
TELEPHONE #: **973-886-3827** (C)
LIVESCAN PCN #: **143501007548**

COMPLAINANT NAME: **DET. T    TAFFIN**
65 MOUNT HOPE RD
ATTN WARRANTS
ROCKAWAY          NJ 07866

By certification or on oath, the complainant says that to the best of his/her knowledge, information and belief the named defendant on or about **08/23/2022 in**          **ROCKAWAY TWP**          , **MORRIS**          County, **NJ** did:
WITHIN THE JURISDICTION OF THIS COURT, DID OBTAIN ANY PERSONAL IDENTIFYING INFORMATION PERTAINING TO ANOTHER PERSON AND USE THAT INFORMATION, IN ORDER TO ASSUME THE IDENTITY OF OR REPRESENT HIMSELF AS ANOTHER PERSON, WITHOUT THAT PERSON'S AUTHORIZATION AND WITH THE PURPOSE TO FRAUDULENTLY OBTAIN OR ATTEMPT TO OBTAIN A BENEFIT OR SERVICES, OR AVOID THE PAYMENT OF DEBT OR OTHER LEGAL OBLIGATION BY USING THE NAME OF THE OTHER PERSON; SPECIFICALLY BY OBTAINING 5 PRESCRIPTION PILL BOTTLES (AMPHETAMINE ASPARTATE X3, DEXTROAMPHETAMINE X 1, & ALPRAZOLAM X1) WITH THE IDENTITY OF THE VICTIM K.A. AT THE RANDOLPH PHARMACY LOCATED AT 124 ROUTE 10 IN RANDOLPH NJ DURING THE TIME PERIOD OF JULY 2021 THROUGH AUGUST 2022 IN VIOLATION OF N.J.S.A. 2C:21-17A(4) IMPERSONATION, A CRIME OF THE FOURTH DEGREE.

**in violation of:**

| Original Charge | 1) **2C:21-17A(4)** | 2) | 3) |
|---|---|---|---|
| Amended Charge | | | |

## CERTIFICATION:

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Signed: _____  **DET. T    TAFFIN**                    Date: **10/28/2022**

**The complaining witness is a law enforcement officer and a judicial probable cause determination is not required prior to the issuance of this Complaint-Summons.**

**SUMMONS**
YOU ARE HEREBY SUMMONED to appear before the  Superior Court          in the county of:  MORRIS
at the following address:  MORRIS SUPERIOR COURT
WASHINGTON & COURT STREETS          P.O. BOX 910          MORRISTOWN          NJ 07963-0910
If you fail to appear on the date and at the time stated below, a warrant may be issued for your arrest.

Date of Arrest: **10/28/2022**  Appearance Date: **11/16/2022**  Time: **11:30AM**  Phone: **862-397-5700**

Signature of Person Issuing Summons: _____  **DET. T    TAFFIN**                    Date: **10/28/2022**

| ❑ **Domestic Violence – Confidential** | ❑ **Related Traffic Tickets or Other Complaints** | ❑ **Serious Personal Injury/ Death Involved** |
|---|---|---|

Special conditions of release:
❑ **No phone, mail or other personal contact w/victim**
❑ **No possession firearms/weapons**
❑ **Other** (specify):

## ORIGINAL

**Page 1 of 7**

NJ/CDR1 1/1/2017

# COMPLAINT – SUMMONS (Court Action)

| COMPLAINT NUMBER | | | | STATE V. | |
|---|---|---|---|---|---|
| 1435 | S | 2022 | 000132 | | KRISTEN M AMABILE |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. | | |

**FTA Bail Information** | Date Bail Set: | Amount Bail Set: $_____ by:_____ | ❑ Bail Recog. Attached

| Released on Bail | R.O.R. | Committed Default | Committed w/o Bail | Place Committed: | Date Referred to County Prosecutor: _____ |
|---|---|---|---|---|---|

Date of First Appearance: **11/16/2022** | ❑ Advised of Rights by_____ | Defendant Desires Counsel: ❑ Yes  ❑ No

| Prosecuting Attorney Information | | | | Defense Counsel Information | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Name: | | | | Name: | | | | | |
| State | County | Municipal | Other | None | Retained | Public Def | Assigned | Waived | Other |

| | 1) **2C:21-17A(4)** | 2) | 3) |
|---|---|---|---|
| Original Charge | | | |
| Amended Charge | | | |
| Waiver Indt/Jury | | | |
| Plea/Date of Plea | Plea:    Date: | Plea:    Date: | Plea:    Date: |
| Adjudication (* see code) | Finding Code:    Date: | Finding Code:    Date: | Finding Code:    Date: |
| Jail Term | Jail time credit   Susp. Imp | Jail time credit   Susp. Imp | Jail time credit   Susp. Imp |
| Probation Term | Susp. Imp | Susp. Imp | Susp. Imp |
| Cond. Discharge Term | | | |
| Community Service | | | |
| D/L Suspension Term | | | |
| Fines/Costs | Fines:    Costs: | Fines:    Costs: | Fines:    Costs: |
| VCCB/SNSF | VCCB:    SNSF: | VCCB:    SNSF: | VCCB:    SNSF: |
| DEDR/Lab Fee | DEDR:    LAB: | DEDR:    LAB: | DEDR:    LAB: |
| CD Fee/Drug Ed Fnd | CD:    DAEF: | CD:    DAEF: | CD:    DAEF: |
| DV Surch/Other Fees | DV:    Other: | DV:    Other: | DV:    Other: |
| Restitution Beneficiary:_____ | | | |

**Miscellaneous Information, Adjournments, Companion Complaints, Co-Defendants, Case Notes:**

**Related Traffic Tickets and Complaints:**

* Finding Codes
1 – Guilty
2 – Not Guilty
3 – Dismissed – Other
4 – Guilty but Merged
5 – Dismissed-Rule
6 – Dismissed Lack of Prosecution
7 – Dismissed – Pros Motion/Vic Req
8 – Conditional Discharge
D – Dismissed- Prosecutor Discretion
M – Dismissed- Mediation
P – Dismissed-Plea Agreement
S – Disposed at Superior
W – Dismissed-False ID

| | ORIGINAL - Court Action |
|---|---|
| JUDGE'S SIGNATURE          DATE | **Page 2 of 7**          NJ/CDR1 1/1/2017 |

# COMPLAINT - SUMMONS (DEFENDANT'S COPY)

**COMPLAINT NUMBER**

| 1435 | S | 2022 | 000132 |
|------|---|------|--------|
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

*THE STATE OF NEW JERSEY*
*VS.*

**KRISTEN M AMABILE**

ROCKAWAY TWP MUNICIPAL COURT
65 MT HOPE RD
ROCKAWAY            NJ  07866-0000
973-627-9000   COUNTY OF: **MORRIS**

ADDRESS :
**61 NICOLE DR**

**DENVILLE**              **NJ  07834-0000**

| # of CHARGES | CO-DEFTS | POLICE CASE #: |
|---|---|---|
| 1 | | 2022-23241 |

COMPLAINANT
NAME:    **DET. T    TAFFIN**

DEFENDANT INFORMATION
SEX: **F**  EYE COLOR: **BROWN**      DOB: **12/11/1979**
DRIVER'S LIC. #. **A57004377462792**              DL STATE: **NJ**
SOCIAL SECURITY #: **xxx-xx-x377**  SBI #: **688010H**
TELEPHONE #: **973-886-3827  (C )**
LIVESCAN PCN #:  **143501007548**

By certification or on oath, the complainant says that to the best of his/her knowledge, information and belief the named defendant on or about **08/23/2022 in**              **ROCKAWAY TWP**        ,        **MORRIS**        **County, NJ** did:
WITHIN THE JURISDICTION OF THIS COURT, DID OBTAIN ANY PERSONAL IDENTIFYING INFORMATION PERTAINING TO ANOTHER PERSON AND USE THAT INFORMATION, IN ORDER TO ASSUME THE IDENTITY OF OR REPRESENT HIMSELF AS ANOTHER PERSON, WITHOUT THAT PERSON'S AUTHORIZATION AND WITH THE PURPOSE TO FRAUDULENTLY OBTAIN OR ATTEMPT TO OBTAIN A BENEFIT OR SERVICES, OR AVOID THE PAYMENT OF DEBT OR OTHER LEGAL OBLIGATION BY USING THE NAME OF THE OTHER PERSON; SPECIFICALLY BY OBTAINING 5 PRESCRIPTION PILL BOTTLES (AMPHETAMINE ASPARTATE X3, DEXTROAMPHETAMINE X 1, & ALPRAZOLAM X1) WITH THE IDENTITY OF THE VICTIM K.A. AT THE RANDOLPH PHARMACY LOCATED AT 124 ROUTE 10 IN RANDOLPH NJ DURING THE TIME PERIOD OF JULY 2021 THROUGH AUGUST 2022 IN VIOLATION OF N.J.S.A. 2C:21-17A(4) IMPERSONATION, A CRIME OF THE FOURTH DEGREE.

**in violation of:**

| Original Charge | 1) **2C:21-17A(4)** | 2) | 3) |
|---|---|---|---|
| Amended Charge | | | |

## CERTIFICATION:

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, Iam subject to punishment

Signed: _____  **DET. T   TAFFIN** _____  Date: **10/28/2022**

The complaining witness is a law enforcement officer and a judicial probable cause determination is not required prior to the issuance of this Complaint-Summons.

**SUMMONS**
YOU ARE HEREBY SUMMONED to appear before the        Superior Court        in the county of:   MORRIS
at the following address:  MORRIS SUPERIOR COURT
WASHINGTON & COURT STREETS        P.O. BOX 910        **MORRISTOWN**        **NJ** 07963-0910
If you fail to appear on the date and at the time stated below, a warrant may be issued for your arrest.
Date of Arrest:   **10/28/2022**   Appearance Date:   **11/16/2022**   Time: **11:30AM**   Phone: **862-397-5700**
Signature of Person Issuing Summons: _____  **DET. T    TAFFIN** _____  Date: **10/28/2022**

| ❏ **Domestic Violence – Confidential** | ❏ **Related Traffic Tickets or Other Complaints** | ❏ **Serious Personal Injury/ Death Involved** |
|---|---|---|

**Special conditions of release:**
❏  **No phone, mail or other personal contact w/victim**
❏  **No possession firearms/weapons**
❏  **Other** (specify):

**COMPLAINT - SUMMONS (DEFENDANT'S COPY)**

NJ/CDR1 1/1/2017

# RETURN OF SERVICE INFORMATION

| COMPLAINT NUMBER | | | |
|---|---|---|---|
| **1435** | **S** | **2022** | **000132** |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

*THE STATE OF NEW JERSEY*
*VS.*
**KRISTEN M AMABILE**

ROCKAWAY TWP MUNICIPAL COURT
65 MT HOPE RD
ROCKAWAY            NJ  07866-0000
973-627-9000  COUNTY OF: **MORRIS**

ADDRESS :
  **61 NICOLE DR**

**DENVILLE            NJ  07834-0000**

| # of CHARGES | CO-DEFTS | POLICE CASE #: |
|---|---|---|
| 1 | | 2022-23241 |

DEFENDANT INFORMATION
SEX: **F**  EYE COLOR: **BROWN**    DOB: 12/11/1979
DRIVER'S LIC. #. A57004377462792        DL STATE:  **NJ**
SOCIAL SECURITY # xxx-xx-x377    SBI #: 688010H
TELEPHONE #: 973-886-3827  (C)
LIVESCAN PCN #: 143501007548

COMPLAINANT NAME: **DET. T    TAFFIN**
65 MOUNT HOPE RD
ATTN WARRANTS
ROCKAWAY            NJ  07866

By certification or on oath, the complainant says that to the best of his/her knowledge, information and belief the named defendant on or about 08/23/2022 in            ROCKAWAY TWP            ,   MORRIS   County, NJ  did:
WITHIN THE JURISDICTION OF THIS COURT, DID OBTAIN ANY PERSONAL IDENTIFYING INFORMATION PERTAINING TO ANOTHER PERSON AND USE THAT INFORMATION, IN ORDER TO ASSUME THE IDENTITY OF OR REPRESENT HIMSELF AS ANOTHER PERSON, WITHOUT THAT PERSON'S AUTHORIZATION AND WITH THE PURPOSE TO FRAUDULENTLY OBTAIN OR ATTEMPT TO OBTAIN A BENEFIT OR SERVICES, OR AVOID THE PAYMENT OF DEBT OR OTHER LEGAL OBLIGATION BY USING THE NAME OF THE OTHER PERSON; SPECIFICALLY BY OBTAINING 5 PRESCRIPTION PILL BOTTLES (AMPHETAMINE ASPARTATE X3, DEXTROAMPHETAMINE X 1, & ALPRAZOLAM X1) WITH THE IDENTITY OF THE VICTIM K.A. AT THE RANDOLPH PHARMACY LOCATED AT 124 ROUTE 10 IN RANDOLPH NJ DURING THE TIME PERIOD OF JULY 2021 THROUGH AUGUST 2022 IN VIOLATION OF N.J.S.A. 2C:21-17A(4) IMPERSONATION, A CRIME OF THE FOURTH DEGREE.

**in violation of:**

| Original Charge | 1) **2C:21-17A(4)** | 2) | 3) |
|---|---|---|---|

| Check √ | **Certification by Police Regarding Complaint-Summons** |
|---|---|
| ✔ | I certify that I served the complaint-summons by delivering a copy to the defendant personally. |
| | I certify that I personally served the complaint-summons by leaving a copy at the defendant's usual place of abode with a competent member of the  household of the age 14 or over _____ Name of family member over 14 years of age |
| | I certify that I mailed a copy of the complaint-summons by ordinary mail to the defendant at his or her last known address. _____ Defendant's last known address |
| | I certify that I served the complaint-summons by delivering a copy to a person authorized to receive service of process on the defendant's behalf. _____ Name and title of authorized person |
| | Other manner of service: I certify that I served the complaint-summons in the following manner:  _____ |
| | I certify that I was unable to serve the complaint-summons. |

Signed: **DET. T  TAFFIN ROCKAWAY TWP POLICE DEPT**    Date of Action: _____ 10/28/2022 _____
Name, Title and Department of Officer

## RETURN OF SERVICE INFORMATION

**Page 4  of 7**

NJ/CDR1 1/1/2017

# Affidavit of Probable Cause

| COMPLAINT NUMBER | | | |
|---|---|---|---|
| **1435** | **S** | **2022** | **000132** |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

**ROCKAWAY TWP MUNICIPAL COURT**
**65 MT HOPE RD**
**ROCKAWAY            NJ   07866-0000**
**973-627-9000**   COUNTY OF: **MORRIS**

| # of CHARGES | CO-DEFTS | POLICE CASE #: |
|---|---|---|
| 1 | | 2022-23241 |

COMPLAINANT **DET. T    TAFFIN**
NAME:   **65 MOUNT HOPE RD**
        **ATTN WARRANTS**
        **ROCKAWAY            NJ   07866**

## *THE STATE OF NEW JERSEY*
## *VS.*
### **KRISTEN M AMABILE**

ADDRESS :
   **61 NICOLE DR**

   **DENVILLE            NJ  07834-0000**

DEFENDANT INFORMATION
SEX: **F** EYE COLOR: **BROWN**      DOB: **12/11/1979**
DRIVER'S LIC. #. **A57004377462792**              DL STATE: **NJ**
SOCIAL SECURITY #: **xxx-xx-x377**    SBI #: **688010H**
TELEPHONE #: **973-886-3827   ( C)**
LIVESCAN PCN #: **143501007548**

Purpose: This Affidavit/Certification is to more fully describe the facts of the alleged offense so that a judge or authorized judicial officer may determine probable cause.

1. Description of relevant facts and circumstances which support probable cause that (1) the offense(s) was committed <u>and</u> (2) the defendant is the one who committed it:
On September 28, 2022 Denville Police Department Officers responded to 61 Nicole Drive in Denville NJ.  Denville PD met with defendant and family members on scene.  Family members on scene provided numerous prescription pill bottles made out to several other unknown people.  Through their investigation, it was determined that defendant utilized victim K.A.'s personal information to fraudulently obtain prescriptions from Dr. Jacob Leivent out of Brooklyn NY.  Defendant's phone number was utilized to contact Dr. Leivent to request prescriptions to be filled at Randolph Pharmacy.  An unknown female who identified herself as the victim K.A. called Randolph Pharmacy to allow a "driver" to pick up the prescriptions, and a white BMW sedan was observed picking up the prescriptions at the drive through pharmacy window.  A white BMW sedan is registered to defendant and is parked at 61 Nicole Drive in Denville NJ.  The prescription pill bottle with victim's name on it, and the address of 61 Nicole Drive in Denville was recovered by Denville Police Department.  Victim was a client of defendant's at a law firm, Fox Rothchild Law Firm in Morristown NJ which confirmed that defendant had access to victim and other clients personal identifying information.

**Affidavit of Probable Cause**

1/1/2017

# Affidavit of Probable Cause

| COMPLAINT NUMBER | | | |
|---|---|---|---|
| **1435** | **S** | **2022** | **000132** |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

*THE STATE OF NEW JERSEY*
*VS.*
**KRISTEN M AMABILE**

2. I am aware of the facts above because: (Included, but not limited to: your observations,statements of eyewitnesses, defendant's admission, etc.)

3. If victim was injured, provide the extent of the injury:

**N/A.**

Certification:
I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Signed: ___DET. T  TAFFIN LAW ENFORCEMENT OFFICER___      Date: ___**10/28/2022**___

Affidavit of Probable Cause

1/1/2017

# Preliminary Law Enforcement Incident Report

| **COMPLAINT NUMBER** | | | |
|---|---|---|---|
| **1435** | **S** | **2022** | **000132** |
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. |

*THE STATE OF NEW JERSEY*
*VS.*
**KRISTEN M AMABILE**

ROCKAWAY TWP MUNICIPAL COURT
65 MT HOPE RD
ROCKAWAY              NJ  07866-0000
973-627-9000  COUNTY OF: MORRIS

ADDRESS:
**61 NICOLE DR**

**DENVILLE**                **NJ  07834-0000**

| # of CHARGES | CO-DEFTS | POLICE CASE #: |
|---|---|---|
| 1 | | 2022-23241 |

DEFENDANT INFORMATION
SEX: **F**  EYE COLOR: **BROWN**        DOB: **12/11/1979**
DRIVER'S LIC. #: **A57004377462792**          DL STATE:   **NJ**
SOCIAL SECURITY #: **xxx-xx-x377**   SBI #: **688010H**
TELEPHONE #: **973-886-3827**  (**C**)
LIVESCAN PCN #: **143501007548**

COMPLAINANT
NAME:
**DET. T      TAFFIN**
**65 MOUNT HOPE RD**
**ATTN WARRANTS**
**ROCKAWAY              NJ  07866**

**Purpose:** The Preliminary Law Enforcement Incident Report (PLEIR) is intended to document basic information known to the officer at the time of its preparation.  It is recognized that additional relevant information will emerge as an investigation continues.  The PLEIR shall be in addition to, not in lieu of, any regular police arrest, incident, or investigation reports. Note that the PLEIR is specific to each defendant charged in an investigation.

```
-The defendant was known to the victim as:
    •Other/Explain Client

-Physical evidence was seized/recovered:
    •CDS:
            *Prescription Drugs

-The complaining officer/agency have reason to believe that the defendant is drug-dependent. Basis were:
    •Information from family/friends

-The case involves CDS and the evidence was recovered via:
    •Other/Explain Recovered by Denville PD
```

Certification:
I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Signed: _____ **DET. T      TAFFIN LAW ENFORCEMENT OFFICER** _____   Date: _____ **10/28/2022** _____

| | **Preliminary Law Enforcement Incident Report** |
|---|---|
| | **Page 7  of 7** |

7/20/2018

# Attachment # C

Dominick Bratti, Esq. (016541987)
BRATTI GREENAN LLC
1040 Broad Street, Suite 104
Shrewsbury, NJ  07702
(732) 852-2711
Attorneys for Defendant,
Kristen M. Amabile

| | |
|---|---|
| ALKA BAHAL<br><br>     Plaintiff,<br><br>  v.<br><br>KRISTEN M. AMABILE<br><br>     Defendant,<br>  v.<br><br>ALKA BAHAL, FOX ROTHSCHILD, LLP,<br>CATHERINE WADHWANI, ALI BRODIE,<br>BRIAN FREY and JOHN and JANE DOES 1-<br>10,<br><br>    Counterclaim Defendant and<br>    Third Party Defendants | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MORRIS COUNTY<br>DOCKET NO. MRS-L-001117-22<br><br>Civil Action<br><br><br>**ANSWER, AFFIRMATIVE DEFENSES,<br>COUNTERCLAIM AND<br>THIRD PARTY COMPLAINT<br>OF DEFENDANT KRISTEN AMABILE** |

Defendant Kristen M. Amabile ("Defendant") states in Answer to Plaintiff's Complaint as follows:

## AS TO THE PARTIES

1.  Defendant admits the allegations contained in Paragraph 1 of the Complaint.

2.  Defendant denies the allegations contained in Paragraph 2 of the Complaint except to admit that Defendant was employed by Plaintiff and worked for Plaintiff and at the law firm of Fox Rothschild, LLP of which Plaintiff is an equity partner/owner.

3.      Defendant denies the allegations contained in Paragraph 3 of the Complaint except to admit that Plaintiff authorized Defendant to use credit cards for expenses incurred by Plaintiff, Defendant and/or Fox Rothschild, LLP.

4.      Defendant admits the allegations contained in Paragraph 4 of the Complaint.

5.      Defendant denies the allegations contained in Paragraph 5 of the Complaint.

6.      Defendant denies the allegations contained in Paragraph 6 of the Complaint.

7.      Defendant denies the allegations contained in Paragraph 7 of the Complaint.

8.      Defendant denies the allegations contained in Paragraph 8 of the Complaint.

9.      Defendant denies the allegations contained in Paragraph 9 of the Complaint.

10.     Defendant denies the allegations contained in Paragraph 10 of the Complaint.

11.     Defendant denies the allegations contained in Paragraph 11 of the Complaint.

12.     Defendant denies the allegations contained in Paragraph 12 of the Complaint.

## AS TO COUNT I

13.     Defendant repeats and realleges each of its responses to Paragraphs 1 through 13 of the Complaint as if set forth at length herein.

14.     Defendant denies the allegations contained in Paragraph 14 of the Complaint.

15.     Defendant denies the allegations contained in Paragraph 15 of the Complaint.

16.    Defendant denies the allegations contained in Paragraph 16 of the Complaint.

17.    Defendant denies the allegations contained in Paragraph 17 of the Complaint.

**WHEREFORE,** Defendant requests judgment dismissing the Complaint against her with prejudice, together with her attorneys' fees and costs of suit.

## AS TO COUNT II

18.    Defendant repeats and realleges each of its responses to Paragraphs 1 through 17 of the Complaint as if set forth at length herein.

19.    Defendant denies the allegations contained in Paragraph 19 of the Complaint.

20.    Defendant denies the allegations contained in Paragraph 20 of the Complaint.

21.    Defendant denies the allegations contained in Paragraph 21 of the Complaint.

**WHEREFORE,** Defendant requests judgment dismissing the Complaint against her with prejudice, together with its attorneys' fees and costs of suit.

## AS TO COUNT III

22.    Defendant repeats and realleges each of its responses to Paragraphs 1 through 21 of the Complaint as if set forth at length herein.

23.     Defendant denies the allegations contained in Paragraph 23 of the Complaint.

24.     Defendant denies the allegations contained in Paragraph 24 of the Complaint.

25.     Defendant denies the allegations contained in Paragraph 25 of the Complaint.

26.     Defendant denies the allegations contained in Paragraph 26 of the Complaint.

27.     Defendant denies the allegations contained in Paragraph 27 of the Complaint.

**WHEREFORE,** Defendant requests judgment dismissing the Complaint against her with prejudice, together with its attorneys' fees and costs of suit.

## AS TO COUNT IV

28.     Defendant repeats and realleges each of its responses to Paragraphs 1 through 27 of the Complaint as if set forth at length herein.

29.     Defendant denies the allegations contained in Paragraph 29 of the Complaint.

30.     Defendant denies the allegations contained in Paragraph 30 of the Complaint.

**WHEREFORE,** Defendant requests judgment dismissing the Complaint against her with prejudice, together with her attorneys' fees and costs of suit.

## AS TO COUNT V

31.     Defendant repeats and realleges each of its responses to Paragraphs 1 through 30 of the Complaint as if set forth at length herein.

32.     Defendant denies the allegations contained in Paragraph 32 of the Complaint.

33.     Defendant denies the allegations contained in Paragraph 33 of the Complaint.

34.     Defendant denies the allegations contained in Paragraph 34 of the Complaint.

35.     Defendant denies the allegations contained in Paragraph 35 of the Complaint.

36.     Defendant denies the allegations contained in Paragraph 36 of the Complaint.

37.     Defendant denies the allegations contained in Paragraph 37 of the Complaint.

38.     Defendant denies the allegations contained in Paragraph 38 of the Complaint.

39.     Defendant denies the allegations contained in Paragraph 39 of the Complaint.

**WHEREFORE,** Defendant requests judgment dismissing the Complaint against her with prejudice, together with her attorneys' fees and costs of suit.

## AS TO COUNT VI

40.     Defendant repeats and realleges each of its responses to Paragraphs 1 through 39 of the Complaint as if set forth at length herein.

41.     Defendant denies the allegations contained in Paragraph 41 of the Complaint.

42.     Defendant denies the allegations contained in Paragraph 42 of the Complaint.

43.     Defendant denies the allegations contained in Paragraph 43 of the Complaint.

44.     Defendant denies the allegations contained in Paragraph 44 of the Complaint.

45.     Defendant denies the allegations contained in Paragraph 45 of the Complaint.

**WHEREFORE,** Defendant requests judgment dismissing the Complaint against her with prejudice, together with her attorneys' fees and costs of suit.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which an award of punitive damages can be granted.

### THIRD AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which an award of attorneys' fees can be granted.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff has waived any claim she may have, which is denied, to seek relief against Defendants.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff is estopped and barred by her own conduct from recovering any relief.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims, or the damages she may recover, are barred or at least reduced by her failure to mitigate damages.

### SEVENTH AFFIRMATIVE DEFENSE

This court lacks subject matter jurisdiction.

### EIGHTH AFFIRMATIVE DEFENSE

The Complaint and/or individual claims contained therein is/are barred by the applicable statutes of limitation.

### NINTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part by Plaintiff's own contributory and/or comparative fault.

### TENTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part by the doctrine of laches.

### ELEVENTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part by the defense of accord and satisfaction.

### TWELFTH AFFIRMATIVE DEFENSE

The only contract between Plaintiff and Defendant was a Settlement Agreement resolving all claims between the parties which Plaintiff breached by filing the instant lawsuit.

### THIRTEETH AFFIRMATIVE DEFENSE

The Complaint is barred by the insufficiency of process and/or insufficiency of service of process.

### FOURTEETH AFFIRMATIVE DEFENSE

Defendant did not owe any fiduciary or other duty to Plaintiff.  To the extent that any such duty was owed by Defendant, which is denied, Defendant fulfilled such duty.

### FIFTEENTH AFFIRMATIVE DEFENSE

The allegations contained in Plaintiff's Complaint constitute frivolous claims and Defendant reserves her right to seek appropriate relief regarding same.

**WHEREFORE,** Defendant requests judgment dismissing the Complaint against her with prejudice, together with her attorneys' fees and costs of suit.

## COUNTERCLAIM AND THIRD PARTY COMPLAINT

Defendant/Counterclaimant, Kristen M. Amabile ("Defendant" or "Amabile"), by way of Counterclaim against Plaintiff Alka Bahal ("Plaintiff") and Third Party Complaint against Third Party Defendants Fox Rothschild, LLP ("Fox Rothschild" "Third Party Defendant Fox Rothschild" or the "Firm"), Catherine Wadhwani ("Third Party Defendant Wadhwani" or "Wadhwani"), Ali Brodie ("Brodie" or "Third Party Defendant Brodie") and Brian Frey ("Frey" or "Third Party Defendant Frey") collectively hereinafter ("Third Party Defendants") states as follows:

## THE PARTIES

1.      Defendant/Counterclaimant, Kristen Amabile is a resident of the State of New Jersey and resides at 61 Nicole Drive, Denville, New Jersey.

2.      Plaintiff Alka Bahal is a resident of the State of New Jersey residing at 9 Sheldon Court, East Hanover, New Jersey.

3.      Third Party Defendant Fox Rothschild is a Limited Liability Partnership doing business in New Jersey with an office located at 49 Market Street, Morristown, New Jersey.

4.      Plaintiff Alka Bahal is an equity partner/shareholder/owner of Fox Rothschild and one of three Co-Chairs of the firm's immigration practice.

5.      Third Party Defendant Catherine Wadhwani ("Third Party Defendant Wadhwani" or "Wadhwani") is a partner of Fox Rothschild and one of three Co-Chairs of the Firm's immigration practice.

6.      Third Party Defendant Ali Brodie ("Brodie" or "Third Party Defendant Brody") is a partner of Fox Rothschild and one of three Co-Chairs of the Firm's immigration practice.

7.      Third Party Defendant Brian Frey ("Frey" or "Third Party Defendant Frey")

is a resident of the State of New Jersey, residing at 9 Sheldon Court, East Hanover, New Jersey.

**STATEMENT OF FACTS**

8.      Amabile is a former employee of Fox Rothschild.

9.      Prior to the termination of her employment, Amabile had been employed by

Fox Rothschild or its predecessor in interest for approximately twenty two (22) years.

10.      Amabile began working as a receptionist for the law firm of Grotta,

Glassman and Hoffman in or about 2000.

11.      In or about 2006, Grotta, Glassman and Hoffman merged with Third Party

Defendant Fox Rothschild.

12.      Throughout her employment, Amabile's work performance was exemplary.

13.      Throughout her employment, Amabile was promoted a number of times.

14.      At the time of her termination, Amabile held the position of Practice Group

Administrator for the Firm's Immigration Group.

15.      Prior to engaging in the protected conduct set forth herein, Amabile was

never subject to any disciplinary action by Fox Rothschild.

16.      Prior to engaging in the protected conduct set forth herein, Amabile never

received any written disciplinary action.

17.      Prior to engaging in the protected conduct set forth herein, Amabile never

received a negative employee evaluation.

18.      During her employment, Amabile reported almost exclusively to Plaintiff.

19.      Plaintiff was almost exclusively responsible for training Ms. Amabile as an

immigration paralegal.

20.     From the time Amabile started reporting to Plaintiff, Plaintiff made clear to Amabile that any disloyalty to Bahal would result in Amabile's termination.

21.     It was also made clear that Fox Rothschild's management personnel, including but not limited to senior members of the firm's Human Resources Department, sided with Plaintiff and that any complaints lodged against Plaintiff would be futile.

22.     This message was reinforced over the years by the number of paralegals and other support staff who were terminated by Plaintiff (or at her direction) and the circumstances under which they were terminated.

23.     Amabile also witnessed Plaintiff fabricating reasons for the termination of employees and fabricating and/or manipulating documentary evidence to justify said terminations.

24.     Plaintiff would also blame staff and others for mistakes she made so that she could avoid any negative repercussions.

25.     Throughout Amabile's employment, Plaintiff claimed to be Amabile's best friend and was friendly with Amabile's family members, including Amabile's mother.

26.     Fox Rothschild's Immigration Department was led by three co-chairs.

27.     Plaintiff was one of the three co-chairs of Fox Rothschild's Immigration Department.

28.     In or about 2018, Amabile was advised that she would be promoted to the position of Practice Group Administrator for the Firm's Immigration Department.

29.     Amabile was also advised that her compensation would be increased commensurate with the promotion.

30.     In or about 2019, a harassment complaint was lodged by Ali Brodie against one of the Co-Chairs of Fox Rothschild's Immigration Department, Third Party Defendant Wadhwani, in accordance with Fox Rothschild's anti-bullying policy.

31.     In conjunction with the investigation of the harassment complaint, Plaintiff required Amabile to surreptitiously gather information related to the harassment complaint and to provide the information she gathered to Fox Rothschild.

32.     Plaintiff directed Amabile to surreptitiously interview paralegals who reported to Catherine Wadhwani regarding Wadhwani's treatment of them.

33.     Plaintiff's directions to Amabile were witnessed by other Fox Rothschild employees.

34.     Amabile complied with Plaintiff's direction.

35.     In or about 2019, Amabile spoke with Fox Rothschild's General Counsel's office and participated in the investigation being conducted as to the harassment complaint.

36.     Amabile's participation in the harassment investigation was protected conduct under the law.

37.     As a result of Amabile's participation in the harassment investigation, Amabile was retaliated against and subject to a hostile work environment by Fox Rothschild.

38.     In or about 2020, Amabile also complained about, objected to and/or refused to participate in conduct by Fox Rothschild and/or its attorneys, including but not limited to Plaintiff's conduct, which she reasonably believed to be illegal, unethical and/or improper contrary to public policy.

39.     In or about 2020, Defendant Amabile reasonably believed that Fox Rothschild's handling of an I-9 audit for a client (hereinafter referred to as "WP" or "Client #1")

was improper, contrary to public policy and in violation of applicable federal law, rules and/or regulations.

40.    Defendant Amabile objected to such conduct.

41.    Amabile advised Plaintiff that she believed Fox Rothschild's handling of the I-9 audit for Client #1 was improper and violated applicable federal law, rules and/or regulations.

42.    The I-9 audit in question was overseen by Fox Rothschild attorney Third Party Defendant Brodie.

43.    Amabile advised Plaintiff of the impropriety regarding the I-9 audit of Client #1 because Plaintiff was a Co-Chair of the Immigration Department.

44.    Rather than addressing the issue as a principal of Fox Rothschild (and a Co-Chair of the Immigration Department), Plaintiff required Amabile to send a watered down version of her complaint via e-mail to Third Party Defendant Brodie who was responsible for WP's I-9 audit and the improper conduct with respect to said audit.

45.    Plaintiff insisted upon reading and editing the e-mail prior to Amabile sending it.

46.    Following Amabile's e-mailed complaint, Fox Rothschild's retaliation against Amabile increased, and Amabile's workplace became even more hostile.

47.    Following her complaint regarding the I-9 audit of Client #1, Amabile received the first and only written disciplinary warning of her of career at Fox Rothschild.

48.    Following her complaint regarding the I-9 audit of Client #1, Amabile received the first and only negative employment evaluation of her of career at Fox Rothschild.

49.     Following Amabile's e-mailed complaint, Fox Rothschild increased Plaintiff's workload to an extent that made it difficult for her to keep up with the assigned work.

50.     Thereafter, Plaintiff and other Fox Rothschild attorneys/employees continued to violate applicable law and public policy with regard to an I-9 audit performed by Fox Rothschild as to another client (hereinafter referred to as "EH" or "Client #2").

51.     Plaintiff was herself directly responsible for and involved in the I-9 audit for Client #2.

52.     Once again, Amabile complained directly to Plaintiff that Fox Rothschild's conduct with respect to the I-9 audit for Client #2 was improper, contrary to public policy and violated applicable federal law and/or rules and regulations.

53.     In particular, Amabile complained about specific conduct by Fox Rothschild which she reasonably believed to be improper and/or illegal.

54.     No remedial action was taken by Plaintiff and/or Fox Rothschild with regard to the I-9 Audits as to WP and/or EH.

55.     Plaintiff admitted on a number of occasions that Fox Rothschild was retaliating against Amabile.

56.     In particular, Plaintiff told Amabile that Ali Brodie/Fox Rothschild were retaliating against Amabile due to her complaint regarding  Client #1's I-9 audit.

57.     Thereafter, Plaintiff repeated numerous times that Ms. Brodie/Fox Rothschild was retaliating against Amabile.

58.     Plaintiff prompted Amabile on a number of occasions to file suit against Fox Rothschild/Brodie regarding the retaliation.

59.     Plaintiff also directed Amabile to lodge an anonymous false complaint with the Internal Revenue Service and the employer of Ms. Brodie's husband (Gregg) accusing him of financial improprieties.

60.     Amabile knew the assertion of a false complaint was illegal and improper.

61.     Amabile objected to and refused to participate in such conduct.

62.     Initially, Amabile attempted to avoid following Plaintiff's direction without having Plaintiff retaliate against her by stating that she could not make a false complaint as directed because she was afraid the call because would be traced back to her.

63.     In response to Amabile's objection, Plaintiff bought her an allegedly untraceable "burner phone" and again director Amabile to make the anonymous complaint.

64.     Amabile again refused to make the call.

65.     In hindsight, Amabile believes that Plaintiff was prompting her to take certain actions set forth above, including but not limited to, suing Fox Rothschild and/or Ali Brodie and making false allegations about Brodie's husband so as to negatively affect Ms. Bahal's rivals (the other two co-chairs of the Immigration Department) and/or to put an even bigger target on Amabile's back.

66.     Plaintiff had a practice of failing to reimburse Fox Rothschild clients for overpayments made by said clients.

67.     Instead of reimbursing overpayments made by clients, Plaintiff would retain the payment and create bogus invoices at or near the end of the billing year for a flat fee amount equal to the amount of the overpayments.

68.     The zero balance invoice would not be sent to the client, but the funds being held by Plaintiff/Fox Rothschild would be applied to the fictitious/fraudulent invoices.

69.   Plaintiff and Third Party Defendant Fox Rothschild were the sole beneficiaries of the fraudulent invoicing scheme.

70.   The result of the improper practice was to inflate Plaintiff's client originations/provide more revenue for Fox Rothschild thereby making Plaintiff eligible for an even larger year-end bonus and more equity shares.

71.   Plaintiff advised Defendant Amabile that this was standard practice at Fox Rothschild.

72.   Plaintiff also had a practice of obtaining reimbursement for fraudulent expenses.

73.   Under Fox Rothschild's policy, certain attorneys are permitted to write off client expenses (costs/disbursements) up to a certain dollar amount ("write off authority").

74.   Plaintiff was one of the individuals with such write off authority.

75.   Amabile did not have such write off authority and gained no benefit from the fraudulent practice.

76.   Plaintiff used her write off authority to charge her personal expenses to Fox Rothschild clients, obtain reimbursement from Fox Rothschild for the expenditures and then write off the expenses so the clients would not see the fraudulent expense entries.

77.   Because of Plaintiff's comments and prior conduct, Amabile knew that any complaint regarding Bahal's conduct would be futile.

78.   Although Amabile continued to believe that any formal complaint regarding Plaintiff would be futile, she decided that as Practice Group Administrator, she could no longer turn a blind eye to unethical and improper conduct by Plaintiff.

79.   Amabile refused to participate in the fraudulent invoice scheme.

80.    Amabile refused to participate in the fraudulent expense scheme.

81.    During the last year to eighteen months of her employment, Amabile ceased reviewing or having anything to do with the creation or review of any invoices whatsoever.

82.    Amabile also requested of Fox's Human Resources Department that she be transferred to another Fox Rothschild location so as to avoid being involved with Plaintiff's improper and harassing behavior of Plaintiff.

83.    The request was denied.

84.    The transfer request was also reported back to Plaintiff, which had the foreseeable effect of increasing Plaintiff's hostility and retaliatory conduct towards Amabile.

85.    Members of Fox Rothschild clearly knew or should have known of Plaintiff's misconduct.

86.    To date, Fox Rothschild has still not taken any disciplinary action against Plaintiff with regard to such misconduct.

87.    As a result of the protected activity set forth above, Plaintiff and Fox Rothschild, through its attorneys and other employees, relentlessly retaliated against Plaintiff.

88.    Amabile was given unreasonable work assignmnet/deadlines.

89.    Fox Rothschild set unreasonable deadlines for the completion of Plaintiff's work.

90.    There was no business justification for the short deadlines imposed upon Amabile.

91.    Although Amabile was required to provide care and comfort to her family members while her aunt was in hospice care, Fox Rothschild denied Amabile's reasonable requests for short extensions of time and/or more realistic deadlines.

92.     Fox Rothschild's purported reasons for denying the requested extensions were false.

93.     Fox Rothschild's purported reasons for denying the requested extensions were a pre-text for retaliation.

94.     Amabile was required to work longer hours.

95.     Although Amabile rose to the challenge and billed substantially more hours (and made more money for Plaintiff and Fox Rothschild), her compensation decreased.

96.     Despite Amabile's increased productivity and billable hours, Fox failed to pay any Amabile year-end bonus.

97.     Amabile was banned from being physically present at Fox Rothschild's offices.

98.     Although Fox Rothschild claimed that Amabile was precluded from physically reporting to work as a health and safety measure, it still required Plaintiff to meet with clients in person at offsite locations.

99.     Although Plaintiff and other members of Fox Rothschild's management were aware that Amabile was required to provide care and comfort to her family members while her aunt was in hospice care due to a terminal illness, Fox Rothschild failed to advise Amabile of her right to take family leave under the New Jersey Family Leave Act prior to the termination of Amabile's employment.

100.    Only following the termination of Amabile's employment, did Third Party Defendant Brodie tell Amabile that she could have/should have taken family and medical leave during her aunt's terminal illness.

101.    Third Party Defendant Brian Frey is Plaintiff's husband.

102.    Frey is not an employee of Fox Rothschild.

103.    On or about January 19, 2022, Frey advised Defendant via a telephone call that Fox Rothschild was out to get her, was terminating her employment, and suggested that she sue the Firm.

104.    Thereafter, Amabile spoke with Plaintiff who confirmed that Amabile would be getting a call from Fox Rothschild to officially terminate her.

105.    When Amabile asked why she was being terminated, Plaintiff again told Amabile that Fox Rothschild/Ali Brodie were retaliating against her due to her complaint about the I-9 audit for Client #1 and that was what got her terminated.

106.    During the telephone call with Plaintiff, Amabile asked Plaintiff what she should do.

107.    Plaintiff advised Amabile to cry and ask a lot of questions.

108.    During the telephone call, Plaintiff said that the termination was improper, that she would help Amabile and was on her side.

109.    Contrary to her comments, Plaintiff actively instigated and/or facilitated the retaliatory termination of Amabile's employment.

110.    Amabile participated in a telephone call on January 24, 2022 with representatives of Fox Rothschild's Human Resources Department and was advised that her employment was being terminated.

111.    One of the Fox Rothschild's employee's on the call was Ms. Elizabeth Kryst.

112.    During the telephone call, Amabile asked why she was being terminated.

113. Ms. Kryst stated only that Amabile was being terminated for "a combination of things," including the Firm's investigation regarding Amabile's health and vaccine status.

114. When asked what other factors were allegedly considered, Ms. Kryst refused to answer.

115. Thereafter, when Amabile questioned, through legal counsel, why her employment was being terminated, Fox Rothschild's General Counsel, Thomas Paradise, responded that he did not know the reason but denied that Amabile's health/vaccine status had anything to do with her termination.

116. To date, and except as set forth in the above paragraphs, Amabile has not been advised why her employment was terminated.

117. Subsequent to Amabile's termination, Plaintiff began repeatedly calling Amabile and sending her offensive text messages.

118. At the time of her termination, Amabile had been working remotely and was in possession of certain property belonging to Fox Rothschild.

119. At the time of her termination, Amabile had been working remotely and Fox Rothschild was in possession of certain property belonging to Defendant Amabile which had been left in Amabile's office.

120. In conjunction with her termination, Amabile was advised by Fox Rothschild's Human Resources Department to coordinate the exchange of her personal property and Firm's property with the Firm's Office Administrator, Ms. Elli Albert.

121. These instructions were consistent with Fox Rothschild's usual practice regarding the exchange of property following a termination of employment.

122.    Amabile attempted to coordinate the exchange of property with Ms. Albert as she had been directed.

123.    Ms. Albert failed to cooperate with Amabile in the exchange of property in accordance with Fox Rothschild's usual practice.

124.    Instead, Plaintiff and Third Party Defendant Frey repeatedly attempted to contact Amabile via phone, text and in person.

125.    Amabile complained that Plaintiff was attempting to harass, bully and intimidate her.

126.    By e-mail dated January 27, 2022, Amabile reported Plaintiff's conduct to Ms. Albert.

127.    Amabile also advised Ms. Albert that given Plaintiff's conduct, she was "extremely uncomfortable" dealing with Plaintiff or Frey directly.

128.    In her January 27, 2022 e-mail, Amabile repeated that she was advised by Fox Rothschild to deal with Albert regarding the return of property/exchange of her belongings, and she requested that the Firm's original instructions regarding the exchange of property be followed.

129.    Amabile also specifically advised Albert that she was not comfortable with Plaintiff's plan to send her husband (Third Party Defendant Brian Frey) to her house to collect/deliver property.

130.    Ms. Albert completely ignored Amabile's repeated pleas.

131.    Ms. Albert did not respond to Amabile's January 27, 2022 e-mail.

132.    Neither Ms. Albert nor anyone at Fox Rothschild took any action to investigate Amabile's complaint of post-employment harassment by Plaintiff or stop the improper conduct.

133.    Instead, Plaintiff and Mr. Frey were allowed to continue to harass Amabile.

134.    Plaintiff and Mr. Frey were also allowed by Fox Rothschild to take possession of Amabile's property, remove it from Fox Rothschild's offices and put it in their personal vehicle.

135.    On Monday, January 31, 2022, having had no response from Ms. Albert, Plaintiff again wrote to Ms. Albert stating that given the concerns expressed in her January 27th e-mail, she found this conduct to be completely inappropriate.

136.    Amabile also advised Ms. Albert that she did not want to be forced to have contact with Plaintiff and her husband.

137.    In her January 31, 2022, Amabile also requested that that Albert "Please contact (her/Amabile) regarding the exchange of property which can (and should) be done without Alka and her husband coming to my house."

138.    Albert did not respond to Amabile's January 31, 2022 e-mail.

139.    Neither Albert nor anyone at Fox Rothschild took any action to investigate the conduct of Plaintiff and Mr. Frey and/or to stop their improper conduct.

140.    Instead, via a text message on February 2, 2022, Ms. Albert again directed Amabile to deal directly with Plaintiff regarding the return of Amabile's personal property.

141.    Plaintiff became aware that Defendant Amabile had an opportunity for a position with US Immigration and Customs Enforcement ("ICE").

142.     Fox Rothschild's policy regarding communications with prospective employers of former employees is to only confirm the former employee's dates of employment and the positions held.

143.     This policy is standard practice followed by Fox Rothschild.

144.     The purpose of the policy is to avoid potential claims of defamation and/or tortious interference with a business opportunity by former employees.

145.     Immediately prior to, and again following Amabile's termination, Plaintiff asked Amabile if she would be pursuing the job opportunity with ICE.

146.     In response, Amabile stated that she would need to explore that opportunity as well as others.

147.     Thereafter, Plaintiff contacted the two ICE representatives with whom Amabile had communicated regarding the job opportunity and advised them that Amabile had been terminated by her/Fox Rothschild and that Plaintiff had ended her personal friendship with Amabile.

148.     There was no legitimate business reason for Plaintiff to make these unsolicited statements to Amabile's prospective employer.

149.     Plaintiff made the statements for the purpose of interfering with Amabile's employment opportunities and causing Defendant Amabile to suffer further damage and emotional distress.

150.     As a result of Plaintiff's conduct, Amabile was unable to continue to pursue a position with ICE.

151.     Amabile complained to Fox Rothschild that Plaintiff's comments to ICE were improper and contrary to Fox Rothschild's stated policy and usual practice.

152.    In response, Fox Rothschild's General Counsel, Thomas Paradise, stated that Plaintiff's statements about Amabile were truthful and that there was nothing improper about Plaintiff's statements.

153.    Fox Rothschild failed to take any action with regard to Plaintiff's comments about Amabile or to stop Plaintiff from making similar comments to others in the future.

154.    In February 2022, funeral services were held for Amabile's aunt.

155.    Plaintiff was aware of the date and time of the funeral services.

156.    Plaintiff texted Amabile's mother during the funeral service feigning to believe that Amabile's aunt was still alive.

157.    The foreseeable result of this was to cause Amabile's mother to question why Amabile's friend and boss did not know that her aunt had died.

158.    As a result of Plaintiff's actions, Amabile was required to tell her mother (on the day of her mother's sister's funeral) that she had been fired by Fox Rothschild.

159.    This caused both Amabile and her mother significant emotional distress.

160.    Amabile's employment with Fox Rothschild was terminated effective January 24, 2022.

161.    By letter dated February 2, 2022, Defendant, through legal counsel, asserted claims against Plaintiff and Fox Rothschild for, among other things, wrongful termination in violation of the Conscientious Employee Protection Act ("CEPA") and the New Jersey Law Against Discrimination ("NJLAD").

162.    In response to the letter, Fox Rothschild's General Counsel, Thomas Paradise, contacted counsel for Defendant, and settlement negotiations began.

163.     Mr. Paradise articulated potential counterclaims against Defendant on behalf of Plaintiff and Fox Rothschild.

164.     In particular, Mr. Paradise claimed that Defendant had improperly billed expenses both to Fox Rothschild and to a credit card held by Plaintiff.

165.     Thereafter, Fox Rothschild proposed to settle the dispute via an agreement by which Amabile would be paid a lump sum of One Hundred and Fifty Thousand Dollars ($150,000.00) in exchange for a mutual release of claims and Amabile's agreement to cooperate with Fox Rothschild's alleged investigation of financial discrepancies, alleged billing/expense improprieties and/or violations of Firm policy.

166.     Amabile accepted the terms proposed by Fox Rothschild

167.     Amabile's counsel confirmed Defendant's acceptance of the settlement via email to Thomas Paradise dated April 4, 2022.

168.     Counsel's email dated April 4, 2022 also confirmed the material terms of the settlement agreement.

169.     Counsel's e-mail of April 4, 2022 stated "Tom, This will confirm that following our conversation today, I spoke with me client and have authority to settle this matter on the terms that we discussed.  In particular, a lump sum payment of $150,000 and full mutual releases with a provision that Ms. Amabile will cooperate with Fox with regard to its investigation of financial discrepancies, alleged billing / expense improprieties and/or violations of firm policy."

170.     On April 11, 2022, Mr. Paradise called Amabile's counsel to advise that he wanted an opportunity to determine if Plaintiff wanted to participate in the mutual releases.

171.    During the April 11, 2022 telephone call, Mr. Paradise stated that regardless of what Plaintiff decided, the settlement agreement between Fox Rothschild and Amabile was confirmed.

172.    During the April 11, 2022 telephone call, Mr. Paradise stated several times that due to vacation/scheduling issues, he would not be able to get back to counsel for a week or so, but that the deal was confirmed.

173.    During the April 11, 2022 telephone call, Mr. Paradise stated "You will not hear from me for a week, but you can tell your client that she has a deal."

174.    By e-mail dated April 11, 2022, the settlement and the fact that Fox Rothschild would provide a proposed written agreement was again confirmed in writing.

175.    Amabile's counsel's April 11, 2022 e-mail to Mr. Paradise stated, "Tom, This will confirm our conversation today in which we agreed to settle this matter for a lump sum payment of $150,000 and full mutual releases with a provision that Ms. Amabile will cooperate with Fox with regard to its investigation of financial discrepancies, alleged billing / expense improprieties and/or violations of firm policy.  You will be providing a proposed agreement for review, but we understand that due to vacation/scheduling issues that will not occur this week."

176.    Mr. Paradise thereafter confirmed that he had authority to act on behalf of Plaintiff as well as Fox Rothschild.

177.    By e-mail dated April 22, 2022, Mr. Paradise advised "I just heard back from Alka Bahal that she wants to be a part of the mutual releases.  I will get you a draft agreement next week."

178.    On May 6, 2022, Mr. Paradise forwarded a settlement agreement to Amabile's legal counsel.

179.    The settlement agreement forwarded by Mr. Paradise identified Plaintiff and Fox Rothschild collectively as "Employer."

180.    On May 31, 2022, counsel for Plaintiff proposed certain language changes to the agreement and forwarded a redlined copy of the agreement to Mr. Paradise.

181.    On June 14, 2022, after not receiving any response from Mr. Paradise for two weeks, Amabile's counsel wrote to Mr. Paradise asking when the parties could expect to have an executed agreement.

182.    On June 22, 2022, Mr. Paradise called Amabile's counsel and stated that Plaintiff and Fox Rothschild would not proceed with the settlement because Fox Rothschild had learned that a subpoena was allegedly being issued regarding alleged conduct by Amabile.

183.    Defendant's counsel indicated that the parties had a deal and that Defendant would file a motion to enforce the agreement.

184.    Mr. Paradise became agitated and yelled that counsel could always do what he has to do, but added "Maybe we will take your client's deposition in jail."

185.    On June 24, 2022, Mr. Paradise called Defendant's counsel and left a message to "apologize for raising my voice and losing my temper."

186.    In the June 24, 2022 voice message, Mr. Paradise claimed that "it was a bad day for me, and I'm sure that it was not a great day for you."

187.    On or about June 29, 2022, Plaintiff filed a Complaint in the Superior Court of New Jersey, Law Division, Morris County, entitled Alka Bahal v. Kristen M. Amabile, Docket No. MRS-L-001117-22.

188.    Plaintiff's Complaint asserts claims based upon Plaintiff's ownership interest in Fox Rothschild, LLP and/or her status as an equity partner of Fox Rothschild.

## <u>COUNT I</u>

**(Declaratory Judgment That the Parties' Settlement Agreement is
Binding and Enforceable as to Plaintiff and Third Party Defendant Fox Rothschild)**

189.    Defendant repeats and realleges each and every allegation contained in
Paragraphs 1 through 188 of this Counterclaim and Third Party Complaint as if fully set forth
herein.

190.    Defendant reached a settlement agreement with Third Party Defendant Fox
Rothschild.

191.    The material terms of the settlement were that Defendant would be paid a
lump sum payment of $150,000.00; that the parties would execute full mutual releases and that
Defendant would cooperate with Fox with regard to its investigation of financial discrepancies,
alleged billing/expense improprieties and/or violations of firm policy.

192.    The settlement agreement is/was binding upon Fox Rothschild.

193.    The settlement agreement is/was binding upon Fox Rothschild regardless
of whether Plaintiff also agreed to the material terms of the agreement.

194.    After Defendant and Fox Rothschild entered into the settlement agreement,
Plaintiff also agreed to become a party to the agreement.

**WHEREFORE**, Defendant requests that the Court enter judgment:

(a) Enforcing the settlement agreement between the parties;

(b) Entering Declaratory Judgment That the Parties' Settlement Agreement is
Binding and Enforceable;

(c) Awarding Plaintiff her reasonable attorneys' fees and costs incurred in
seeking enforcement of the settlement; and

(d) Granting Plaintiff such other and further relief as the Court deems just and proper.

## COUNT II

**(Breach of Contract as against Plaintiff and Third Party Defendant Fox Rothschild)**

195.    Defendant repeats and realleges each and every allegation contained in Paragraphs 1 through 194 of this Complaint as if fully set forth herein.

196.    Fox Rothschild has breached the settlement agreement which it entered into with Defendant.

197.    Plaintiff has breached the settlement agreement which she entered into with Defendant.

198.    As a direct and proximate result of beaches of agreement by Plaintiff and Third Party Defendant Fox Rothschild, Defendant has incurred damages.

**WHEREFORE**, cause having been shown, Defendant demands judgment against Plaintiff and Third Party Defendant Fox Rothschild and seeks the following relief:

(a)    compensatory damages;

(b)    consequential damages;

(c)    incidental damages;

(d)    interest; and

(e)    such other relief as the Court may deem equitable and just.

## COUNT III

**(Violation of the New Jersey Law Against Discrimination:  Unlawful Retaliation as against Plaintiff and Third Party Defendant Fox Rothschild)**

199.    Defendant repeats and realleges each and every allegation contained in Paragraphs 1 through 198 of this Counterclaim and Third Party Complaint as if fully set forth herein.

200.    Third Party Defendant Fox Rothschild is an employer under the New Jersey Law Against Discrimination, (the "NJLAD") N.J.S.A. 10:5-5(e).

201.    By and through the conduct described above, Plaintiff and Third Party Defendant Fox Rothschild retaliated against Defendant Amabile due to her participation in an investigation of alleged harassment by a Fox Rothschild in violation of the NJLAD, N.J.S.A. 10:5-1 et seq.

202.    As a result of Third Party Defendant Fox Rothschild's unlawful conduct, Defendant Amabile has suffered, and continues to suffer, economic losses, emotional distress, and other such damages compensable under the LAD.

203.    Third Party Defendants and Plaintiff's conduct constitutes actual participation in egregious behavior and/or willful indifference by upper management to such egregious conduct in violation of Defendant's rights, that is sufficient to subject Third Party Defendant Fox Rothschild to punitive damages under the LAD and Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 625 (1993).

**WHEREFORE,** Defendant Amabile demands judgment against Third Party Defendant Fox Rothschild for harm suffered as a result of the unlawful retaliation in violation of the NJLAD as follows:

    (a)    Full compensation for back pay, benefits and remuneration, with interest;

    (b)    Full compensation for front pay, benefits and other remuneration, with interest;

    (c)    Compensatory and consequential damages;

    (d)    Emotional distress damages;

    (e)    Punitive damages;

    (f)    Prejudgment and post-judgment interest;

    (g)    Reasonable attorneys' fees and costs, with appropriate enhancement pursuant to Rendine v. Pantzer, 141 N.J. 292 (1995); and

    (h)    Such other legal or equitable relief as the Court may deem just and proper.

## COUNT IV

**(Aiding and Abetting Liability as against Plaintiff and Third Party Defendants Brodie Wadhwani and Frey)**

204.    Defendant repeats and realleges each and every allegation contained in Paragraphs 1 through 203 of this Counterclaim and Third Party Complaint as if fully set forth herein.

205.    Plaintiff and Third Party Defendants Brody, Wadhwani and Frey engaged in conduct that aided and abetted Third-Party Defendant Fox Rothschild in its unlawful retaliation, termination and/or post-employment treatment of Defendant Amabile in violation of N.J.S.A. 10:5-12(e).

206.    As a result of the unlawful aiding and abetting by Plaintiff and Third Party Defendants Brodie, Wadhwani and Frey, Defendant Amabile has suffered damages.

**WHEREFORE**, Defendant Amabile demands judgment against Plaintiff Bahal and Third Party Defendants Brodie, Wadhwani and Frey for harm suffered as a result of retaliation against Defendant Amabile in violation of the NJLAD and the as follows:

(a)     Full compensation for back pay, benefits and remuneration, with interest;

(b)     Full compensation for front pay, benefits and other remuneration, with interest;

(c)     Compensatory and consequential damages;

(d)     Emotional Distress damages;

(e)     Punitive damages;

(f)     Prejudgment and post-judgment interest;

(g)     Reasonable attorneys' fees and costs, with appropriate enhancement pursuant to <u>Rendine v. Pantzer</u>, 141 N.J. 292 (1995); and

(h)     Such other legal or equitable relief as the Court may deem just and proper.

## <u>COUNT V</u>

**(Violation of the Conscientious Employee Protection Act ("CEPA"):  Unlawful Retaliation as against Plaintiff and Third Party Defendant Fox Rothschild)**

207.     Defendant repeats and realleges each and every allegation contained in Paragraphs 1 through 206 of this Counterclaim and Third Party Complaint as if fully set forth herein.

208.     At all times relevant herein, Defendant was Plaintiff and Third-Party Defendant Fox Rothschild's employee as that term is defined by the Conscientious Employee Protection Act, <u>N.J.S.A.</u> 34:19-1, <u>et seq</u>. ("CEPA").

209.    At all relevant times herein, Plaintiff and Third-Party Defendant Fox Rothschild were Defendant Amabile's employer as that term is defined by CEPA.

210.    Defendant objected to and refused to participate in fraudulent and/or illegal conduct.

211.    Defendant's conduct constituted protected activity.

212.    Defendant's employment was terminated by Plaintiff and Third Party Defendant Fox Rothschild as a result of her engaging in the aforementioned protected activity.

213.    Defendant's termination constitutes retaliation in violation of CEPA.

214.    As a result of Plaintiff and Third-Party Defendant Fox Rothschild's unlawful conduct, Amabile has suffered and continues to suffer humiliation, embarrassment, economic loss, and other such damages.

215.    Plaintiff and Third-Party Defendant Fox Rothschild's conduct also constitutes actual participation in egregious behavior and/or willful indifference to such egregious conduct by upper-level management in violation of Defendant's rights, that is sufficient to subject Plaintiff and Third-Party Defendant Fox Rothschild to punitive damages under the CEPA.

WHEREFORE, Defendant demands judgment against Plaintiff and Third-Party Defendant Fox Rothschild for harm suffered as a result of retaliation against Defendant Amabile in violation of CEPA as follows:

(a)    Full compensation for back pay, benefits and remuneration, with interest;

(b)    Full compensation for front pay, benefits and other remuneration, with interest;

(c)    Compensatory and consequential damages;

   (d)  Emotional Distress damages;

   (e)  Punitive damages;

   (f)  Prejudgment and post-judgment interest;

   (g)  Reasonable attorneys' fees and costs, with appropriate enhancement pursuant to <u>Rendine v. Pantzer</u>, 141 N.J. 292 (1995); and

   (h)  Such other legal or equitable relief as the Court may deem just and proper.

## <u>COUNT VI</u>

### (Violation of the New Jersey Family Leave Act:  Interference with Rights as against Third Party Defendant Fox Rothschild)

  216.  Defendant repeats and realleges each and every allegation contained in Paragraphs 1 through 215 of this Counterclaim and Third Party Complaint as if fully set forth herein.

  217.  Third Party Defendant Fox Rothschild is an employer under the New Jersey Family Leave Act (the "NJFLA"), <u>N.J.S.A.</u> 34:11B-3(f); <u>N.J.A.C.</u> 13:14-1.2.

  218.  Plaintiff and other members of Fox Rothschild management were aware that Amabile was required to provide care and comfort to her family members while her aunt was in hospice care due to a terminal illness.

  219.  Third Party Defendant Fox Rothschild failed to advise Defendant Amabile of her right to take family leave under the NJFLA prior to the termination of Amabile's employment.

  220.  Defendant was not advised of her rights under the NJFLA.

221.     Third Party Defendant Fox Rothschild's failure to give notice to Defendant violates the NJFLA which required Third Party Defendant Fox Rothschild to inform Defendant of her rights to NJFLA leave so she could make an informed decision about taking NJFLA leave.

222.     Third Party Defendant Fox Rothschild's violation of the NJFLA's notice requirements and the termination of Defendant's employment have interfered with the rights guaranteed to Defendant under the NJFLA.

223.     Third Party Defendant Fox Rothschild's conduct constitutes a violation of the New Jersey Family Leave Act, N.J.S.A. 34:11B-1 *et seq.*

224.     As a result of Third Party Defendant Fox Rothschild's actions, Plaintiff has suffered and continues to suffer humiliation, embarrassment, economic loss, and other such damages.

225.     Third Party Defendant Fox Rothschild's conduct constitutes actual participation in egregious behavior and/or willful indifference to such egregious conduct by upper-level management that is sufficient to subject Defendant to punitive damages.

WHEREFORE, Defendant demands judgment against Plaintiff and Third-Party Defendant Fox Rothschild for harm suffered as a result of retaliation against Plaintiff in violation of CEPA as follows:

(a)     Full compensation for back pay, benefits and remuneration, with interest;

(b)     Full compensation for front pay, benefits and other remuneration, with interest;

(c)     Compensatory and consequential damages;

(d)     Emotional Distress damages;

      (e)      Liquidated Damages

      (f)      Punitive damages;

      (g)      Prejudgment and Post-judgment interest;

      (h)      Reasonable attorneys' fees and costs;

      (i)      Such other legal or equitable relief as the Court may deem just

and proper.

## COUNT VII

**(Tortious Interference with Prospective Employment as against Plaintiff and Third Party Defendant Fox Rothschild)**

226.    Defendant repeats and realleges each and every allegation contained in Paragraphs 1 through 225 of this Counterclaim and Third Party Complaint as if fully set forth herein.

227.    Plaintiff knew that Defendant Amabile was pursuing a job opportunity for a position with US Immigration and Customs Enforcement ("ICE").

228.    Plaintiff made unsolicited statements regarding Defendant to Amabile's prospective employer for the purpose of interfering with Amabile's employment opportunities and causing Defendant Amabile to suffer further damage and emotional distress.

229.    Plaintiff made these statements as a partner of Third-Party Defendant Fox Rothschild.

230.    As a result of Plaintiff's conduct, Amabile was unable to continue to pursue a position with ICE.

231.   By their conduct, Plaintiff and Third Party Defendant Fox Rothschild tortiously interfered with Defendant's prospective employment.

232.   As a direct and proximate result of Plaintiff and Third Party Defendant Fox Rothschild's tortious interference, Defendant has incurred damages.

**WHEREFORE**, cause having been shown, Defendant demands judgment against Plaintiff and Third Party Defendant Fox Rothschild for such tortious interference and seeks the following relief:

(a)  Compensatory and consequential damages;

(b)  interest;

(c)  emotional distress damages;

(d)  Punitive damages;  and

(e)  such other relief as the Court may deem equitable and just.

## <u>COUNT VIII</u>

### (Intentional Infliction of Emotional Distress as against Plaintiff)

233.   Defendant repeats and realleges each and every allegation contained in Paragraphs 1 through 232 of this Counterclaim and Third Party Complaint as if fully set forth herein, Defendant was subjected to the tort of intentional infliction of emotional distress by Plaintiff.

234.   Plaintiff deliberately texted Defendant's mother during Defendant's aunt's funeral service feigning to believe that Amabile's aunt was still alive.

235.    By this conduct, Plaintiff engaged in extreme and outrageous conduct toward Defendant in deliberate and reckless disregard of the high probability that emotional distress would follow.

236.    Plaintiff's actions were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and are regarded as atrocious and utterly intolerable in a civilized community.

237.    As a direct result of Plaintiff's conduct, Defendant suffered emotional distress such that no reasonable person could be expected to endure it.

238.    Plaintiff is liable in damages to Defendant for all injuries caused by their intentional infliction of emotional distress.

239.    Plaintiff's actions were committed with actual malice or accompanied by a wanton and willful disregard of Defendant, who foreseeably might be harmed by those acts.

240.    As a result of Plaintiff's conduct, Defendant has suffered and/or continues to suffer, emotional distress, economic loss, and other damages.

**WHEREFORE**, cause having been shown, Defendant demands judgment against Plaintiff for intentional infliction of emotional distress and seeks the following relief:

(a)    Compensatory and consequential damages;

(b)    emotional distress damages;

(c)    incidental damages;

(f)    Punitive damages;  and

(g)    such other relief as the Court may deem equitable and just.

## COUNT IX

### (Post-Employment Retaliation in Violation of the NJLAD as against Third Party Defendant Fox Rothschild)

241.   Defendant repeats and realleges each and every allegation contained in Paragraphs 1 through 240 of this Counterclaim and Third Party Complaint as if fully set forth herein

242.   Third Party Defendant Fox Rothschild is an employer under the New Jersey Law Against Discrimination, (the "NJLAD") N.J.S.A. 10:5-5(e).

243.   Following the termination of her employment, Defendant asserted claims against Plaintiff and Third Party Defendant Fox Rothschild for, among other things, wrongful termination in violation of the NJLAD.

244.   Following the termination of Amabile's employment, Plaintiff, Third-Party Defendant Frey, and Third-Party Defendant Fox Rothschild retaliated against and harassed Defendant.

245.   Third-Party Defendant Fox Rothschild further retaliated against and harassed Defendant by ignoring her complaints of post-employment harassment and by forcing her to deal directly with Plaintiff and Third-Party Defendant Frey with respect to the exchange of her personal property and Firm property.

246.   Third-Party Defendant Fox Rothschild, by and through Plaintiff, further retaliated against and harassed Defendant by contacting Defendant's mother during her aunt's funeral.

247. Third-Party Defendant Fox Rothschild, by and through Plaintiff, also retaliated against and harassed Defendant by interfering in Defendant's employment opportunities with ICE.

248. By and through the conduct described above, Plaintiff and Third Party Defendant Fox Rothschild retaliated against Defendant Amabile due to her assertion of NJLAD claims in violation of the NJLAD, N.J.S.A. 10:5-1 et seq.

249. As a result of Third Party Defendant Fox Rothschild's unlawful conduct, Defendant Amabile has suffered, and continues to suffer, economic losses, emotional distress, and other such damages compensable under the LAD.

250. Third Party Defendant's and Plaintiff's conduct constitutes actual participation in egregious behavior and/or willful indifference by upper management to such egregious conduct in violation of Defendant's rights, that is sufficient to subject Third Party Defendant Fox Rothschild to punitive damages under the LAD and Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 625 (1993).

**WHEREFORE,** Defendant Amabile demands judgment against Third Party Defendant Fox Rothschild for harm suffered as a result of the unlawful retaliation in violation of the NJLAD as follows:

(a) Full compensation for back pay, benefits and remuneration, with interest;

(b) Full compensation for front pay, benefits and other remuneration, with interest;

(c) Compensatory and consequential damages;

(d) Emotional distress damages;

(e)     Punitive damages;

(f)     Prejudgment and post-judgment interest;

(g)     Reasonable attorneys' fees and costs, with appropriate enhancement pursuant to <u>Rendine v. Pantzer</u>, 141 N.J. 292 (1995); and

(h)     Such other legal or equitable relief as the Court may deem just and proper.

## <u>COUNT X</u>

**(Aiding and Abetting Liability for Post-Employment Retaliation as against Plaintiff Bahal and Third Party Frey)**

251.    Defendant repeats and realleges each and every allegation contained in Paragraphs 1 through 250 of this Counterclaim and Third Party Complaint as if fully set forth herein.

252.    Plaintiff and Third Party Defendant Frey engaged in conduct that aided and abetted Third-Party Defendant Fox Rothschild in its unlawful post-employment retaliation of Defendant Amabile in violation of <u>N.J.S.A.</u> 10:5-12(e).

253.    As a result of the unlawful aiding and abetting by Plaintiff and Third Party Defendant Frey, Defendant Amabile has suffered damages.

**WHEREFORE**, Defendant Amabile demands judgment against Plaintiff Bahal and Third Party Defendant Frey for harm suffered as a result of retaliation against Defendant Amabile in violation of the NJLAD and the as follows:

(a)     Full compensation for back pay, benefits and remuneration, with interest;

(b)     Full compensation for front pay, benefits and other remuneration, with interest;

(c)     Compensatory and consequential damages;

(d)     Emotional Distress damages;

(e)     Punitive damages;

(f)     Prejudgment and post-judgment interest;

(g)     Reasonable attorneys' fees and costs, with appropriate enhancement pursuant to Rendine v. Pantzer, 141 N.J. 292 (1995); and

(h)     Such other legal or equitable relief as the Court may deem just and proper.

## COUNT XI

### (Breach of Implied Covenant of Good Faith and Fair Dealing as against Plaintiff and Third Party Defendant Fox Rothschild)

254.     Defendant repeats and realleges each and every allegation contained in Paragraphs 1 through 253 of this Counterclaim and Third Party Complaint as if fully set forth herein.

255.     There exists in every contract an implied covenant of good faith and fair dealing.

256.     By their conduct, Plaintiff and Third Party Defendant Fox Rothschild have breached the implied covenant of good faith and fair dealing.

257.     As a direct and proximate result of Plaintiff and Third Party Defendant Fox Rothschild's breach of the implied covenant of good faith and fair dealing, Defendant has incurred damages.

**WHEREFORE**, cause having been shown, Defendant demands judgment against Plaintiff and Third Party Defendant Fox Rothschild and seeks the following relief:

      (a)     compensatory damages;

      (b)     consequential damages;

      (c)     interest; and

      (d)     such other relief as the Court may deem equitable and

just.


BRATTI GREENAN LLC
Attorneys for Defendant,
Kristen M. Amabile


DOMINICK BRATTI


DATED: November 7, 2022

## JURY DEMAND

Defendant demands a jury trial as to all issues so triable.

BRATTI GREENAN LLC
Attorneys for Defendant
Kristen M. Amabile

_____
DOMINICK BRATTI

DATED:  November 7, 2022

## DESIGNATION OF TRIAL COUNSEL

Please take notice that pursuant to Rule 4:25-4, Defendant hereby designates Dominick

Bratti, Esq. as trial counsel in this matter.

BRATTI GREENAN LLC
Attorneys for Defendant
Kristen M. Amabile

_____
DOMINICK BRATTI

DATED: November 7, 2022

**CERTIFICATION PURSUANT TO RULE 4:5-1**

I hereby certify that the matter in controversy is not, to my knowledge, the subject of

any other pending action or arbitration proceeding, and that no action or arbitration proceeding

is contemplated by Defendant at this time.  I am not aware of any other parties who should be

joined in this action at this time.

BRATTI GREENAN LLC
Attorneys for Defendant
Kristen M. Amabile

DOMINICK BRATTI

DATED: November 7, 2022

**DEMAND PURSUANT TO <u>RULE</u> 4:5-2**

Pursuant to <u>Rule</u> 4:5-2, Defendant hereby demands that Plaintiff furnish a written statement of the amount of damages claimed by Plaintiff as to each Count of the Complaint within five (5) days of this written demand.

> BRATTI GREENAN LLC
> Attorneys for Defendant
> Kristen M. Amabile
>
> DOMINICK BRATTI

DATED: November 7, 2022

## DEMAND PURSUANT TO <u>RULE</u> 4:18-2

Pursuant to <u>Rule</u> 4:18-2, Defendant hereby demands that Plaintiff produce all documents referred to in the Complaint within five (5) days of this written demand.

BRATTI GREENAN LLC
Attorneys for Defendant
Kristen M. Amabile

DOMINICK BRATTI

DATED:  November 7, 2022

## CERTIFICATION OF SERVICE

I hereby certify that a true and correct copy of the foregoing Answer of Defendant; Affirmative Defenses; Counterclaim and Third Party Complaint, Designation of Trial Counsel Pursuant to <u>R.</u> 4:25-4; Certification Pursuant to <u>R.</u> 4:5-1; and Demands Pursuant to <u>R.</u> 4:5-2 and <u>R.</u> 4:18-2 were served upon counsel for the Plaintiff within the time consented to by counsel.

BRATTI GREENAN LLC
Attorneys for Defendant
Kristen M. Amabile

DOMINICK BRATTI

DATED:  November 7, 2022

# Attachment # D

Dominick Bratti, Esq. (016541987)
BRATTI GREENAN LLC
1040 Broad Street, Suite 104
Shrewsbury, NJ  07702
(732) 852-2711
Attorneys for Defendant,
Kristen Amabile

|  |  |
|---|---|
| | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION |
| | MORRIS COUNTY |
| | DOCKET NO.  MRS-L-001117-22 |

---------------------------------------------------X
                           :

ALKA BAHAL                 :
        Plaintiff,         :
                         :        Civil Action
v.                         :
                         :    **CERTIFICATION OF**
KRISTEN M. AMABILE   :    **DOMINICK BRATTI, ESQ.**
                         :
        Defendant.      :
                         :
                         :
                         :
---------------------------------------------------X

       Dominick Bratti, Esq., of full age, hereby certifies as follows:

       1.     I am a member of the law firm of Bratti Greenan LLC, attorneys for Defendant Kristen Amabile ("Ms. Amabile" or "Defendant") in the above-captioned matter.  As such, I am fully familiar with the facts set forth herein.  I make this Certification in support of Defendant's Motion to Dismiss Plaintiff's Complaint and Enforce the Settlement Agreement between the Parties pursuant to Rule 4:6-2(e) (failure to state a claim upon which relief can be granted) and Rule 4:6-2(f) (failure to join a party without whom the action cannot proceed).

1

2.      Defendant Kristen Amabile is a former employee of Fox Rothschild, LLP (the "Firm" or "Fox") and held the position of Practice Group Administrator for the Firm's Immigration Group prior to the termination of my employment effective January 24, 2022.

3.      Alka Bahal (Plaintiff herein) is an equity partner/owner of Fox Rothschild, LLP residing at 9 Sheldon Court, East Hanover, New Jersey.

4.      By letter dated February 2, 2022, Ms. Amabile, through legal counsel, asserted claims against Fox Rothschild, LLP and Plaintiff Bahal for, among other things, wrongful termination in violation of the Conscientious Employee Protection Act ("CEPA") and the New Jersey Law Against Discrimination ("NJLAD").

5.      In response to the letter, Fox's General Counsel, Thomas Paradise, contacted me, and initiated settlement negotiations began.

6.      Ms. Amabile claimed, among other things, that Ms. Bahal and Fox had engaged in improper business practices, including but not limited to, improper billing practices and that they had retaliated against her for objecting to/refusing to participate in same.

7.      Ms. Amabile also alleged that Ms. Bahal and her husband were continuing to harass her post-termination.

8.      In response, Ms. Bahal and Fox claimed that Ms. Amabile had improperly billed expenses both to Fox and to a credit card held by Ms. Bahal.

9.      Thereafter, the parties reached a settlement by which Ms. Bahal and Fox would pay Ms. Amabile a lump sum amount in exchange for a mutual release of claims and her agreement to cooperate with Fox's investigation of financial discrepancies, alleged billing / expense improprieties and/or violations of firm policy.

2

10.     By e-mail dated April 4, 2022 to Mr. Paradise, I confirmed the terms we had agreed upon and that they were acceptable to my client. My e-mail of April 4, 2022 stated "Tom, This will confirm that following our conversation today, I spoke with me client and have authority to settle this matter on the terms that we discussed.  In particular, a lump sum payment of $150,000 and full mutual releases with a provision that Ms. Amabile will cooperate with Fox with regard to its investigation of  financial discrepancies, alleged billing / expense improprieties and/or violations of firm policy."  A true and exact copy of my e-mail of April 4, 2022 is attached hereto as Exhibit A.

11.     On April 11, 2022, Mr. Paradise called me to advise that he wanted an opportunity to determine if Ms. Bahal wanted to participate in the mutual releases, but that regardless of what Ms. Bahal decided, the settlement agreement between Fox and Ms. Amabile was confirmed.

12.     During the April 11, 2022 telephone call, Mr. Paradise stated several times that due to vacation/scheduling issues, he would not be able to get back to me for a week or so, but that the deal was confirmed.  Mr. Paradise stated "You will not hear from me for a week, but you can tell your client that she has a deal."

13.     By e-mail dated April 11, 2022, I again confirmed the terms of the settlement and the fact that Fox would provide a proposed written agreement.

14.     My April 11, 2022 e-mail to Mr. Paradise stated, "Tom, This will confirm our conversation today in which we agreed to this matter for a lump sum payment of $150,000 and full mutual releases with a provision that Ms. Amabile will cooperate with Fox with regard to its investigation of financial discrepancies, alleged billing / expense improprieties and/or violations of firm policy.  You will be providing a proposed agreement for review, but we understand that

3

due to vacation/scheduling issues that will not occur this week." A true and exact copy of my e-mail of April 11, 2022 is attached hereto as Exhibit B.

15.    By e-mail dated April 22, 2022, Mr. Paradise advised "I just heard back from Alka Bahal that she wants to be a part of the mutual releases. I will get you a draft agreement next week." A true and exact copy of Mr. Paradise's e-mail of April 22, 2022 is attached hereto as Exhibit C.

16.    When Mr. Paradise failed to provide a draft release by May 4, 2022, I wrote to him to inquire when we could expect to receive a draft settlement agreement. A true and exact copy of my e-mail of May 4, 2022 is attached hereto as Exhibit D.

17.    By e-mail dated May 4, 2022, Mr. Paradise responded that the delay was due to him testing positive for COVID and that he expected to have a the draft settlement agreement by Friday [May 6, 2022]. A true and exact copy of Mr. Paradise's e-mail of May 4, 2022 is attached hereto as Exhibit E.

18.    On May 6, 2022, Mr. Paradise forwarded a draft Settlement Agreement to me. A true and exact copy of the email and draft settlement agreement provided by Mr. Paradise is attached hereto as Exhibit F.

19.    On May 31, 2022, I proposed certain language changes to the agreement and forwarded a redlined copy of the agreement to Mr. Paradise. A true and exact copy of my e-mail of May 31, 2022 and the attached redlined agreement is attached hereto as Exhibit G.

20.    On June 14, 2022, after not receiving any response from Mr. Paradise for two weeks, I wrote to Mr. Paradise asking when the parties could expect to have an executed agreement. A true and exact copy of my e-mail of June 14, 2022 is attached hereto as Exhibit H.

21.     On June 22, 2022, Mr. Paradise called me and stated that Fox Rothschild and Plaintiff Bahal would not proceed with the settlement.

22.     When I indicated that the parties had a deal and that I would file a motion to enforce the agreement, Mr. Paradise became agitated and yelled that I could always do what I have to do, but added "Maybe we will take your client's deposition in jail."

23.     On June 24, 2022, Mr. Paradise left me a voice message to "apologize for raising my voice and losing my temper" claiming that "it was a bad day for me and I'm sure that it was not a great day for you."

24.     A true and exact copy of Plaintiff's Complaint in this case is attached hereto as Exhibit I.

25.     Plaintiff's Complaint in the case at bar asserts claims on behalf of both Plaintiff and Fox Rothschild, LLP although Plaintiff fails to identify the law firm by name.

26.     Nevertheless, The Complaint fails to name Fox Rothschild, LLP as a party to the action.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

                                        BRATTI GREENAN LLC
                                        Attorneys for Plaintiff,
                                        Kristen Amabile

                            By: _____
                                        DOMINICK BRATTI

Dated: August 12, 2022

# EXHIBIT A

**Annemarie Greenan**

---

| | |
|---|---|
| **From:** | Dominick Bratti |
| **Sent:** | Monday, April 4, 2022 4:39 PM |
| **To:** | Paradise, Thomas D. |
| **Cc:** | Annemarie Greenan |
| **Subject:** | RE: Amabile vs. Fox Rothschild LLP |

Tom,

This will confirm that following our conversation today, I spoke with me client and have authority to settle this matter on the terms that we discussed.  In particular, a lump sum payment of $150,000 and full mutual releases with a provision that Ms. Amabile will cooperate with Fox with regard to its investigation of  financial discrepancies, alleged billing / expense improprieties and/or violations of firm policy.

**Dominick Bratti, Esq** | Bratti Greenan LLC

(732) 852-2711 Ext. 1 | dbratti@brattigreenan.com

1040 Broad Street, Suite 104   |  Shrewsbury, NJ 07702



# EXHIBIT B

## Annemarie Greenan

| | |
|---|---|
| **From:** | Dominick Bratti |
| **Sent:** | Monday, April 11, 2022 4:05 PM |
| **To:** | Thomas D. Paradise (Tparadise@foxrothschild.com) |
| **Cc:** | Annemarie Greenan |
| **Subject:** | RE: Amabile/Fox Rothschild LLP |

Tom,

This will confirm our conversation today in which we agreed to this matter for a lump sum payment of $150,000 and full mutual releases with a provision that Ms. Amabile will cooperate with Fox with regard to its investigation of financial discrepancies, alleged billing / expense improprieties and/or violations of firm policy. You will be providing a proposed agreement for review, but we understand that due to vacation/scheduling issues that will not occur this week.

**Dominick Bratti, Esq** | Bratti Greenan LLC

(732) 852-2711 Ext. 1 | dbratti@brattigreenan.com

1040 Broad Street, Suite 104 | Shrewsbury, NJ 07702



# EXHIBIT C

**Annemarie Greenan**

---

**From:** Paradise, Thomas D. [mailto:TParadise@foxrothschild.com]
**Sent:** Friday, April 22, 2022 11:46 AM
**To:** Dominick Bratti <dbratti@brattigreenan.com>
**Subject:** Settlement


Dominick,
I just heard back from Alka Bahal that she wants to be a part of the mutual releases.  I will get you a draft agreement next week.

**Thomas D. Paradise**
**General Counsel**
**(he/him/his)**
**Fox Rothschild LLP**
1301 Atlantic Avenue
Midtown Building, Suite 400
Atlantic City, NJ  08401-7212
(215) 299-2774 – direct
(609) 348-6834 – fax
Tparadise@foxrothschild.com
www.foxrothschild.com


This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

# EXHIBIT D

**Annemarie Greenan**

| | |
|---|---|
| **From:** | Dominick Bratti |
| **Sent:** | Wednesday, May 4, 2022 9:19 AM |
| **To:** | Paradise, Thomas D. |
| **Cc:** | Annemarie Greenan |
| **Subject:** | RE: Settlement |

Tom,

I hope all is well with you.  When can we expect to see the draft settlement agreement?

**Dominick Bratti, Esq** | Bratti Greenan LLC

(732) 852-2711 Ext. 1 | dbratti@brattigreenan.com

1040 Broad Street, Suite 104   |   Shrewsbury, NJ 07702



**From:** Dominick Bratti
**Sent:** Friday, April 22, 2022 11:56 AM
**To:** Paradise, Thomas D. <TParadise@foxrothschild.com>
**Cc:** 'Annemarie Greenan (Agreenan@brattigreenan.com)' <Agreenan@brattigreenan.com>
**Subject:** RE: Settlement

Tom,

Thanks for the update.  Have a good weekend.

**Dominick Bratti, Esq** | Bratti Greenan LLC

(732) 852-2711 Ext. 1 | dbratti@brattigreenan.com

1040 Broad Street, Suite 104   |   Shrewsbury, NJ 07702



**From:** Paradise, Thomas D. [mailto:TParadise@foxrothschild.com]
**Sent:** Friday, April 22, 2022 11:46 AM
**To:** Dominick Bratti <dbratti@brattigreenan.com>
**Subject:** Settlement

Dominick,
I just heard back from Alka Bahal that she wants to be a part of the mutual releases.  I will get you a draft agreement
next week.

**Thomas D. Paradise**
**General Counsel**
**(he/him/his)**
**Fox Rothschild LLP**
1301 Atlantic Avenue
Midtown Building, Suite 400
Atlantic City, NJ  08401-7212
(215) 299-2774 – direct
(609) 348-6834 – fax
Tparadise@foxrothschild.com
www.foxrothschild.com

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

# EXHIBIT E

**Annemarie Greenan**

| | |
|---|---|
| **From:** | Paradise, Thomas D. <TParadise@foxrothschild.com> |
| **Sent:** | Wednesday, May 4, 2022 10:45 AM |
| **To:** | Dominick Bratti |
| **Cc:** | Annemarie Greenan |
| **Subject:** | RE: Settlement |

Dominick,
I tested positive for Covid last week and I have not been able to work at 100%.  I am hoping to have it for you on
Friday.  Sorry for the delay.
Tom

**Thomas D. Paradise**
General Counsel
(he/him/his)
**Fox Rothschild LLP**
1301 Atlantic Avenue
Midtown Building, Suite 400
Atlantic City, NJ  08401-7212
(215) 299-2774 – direct
(609) 348-6834 – fax
Tparadise@foxrothschild.com
www.foxrothschild.com

**From:** Dominick Bratti <dbratti@brattigreenan.com>
**Sent:** May 4, 2022 9:19 AM
**To:** Paradise, Thomas D. <TParadise@foxrothschild.com>
**Cc:** Annemarie Greenan <agreenan@brattigreenan.com>
**Subject:** [EXT] RE: Settlement

Tom,

I hope all is well with you.  When can we expect to see the draft settlement agreement?

**Dominick Bratti, Esq** |  Bratti Greenan LLC

(732) 852-2711 Ext. 1 |  dbratti@brattigreenan.com

1040 Broad Street, Suite 104   |  Shrewsbury, NJ 07702



**From:** Dominick Bratti
**Sent:** Friday, April 22, 2022 11:56 AM
**To:** Paradise, Thomas D. <TParadise@foxrothschild.com>
**Cc:** 'Annemarie Greenan (Agreenan@brattigreenan.com)' <Agreenan@brattigreenan.com>
**Subject:** RE: Settlement

Tom,

Thanks for the update.  Have a good weekend.

**Dominick Bratti, Esq**  |  Bratti Greenan LLC

(732) 852-2711 Ext. 1 |  dbratti@brattigreenan.com

1040 Broad Street, Suite 104   |  Shrewsbury, NJ 07702



---

**From:** Paradise, Thomas D. [mailto:TParadise@foxrothschild.com]
**Sent:** Friday, April 22, 2022 11:46 AM
**To:** Dominick Bratti <dbratti@brattigreenan.com>
**Subject:** Settlement


Dominick,
I just heard back from Alka Bahal that she wants to be a part of the mutual releases.  I will get you a draft agreement next week.

**Thomas D. Paradise**
**General Counsel**
**(he/him/his)**
**Fox Rothschild LLP**
1301 Atlantic Avenue
Midtown Building, Suite 400
Atlantic City, NJ  08401-7212
(215) 299-2774 – direct
(609) 348-6834 – fax
Tparadise@foxrothschild.com
www.foxrothschild.com


This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.


This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

# EXHIBIT F

**Annemarie Greenan**

---

**Subject:**               Settlement Agreement
**Attachments:**           KA and AB and FR Agreement (05.22)(133804968.1)-C.doc


**From:** "Paradise, Thomas D." <TParadise@foxrothschild.com>
**Date:** May 6, 2022 at 2:17:16 PM EDT
**To:** Dominick Bratti <dbratti@brattigreenan.com>
**Subject: Settlement Agreement**


> Dominick,
> Attached is the Agreement you requested.  Please have your client execute a copy and return it to me
> for execution by Alka and me.  If you have any questions, please let me know.  Thank you for your
> cooperation.
> Tom


> This email contains information that may be confidential and/or privileged. If you are not the
> intended recipient, or the employee or agent authorized to receive for the intended recipient, you
> may not copy, disclose or use any contents in this email. If you have received this email in error,
> please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete
> the original and reply emails. Thank you.

**AGREEMENT**

This Agreement (the "Agreement") is by and among KRISTIN AMABILE ("you," "Amabile" or the "Employee") and ALKA BAHAL ("Bahal") and FOX ROTHSCHILD LLP ("we," "us" or the "Employer").

**Background**

A.      Amabile's employment with Employer as an immigration administrator terminated on January 24, 2022.

B.      Amabile has advised Employer that she believes that she has certain claims against us; we deny that such claims are valid.

C.      Bahal was Amabile's supervisor. Bahal and Amabile have agreed to execute mutual releases with respect to each other.

C.      You and we acknowledge that each has considered the advisability of litigating these claims; and all parties acknowledge that the process of litigating claims or pursuing administrative remedies creates uncertainty and expense, and that it is in our mutual interest to amicably resolve any disputes which may exist concerning Employee's employment with Employer and to provide for the manner in which they will hereafter conduct themselves in relation to each other and that it is in their best interests to resolve all claims.

**Terms of Agreement**

Except as specifically outlined in this Agreement, the Employer, Bahal and the Employee have agreed to fully and finally settle all claims which Employee may have against the Employer and all related persons and entities and which Employee and Bahal may have against each other. Accordingly, in consideration of their mutual promises as set forth herein below and intending to be legally bound hereby, the Employer and the Employee agree as follows:

1.      **Termination of Employment**.  Employee's employment with Employer was terminated as of January 24, 2022.

2.      **Consideration; Payment.**  Provided that you agree to the terms set out below and provided that there is no revocation, Employer will pay you and your counsel the total amount of One Hundred Fifty Thousand Dollars ($150,000.00) ("Payment") in settlement of all of your claims as described in this Agreement. In consideration of this payment, you agree that Employer will owe you no further amounts or other employee benefits, including but not limited to wages, incentive compensation, vacation pay, expense reimbursement, medical benefits, and other compensation or claims of any nature whatsoever, except as specifically outlined in this Agreement.  You acknowledge that the amount identified above is in full settlement of all potential claims, and that you will have no claim for costs, attorneys' fees or other amounts incurred in connection with the settlement of potential claims.

133804968.1

3.     **Timing of Payment.**   The Payment set forth in Paragraph will be made following Employer's receipt of this Agreement signed by you, completed and signed W-9 Forms from you and your counsel, and provided that there is no revocation.   The payment will be made within five business days following the expiration of the revocation period set forth in paragraph 7(f).    The Payment set forth in Paragraph 2 will be issued payable jointly to you and to "Bratti Greenan LLC." The Payment will be sent to your counsel on account of non-wage compensatory damages and counsel fees.

4.     **Taxes.** You acknowledge that you are fully responsible for all income, withholding and other individual taxes due with respect to amounts paid under this Agreement.  We are permitted to report the payment made pursuant to this Agreement to the appropriate federal, state and local taxing authorities, as we believe necessary or appropriate, including the filing of Form 1099s with the Internal Revenue Service.

We specifically make no representations as to the tax implications of the payments made pursuant to this Agreement, and you confirm that you have consulted with appropriate tax advisors to confirm issues related to taxability.  If we incur any liability (including taxes, penalties, interest, costs, expenses and attorneys' fees) due to Amabile's fault as a result of failing to withhold any taxes on the Payment, you will reimburse us for such liability.  We will not be obligated to contest any order or ruling requiring us to pay any taxing authority for failure to properly withhold taxes.

5.     **No Determination of Validity of Claims.**   Although this Agreement resolves all issues between us and you relating to any alleged violation of any policies, laws or regulations, this Agreement does not constitute an adjudication or finding on the merits of any claims by you, and will not be construed as an admission by us of any such violation, wrongdoing or liability of whatever nature.  This Agreement and any settlement discussions shall not be admissible in any proceeding as evidence or an admission by us of any violation of any policy, law or regulation.  This Agreement may be introduced in any proceeding to enforce the Agreement, subject to an order to keep its terms confidential.  Employer is entering into this Agreement solely because it is desirous of settling all of your potential claims and thereby avoiding further expense and legal fees**.**

6.     **Your General Release of Claims Against Employer.**  In exchange for the payments and other benefits which we have given to you in this Agreement, you — for yourself, heirs, executors, administrators, successors and assigns and all other representatives — agree to give up and waive all claims of any nature whatsoever which you may have either directly or indirectly, whether known or unknown**,** from the beginning of time until the date of this Agreement.  This waiver of claims applies to all claims against us and any entity otherwise related to us (including all predecessors, affiliates, successors and assigns), and specifically including Fox Rothschild LLP and all other entities related to Fox Rothschild LLP, and  as well as to anyone or any entity associated with or representing us and all related companies in the past or present, such as officers, partners, principals, attorneys, contract attorneys, employees (including but not limited to Alka Bahal), plan administrators, trustees, fiduciaries, insurers, legal representatives, principals and agents (all such entities and individuals are called "Related Persons").

The claims you are waiving include, but are not limited to, any and all actions, suits, demands, obligations, agreements, or proceedings of any kind, whether known or unknown at this time, arising out

2

of, or connected with, your employment with us and/or termination of your employment, from the beginning of time until the date of this Agreement including, but not limited to all matters in law, in equity, in contract, or in tort, or pursuant to statute, including damages, claims, judgments, interest, attorneys' fees, compensatory damages, punitive damages, liquidated damages, costs and expenses and, without limiting the generality of the foregoing, to all claims arising under Title VII of the Civil Rights Act of 1964 (as amended), the Civil Rights Act of 1991 (as amended), the Family and Medical Leave Act (as amended), the Americans With Disabilities Act (as amended), the Genetic Information Nondiscrimination Act, 24 U.S.C. §1981 ("Section 1981"), and the Pennsylvania Human Relations Act, any breach of contract claims (whether written or oral, express or implied), claims arising out of any offer letter or similar document, estoppel claims, claims for invasion of privacy, claims for loss of consortium, claims for duress, claims of discrimination, defamation or slander claims, claims of retaliation, claims of wrongful or constructive discharge or termination, claims for breach of promise, claims of negligence, claims of impairment of economic opportunity or loss of business opportunity, claims of emotional distress, claims of fraud or misrepresentation, claims of promissory estoppel, claims of unfair labor practices; claims under the Employee Retirement Income Security Act of 1974 (as amended) (excluding claims for vested benefits); claims for benefits including, but not limited to, life insurance, accidental death & disability insurance, sick leave or other employer provided plan or program; claims for reimbursement; claims for wages; claims for vacation or other leave time; claims relating to 401(k) or profit sharing plans (excluding claims for vested benefits); claims for, or arising out of the offering of, group health insurance coverage  or the use of information obtained by us as a result of the offering of group health insurance coverage; claims against the Employer Health Plan as defined under the Health Insurance Portability and Accountability Act; claims under the New Jersey Law Against Discrimination, the New Jersey Conscientious Employee Protection Act, the New Jersey Discrimination in Wages Law, the New Jersey Security and Financial Empowerment Act, the New Jersey Temporary Disability Benefits and Family Leave Insurance Law, the New Jersey Earned Sick Leave Law, the New Jersey Domestic Partnership Act, the New Jersey Family Leave Act, the New Jersey Wage Payment Act, the New Jersey Wage Theft Law, the New Jersey Equal Pay Law, the New Jersey Occupational Safety and Health Law, the New Jersey False Claims Act, the New Jersey Smokers' Rights Law, the New Jersey Genetic Privacy Act, the New Jersey Fair Credit Reporting Act, the New Jersey Emergency Responder Leave Law, the New Jersey Compassionate Use Medical Cannabis Act, the New Jersey Secure Choice Savings Program, the retaliation provisions of the New Jersey Workers' Compensation Law, and any federal, state, local, and/or municipal statute, law, amendment, directive, order, and/or regulation enacted in response to the COVID-19 pandemic; or any other federal, state, or local law, statute, or ordinance affecting your employment with or separation from employment with the Employer. Nothing herein shall constitute a waiver of Employee's right to file a claim for unemployment compensation.

You represent that you are unaware, after consultation with legal counsel, of any claims that you might have which may not be waived or released under the terms of applicable law. You also represent that neither you nor anyone on your behalf has filed any complaint, suit or charge with any court or administrative agency regarding employment with Employer or its termination or against any Released Parties.  You further agree and covenant that should any person, organization or other entity file, charge, claim, sue or cause or permit to be filed any civil action, suit, or legal proceeding involving any such matter occurring at any time in the past, you will not seek or accept any personal relief in such civil action, suit or legal proceeding.

This release does not apply to the consideration for this Agreement and any claims that the controlling law clearly states may not be released by settlement.

133804968.1

      **You acknowledge that we have agreed to give you the payment described in this Agreement only if you sign this Agreement and comply with Paragraph 9 below and give up any claims which you may have against us and do not revoke this Agreement.** BY SIGNING THIS AGREEMENT, YOU ARE GIVING UP ALL CLAIMS WHICH YOU MAY HAVE AGAINST US AND ANY RELATED PERSONS OR ENTITY, except as described in this Agreement.

      7.    **Knowing and Voluntary Release of Age Discrimination Claims.** Amabile acknowledges and agrees that she is waiving any claims under the Age Discrimination in Employment Act and that she agrees that

        (a)    she is receiving consideration for this Agreement which is in addition to anything of value to which she otherwise would have been entitled; and

        (b)    she fully understands the terms of this Agreement and enters into it voluntarily without any coercion on the part of any person or entity; and

        (c)    she was given adequate time to consider all implications and to freely and fully consult with and seek the advice of whomever she deemed appropriate and has done so; and

        (d)    she was advised in writing and had the opportunity to consult with an attorney before signing this Agreement; and

        (e)    she was advised in writing that she had twenty-one (21) calendar days within which to consider this Agreement before signing it; and

(f)    she has seven (7) calendar days after executing this AGREEMENT within which to revoke the Agreement. If the seventh day is a weekend or national holiday, Amabile has until the next business day to revoke. If Amabile elects to revoke this Agreement, Amabile agrees to notify General Counsel Thomas D. Paradise by email at (tparadise@foxrothschild.com) and in writing sent to Paradise at Fox Rothschild LLP, 1301 Atlantic Avenue, Midtown Building, Suite 400, Atlantic City, NJ 08401-7212 for overnight delivery advising of her revocation. Any determination of whether Amabile's revocation was timely shall be determined by the date of actual receipt by Thomas D. Paradise. A timely revocation shall make this Agreement null, and void and Employer shall have no obligations hereunder.

      8.    **General Release of Legal Claims by Amabile Against Bahal**.  In consideration of their mutual promises in this Agreement, Amabile agrees to unconditionally release and forever discharge Bahal from any and all causes of action, suits, damages, claims, judgments, interest, attorney fees, costs and expenses whatsoever, including but not limited to those relating to, or in connection with, Amabile's employment by Employer, either directly or indirectly, whether known or unknown, for, upon or by reason of any matter, cause or thing whatsoever, and also including, but not limited to, any breach of contract claims, estoppel claims, impairment of economic opportunity, interference with contractual relations, infliction of emotional harm or any other tort claims, claims relating to Amabile's employment as well as any claims which Amabile may have against Bahal arising under or in connection with any and all local, state or federal ordinances, statutes, or common law to and including the date of execution

133804968.1

hereof. Except as specifically excluded herein, Amabile hereby acknowledges and agrees that this general release includes all claims she ever had, now has or which her heirs, agents, executors or assigns, or any of them, hereafter can, shall or may have, for or by reason of any cause, matter or thing whatsoever arising at any time up to and including the date that Amabile signs this Agreement. Amabile acknowledges and agrees that she is forgoing, to the maximum extent permitted by law, any and all rights that she might have under any federal, state or local law to file lawsuits in any court against Bahal. Amabile further represents that, neither she nor anyone on her behalf has filed any suits, claims, or the like regarding her employment with Employer or against Bahal. The only exclusion from this general release provision is a claim that some term of this Agreement has been violated or claims which cannot be waived under controlling law.

9.     **General Release of Legal Claims by Bahal Against Amabile**.  In consideration of their mutual promises in this Agreement, Bahal agrees to unconditionally release and forever discharge Amabile from any and all causes of action, suits, damages, claims, judgments, interest, attorney fees, costs and expenses whatsoever, including but not limited to those relating to, or in connection with, Amabile's employment by Employer, either directly or indirectly, whether known or unknown, for, upon or by reason of any matter, cause or thing whatsoever, and also including, but not limited to, any breach of contract claims, estoppel claims, impairment of economic opportunity, interference with contractual relations, infliction of emotional harm or any other tort claims, claims relating to Amabile's employment as well as any claims which Bahal may have against Amabile arising under or in connection with any and all local, state or federal ordinances, statutes, or common law to and including the date of execution hereof. Except as specifically excluded herein, Bahal hereby acknowledges and agrees that this general release includes all claims she ever had, now has or which her heirs, agents, executors or assigns, or any of them, hereafter can, shall or may have, for or by reason of any cause, matter or thing whatsoever arising at any time up to and including the date that Bahal signs this Agreement.  Bahal acknowledges and agrees that she is forgoing, to the maximum extent permitted by law, any and all rights that she might have under any federal, state or local law to file lawsuits in any court against Amabile. Bahal further represents that, neither she nor anyone on her behalf has filed any suits, claims, or the like regarding her employment with Employer or against Amabile. The only exclusion from this general release provision is a claim that some term of this Agreement has been violated or claims which cannot be waived under controlling law.

10.     **General Release of Legal Claims by Fox Rothschild LLP Against Amabile**.  In consideration of their mutual promises in this Agreement, Fox Rothschild LLP agrees to unconditionally release and forever discharge Amabile from any and all causes of action, suits, damages, claims, judgments, interest, attorney fees, costs and expenses whatsoever, including but not limited to those relating to, or in connection with, Amabile's employment by Employer, either directly or indirectly, whether known or unknown, for, upon or by reason of any matter, cause or thing whatsoever, and also including, but not limited to, any breach of contract claims, estoppel claims, impairment of economic opportunity, interference with contractual relations, infliction of emotional harm or any other tort claims, claims relating to Amabile's employment as well as any claims which Fox Rothschild LLP may have against Amabile arising under or in connection with any and all local, state or federal ordinances, statutes, or common law to and including the date of execution hereof. Except as specifically excluded herein, Fox Rothschild LLP hereby acknowledges and agrees that this general release includes all claims it ever had, now has or which its predecessors, affiliates, successors and assigns, or any of them, hereafter can, shall or may have, for or by reason of any cause, matter or thing whatsoever arising at any

133804968.1

time up to and including the date that Fox Rothschild LLP signs this Agreement.   Fox Rothschild LLP acknowledges and agrees that it is foregoing, to the maximum extent permitted by law, any and all rights that it might have under any federal, state or local law to file lawsuits in any court against Amabile.  Fox Rothschild LLP further represents that, neither it nor anyone on its behalf has filed any suits, claims, or the like regarding her employment with Employer or against Amabile.  The only exclusion from this general release provision is a claim that some term of this Agreement has been violated or claims which cannot be waived under controlling law.

11.   **Disclosure of Facts.** Employer demands, and Employee agrees, that Employee will make a full, accurate, complete, and truthful disclosure of all of the facts that she is aware of that relate to:

    i)        inaccuracies in billing to any of Employer's clients,

    ii)       improper practices engaged in by Employer or persons connected with Employer regarding billing, invoices, expenses and/or client charges,

    iii)     bills and expenses identified by Employer, and

    iv)     any other improprieties that Employee observed or is aware of with relation to the business practices of Employer, any of its related entities, or any persons connected with Employer.

Employee shall make such disclosures through her legal counsel to a person or persons designated by Employer's counsel which shall include responding in full to written interrogatories.

12.   **Cooperation**. Employee agrees to cooperate with the Employer regarding any pending or subsequently filed litigation, claims, or other disputes involving the Employer that relate to matters within the knowledge or responsibility of Employee during Employee's employment with the Employer. Employer will reimburse Employee for all reasonable out-of-pocket costs, lost wages (which includes use of paid leave time) and expenses in connection with the cooperation. Employee's required cooperation may include appearing from time to time at the Employer's offices or its attorneys' offices for conferences and interviews, and in general providing the Employer and its attorneys with the full benefit of Employee's knowledge with respect to any such matter. Employee agrees to cooperate in a timely fashion and at times that are agreeable to both parties. Employer and Employee will make their best efforts to schedule any such cooperation at a mutually agreeable time so that it will not interfere with Employee's employment.

13.   **Law Which Applies to This Agreement.**  This Agreement will be governed, construed, interpreted and enforced based on the laws of the State of New Jersey.

14.   **Termination of and No Future Employment.**  You forever waive and relinquish all rights to assert any claim for recall, reemployment, tenure, seniority or any privileges with Fox Rothschild LLP and covenant not to apply or reapply for employment with Fox Rothschild LLP.  You agree not to accept future employment with us, including employment through a temporary employment agency or other independent contractor.

15.   **Consultation with Attorney.**  You acknowledge that you have consulted with an attorney regarding your claims; that you have had sufficient time to consider the decision not to pursue the

133804968.1

alleged claims or to enter into a settlement with us; and that you have entered into this settlement after consultation with your attorney.  You have not relied on any representations made by us or our agents, except as outlined in this Agreement.

16.    **No Derogatory Comments; No Defamation.**  You agree not to make any defamatory comments about us or any of our employees, partners or agents or any Related Persons.  You agree to take no action to disparage Released Parties by your conduct or remarks, whether in writing or orally or other form of public statements, media releases or comments, regardless of their form (whether in print, orally, visually, by recorded means, through website, Facebook, Twitter, Instagram, or any other electronic means or social media platform), to any person or entity regarding Employer and/or the Related Persons.  Amabile agrees that she will not make statements for public dissemination accusing Employer or any of its employees, partners, attorneys or agents or any Released Parties of any wrongful, improper, discriminatory, retaliatory, fraudulent, deceitful, unlawful or unfair conduct or to otherwise disparage them in any way.

17.    **Complete Defense.**  Employee understands that Employer or Related Persons may plead this Agreement as a complete defense to any claim against Employer or Related Persons which hereafter may be asserted by you or other persons or agencies acting on your behalf in any suit or claim against Employer or Related Persons.

18.    **Confidentiality.**  Except to the extent necessary to sue for enforcement of this Agreement or to the extent you are compelled to do so by the law, you agree that you will keep the terms and amount of this Agreement forever completely confidential and that you will not hereafter disclose any information concerning this Agreement to anyone except to say that, "The matter has been resolved," provided, however, that you may make such disclosures to your attorney, your accountant, and taxing authorities, each of whom will be informed of and agree to be bound by this confidentiality clause, or other such nondisclosures as may be required by law.  Unless otherwise compelled by law, Amabile also agrees not to make or publish any statements or communications to or with the press or to the media or anyone else regarding the substance or negotiation of this Agreement provided, however, that Amabile may make such disclosures to legal counsel, accountants and taxing authorities, each of whom will be informed of and agree to be bound by this confidentiality provision.  Amabile agrees to treat the terms and conditions of this Agreement as confidential and shall not disclose the terms and conditions of this Agreement other than to her attorney and shall take all reasonable steps necessary to preserve the confidentiality of the terms and conditions hereof and safeguard them against their unauthorized disclosure. This paragraph shall be enforceable in any court of competent jurisdiction, and the parties agree that said court may award such relief as may be appropriate. In the event that you receive any subpoena or other directive that requires the disclosure of any information concerning this settlement, you shall immediately notify your legal counsel who shall in turn immediately notify Employer's General Counsel.

Amabile acknowledges and agrees that, in the course of her employment with Employer, she had access to confidential information. For purposes of this Agreement, "Confidential Information" shall mean information and materials that are non-public, proprietary and constitute trade secrets of Employer or client information, as well as non-public information concerning Bahal. Amabile further warrants and represents that she has not compromised, corrupted, misappropriated, damaged or inappropriately shared, uploaded, or downloaded data belonging or relating to Employer, any client affiliated with

7

Employer, or Bahal.  Amabile warrants and represents that she will not make use of any Confidential Information for the benefit of herself or others, or to the detriment of any of them.  Excluding her providing Employer information pursuant to her obligations as set forth in this Agreement, including the sections concerning "Disclosure of Facts" and "Cooperation" above, Amabile acknowledges and agrees that she has a continuing obligation to refrain from disclosing any such Confidential Information to third parties and that such disclosure, or breach of these representations and warranties, would constitute a breach of this Agreement, giving Employer a cause of action against her for such breach, in addition to any other rights that it has under applicable law.

19.    **No Publicity**. You agree that you will not, directly or indirectly, either personally or through your counsel or others, issue or cause to be issued any oral or written or other form of public statements, media releases or comments, regardless of their form (whether in print, orally, visually, by recorded means, through website, Facebook, Twitter, Instagram, or any other electronic means or social media platform), including without limitation any communication, interviews and/or statements to any person including any member of the media (including without limitation any print, broadcast or electronic media), concerning any party to this Agreement or concerning the resolution of your claims and the terms, conditions and provisions of same.  In the event that you receive any subpoena or other directive that requires the disclosure of any information concerning this resolution or relating to your employment with Employer, you shall immediately notify your legal counsel who shall notify the Employer's General Counsel.  Nothing set forth herein shall prevent any party from providing truthful testimony under oath, under compulsion of subpoena or other judicial, administrative or legal process, or as otherwise may be required by law.  This non-publicity provision shall survive and be given full force and effect separately from any valid or invalid, enforceable or unenforceable or operative or inoperative term, condition of provision of this agreement.

20.    **Fees and Costs.**  Except as set forth in this Agreement, each party shall bear her or its own attorneys' fees and costs.

21.    **Violation of Agreement.**  If you violate any of the terms of this Agreement, our obligation to make payment will stop immediately, and you will be required to return any payment which you have already received.  We also have the right to bring an action to recover damages for the full amount of our loss or damages resulting from your violation.  In such an event, your release of claims against us and any related person or entity, as outlined in this Agreement, will continue to apply.  If we incur any attorneys' fees or other costs as a result of you violating this Agreement, you agree to reimburse us for those fees and costs.

22.    **Return of Property.**  Amabile represents and covenants that she has returned to Employer all of its  property (including but not limited to all keys or entry cards to Employer's offices, all equipment, documents, client information, written information, forms, formulae, plans, documents or other written or computer material or data, software or firmware, records, or copies of the same, belonging to Employer or any client affiliated with Employer) which are in her possession or control, including but not limited to all originals, copies and summaries of any of Employer's Confidential Information.

23.    **Prior Agreements Not Enforceable.**  This Agreement contains the entire agreement of the parties regarding this matter; and any prior representations, promises or agreements (whether oral or

8

133804968.1

written) which are not in this Agreement are superseded and not enforceable.  The terms of this Agreement may not be altered, amended or waived except by another written agreement signed by you, your counsel and Employer's General Counsel.

     24.    **Severability.**  The parties agree that each provision of this Agreement is severable and, further, that if any term or provision is held to be invalid, void or unenforceable by a court of competent jurisdiction or by an administrative agency for any reason whatsoever, such ruling shall not affect the validity of the remainder of this Agreement.

     25.    **Understanding of Terms.**  You acknowledge that you have read this Agreement completely, and fully understand the terms, nature and effect of this Agreement, which you voluntarily execute in good faith.

     26.    **No Assignment.**  Except as otherwise herein expressly provided, this Agreement shall inure to the benefit of, and be binding upon Employee, her heirs, successors and executors, upon Bahal, her heirs, successors and executors and upon Employer, its successors and assigns.  Employee represents that she has not assigned or in any other manner conveyed any right or claim that she has or may have to any third party, and Employee further agrees not to assign or convey to any assignee for any reason any right or claim covered by this Agreement for consideration, monetary or other, to be received by her hereunder.

     27.    **Counterparts.**  Duplicate copies of this Agreement may be signed, and each copy will be considered an original document, but when taken together, all copies will constitute one Agreement.

     IN WITNESS WHEREOF, the parties hereto have made and signed this AGREEMENT as follows:

EMPLOYEE:

_____
Kristin Amabile
Dated:  May   , 2022

_____
Alka Bahal, Esquire
Dated:  May   , 2022

FOX ROTHSCHILD LLP

By: _____
Dated:  May   , 2022

# EXHIBIT G

**Annemarie Greenan**

| | |
|---|---|
| **From:** | Dominick Bratti |
| **Sent:** | Tuesday, May 31, 2022 2:55 PM |
| **To:** | Paradise, Thomas D. |
| **Cc:** | Annemarie Greenan |
| **Subject:** | RE: Settlement Agreement |
| **Attachments:** | KA and AB and FR Agreement with DB  (05.26)(133804968.1)-C.doc |

Tom,

Attached is the redlined version of the agreement with our changes.

**Dominick Bratti, Esq**  |  Bratti Greenan LLC

(732) 852-2711 Ext. 1 |  dbratti@brattigreenan.com

1040 Broad Street, Suite 104   |  Shrewsbury, NJ 07702



---

**From:** Paradise, Thomas D. <TParadise@foxrothschild.com>
**Sent:** Thursday, May 12, 2022 1:38 PM
**To:** Dominick Bratti <dbratti@brattigreenan.com>
**Cc:** Annemarie Greenan <agreenan@brattigreenan.com>
**Subject:** Re: Settlement Agreement


Sounds good to me. Hope you are doing something fun.

---

**From:** Dominick Bratti <dbratti@brattigreenan.com>
**Sent:** Thursday, May 12, 2022 1:07:33 PM
**To:** Paradise, Thomas D. <TParadise@foxrothschild.com>
**Cc:** Annemarie Greenan <agreenan@brattigreenan.com>
**Subject:** [EXT] RE: Settlement Agreement

Tom,

I am out of the office until mid next week.  I will get you my comments after that

**Dominick Bratti, Esq**  |  Bratti Greenan LLC

(732) 852-2711 Ext. 1 |  dbratti@brattigreenan.com

1040 Broad Street, Suite 104   |  Shrewsbury, NJ 07702



**From:** Paradise, Thomas D. <TParadise@foxrothschild.com>
**Sent:** Wednesday, May 11, 2022 3:25 PM
**To:** Dominick Bratti <dbratti@brattigreenan.com>
**Subject:** Settlement Agreement


Dominick:
I just wanted to confirm you received the settlement agreement I sent you last Friday?  No rush, I am only confirming it
was not caught up in your spam folder.  Thanks.
Tom

**Thomas D. Paradise**
**General Counsel**
**(he/him/his)**
**Fox Rothschild LLP**
1301 Atlantic Avenue
Midtown Building, Suite 400
Atlantic City, NJ  08401-7212
(215) 299-2774 – direct
(609) 348-6834 – fax
Tparadise@foxrothschild.com
www.foxrothschild.com


This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.


This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

**AGREEMENT**

This Agreement (the "Agreement") is by and among KRISTEiN AMABILE ("you," "Amabile" or the "Employee") and ALKA BAHAL ("Bahal") and FOX ROTHSCHILD LLP ("Fox") (collectively referred to as "we," "us" or the "Employer").

**Background**

A.    Amabile's employment with Employer as an Iimmigration Aadministrator terminated on January 24, 2022.

B.    Amabile has advised Employer that she believes that she has certain claims against us; we deny that such claims are valid.

C.    Bahal was at times Amabile's supervisor. Bahal and Amabile have agreed to execute mutual releases with respect to each other.

C.    You and we acknowledge that each party has considered the advisability of litigating these claims; and all parties acknowledge that the process of litigating claims or pursuing administrative remedies creates uncertainty and expense, and that it is in our mutual interest to amicably resolve any disputes which may exist concerning and/or in any way relating to Employee's employment with Employer and to provide for the manner in which they will hereafter conduct themselves in relation to each other and that it is in their best interests to resolve all claims.

**Terms of Agreement**

Except as specifically outlined in this Agreement, Fox the Employer, Bahal and the Employee have agreed to fully and finally settle all claims which Employee and the Employee may have against each other the Employer and all related persons and entities and which Employee and Bahal may have against each other. Accordingly, in consideration of their mutual promises as set forth herein below and intending to be legally bound hereby, the parties Employer and the Employee agree as follows:

1.    **Termination of Employment**.  Employee's employment with Employer was terminated as of January 24, 2022.

2.    **Consideration; Payment.**  Provided that you agree to the terms set out below and provided that there is no revocation, Fox Employer will pay you and your counsel the total amount of One Hundred Fifty Thousand Dollars ($150,000.00) ("Payment") in settlement of all of your claims as described in this Agreement. In consideration of this payment, you agree that Employer will owe you no further amounts or other employee benefits, including but not limited to wages, incentive compensation, vacation pay, expense reimbursement, medical benefits, and other compensation or claims of any nature whatsoever, except as specifically outlined in this Agreement.   You acknowledge that the amount identified above is in full settlement of all potential claims, and that you will have no claim for costs,

133804968.1

attorneys' fees or other amounts incurred in connection with the settlement of potential claims except as otherwise set forth in this Agreement.

3.  **Timing of Payment.**  The Payment set forth in Paragraph will be made following Fox's ~~Employer's~~ receipt of this Agreement signed by you, completed and signed W-9 Forms from you and your counsel, and provided that there is no revocation.  The payment will be made within five business days following the expiration of the revocation period set forth in paragraph 7(f).  The Payment set forth in Paragraph 2 will be issued payable ~~jointly to you and~~ to "Bratti Greenan LLC as Attorneys for Kristen Amabile."  The Payment will be sent to your counsel on account of non-wage compensatory damages and counsel fees.

4.  **Taxes.** You acknowledge that you are fully responsible for all income, withholding and other individual taxes due with respect to amounts paid under this Agreement.  We are permitted to report the payment made pursuant to this Agreement to the appropriate federal, state and local taxing authorities, as we believe necessary or appropriate, including the filing of Form 1099s with the Internal Revenue Service.

We specifically make no representations as to the tax implications of the payments made pursuant to this Agreement, and you confirm that you have consulted with appropriate tax advisors to confirm issues related to taxability.  ~~If we incur any liability (including taxes, penalties, interest, costs, expenses and attorneys' fees) due to Amabile's fault as a result of failing to withhold any taxes on the Payment, you will reimburse us for such liability.  We will not be obligated to contest any order or ruling requiring us to pay any taxing authority for failure to properly withhold taxes.~~

5.  **No Determination of Validity of Claims.** ~~Although this Agreement resolves all issues between us and you relating to any alleged violation of any policies, laws or regulations, this~~ This Agreement does not constitute an adjudication or finding on the merits of any claims by any party ~~you~~, and will not be construed as an admission by any party ~~us~~ of any such alleged violation, wrongdoing or liability of whatever nature.  This Agreement and any settlement discussions shall not be admissible in any proceeding as evidence or an admission by any party ~~us~~ of any violation of any policy, law or regulation.  This Agreement may be introduced in any proceeding to enforce the Agreement~~, subject to an order to keep its terms confidential.  Employer is~~ The parties are entering into this Agreement solely because they are ~~it is~~ desirous of settling all ~~of your~~ potential claims between the Employer and you and thereby avoiding further expense and legal fees**.**

6.  **Your General Release of Claims Against Employer.**  In exchange for the payments and other benefits which we have given to you in this Agreement, you — for yourself, heirs, executors, administrators, successors and assigns and all other representatives — agree to give up and waive all claims of any nature whatsoever which you may have either directly or indirectly, whether known or unknown**,** from the beginning of time until the date of this Agreement.  This waiver of claims applies to all claims against us and any and all ~~any entity otherwise related to us (including all~~ of our predecessors, affiliates, successors and assigns~~)~~, and specifically including Fox Rothschild LLP ~~and all other entities related to Fox Rothschild LLP~~, and  as well as to anyone or any entity associated with or representing us and all ~~related companies in the~~ past or present~~, such as~~ officers, partners, principals, attorneys, contract attorneys, employees (including but not limited to Alka Bahal), plan administrators, trustees, fiduciaries,

2

133804968.1

insurers, legal representatives, principals and agents (all such entities and individuals are called "Related Persons").

The claims you are waiving include, but are not limited to, any and all actions, suits, demands, obligations, agreements, or proceedings of any kind, however denominated, civil or criminal, whether known or unknown at this time, arising out of, or connected with, your employment with us and/or termination of your employment, from the beginning of time until the date of this Agreement including, but not limited to all matters in law, in equity, in contract, or in tort, or pursuant to statute, including damages, claims, judgments, interest, attorneys' fees, compensatory damages, punitive damages, liquidated damages, costs and expenses and, without limiting the generality of the foregoing, to all claims arising under Title VII of the Civil Rights Act of 1964 (as amended), the Civil Rights Act of 1991 (as amended), the Family and Medical Leave Act (as amended), the Americans With Disabilities Act (as amended), the Genetic Information Nondiscrimination Act, 24 U.S.C. §1981 ("Section 1981"), and the Pennsylvania Human Relations Act, any breach of contract claims (whether written or oral, express or implied), claims arising out of any offer letter or similar document, estoppel claims, claims for invasion of privacy, claims for loss of consortium, claims for duress, claims of discrimination, defamation or slander claims, claims of retaliation, claims of wrongful or constructive discharge or termination, claims for breach of promise, claims of negligence, claims of impairment of economic opportunity or loss of business opportunity, claims of emotional distress, claims of fraud, theft, misappropriation or misrepresentation, claims of promissory estoppel, claims of unfair labor practices; claims under the Employee Retirement Income Security Act of 1974 (as amended) (excluding claims for vested benefits); claims for benefits including, but not limited to, life insurance, accidental death & disability insurance, sick leave or other employer provided plan or program; claims for reimbursement; claims for wages; claims for vacation or other leave time; claims relating to 401(k) or profit sharing plans (excluding claims for vested benefits); claims for, or arising out of the offering of, group health insurance coverage  or the use of information obtained by us as a result of the offering of group health insurance coverage; claims against the Employer Health Plan as defined under the Health Insurance Portability and Accountability Act; claims under the New Jersey Law Against Discrimination, the New Jersey Conscientious Employee Protection Act, the New Jersey Discrimination in Wages Law, the New Jersey Security and Financial Empowerment Act, the New Jersey Temporary Disability Benefits and Family Leave Insurance Law, the New Jersey Earned Sick Leave Law, the New Jersey Domestic Partnership Act, the New Jersey Family Leave Act, the New Jersey Wage Payment Act, the New Jersey Wage Theft Law, the New Jersey Equal Pay Law, the New Jersey Occupational Safety and Health Law, the New Jersey False Claims Act, the New Jersey Smokers' Rights Law, the New Jersey Genetic Privacy Act, the New Jersey Fair Credit Reporting Act, the New Jersey Emergency Responder Leave Law, the New Jersey Compassionate Use Medical Cannabis Act, the New Jersey Secure Choice Savings Program, the retaliation provisions of the New Jersey Workers' Compensation Law, and any federal, state, local, and/or municipal statute, law, amendment, directive, order, and/or regulation enacted in response to the COVID-19 pandemic; or any other federal, state, or local law, statute, or ordinance affecting your employment with or separation from employment with the Employer. Nothing herein shall constitute a waiver of Employee's right to file a claim for unemployment compensation.

You represent that you are unaware, after consultation with legal counsel, of any claims that you might have which may not be waived or released under the terms of applicable law. You also represent that neither you nor anyone on your behalf has filed any complaint, suit or charge with any court, authority or administrative agency regarding employment with Employer or its their termination of your employment or against any Released Parties.  You further agree and covenant that should any person,

3

organization or other entity file, charge, claim, sue or cause or permit to be filed any civil action, suit, or legal proceeding involving any such matter occurring at any time in the past, you will not seek or accept any personal relief in such civil action, suit or legal proceeding.

This release does not apply to the consideration for this Agreement and any claims that the controlling law clearly states may not be released by settlement.

**You acknowledge that we have agreed to give you the payment described in this Agreement only if you sign this Agreement and comply with Paragraph 89 below and give up any claims which you may have against us and do not revoke this Agreement.** BY SIGNING THIS AGREEMENT, YOU ARE GIVING UP ALL CLAIMS WHICH YOU MAY HAVE AGAINST US AND ANY RELATED PERSONS OR ENTITY AND WE ARE GIVING UP ANY CLAIMS WHICH WE MAY HAVE AGAINST YOU, except as described in this Agreement.

7.  **Knowing and Voluntary Release of Age Discrimination Claims.** Amabile acknowledges and agrees that she is waiving any claims under the Age Discrimination in Employment Act and that she agrees that

(a)     she is receiving consideration for this Agreement which is in addition to anything of value to which she otherwise would have been entitled; and

(b)     she fully understands the terms of this Agreement and enters into it voluntarily without any coercion on the part of any person or entity; and

(c)     she was given adequate time to consider all implications and to freely and fully consult with and seek the advice of whomever she deemed appropriate and has done so; and

(d)     she was advised in writing and had the opportunity to consult with an attorney and/or advisor of her choosing before signing this Agreement; and

(e)     she was advised in writing that she had twenty-one (21) calendar days within which to consider this Agreement before signing it; and

(f)           she has seven (7) calendar days after executing this AGREEMENT within which to revoke the Agreement. If the seventh day is a weekend or national holiday, Amabile has until the next business day to revoke. If Amabile elects to revoke this Agreement, Amabile agrees to notify General Counsel Thomas D. Paradise by email at (tparadise@foxrothschild.com) and in writing sent to Paradise at Fox Rothschild LLP, 1301 Atlantic Avenue, Midtown Building, Suite 400, Atlantic City, NJ  08401-7212 for overnight delivery advising of her revocation. Any determination of whether Amabile's revocation was timely shall be determined by the date of actual receipt by Thomas D. Paradise. A timely revocation shall make this Agreement null, and void and Employer shall have no obligations hereunder.

8.    **General Release of Legal Claims by Amabile Against Bahal.** In consideration of their mutual promises in this Agreement, Amabile agrees to unconditionally release and forever discharge Bahal from any and all causes of action, suits, damages, claims, judgments, interest, attorney fees, costs

| Formatted: Number, Space After:  0 pt |
| --- |

4

133804968.1

and expenses whatsoever, including but not limited to those relating to, or in connection with, Amabile's employment by Employer, either directly or indirectly, whether known or unknown, for, upon or by reason of any matter, cause or thing whatsoever and however denominated, civil or criminal, and also including, but not limited to, sounding in tort or any breach of contract claims, estoppel claims, impairment of economic opportunity, interference with contractual relations, infliction of emotional harm or any other tort claims, claims for breach of promise, claims of negligence, claims of impairment of economic opportunity or loss of business opportunity, claims of emotional distress, claims of fraud, theft, misappropriation or misrepresentation, claims relating to Amabile's employment as well as any claims which Amabile may have against Bahal arising under or in connection with any and all local, state or federal ordinances, statutes, or common law to and including the date of execution hereof. Except as specifically excluded herein, Amabile hereby acknowledges and agrees that this general release includes all claims she ever had, now has or which her heirs, agents, executors or assigns, or any of them, hereafter can, shall or may have, for or by reason of any cause, matter or thing whatsoever arising at any time up to and including the date that Amabile signs this Agreement. Amabile acknowledges and agrees that she is forgoing, to the maximum extent permitted by law, any and all rights that she might have under any federal, state or local law to file lawsuits in any court against Bahal. Amabile further represents that, neither she nor anyone on her behalf has filed any suits, claims, or the like regarding her employment with Employer or against Bahal. The only exclusion from this general release provision is a claim that some term of this Agreement has been violated or claims which cannot be waived under controlling law.

8.9.    General Release of Legal Claims by Bahal Against Amabile.   In consideration of their mutual promises in this Agreement, Bahal on behalf of herself and any related agrees to unconditionally release and forever discharge Amabile from any and all causes of action, suits, damages, claims, judgments, interest, attorney fees, costs and expenses whatsoever and however denominated, civil or criminal, including but not limited to those relating to, or in connection with, Amabile's employment by Employer, either directly or indirectly, whether known or unknown, for, upon or by reason of any matter, cause or thing whatsoever, and also including, but not limited to sounding in tort or breach of contract claims, estoppel claims, impairment of economic opportunity, interference with contractual relations, infliction of emotional harm or any other tort claims, claims for breach of promise, claims of negligence, claims of impairment of economic opportunity or loss of business opportunity, claims of emotional distress, claims of fraud, theft, misappropriation or misrepresentation, any breach of contract claims, estoppel claims, impairment of economic opportunity, interference with contractual relations, infliction of emotional harm or any other tort claims, claims relating to Amabile's employment as well as any claims which Bahal may have against Amabile arising under or in connection with any and all local, state or federal ordinances, statutes, or common law to and including the date of execution hereof. Except as specifically excluded herein, Bahal hereby acknowledges and agrees that this general release includes all claims she ever had, now has or which her heirs, agents, executors or assigns, or any of them, hereafter can, shall or may have, for or by reason of any cause, matter or thing whatsoever arising at any time up to and including the date that Bahal signs this Agreement.   Bahal acknowledges and agrees that she is forgoing, to the maximum extent permitted by law, any and all rights that she might have under any federal, state or local law to file lawsuits in any court against Amabile.  Bahal further represents that, neither she nor anyone on her behalf has filed any suits, claims, or the like regarding her employment with Employer or against Amabile. The only exclusion from this general release provision is a claim that some term of this Agreement has been violated or claims which cannot be waived under controlling law. Bahal represents that she is unaware of any claims she might have

| Formatted: Font: Not Bold |

5

133804968.1

which may not be waived or released under the terms of applicable law. Bahal also represents that neither she nor anyone on her behalf has filed any complaint, suit or charge with any court, authority or administrative agency regarding Amabile and/or her employment with Employer.  This release does not apply to the consideration for this Agreement and any claims that the controlling law clearly states may not be released by settlement.

9. 10.  General Release of Legal Claims by Fox Rothschild LLP Against Amabile.   In consideration of their mutual promises in this Agreement, Fox Rothschild LLP agrees to unconditionally release and forever discharge Amabile from any and all causes of action, suits, damages, claims, judgments, interest, attorney fees, costs and expenses whatsoever and however denominated, civil or criminal, including but not limited to those relating to, or in connection with, Amabile's employment by Employer, either directly or indirectly, whether known or unknown, for, upon or by reason of any matter, cause or thing whatsoever, and also including, but not limited to, any breach of contract claims, estoppel claims, impairment of economic opportunity, interference with contractual relations, infliction of emotional harm or any other tort claims, claims relating to Amabile's employment as well as any claims which Fox Rothschild LLP may have against Amabile arising under or in connection with any and all local, state or federal ordinances, statutes, or common law to and including the date of execution hereof. Except as specifically excluded herein, Fox Rothschild LLP hereby acknowledges and agrees that this general release includes all claims it ever had, now has or which its predecessors, affiliates, successors and assigns, or any of them, hereafter can, shall or may have, for or by reason of any cause, matter or thing whatsoever arising at any time up to and including the date that Fox Rothschild LLP signs this Agreement.   Fox Rothschild LLP acknowledges and agrees that it is forgoing, to the maximum extent permitted by law, any and all rights that it might have under any federal, state or local law to file lawsuits in any court against Amabile. Fox Rothschild LLP further represents that, neither it nor anyone on its behalf has filed any suits, claims, or the like regarding her employment with Employer or against Amabile.  The only exclusion from this general release provision is a claim that some term of this Agreement has been violated or claims which cannot be waived under controlling law. Employer represents that it is unaware of any claims that it might have which may not be waived or released under the terms of applicable law. Employer also represent that neither it nor anyone on its behalf has filed any complaint, suit or charge with any court, authority or administrative agency regarding Amabile and/or her employment with Employer. This release does not apply to the consideration for this Agreement and any claims that the controlling law clearly states may not be released by settlement.

10.   **Disclosure of Facts.** Employer demands, and Employee agrees, that Employee will make a full, accurate, complete, and truthful disclosure of all of the facts that she is aware of that relate to:

    i)    inaccuracies in billing to any of Employer's clients,
    ii)   improper practices engaged in by Employer or persons connected with Employer regarding billing, invoices, expenses and/or client charges,
    iii)  bills and expenses identified by Employer, and
    iv)   any other improprieties that Employee observed or is aware of with relation to the business practices of Employer, any of its related entities, or any persons connected with Employer.

6

Employee shall make such disclosures through her legal counsel to a person or persons designated by Employer's counsel which shall include responding in full to written interrogatories.

11.   **Cooperation.** Following receipt of the Settlement Amount, Employee agrees to cooperate with the Fox Employer regarding its investigation of client billing, improper practices engaged in by Employer or persons connected with Employer, bills and expenses identified by Employer and improprieties that Employee observed or became aware of within the scope of her employment with Employer regarding  the business practices of Employer, any of its  related entities or other persons connected with Employer. Employee further agrees to cooperate with Fox regarding any pending or subsequently filed litigation, claims, or other legal disputes involving the Employer that relate to matters within the knowledge or responsibility of Employee during Employee's employment with the Employer. Employer will reimburse Employee for all reasonable out-of-pocket costs, lost wages (which includes use of paid leave time) and expenses in connection with the cooperation. Employee's required cooperation may include appearing from time to time at the Employer's offices or its attorneys' offices for conferences and interviews, and in general providing the Employer and its attorneys with the full benefit of Employee's knowledge with respect to any such matter. Employee agrees to cooperate in a timely fashion and at times that are agreeable to both parties. Employer and Employee will make their best efforts to schedule any such cooperation at a mutually agreeable time so that it will not interfere with Employee's employment.

12.   Indemnification of Amabile by Fox.  Fox shall indemnify and hold Amabile harmless from any and all claims, causes of action, suits, damages,  judgments, interest, attorney fees, costs and expenses whatsoever asserted by any third party, including but not limited to any claim by client or former client of Fox and, including but not limited to any Related Party (including Bahal or any member of her family) and which in any way  relates to or is connected with Amabile's employment by Employer, either directly or indirectly. This indemnification by Fox shall specifically include, but shall not be limited to, and claim by Bahal and/or any member of her family arising out of Amabile's cooperation with  Fox's investigation as set forth in Paragraph 11 of this Agreement.

13.   **Law Which Applies to This Agreement.**  This Agreement will be governed, construed, interpreted and enforced based on the laws of the State of New Jersey.

14.   **Termination of and No Future Employment.**  You forever waive and relinquish all rights to assert any claim for recall, reemployment, tenure, seniority or any privileges with Fox Rothschild LLP and covenant not to knowingly apply or reapply for employment with Fox Rothschild LLP.  You agree not to knowingly accept future employment with us, including employment through a temporary employment agency or other independent contractor.

15.   **Consultation with Attorney and/or Advisor of Your Choice.**  You acknowledge that you have the right to consult with an attorney and/or advisor of your choosing, have been advised of such right in writing and that you have consulted with an attorney regarding your claims; that you have had sufficient time to consider the decision not to pursue the alleged claims or to enter into a settlement with us.; and that you have entered into this settlement after consultation with your attorney.  You have not relied on any representations made by us or our agents, except as outlined in this Agreement.

133804968.1

16.  **No Derogatory Comments; No Defamation.**  ~~You~~ The parties agree not to make any defamatory comments about ~~us~~ any party or any of ~~its/their~~ our employees, partners or agents or any Related Persons.  The parties further ~~You~~ agree to take no action to disparage each other by ~~Released Parties by your~~ conduct or remarks, whether in writing or orally or other form of public statements, media releases or comments, regardless of their form (whether in print, orally, visually, by recorded means, through website, Facebook, Twitter, Instagram, or any other electronic means or social media platform), to any person or entity ~~regarding Employer and/or the Related Persons.  Amabile~~ The parties agree~~s~~ that they ~~she~~ will not make statements accusing any party and/or their respective, representatives, ~~for public dissemination accusing Employer or any of its~~ employees, partners, attorneys ~~or agents or any Released Parties~~ of any wrongful, improper, discriminatory, retaliatory, fraudulent, deceitful, unlawful or unfair conduct or to otherwise disparage them in any way. This provision shall not apply to statement made by, or information provided by, Amabile in conjunction with her cooperation in the Fox investigation as set forth in Paragraph 11 of this Agreement

17.  **Complete Defense.**  The parties each ~~Employee~~ understand~~s~~ that they ~~Employer~~ or their released parties ~~Related Persons~~ may plead this Agreement as a complete defense to any claim against them ~~Employer or Related Persons~~ which hereafter may be asserted by any party, their respective agents, employees and/or Related Persons. ~~you or other persons or agencies acting on your behalf in any suit or claim against Employer or Related Persons.~~

18.  **Confidentiality.**  Except to the extent necessary to sue for enforcement of this Agreement or to the extent they ~~you~~ are compelled to do so by the law, the parties ~~you~~ agree to ~~that you will~~ keep the terms and amount of this Agreement forever completely confidential and that they~~you~~ will not hereafter disclose any information concerning this Agreement to anyone except to say that, "The matter has been resolved," provided, however, that the parties ~~you~~ may make such disclosures to their respective ~~your~~ attorney~~s~~, ~~your~~ accountant~~s~~, and/or to  taxing authorities, each of whom will be informed of and agree to be bound by this confidentiality clause, or other such nondisclosures as may be required by law.  Unless otherwise compelled by law, the parties ~~Amabile~~ also agrees not to make or publish any statements or communications to or with any governmental and/or administrative agency or authority and/or to~~the press or to the media or anyone else regarding the~~ genesis, underlying facts/claims, terms, substance or negotiation~~s~~ of this Agreement provided, however, that the parities~~Amabile~~ may make such disclosures to legal counsel, accountants and taxing authorities, each of whom will be informed of and agree to be bound by this confidentiality provision. The parties ~~Amabile~~ agree~~s~~ to treat the terms and conditions of this Agreement as confidential and shall not disclose the terms and conditions of this Agreement other than as provided herein ~~to her attorney~~ and shall take all reasonable steps necessary to preserve the confidentiality of the terms and conditions hereof and safeguard them against their unauthorized disclosure. This paragraph shall be enforceable in any court of competent jurisdiction, and the parties agree that said court may award such relief as may be appropriate. In the event that any party you receive~~s~~ any subpoena or other directive that requires the disclosure of any information concerning this settlement and/or the underlying claims/facts related thereto, they~~you~~ shall immediately notify legal ~~your~~ legal counsel for all parties via e-mail directed to _____ (Add e-mail addresses of respective counsel)~~who shall in turn immediately notify Employer's General Counsel~~.

Amabile and Bahal acknowledge~~s~~ and agree~~s~~ that, in the course of their her employment with Employer, they have ~~she~~ had access to confidential information. For purposes of this Agreement, "Confidential Information" shall mean information and materials that are non-public, proprietary and constitute trade

8

133804968.1

secrets of Employer or client information, as well as non-public information concerning Bahal and Amabile. Amabile and Bahal further warrants and represents that they have she has not knowing compromised, corrupted, misappropriated, damaged or inappropriately shared, uploaded, or downloaded data belonging or relating to Employer, any client affiliated with Employer, or Amabile and Bahal. Amabile and Bahal warrants and represents that they have not and she will not make use of any Confidential Information for the benefit of themselves herself or others, or to the detriment of any of them. Except as to use or disclosures made in conjunction with and during the course of their employment with Fox and/or in conjunction with disclosures made in conjunction with the Fox investigation as set forth in Paragraph 11 of this Agreement, Excluding her providing Employer information pursuant to her obligations as set forth in this Agreement, including the sections concerning "Disclosure of Facts" and "Cooperation" above, Amabile and Bahal acknowledges and agrees that they have she has a continuing obligation to refrain from disclosing any such Confidential Information of any party to third parties and that such disclosure, or breach of these representations and warranties, would constitute a breach of this Agreement, giving rise to the aggrieved party Employer a cause of action against her for such breach, in addition to any other rights that it has under applicable law.

19.   **No Publicity**. The parties You agree that they you will not, directly or indirectly, either personally or through legal your counsel or others, issue or cause to be issued any oral or written or other form of public statements, media releases or comments, regardless of their form (whether in print, orally, visually, by recorded means, through website, Facebook, Twitter, Instagram, or any other electronic means or social media platform), including without limitation any communication, interviews and/or statements to any person including any member of the media (including without limitation any print, broadcast or electronic media), concerning any party to this Agreement or concerning the resolution of your claims and the terms, conditions and provisions of same and/or the factual basis for same.  In the event that any party you receives any subpoena or other directive that requires the disclosure of any information concerning this Agreement and/or the underlying claims/facts related thereto, they shall immediately notify legal   counsel for all parties via e-mail directed to _____ (Add e-mail addresses of respective counsel) this resolution or relating to your employment with Employer, you shall immediately notify your legal counsel who shall notify the Employer's General Counsel.  Nothing set forth herein shall prevent any party from providing truthful testimony under oath, under compulsion of subpoena or other judicial, administrative or legal process, or as otherwise may be required by law. This non-publicity provision shall survive and be given full force and effect separately from any valid or invalid, enforceable or unenforceable or operative or inoperative term, condition of provision of this agreement.

20.   **Fees and Costs.**  Except as set forth in this Agreement, each party shall bear her or its own attorneys' fees and costs.

21.   **Violation of Agreement.**  If you violate any of the terms of this Agreement, our obligation to make payment will stop immediately, and you will be required to return any payment which you have already received.  We also have the right to bring an action to recover damages for the full amount of our loss or damages resulting from your violation.  In such an event, your release of claims against us and any related person or entity, as outlined in this Agreement, will continue to apply.  If we incur any attorneys' fees or other costs as a result of you violating this Agreement, you agree to reimburse us for those fees and costs.

9

22. 21. **Return of Property.**  Amabile represents and covenants that to she has returned to Fox Employer any and all of its property (including, but not limited to, all keys or entry cards to Employer's offices, all equipment, documents, client information, written information, forms, formulae, plans, documents or other written or computer material or data, software or firmware, records, or copies of the same, belonging to Fox Employer or any client of Fox affiliated with Employer) which is are in her possession or control, including but not limited to all originals, copies and summaries of any of Employer's Confidential Information. Fox represents and covenants to return to Amabile any and all of her property (including, but not limited to, personal items and personal contact information created by/belonging to Amabile which is located at/stored at Fox)

23. 22. **Prior Agreements Not Enforceable.**  This Agreement contains the entire agreement of the parties regarding this matter; and any prior representations, promises or agreements (whether oral or written) which are not in this Agreement are superseded and not enforceable.  The terms of this Agreement may not be altered, amended or waived except by another written agreement signed by the parties. you, your counsel and Employer's General Counsel.

24. 23. **Severability.**  The parties agree that each provision of this Agreement is severable and, further, that if any term or provision is held to be invalid, void or unenforceable by a court of competent jurisdiction or by an administrative agency for any reason whatsoever, such ruling shall not affect the validity of the remainder of this Agreement.

25. 24. **Understanding of Terms.**  The parties each You acknowledge that they you have read this Agreement completely. and fully understand the terms, nature and effect of this Agreement, which is being you voluntarily executed in good faith.

26. 25. **No Assignment.**  Except as otherwise herein expressly provided, this Agreement shall inure to the benefit of, and be binding upon Employee, her heirs, successors and executors, upon Bahal, her heirs, successors and executors and upon Employer, its successors and assigns.  The parties each Employee represents that they have she has not assigned or in any other manner conveyed any right or claim that they have she has or may have to any third party, and Employee they further agrees not to assign or convey to any assignee for any reason any right or claim covered by this Agreement for consideration, monetary or otherwise. , to be received by her hereunder.

27. 26. **Counterparts.**  Duplicate copies of this Agreement may be signed in counterparts, and each copy will be considered an original document, but when taken together, all copies will constitute one Agreement.

IN WITNESS WHEREOF, the parties hereto have made and signed this AGREEMENT as follows:

EMPLOYEE:

_____
Kristein Amabile
Dated:  May   , 2022

10

_____
Alka Bahal, Esquire
Dated:  May   , 2022

FOX ROTHSCHILD LLP

By: _____
Dated:  May   , 2022

11

133804968.1

# EXHIBIT H

## Annemarie Greenan

**From:** Dominick Bratti
**Sent:** Tuesday, June 14, 2022 11:24 PM
**To:** Paradise, Thomas D.
**Cc:** Annemarie Greenan
**Subject:** RE: Settlement Agreement

Tom,

Per your request, I sent you the settlement agreement on May 31, 2022.  Please advise as to when we can expect an executed copy.

Thanks,

**Dominick Bratti, Esq** | Bratti Greenan LLC
(732) 852-2711 Ext. 1 | dbratti@brattigreenan.com
1040 Broad Street, Suite 104  |  Shrewsbury, NJ 07702



# EXHIBIT I

LOUIS H. MIRON (014861985)
Attorney at Law
123 North Union Avenue
Suite 103
Cranford, New Jersey 07016
(908) 233-9555
Attorney for Plaintiff Alka Bahal

| | |
|---|---|
| ALKA BAHAL, | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION |
| | MORRIS COUNTY |
| Plaintiff, | |
| | |
| vs. | DOCKET NO. MOR-L-    -22 |
| | |
| KRISTEN M. AMABILE, | CIVIL ACTION |
| | |
| Defendant. | **COMPLAINT** |

Plaintiff Alka Bahal, residing at 9 Sheldon Court,
East Hanover, New Jersey, by way of Complaint against
Defendant Kristen M. Amabile ("Amabile"), says:

1.    Defendant Amabile is an individual, and upon
information and belief, resides at 61 Nicole Drive,
Denville, New Jersey.

2.    At all relevant times, Plaintiff and Amabile
worked together at a law firm in the State of New
Jersey (the "Law Firm").

1

3.    In connection with their working at the Law Firm, Plaintiff authorized Amabile to use Plaintiff's personal credit card to charge business expenses incurred on behalf of Plaintiff.

4.    Plaintiff's business expenses were reimbursable to her by the Law Firm.

5.    Without Plaintiff's knowledge or authorization, Amabile began charging her own personal expenses to Plaintiff's personal credit card.  These personal expenses were not for the Law Firm's business, for the Law Firm's clients, and were not reimbursable by the Law Firm.

6.    Plaintiff learned that Amabile charged over $44,000 for Amabile's own personal expenses to Plaintiff's credit card without Plaintiff's knowledge or authorization.

7.    Amabile also submitted reimbursement invoices to the Law Firm for expenses incurred by and for Plaintiff but retained the reimbursement proceeds for her own use rather than forward the Law Firm reimbursement payments to Plaintiff.

8.    Plaintiff confronted Amabile concerning Amabile's unauthorized use of Plaintiff's personal credit card and they entered into a verbal agreement for Amabile to repay all her improper personal charges

2

to Plaintiff, who paid the credit card bills in the normal course (the "Agreement").

9.    Pursuant to the terms of the Agreement, Plaintiff and Amabile agreed that Amabile would repay Plaintiff in several payments, including with the assistance of Amabile's mother, who Amabile represented was prepared to loan her $10,000 to pay down her debt to Plaintiff.

10.    Contrary to the terms of the Agreement, Amabile only paid $3,500 to Plaintiff and has refused to pay more money towards the substantial debt.

11.    Amabile has failed to comply with the terms of the Agreement and has refused to pay additional monies in connection with her unauthorized use of Plaintiff's personal credit card for Amabile's personal expenses.

12.    As a result, Plaintiff paid to the credit card company and thus has incurred approximately $40,000 in losses as a direct and proximate result of Amabile's wrongful conduct.

**FIRST COUNT**
**(Breach of Contract)**

13.   Plaintiff repeats and re-alleges each and every statement contained in Paragraphs 1 through 12 as if fully set forth herein.

14.   Amabile has breached the Agreement and has failed to make the required payments that Amabile agreed to make to Plaintiff for Amabile's unauthorized use of Plaintiff's personal credit card.

15.   Plaintiff has demanded compliance and payment, but Amabile has refused and payment has not been made.

16.   Plaintiff has fulfilled all her obligations under the Agreement.

17.   Plaintiff has been damaged thereby.

WHEREFORE, Plaintiff demands judgment against Amabile for compensatory damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

4

**SECOND COUNT**
**(Violation of the Fiduciary Duty)**

18.    Plaintiff repeats and re-alleges each and every statement contained in Paragraphs 1 through 17 as if fully set forth herein.

19.    Amabile, as a paralegal performing services on matters for Plaintiff, a member of the Law Firm, owes and continues to owe to Plaintiff a fiduciary duty in connection with the expenditure of Law Firm funds and Plaintiff's personal funds.

20.    Upon information and belief, Amabile expended Law Firm funds for her own personal expenses without the Law Firm's knowledge or authorization.

21.    Amabile breached and violated the fiduciary duties owed to Plaintiff, proximately causing Plaintiff to sustain losses, costs and damages.


WHEREFORE, Plaintiff demands judgment against Amabile, for compensatory damages, punitive damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

**THIRD COUNT**
**(Violation of the Covenant of Good Faith and Fair Dealing)**

22.   Plaintiff repeats and re-alleges each and every statement contained in Paragraphs 1 through 21 as if fully set forth herein.

23.   Plaintiff and Amabile, as parties to the Agreement, are each bound by a duty of good faith and fair dealing in both the performance and enforcement of the Agreement.

24.   Amabile may be liable for a breach of the covenant of good faith and fair dealing even if she does not violate an express term of the Agreement.

25.   Amabile owed and continues to owe to Plaintiff a duty of good faith with respect to her agreement to repay Plaintiff for all Amabile's unauthorized charges on Plaintiff's personal credit card, for which Plaintiff has paid the credit card company in full.

26.   Amabile acted in bad faith, and intentionally breached and violated the duties owed to Plaintiff and denied Plaintiff the benefit of the bargain originally intended when she and Plaintiff entered into the Agreement.

27.    Plaintiff has sustained compensatory and consequential damages as a direct and foreseeable result of Amabile's breaching the covenant of good faith and fair dealing.

WHEREFORE, Plaintiff demands judgment against Amabile, for compensatory damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

### FOURTH COUNT
### (Unjust Enrichment)

28.    Plaintiff repeats and re-alleges each and every statement contained in Paragraphs 1 through 27 as if fully set forth herein.

29.    Amabile was unjustly enriched, and there are monies due and owing to the Plaintiff from Amabile.

30.    Plaintiff has been damaged thereby.

WHEREFORE, Plaintiff demands judgment against Amabile, for compensatory damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

7

**FIFTH COUNT**
**(Fraud)**

31.   Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 30 as if fully set forth herein.

32.   During the relevant period, Amabile engaged in an unlawful course of conduct in which she knowingly, recklessly and/or negligently made representations to Plaintiff concerning Amabile's use of Plaintiff's personal credit card, and Amabile's agreement to repay Plaintiff for the unauthorized use of Plaintiff's personal credit card for Amabile's personal expenses that acted as a fraud upon Plaintiff.

33.   Amabile knowingly, recklessly and/or negligently made misrepresentations or omissions of material fact to Plaintiff upon which Plaintiff reasonably relied and which achieved Amabile's objective of maximizing the pecuniary gain for herself through charging her personal expenses to Plaintiff's personal credit card without Plaintiff's knowledge or authorization, and failing to repay Plaintiff as Amabile promised.

34.    Amabile  knew or should have known that these representations related to material facts and information upon which Plaintiff was reasonably relying.

35.    The representations and omissions of material fact made by Amabile were made with the intention that Plaintiff would rely upon them.

36.    Amabile's conduct was violative of federal and state anti-fraud laws and constitutes common law fraud.

37.    Amabile engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon Plaintiff by engaging in the conduct described herein.

38.    Plaintiff incurred substantial damages as a direct and proximate result of the fraudulent conduct of Amabile.  Amabile is, therefore, liable for these damages.

39.    At all relevant times, Amabile acted willfully, outrageously, maliciously and with the specific intent to defraud and harm Plaintiff and to benefit herself, such that a significant award of punitive damages is also appropriate.

WHEREFORE, Plaintiff demands judgment against Amabile, for compensatory damages, punitive damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

**SIXTH COUNT**
**(Conversion)**

40. Plaintiff repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 39 as if fully set forth herein.

41. As a direct and proximate result of Amabile's conduct described herein, Amabile has received substantial pecuniary benefits from the substantial sums she charged to Plaintiff's personal credit card without Plaintiff's knowledge or authorization.

42. Amabile has failed to repay Plaintiff for the improper charges made by Amabile to on Plaintiff's personal credit card, for which Plaintiff has paid the credit card company in full.

43. Amabile's conduct constitutes an improper conversion of Plaintiff's property (i.e., money).

44.   As a direct and proximate result of
Amabile's actions, Amabile has been unjustly enriched
with substantial proceeds at the expense and/or
detriment of Plaintiff.

45.   Plaintiff incurred substantial damages as a
direct and proximate result of Amabile's actions.


WHEREFORE, Plaintiff demands judgment against
Amabile, for compensatory damages, punitive damages,
interest, costs of suit, attorney's fees, and such
other relief as the Court deems fair and equitable.

                              Louis H. Miron
                              Attorney for Plaintiff Alka
                              Bahal

Date:   June 29, 2022
                              LOUIS H. MIRON

11

**CERTIFICATION PURSUANT TO RULE 4:5-1**

I hereby certify that the matter in controversy is not the subject of any other action pending in any court and is likewise not the subject of any pending arbitration proceeding.   I further certify that I have no knowledge of any contemplated action or arbitration proceeding which is contemplated regarding the subject matter of this action and that I am not aware of any other parties who should be joined in this action.

Louis H. Miron
Attorney for Plaintiff Alka
Bahal

Date:   June 29, 2022

LOUIS H. MIRON

**DESIGNATION OF TRIAL COUNSEL**

Louis H. Miron is hereby designated as trial counsel for Plaintiff in the above-captioned matter.

Louis H. Miron
Attorney for Plaintiff Alka
Bahal

Date:   June 29, 2022

LOUIS H. MIRON

12

# Civil Case Information Statement

**Case Details: MORRIS | Civil Part Docket# L-001117-22**

**Case Caption:** BAHAL ALKA  VS AMABILE KRISTEN

**Case Initiation Date:** 06/29/2022

**Attorney Name:** LOUIS H MIRON

**Firm Name:** LOUIS H. MIRON

**Address:** 123 NORTH UNION AVE. STE 103

CRANFORD NJ 07016

**Phone:** 9082339555

**Name of Party:** PLAINTIFF : Bahal, Alka

**Name of Defendant's Primary Insurance Company**

(if known): None

**Case Type:** CONTRACT/COMMERCIAL TRANSACTION

**Document Type:** NJ eCourts Case Initiation Confirmation

**Jury Demand:** NONE

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same**

**transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Alka Bahal? NO**

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Business

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO

**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO

**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

06/29/2022

Dated

/s/ LOUIS H MIRON

Signed