<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ABUCHI RAYMOND WEALTH, and STANISLAV MARKEVICH,<br><br>Plaintiffs,<br><br>v.<br><br>FOX ROTHSCHILD LLP; ALKA BAHAL; KRISTEN M. AMABILE; JOHN AND JANE DOES 1-10, and ABC CORPS. 1-10,<br><br>Defendants. | Civil Action No. 23-03194(JKS)(JBC)<br><br>**OPINION**<br><br>July 11, 2024 |

**SEMPER**, District Judge.

The current matter comes before the Court on separate motions: (1) Defendant Fox Rothschild LLP's ("Fox") Motion to Dismiss Plaintiff Abuchi Wealth ("Wealth") and Stanislaw Markevich's ("Markevich") (collectively "Plaintiffs") Second Amended Complaint ("SAC") pursuant to Rule 12(b)(6) (ECF 39); (2) Defendant Alka Bahal's ("Bahal") Motion to Dismiss Plaintiffs' SAC pursuant to Rule 12(b)(6) (ECF 40); (3) Defendant Kristen Amabile's ("Amabile") Motions to Dismiss Plaintiffs' SAC pursuant to Rule 12(b)(6) and Rule 12(b)(1) (ECF 44); and (4) Defendant Fox's Motion for a Protective Order. (ECF 59.)  The Court reviewed all submissions in support and in opposition and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' respective Motions to Dismiss are **GRANTED** and Defendant Fox's Motion for a Protective Order is **DENIED.**

I.     BACKGROUND

When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). Accordingly, the following facts are taken from Plaintiffs' SAC.[1]

According to the SAC, Wealth is a Nigerian native and Mexican citizen who immigrated to the United States by way of a J-1 non-immigrant visa on or about March 14, 2019. (ECF 37, SAC ¶¶ 150-51.) Wealth's visa was set to expire on August 26, 2020. (*Id.* ¶ 136.) Bahal was an attorney with Fox Rothschild and a co-chair of the firm's Corporate Immigration Practice. (*See generally, id.*) Amabile was formerly employed by Fox Rothschild as a paralegal in the firm's immigration department until her termination in January 2022. (*Id.*)

In or around Summer of 2020, Wealth and his prospective employer, Soccer Specific Training ("SST"), both retained Fox Rothschild to assist them with a visa application for Wealth. (*Id.* ¶ 136.) On or about August 11, 2020, Wealth, SST and Fox Rothschild entered into a retainer agreement (the "Retainer Agreement") in which Fox Rothschild agreed to in part prepare and file an O-1 nonimmigrant visa petition ("O-1 Petition") on Wealth's behalf. (*Id.* ¶¶ 18, 39-40.) At or about the time that Wealth and SST retained Fox Rothschild, Bahal and Amabile began preparing the O-1 Petition. (*Id*. ¶¶ 41-42.) Bahal filed the O-1 Petition on Wealth's behalf with the United States Citizenship and Immigration Services ("USCIS"). (*Id.* ¶ 43.) On June 24, 2021, USCIS issued a decision addressed to Bahal (the filer of the O-1 Petition) denying Wealth's O-1 Petition

---

[1] The allegations in the SAC must be accepted as true solely for purposes of these Motions, except where conclusory and/or implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court also relies on documents integral to or relied upon by the SAC and the public record. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

(the "Decision").² (*Id.* ¶¶ 44, 136.) At the end of the Decision, USCIS informed Wealth that the Decision may leave him without lawful immigration status, and that if he is present in the United States in violation of the law, he is required to depart immediately or otherwise face consequences for failing to do so. (*Id.*; ECF 39-2, Ex. B at 11.) Nearly one year after Wealth received the Decision, on or around April 29, 2022, Immigration and Customs Enforcement ("ICE") detained Wealth for overstaying the duration of his visa.³ (ECF 37, SAC ¶¶ 147-152.)

Markevich is a non-resident musician, performer, and artist. (*Id.* ¶ 78.) He received an O-1B visa in May 2017. (*Id.* ¶¶ 79-82.) In or around June 2020, after Markevich unsuccessfully applied for an EB-1 visa, he contacted Amabile to discuss obtaining a visa. (*Id.* ¶¶ 85-86.) In or around October 2021, despite never retaining Fox Rothschild, Markevich discussed filing for a visa with Amabile. (*Id.* ¶¶ 94-96.) In January 2022, Fox Rothschild terminated Amabile's employment with the firm. (*Id.* ¶ 45.) Subsequently, Wealth and Markevich claim that Amabile continued to engage with both Plaintiffs to varying degrees. Specifically, on or after April 29, 2022, the date that ICE detained Wealth, Amabile obtained access to his apartment after sending an e-mail from his account to his building manager and allegedly stole over $11,000 in cash and three laptop computers. (*Id.* ¶ 63.) Additionally, Markevich alleges that, in or about March 2022, Amabile informed Markevich that she could assist his father to enter the United States without a visa. (*Id.* ¶¶ 99-101.) Amabile subsequently refused to provide any information to Markevich regarding any visa applications filed on his behalf. (*Id.* ¶¶ 108-110.) Allegedly, Markevich later learned that Amabile did not file any applications on his behalf. (*Id.* ¶ 113.)

---

² The Decision states that the O-1 Petition was denied because Wealth could not prove an extraordinary ability in athletics or other fields. (ECF 39-2, Ex. B.)

³ On August 13, 2021, the State of New Jersey filed a criminal complaint against Wealth and the Court issued a bench warrant for Wealth's arrest on October 6, 2021. The criminal action against Wealth currently remains pending. (ECF 39-2, Exs. C, D.)

3

On December 27, 2023, Wealth (but not SST) and Markevich filed this multiple-count SAC against Fox, Bahal and Amabile. Defendant Fox filed its motion to dismiss on January 12, 2024; Defendant Bahal filed her motion to dismiss on January 12, 2024; and Defendant Amabile filed her motion to dismiss on January 25, 2024.

## II.     STANDARD OF REVIEW

   a. Rule 12(b)(1)

Defendant Amabile requests the SAC be dismissed based upon a lack of subject matter jurisdiction. Amabile asserts a facial attack of Plaintiff' SAC because she contends there is no federal diversity or federal question[4] properly pending before the Court.

In deciding a Rule 12(b)(1) motion for lack of subject-matter jurisdiction, a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed.  A facial attack "contests the sufficiency of the complaint because of a defect on its face," whereas a factual attack "asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional prerequisites." *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (quoting *Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 806 (E.D.Pa. 2015)).  When a party moves to dismiss prior to answering the complaint, as is the case here, the motion is generally considered a facial attack. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

For a facial attack, "the Court must consider the allegations of the complaint as true," much like a Rule 12(b)(6) motion to dismiss. *Bd. of Trs. of Trucking Emps of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)).  The burden is on the

---

[4] Amabile contends there is no properly asserted federal question before the Court because Plaintiff fails to properly state a RICO claim.

plaintiff to prove the Court has jurisdiction. *Id.* (citing *Petruska*, 462 F.3d at 302). Thus, a district court must find that "the allegations on the face of the complaint, taken as true, allege sufficient facts to invoke the jurisdiction of the District Court" to overcome a facial attack. *Culver v. U.S. Dep't of Labor Occupational Safety & Health Admin.*, 248 F. App'x 403, 406 (3d Cir. 2007) (citing *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)). "To resolve a factual challenge, the 'court may look beyond the pleadings to ascertain the facts.'" *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 35 (3d Cir. 2018) (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). Again, the plaintiff has the ultimate burden of proof to establish that diversity jurisdiction exists by a preponderance of the evidence. *Id*

b. Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### III. ANALYSIS

#### A. Motions to Dismiss

##### 1. Subject Matter Jurisdiction[5]

A federal court must have subject matter jurisdiction to hear a case. Subject matter jurisdiction in federal court falls within two categories: (1) diversity jurisdiction pursuant to 28 U.S.C. § 1332, which encompasses disputes between citizens of different states alleging an amount in controversy in excess of $75,000; and (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331, which encompasses disputes "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Federal district courts have original jurisdiction over matters that raise federal questions, that is, "all civil actions arising under the Constitution, laws, or treaties of the United States." *E.g.* 28 U.S.C. § 1331.[6] Ordinarily, courts apply the "well-pleaded complaint" rule and look to the plaintiff's complaint to determine whether a case arises under federal law. *Aetna Health Inc. v.*

---

[5] In addition to Defendant Amabile's motion to dismiss pursuant to Rule 12(b)(1), this Court also has an independent obligation to establish that it has subject-matter jurisdiction. *Morel v. INS*, 144 F.3d 248, 251 (3d Cir. 1998) ("[A federal] court . . . will raise lack of subject-matter jurisdiction on its own motion.") (quoting *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).)

[6] Federal claims or actions involving particular issues may also have a specific statutory grant of original jurisdiction. *E.g.*, 28 U.S.C. § 1330 (actions against foreign states).

*Davila*, 542 U.S. 200, 207 (2004). Indeed, the federal question must be pleaded and appear on the face of the Complaint. *Merrel Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986).

Here, Plaintiffs claim in Count VII of the SAC that Defendants violated 18 U.S.C. § 1962(a), (c), and (d), the Civil Racketeer Influenced and Corrupt Organization Act ("RICO"). Pursuant to 18 U.S.C. § 1964, "the district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962." Therefore, Plaintiffs have met the threshold requirement, for pleading a federal question pursuant to 28 U.S.C. § 1331.[7]

As a result, Defendant Amabile's Motion to Dismiss pursuant to Rule 12(b)(1) is **DENIED**.[8]

2. **Count II**

Plaintiffs have voluntarily withdrawn Count II of their SAC to the extent they have pled a negligent infliction of emotional distress claim. (ECF 50, Pl. Opp. at 27.)

3. **Counts III, IV, and VII**

Counts III, IV and VII bring claims based on fraud. Federal Rule of Civil Procedure 9(b) states, in part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Accordingly, in a fraud claim, Rule 9(b)'s heightened pleading standard "requires a plaintiff to plead the 'who, what, when, where, and how'

---

[7] Absent a federal claim, federal courts still may have jurisdiction based upon diversity jurisdiction. Pursuant to 28 U.S.C. § 1332, federal district courts have original jurisdiction of all civil actions "between . . . citizens of different States" where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). At this time, a more fulsome analysis regarding diversity jurisdiction is not required as Plaintiffs have sufficiently pled subject matter jurisdiction through federal question. However, should Plaintiffs require the invocation of diversity jurisdiction in this case, Plaintiffs must establish that the matter is between citizens of different states and that the amount in controversy, exclusive of interest and costs, exceeds $75,000. *Id*. As currently pled, it is not clear that complete diversity or amount in controversy is present.

[8] Defendant Amabile hinges her 12(b)(1) motion upon the speculative dismissal with prejudice of Plaintiffs' Count VII federal RICO claim. As discussed *infra*, the Court dismisses Plaintiffs' federal RICO claim without prejudice based upon pleading deficiencies pursuant to Rule 9(b), granting Plaintiffs leave to amend their SAC to comport with Rule 9(b).

7

of the conduct giving rise to the claim." *Kowalsky v. Deutsche Bank Nat'l Tr. Co.*, No. 14-07856, 2015 WL 5770523, at *8 (D.N.J. Sept. 30, 2015). "The purpose of Rule 9(b) is 'to provide defendants with notice of the precise misconduct that is alleged and to protect defendants' reputations by safeguarding them against spurious allegations of immoral and fraudulent behavior.'" *Kowalsky*, 2015 WL 5770523, at *8 (quoting *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F.Supp.2d 494, 511 (D.N.J. 2000)). "Plaintiff need not always identify the particular time and place of the misrepresentation, however, so long as the complaint contains some 'alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud.'" *Peters v. Countrywide Home Loans, Inc.*, No. 15-6329, 2016 WL 2869059, at *3 (D.N.J. May 17, 2016) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985)).

Here, Plaintiffs broadly assert a fraud claim in Count III of the SAC against Defendants Fox, Amabile, and Bahal. However, Plaintiffs' allegations underlying the fraud claim fail to meet the heightened pleading required under Rule 9(b). The common law elements of fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Prof'l Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc.*, 245 Fed. App'x 161, 166 (3d Cir. 2007) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)). Here, Plaintiff contends that Fox and Amabile misrepresented Amabile's status as a licensed attorney, but Plaintiffs do not identify any dates, the method by which Amabile allegedly told Plaintiffs she was an attorney, what type of attorney she represented she practiced as, or any other relevant information pertaining to same. Furthermore, Plaintiffs fail to plead any of the requisite elements of fraud as to Bahal. Indeed, Plaintiffs do not

8

identify any misrepresentations allegedly made by Bahal, pleading only that Bahal allowed Amabile to work on Plaintiffs' applications. (ECF 37, SAC ¶¶ 191-92.)  As currently pled, Defendants are left to speculate as to the factual basis supporting a claim of fraud against them as the SAC does not contain any alternative means of injecting precision or measure of substantiation into the allegations of fraud.

Plaintiffs' New Jersey and federal RICO claims in Count IV and Count VII also do not satisfy the particularity requirement of Rule 9(b).[9] Specifically, Plaintiffs' New Jersey RICO claim does not set forth any specifics of Fox Rothschild's alleged pattern of racketeering activity. Indeed, Plaintiffs' allegations with respect to the alleged fraud are both vague and conclusory. Plaintiffs fail to state with specificity the predicate acts alleged with respect to the allegations of both mail and wire fraud.

Plaintiffs' federal RICO claim likewise fails to allege any precise information sufficient to place Fox Rothschild on notice regarding the alleged predicate acts of fraud pursuant to Rule 9(b). Despite Plaintiffs' claims that Defendants' RICO enterprise existed for nearly fifteen years but Plaintiffs' fail to provide further information with respect to the criminal enterprise; such as, when it formed, or the pattern that has developed since its formation.

Therefore, Defendants Fox and Bahal's Motion to Dismiss is **GRANTED** and Counts III, IV, and VII of Plaintiffs' SAC are Dismissed without Prejudice.

### 4. Counts I, II, and V

Counts I, II, and V of the Plaintiffs' SAC assert claims of Breach of Contract, Negligence, and Breach of Fiduciary Duty, respectively. These claims all rely upon the same alleged misconduct which composes Plaintiffs' legal malpractice claim found in Count VI of the SAC.

---

[9] The Court notes that Count III of Plaintiffs' SAC similarly fails to set forth any specifics of Defendant Fox or Defendant Bahal's allegedly fraudulent conduct pursuant to Rule 9(b).

Specifically, the basis for Plaintiffs' claims in Counts I, II, and V are that as attorneys for Plaintiffs, Defendants owed Plaintiffs a duty of care to act in accordance with standards applicable to legal professionals and breached that duty of care to Plaintiffs. Each of these claims are premised upon an alleged breach of an alleged duty of care, and therefore, are impermissibly duplicative.

This Court has often dismissed claims duplicative of legal malpractice claims. *See*, *e.g.*, *O'Keefe v. Friedman & Friedman, Ltd.*, No. 16-4866, 2018 WL 1535234 at *6 (D.N.J. Mar. 29, 2018) ("[I]n the context of legal malpractice, a tort claim and a breach of contract claim are not alternative theories of recovery for the same conduct, and the claims must be based on distinct conduct."); *Cohen v. Horn*, No. 19-5604, 2022 WL 1718051 at *7 (D.N.J. May 27, 2022), *aff'd,* No. 22-2148, 2022 WL 17546950 (3d Cir. 2022) (dismissing claims of breach of contract, breach of fiduciary duty, and negligence as duplicative of legal malpractice claims); *Lopez-Siguenza v. Roddy*, No. 13-2005, 2014 WL 4854452, at *7 (D.N.J. Sept. 30, 2014) ("To permit a generalized claim for breach of contract to proceed, when the breach is apparently based solely upon the attorney's malpractice, would . . . be duplicative of the malpractice claim."); *CCC Atl., LLC v. Silverang*, No. 18-17433, 2019 WL 3334797, at *5 (D.N.J. July 25, 2019) (dismissing a breach of fiduciary duty claim where the plaintiff simply "list[ed] the same conduct for this claim as it did for its legal malpractice claim"); *Fink v. Kirchner*, No. 12-4125, 2013 WL 1952303, at *3 (D.N.J. May 8, 2013) (dismissing breach of contract and breach of fiduciary duty claims because they were based on the identical allegations that formed legal malpractice claim).

Here, for Counts I, II, and V, Plaintiffs do not plead any allegations of conduct separate and distinct from the conduct underlying Plaintiffs' malpractice claim. With respect to the breach of contract claim, the only contract alleged is the retainer agreement between Wealth and Defendants for legal services, and, more importantly, the only allegations that Defendants

10

breached that agreement concern their supposed departure from the professional standard of care regarding Plaintiffs respective immigration applications.[10] Furthermore, Plaintiffs' negligence claim similarly fails because Plaintiffs' negligence claim is merely a restyled legal malpractice claim devoid of any allegations or conduct distinct from Plaintiffs' legal malpractice claims. Stated differently, the SAC contains no allegations that Defendants acted negligently outside the scope of their professional relationship with Plaintiffs. Lastly, Count V of Plaintiffs' SAC vaguely asserts that "according to the attorney-client relationship, the [] Defendants had a fiduciary duty to act in the Plaintiff's best interests." (ECF 37, SAC ¶ 231.) Notably, Plaintiffs do not refer to a specific action that purportedly constitutes a breach of any fiduciary duty nor do they allege any conduct distinct from their legal malpractice claim. (ECF 37, SAC at 61-62.)

As a result, Defendants Fox and Bahal's Motion to Dismiss are **GRANTED** and Counts I, II, and V of Plaintiffs SAC are dismissed with prejudice.

5. **Count VI**

Plaintiffs assert legal malpractice claims in Count VI of the SAC against Defendant Fox and Defendant Bahal. The factual circumstances surrounding the respective claims brought by Plaintiff Markevich and Plaintiff Wealth differ, but the SAC contends that "Bahal and Fox's malpractice is evident and apparent." (ECF 37, SAC ¶ 245.)

In New Jersey, a plaintiff must demonstrate four elements in asserting a legal malpractice claim: "1) the existence of an attorney-client relationship creating a duty of care upon the attorney; 2) that the attorney breached the duty owed; 3) that the breach was the proximate cause of any damages sustained; and 4) that actual damages were incurred." *McGrogan v. Till*, 771 A.2d 1187, 1193 (N.J. 2001); *Sommers v. McKinney*, 670 A.2d 99, 103-04 (N.J. App. Div. 1996); *Winters v.*

---

[10] Plaintiff Markevich does not allege the existence of a retainer agreement or contract between himself and Defendants.

11

*Jones*, No. 16-9020, 2018 WL 326518, at *12 (D.N.J. Jan. 8, 2018). It is the client's burden to prove "by a preponderance of competent credible evidence that injuries were suffered as a proximate consequence of the attorney's breach of duty," and this standard is not "satisfied by mere conjecture, surmise or suspicion." *Sommers*, 670 A.2d at 103-04.

1. Plaintiff Markevich's Legal Malpractice Claim

Markevich's legal malpractice claim is based upon the contention that Fox and Bahal failed to file a nonimmigrant visa petition and improperly advised Markevich to marry his girlfriend to obtain legal status, causing him to suffer damages. Although, based upon the SAC,[11] Markevich broadly alleges malpractice against Bahal and Fox, Markevich has failed to allege or refute any facts demonstrating the existence of an attorney-client relationship between himself and Defendants, the first element of a legal malpractice claim. Markevich has not identified any retainer agreement or other contract between himself and Defendants or any invoices for legal services that were ever sent to him. (ECF 39-1, Def. Fox. Br. at 24-25.)

Furthermore, Markevich does not allege that an implied attorney-client relationship existed absent a retainer agreement or express contract. (See Pl. Opp. Br. at 5-6). To establish an implied attorney-client relationship "a party must show (1) that it submitted confidential information to a lawyer, and (2) that it did so with the reasonable belief that the lawyer was acting as the party's

---

[11] Plaintiffs' arguments in opposition regarding Markevich's legal malpractice claim relies upon facts not pled in the SAC. Specifically, Plaintiffs contend that "Defendant Bahal and Amabile met with Plaintiff Markevich and his loved ones to discuss his immigration application." (ECF 50, Pl. Opp. at 5.) However, the SAC alleges only that Bahal sent Markevich a telephone conference invitation in 2017—prior to Markevich's submission of his own petition—and that at some point Bahal and Amabile allegedly advised him that he should marry an American citizen and then apply for a visa—even if true, a suggestion that Markevich apparently rejected. (ECF 37, SAC ¶¶ 82, 88, 89, 93.) It is well settled that Plaintiffs cannot amend their Complaint through an opposition brief. *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

attorney."[12] The Court must look at the "conduct of the parties, the surrounding circumstances, statements made by the lawyer, or some combination of all three." *Ellis v. Ethicon, Inc.*, No. 05-726, 2005 U.S. Dist. LEXIS 25705 (D.N.J. Oct. 25, 2005) (internal citation omitted). The finding of an implied attorney-client relationship requires more than a subjective belief that such relationship exists.[13] Instead, the belief must be "objectively reasonable under the totality of the circumstances, which includes consideration of the intent of the alleged client and attorney and payment arrangements." *Ellis,* 2005 U.S. Dist. LEXIS 25705, at *12-13 (internal citations omitted). "[T]he common thread in cases in which a lawyer-client relationship is said to have arisen by implication is reliance by the 'client' on the professional skills of the attorney coupled with the attorney's awareness of that reliance and tacit acceptance of it." *Geranio v. FEC Mortg. Corp.,* 2009 WL 383348, at *3 (N.J. App. Div. Feb. 18, 2009); *Robinson v. Hornell Brewing Co.,* No. 11-2183, 2012 WL 71730, at *2 (D.N.J. Jan. 10, 2012).

Here, Markevich identifies only two alleged communications between Bahal and Markevich: (1) a telephone conference invitation sent in 2017, prior to the petition Markevich submitted on his own behalf, demonstrating that he did not retain Defendants at that time (ECF 37, SAC ¶¶ 81-82); and (2) a communication that occurred on an unidentified date (presumably in 2020) in which Amabile and Bahal allegedly told Markevich to marry a citizen and obtain a visa.[14]

---

[12] *Montgomery Acad. v. Kohn*, 50 F. Supp. 2d 344, 350 (D.N.J. 1999) (quoting *Pain Prevention Lab., Inc. v. Electronic Waveform Labs., Inc.,* 657 F. Supp. 1486, 1495 (N.D.Ill.1987)); *Killion v. Coffey,* No. 13-1808, 2014 WL 2931327 (D.N.J. June 30, 2014).

[13] *Capitol Surgical Supplies, Inc. v. Casale,* 86 F. App'x 506, 509 (3d Cir.2004); *Ellis,* 2005 U.S. Dist. LEXIS 25705, at *12 (quoting *Essex Chem. Corp. v. Hartford Accident & Indem. Co.,* 993 F. Supp. 241, 253 (D.N.J.1998)); ("A subjective belief that an attorney-client relationship was formed is an insufficient basis upon which to find the existence of a genuine issue of material fact precluding summary judgment."); *FMC Corp. v. Guthery,* No. 07–5409, 2009 WL 485280 (D.N.J. Feb. 24, 2009).

[14] Markevich alleges he spoke with Amabile (not Bahal) about obtaining a visa in January 2017 yet acknowledges his approval for an O1-B visa without attorney assistance in 2017. (ECF 37, SAC ¶¶ 81-82.) Interestingly, Markevich relies on a teleconference invite dated January 17, 2017 to support the assertion that he spoke again with Bahal in 2020 regarding his visa application. (*Id.* ¶¶ 85-89.) Of course, this assertion does not make logical or linear sense and Plaintiffs cannot reasonably rely on a 2017 teleconference invitation to support an allegation that they spoke 3 years later, in 2020.

13

(*Id.* ¶¶ 89, 93.) Critically, Markevich does not allege in the SAC that he provided any confidential information to Defendants nor does the SAC allege that Markevich requested that Bahal render legal advice or assistance or that Bahal agreed to render any such advice or assistance.[15] As a result, Markevich cannot support a claim of legal malpractice against Defendants because he has failed to establish an express or implied attorney-client relationship.

2. <u>Plaintiff Wealth's Legal Malpractice Claim</u>

Wealth similarly alleges that Defendants Fox and Bahal breached a duty owed, proximately causing damages to Wealth. (*See* ECF 37, at 62-64.) Unlike Markevich's claim discussed *supra*, Defendants do not challenge Plaintiff's allegation that an attorney-client relationship existed. (*See generally* ECF 39-1, Def. Fox. Br; *see also* ECF 56, Def. Bahal. Rep. Br. at 5.) Thus, the Court focuses on whether Wealth pleads sufficient facts as to Defendants' breach, proximate cause, and damages.

a. **Breach**

Wealth's central claim is that Fox and Bahal breached a duty owed based on their failure to "accurately and timely" file Plaintiff's visa application. (ECF 37, SAC ¶ 246.) Specifically, Wealth asserts that Defendants "never explained" that he "no longer qualified for the O-1 Visa as he needed to either be self-employed, or required the sponsorship of a company, an individual who represents a company, or a company's agent." (ECF 37, SAC ¶ 27.) Further, Plaintiff contends

---

[15] There are no allegations in the SAC suggesting that "Plaintiff Markevich sought advice concerning his Visa application renewal and his father's visa application to the United States" from Bahal. Contrary to Plaintiffs' brief, there are no allegations in the SAC regarding any meetings—either in person or by Zoom—between Bahal and Markevich, or meetings between Bahal and Markevich's "loved ones." Plaintiffs' opposition claims that "Defendants Amabile and Bahal accepted thousands of dollars from Plaintiff Markevich for his immigration application" (ECF 50, Pl. Opp. Br. at 5); however, there are no factual allegations in the SAC to suggest that Bahal ever received any money from Markevich. (ECF 37, SAC ¶¶ 97, 121.)

that Defendants "knew or should have known that Mr. Wealth did not qualify for the O Nonimmigrant Visa at the time they submitted Mr. Wealth's LATE O-1 Visa application to USCIS." (*Id.* ¶ 30.) Plaintiffs' SAC and opposition are once again at odds.[16] To bolster his position that Defendants breached their duty, Wealth contends for the first time in his brief that he "only wanted to renew his J-1 Visa" and that he "raised concerns that he would not qualify for the O-1 because he was not a famous soccer athlete." (ECF 50, Pl. Opp. at 6.) Plaintiff goes on to say in his brief that he "did not possess extraordinary ability in the sciences, arts, education, business, or athletics" that "[w]hen Defendants submitted Plaintiff Wealth's visa application, Plaintiff Wealth was a Little League soccer coach" and it would be "laughable" to think Wealth would qualify for the Visa application Defendants filed. (*Id.* at 7-8.) However, in direct contradiction to these assertions in Wealth's opposition brief, Wealth contends in the SAC, that he is considered a "world-famous soccer player and [has] played on famous teams all over the world." (ECF 37, SAC ¶ 136.)

Although Wealth attempts to conflate the issues in his opposition papers, the arguments are unavailing with respect to breach. Defendants contend that Wealth's pleading is insufficient to show a breach because "USCIS. . . accepted the O-1 petition [filed by Defendants] and evaluated it on the merits." (ECF 39-1, Def. Fox. Br. at 21; ECF 39-2, Exhibit B.) Furthermore, although Wealth now attempts to suggest that Defendants should have informed him that he was not qualified for the requested visa and/or that Defendants failed to submit certain information to USCIS in connection with the O-1 petition, his own allegations in the SAC contradict these assertions. Wealth acknowledges that he fully cooperated with Defendants and provided them with

---

[16] Once again, the Court reminds Plaintiff that it cannot amend the SAC through a brief. *Commonwealth of Pa. ex rel. Zimmerman*, 836 F.2d at 181 ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc.,* 745 F.2d at 1107.)

15

all supporting documents and information for the O-1 Petition. (ECF 37, SAC ¶ 166.) Finally, the SAC does not allege or identify any information or documents which Defendants failed to request from Wealth that would have caused USCIS to instead grant the O-1 petition.

Although Wealth's failure to sufficiently plead a breach is dispositive, the Court will address Wealth's deficiencies in pleading proximate causation and damages.

### b. Proximate Cause and Damages

Turning to Defendants' proximate causation and damages arguments, Defendants contend that the SAC must be dismissed because Wealth fails to allege that Fox or Bahal proximately caused his alleged damages. (ECF 55, Def. Fox. Rep. Br. at 4; ECF 56, Def. Bahal Rep. Br. at 6.) To properly plead proximate cause, "a plaintiff must allege that the negligent conduct by an attorney was a substantial factor in contributing to his harm." *CCC Atl., LLC v. Silverang*, 2019 WL 3334797, at *4. In this instance, Wealth has failed to allege that he suffered any damages proximately caused by any conduct undertaken by Defendants. In fact, Wealth does not refute Defendant Fox's contentions that (1) its alleged tardiness and alleged failure to file the correct type of petition; (2) its alleged failure to submit certain information to USCIS in connection with the O-1 Petition; and/or (3) its alleged failure to seek reconsideration of the Decision did not proximately cause his later detention by ICE. However, perhaps most critical of all, Wealth fails to refute the actual reason for his detention by ICE: pending criminal charges against Wealth, in connection with which a warrant was issued for his arrest in October 2021.[17] (*See* ECF 37-3, Ex. C.)

---

[17] "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A city ordinance constitutes a public record. *See, e.g.*, *Campbell v. Conroy*, 55 F. Supp. 3d 750, 754 n.3 (W.D. Pa. 2014) (relying on text of an ordinance to decide a Rule 12(b)(6) motion to dismiss because it was a public record); *see also Moore U.S.A., Inc. v. Standard Register Co.*, 139 F. Supp. 2d 348, 363 (W.D.N.Y. 2001) ("[C]ourts that consider matters of public record in a Rule 12(b)(6) motion are limited to things

Wealth pleads, and it is undisputed that he was aware that he was out of status as of June 24, 2021 following the denial of his petition. (ECF 37, SAC ¶ 44.) It is further pled and undisputed that on or about April 29, 2022 Wealth was arrested by ICE. (*Id*. ¶ 147.) Despite Wealth's attempt to link the untimely filing of his petition with his later detention by ICE, he ignores his own decision to remain in the country and be the subject of a criminal charge and an arrest warrant which occurred prior to his detention by ICE. (*See* ECF 37-3, Exs. C, D.) As currently pled, Wealth fails to sufficiently identify any damages proximately caused by Defendants with respect to his legal malpractice claim. (ECF 37, SAC ¶ 147.)

Based upon the foregoing, Defendant Fox and Defendant Bahal's respective Motions to Dismiss are **GRANTED** and Count VI of the SAC is Dismissed with Prejudice as to Plaintiff Markevich and Dismissed without Prejudice as to Plaintiff Wealth.

### 6. Request to Strike Impertinent, Scandalous, and/or Immaterial Allegations in the SAC

Defendant Fox requests the Court to strike paragraphs 50, 55-61, 115, 145, and 196, and page 8 of the SAC, as they "do not bear on any causes of action in the SAC." (ECF 39-1, Def. Fox Br. at 38.) While Rule 12(f) permits the Court to use its discretion to strike any redundant, immaterial, impertinent, or scandalous matter *sua sponte*, the Court in its discretion declines to do so.

### B. Motion for a Protective Order

The Court reminds Mr. Blackburn that pursuant to Local Civil Rules, "The Court, on motion of any party or on its own motion, may issue a special order governing such matters as extrajudicial statements by parties and witnesses likely to interfere with the rights of a party to a

---

such as statutes, case law, city charters, city ordinances, criminal case dispositions, letter decisions of government agencies, published reports, records of administration agencies, or pleadings in another action.").

fair trial by an impartial jury . . . and any other matters which the Court may deem appropriate for inclusion in such an order." L.Civ.R. 105.1(g). Furthermore, as an officer of the Court Mr. Blackburn's conduct is governed by the Rules of Professional Conduct established by the New Jersey Supreme Court.

Defendant Fox's motion for a protective order to enjoin Plaintiffs' Counsel from making extrajudicial statements is **DENIED** without prejudice.[18]

## IV.     CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is **GRANTED.** Plaintiffs have thirty days to file an amended complaint that cures the deficiencies noted within this opinion. An appropriate order follows.

*/s/  Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:       Clerk
cc:          James B. Clark, U.S.M.J.
               Parties

---

[18] In light of the Court's dismissal of the SAC, the Court will not consider the alleged extrajudicial statements of Mr. Blackburn. Moving forward, the Court will not tolerate extrajudicial statements of the kind alleged in Defendant Fox's moving brief (ECF 59-1, Def. Fox. Br. at 17-18.) Mr. Blackburn's February 7, 2024 statements to Law360 that Fox is a "corrupt organization" that "it is evident that they steal from their clients," and that he would be referring Fox for criminal prosecution are just a few examples of counsel's inappropriate extrajudicial comments. (*Id*.) Extrajudicial statements of this nature offend the Rule and would force the Court's intervention in the future. Accordingly, Defendant Fox is granted leave to renew its motion in the event Court intervention is required.

18