
**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABUCHI RAYMOND WEALTH and STANISLAV MARKEVICH,<br><br>*Plaintiffs,*<br><br>v.<br><br>FOX ROTHSCHILD LLP; ALKA BAHAL; KRISTEN M. AMABILE; JOHN AND JANE DOES 1-10, and ABC CORPS. 1-10,<br><br>*Defendants.* | Civil Action No. 23-03194(JKS)(JBC)<br><br>**OPINION**<br><br>June 27, 2025 |

**SEMPER**, District Judge.

The current matter comes before the Court on separate motions: (1) Defendant Fox Rothschild LLP's ("Fox") motion to dismiss Plaintiffs Abuchi Wealth ("Wealth") and Stanislaw Markevich's ("Markevich") (collectively "Plaintiffs") Third Amended Complaint (ECF 75, "TAC") pursuant to Rule 12(b)(6) (ECF 81); (2) Defendant Alka Bahal's ("Bahal") motion to dismiss Plaintiffs' TAC pursuant to Rule 12(b)(6) (ECF 83); and (3) Defendant Kristen Amabile's ("Amabile") motion to dismiss Plaintiffs' TAC pursuant to Rule 12(b)(6) (ECF 82). Plaintiffs opposed the motions to dismiss. (ECF 87.) Defendants filed reply briefs in further support of their motions to dismiss. (ECF 88, ECF 89, ECF 90.) The Court reviewed all submissions in support and in opposition and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' respective motions to dismiss Count 4 of the TAC are **GRANTED**, and the Court declines to retain jurisdiction over Counts 1-3 of the TAC.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

The facts of this case have been previously recounted in the Court's opinion addressing Defendants' motions to dismiss Plaintiffs' Second Amended Complaint. (ECF 69.) As such, the Court will briefly recount the facts as relevant to the TAC.

Plaintiff Wealth is a Nigerian native and Mexican citizen who immigrated to the United States by way of a J-1 non-immigrant visa, which was set to expire in August 2020. (ECF 75, TAC ¶ 18.) During the operative time period, Bahal was an attorney with Fox Rothschild and a co-chair of the firm's Corporate Immigration Practice. (*Id.* ¶¶ 40, 67.) Amabile was formerly employed by Fox Rothschild in the firm's immigration department as an office administrator until her termination in January 2022. (*Id.* ¶¶ 82, 84-85.)

On August 6, 2020, Wealth and his employer, Soccer Specific Training, retained Fox to assist them with a visa application for Wealth; a subsequent retainer agreement was signed between only Wealth and Fox. (*Id.* ¶¶ 45, 48, 50, 56.) Wealth alleges that Fox made a number of errors in providing legal advice regarding his visa, including recommending he apply for an O-1 visa instead of J-1 visa and submitting his visa application late (*see id.* ¶¶ 42, 50, 52, 55-57, 60-65, 73-79, 81); he further alleges that Bahal was negligent in the time and effort she spent on the application. (*Id.* ¶ 80; *see also id.* ¶ 100.) Wealth's O-1 visa application was denied and, in April 2022, Wealth was arrested by ICE for overstaying his J-1 visa. (*Id.* ¶¶ 76, 210-14.) Wealth alleges that Bahal and Fox recommended he apply for the O-1 visa even though they knew he was not qualified to receive it so that Defendants could charge him a higher fee for legal services. (*Id.* ¶ 65.) Wealth also alleges that Bahal spearheaded an "Immigration Rico [sic] Scheme," through

---

[1] When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

which she retained overpayments made by clients through fraudulent invoicing. (*Id.* ¶¶ 89-93.) Wealth further alleges that Amabile requested credit card information from Wealth, which she ultimately used to steal money from Wealth (*id.* ¶¶ 106-09, 111-21); in April 2022, Amabile also allegedly broke into Wealth's apartment and stole cash and laptops. (*Id.* ¶ 110.)

Markevich is a non-citizen who, in 2020, consulted with Bahal regarding a potential visa, but never retained Fox. (*Id.* ¶¶ 132-34.) Markevich—a friend of Amabile's at the time (*id.* ¶¶ 125-29)—alleges that Amabile represented herself to him as an attorney and assured him that Fox could help him secure a visa (*Id.* ¶ 137.) Markevich alleges that Bahal and Amabile, in their single consultation meeting, failed to inform him of all of his options for securing a visa and encouraged him to commit immigration fraud. (*Id.* ¶¶ 138-45.) Although Markevich never retained Fox, in late 2021, Amabile called Markevich and told him she could find a way to obtain a visa for him; Markevich sent Amabile money to file the application. (*Id.* ¶¶ 146-51.) Amabile, however, kept the money and did not apply for the visa. (*Id.* ¶¶ 152, 173-76.) In March 2022, Amabile also claimed she could help Markevich's father immigrate to the U.S. from Ukraine, but did not do so. (*Id.* ¶¶ 153-72.)

Plaintiffs allege that these actions represent Defendants' scheme to defraud clients through mail, wire, and visa fraud by offering sham immigration services. (*Id.* ¶¶ 105, 221-73.)

On July 11, 2024, this Court granted Defendants' motions to dismiss the Second Amended Complaint. (ECF 69, ECF 70.) On August 19, 2024, Plaintiffs filed a Third Amended Complaint. (ECF 75, ECF 76.) Plaintiffs allege common law fraud against all Defendants (Count 1); violations of the New Jersey Racketeer Influenced and Corrupt Organizations Act (Count 2); legal malpractice by Wealth against Fox and Bahal (Count 3); and violations of the federal civil Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1962(a), (c)-(d)

(Count 4). On September 17, 2024, Fox and Amabile moved to dismiss the TAC. (ECF 81, ECF 82.) On September 23, 2024, Bahal moved to dismiss the TAC. (ECF 83.) On October 24, 2024, Plaintiffs filed an opposition to the motions to dismiss (ECF 87.) On November 4, 2024, Defendants filed reply briefs in further support of their motions to dismiss. (ECF 88, ECF 89, ECF 90.)

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no

4

relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-02945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## III. ANALYSIS

In Count 4 of the TAC, Plaintiffs claim that all Defendants are liable under the federal RICO statute, 18 U.S.C. § 1962(a), (c)-(d). The RICO Act makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010). Plaintiffs specifically plead a violation of 18 U.S.C. 1962(a), (c), and (d). The Court will address each subsection in turn.

### A. 18 U.S.C. § 1962(a)

Section 1962(a) makes it "unlawful for any person who has received any income derived . . . from a pattern of racketeering activity . . . to use or invest . . . any part of such income, or the proceeds of such income" in any enterprise engaged in interstate commerce. 18 U.S.C. § 1962(a). Under Section 1962(a), a plaintiff must allege injury specifically from the use or investment of income in the named enterprise. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411 (3d Cir. 1991) (citing *Rose v. Bartle*, 871 F.2d 331, 357–58 (3d Cir. 1989)). Plaintiffs do not allege any injury from the use or investment of income in the named enterprise. (*See generally* TAC.) As such, Plaintiffs fail to state a claim under Section 1962(a).

### B. 18 U.S.C. § 1962(c)

"To plead a RICO claim under § 1962(c), 'the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004)).

In support of its motion to dismiss 18 U.S.C. § 1962(c), Fox argues that (i) Plaintiffs do not establish a "pattern of racketeering activity" to support their RICO claims (ECF 81-1, "Fox Br." at 31-37; ECF 88, "Fox Reply" at 12-13); (ii) there are no details about the alleged criminal enterprise in the TAC (Fox Br. at 33) and that Plaintiffs improperly ascribe Amabile's alleged fraudulent acts to the RICO enterprise (*id.* at 34-35); and (iii) that the TAC is devoid of precise information regarding the predicate acts of fraud (*id.* at 33-35). Bahal similarly argues that Plaintiffs fail to allege Bahal's involvement in a "scheme" or fraudulent conduct. (ECF 83-1, "Bahal Br." at 15-16; ECF 90, "Bahal Reply" at 9-11.) Amabile argues that the TAC fails to allege that the Defendants constitute an enterprise. (ECF 82-1, "Amabile Br." at 11-14; ECF 89, "Amabile Reply" at 6.)

#### i. RICO Enterprise

The Court agrees with Fox and Amabile's arguments that the TAC fails to allege an enterprise under 18 U.S.C. § 1962(c) ("Section 1962(c)"). Section 1962(c) makes it

> unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

A RICO "person" is any individual or entity capable of holding a legal or beneficial interest in property. 18 U.S.C. §§ 1961(3), 1962(c). A RICO "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §§ 1961(4), 1962(c). Plaintiffs appear to

6

argue that Defendants are part of an association-in-fact enterprise.[2] (*See* TAC ¶¶ 350 ("The association is composed of Defendants Amabile, Bahal, Fox, JOHN DOES 1-10, and ABC CORPORATIONS 1-10"), 354 ("Defendants are associated with each other as an enterprise within the meaning of "enterprise" as defined in 18 U.S.C. § 1961(4).")). "From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit the enterprise's purpose." *United States v. Boyle*, 556 U.S. 938, 946 (2009).

The TAC fails to allege an association-in-fact enterprise under RICO. Although the TAC—at nearly 100 pages and almost 400 paragraphs—is not entirely clear, Plaintiffs appear to allege that the RICO scheme had the common purpose of defrauding Plaintiffs and other victims by offering sham legal services in order to steal money from clients.[3] (*See* TAC ¶¶ 255-56, 260-62.) Here, the TAC details an account of Bahal's affairs and Amabile's affairs, not an enterprise's affairs. Such allegations are insufficient to plead a RICO enterprise, which requires "defendants [to] conduct[ ] or participat[e] in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Jamal v. Ally Fin., Inc.*, No. 24-00894, 2024 WL 5232926, at *8–9 (D.N.J. Dec. 27, 2024) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); 18 U.S.C. § 1962(c)).

The allegations covering sham immigration services rely on Bahal's conduct, *i.e.*, that Bahal induced Fox clients to pay large retainers for immigration services they did not qualify for,

---

[2] Plaintiffs appear to alternately argue that the enterprise is Fox (TAC ¶ 223). The Court addresses this alternative enterprise *infra*.

[3] Plaintiffs offer a disjointed set of allegations in support of how the enterprise actually worked: Bahal allegedly "knowingly misrepresent[ed] Amabile as a licensed immigration attorney" and misled Plaintiffs and others to believe they were qualified for certain immigration visas when they were not, all in order to overbill clients and steal "those clients [sic] retainers and/or assets through a sophisticated scheme of voodoo accounting, and deceptive billing." At the same time, Plaintiffs allege that Defendants defrauded Plaintiffs and others by inducing them to open "credit cards, charge cards, bank cards, retail store charge cards, and bank accounts to establish 'good credit' so they can [sic] qualify for a United States Visa" and so Defendants could ultimately open credit card and bank accounts in clients' names to "rob[ ]" them. (TAC ¶¶ 184, 250-51, 362, 366, 381.)

7

overbilled clients, and stole their retainers.[4] (*Id.* ¶¶ 358, 362, 389.) Plaintiffs' attempts to allege an enterprise based on this conduct are contradicted by the same allegations in the TAC's other paragraphs, which implicate Bahal singularly.[5] At the same time, the RICO claim also relies on separate conduct attributed solely to Amabile, *i.e.*, stealing credit card information and money from Plaintiffs (*see* TAC ¶¶ 106-07, 110-11, 114-121, 146-152, 290-97, 379). The majority of the TAC paints Amabile as a rogue actor abusing her association with Fox to access clients' and potential clients' personal identifying information to commit credit card fraud and theft. (*See id.*) As Fox correctly argues, these allegations implicate only Amabile. (Fox Br. at 34.)[6]

As a whole, these allegations are insufficient to establish a RICO enterprise. *See Jamal* 2024 WL 5232926, at *9 (quoting *McCullough v. Zimmer, Inc.*, 382 F. App'x 225, 231 (3d Cir. 2010)) ("Simply listing a string of individuals or entities that engaged in illegal conduct, without more, is insufficient to allege the existence of a RICO enterprise."); *see also In re Ins. Brokerage*

---

[4] Plaintiffs' allegations attempting to tie Amabile to these activities do not plausibly support the inference that there existed "a continuing unit that function[ed] with a common purpose," *Spirits v. Ragghianti*, No. 23-2913, 2024 WL 3177773, at *3 (3d Cir. June 26, 2024) (quoting *Boyle*, 556 U.S. at 948). Plaintiffs' single paragraph that "at the end of every fiscal year, Bahal and Fox would require Amable [sic], as a part of her employment, to forgo reimbursing Fox Rothschild immigration clients for overpayments made by said clients" (TAC ¶ 90) is insufficient, even at this stage, to plead an enterprise involving Amabile. Plaintiffs' allegations that Bahal represented Amabile as an attorney to recruit immigration clients (*see, e.g.*, TAC ¶ 103) are similarly unavailing. Further allegations in the TAC connect Amabile's representation of herself as an attorney to Amabile's separate, independent fraudulent activity. (*See, e.g.*, TAC ¶ 127, 132, 136, 146-176; *see also infra* n.6.)

[5] *See, e.g.*, TAC ¶¶ 65(c)(i) ("Fox and Bahal had a pattern and practice of overbilling and stealing retainer overpayments from their immigration clients."); 68 ("Bahal engaged in these deceptive practices to coerce clients into untenable immigration processes to run up their bills and/or pocket the balance of their retainers."); 97 ("Based on information and belief, Bahal's pattern and practices involve passing off her responsibilities as an attorney to unlicensed office staff . . . she then signs off on the staff's work and fraudulently bills her clients for services she never rendered."); 104 ("Based on information and belief, Bahal allowed her greed to blind her to her ethical duties as an officer of the court and an attorney in the State of New Jersey."); 123 (detailing Amabile's allegations against Bahal, in separate lawsuit, including Bahal's "practice of failing to reimburse Fox Rothschild clients for overpayments made by said clients."). Even if Plaintiffs have alleged that Amabile and others were part of Bahal's enterprise to "coerce clients into untenable immigration processes" (*id.* ¶ 68), Plaintiffs' RICO claim still fails. *See supra* Section III.B.ii.

[6] Plaintiffs only begin to attribute these activities to all Defendants at the very end of the TAC under their federal RICO cause of action. (*See, e.g.*, TAC ¶¶ 357, 359, 362, 365, 371, 381). These out-of-nowhere allegations tying the other Defendants to Amabile's independent conduct are conclusory and thus insufficient to plead an association-in-fact enterprise. *See Chey v. LaBruno*, 608 F. Supp. 3d 161, 185 (D.N.J. 2022) (dismissing RICO claim for failure to allege an association-in-fact based on plaintiff's conclusory allegation that the "[d]efendants have and are working together such as to comprise an enterprise").

*Antitrust Litig.*, 618 F.3d at 367 (quoting *Boyle*, 556 U.S. at 582 n.4) (noting that where "several individuals, *independently and without coordination*, engaged in a pattern of crimes listed as RICO predicates [,] ... [p]roof of these patterns would not be enough to show that the individuals were members of an enterprise."); *Miller-Bell v. Hall*, No. 23-924, 2023 WL 5153677, at *7 (W.D. Pa. Aug. 9, 2023) ("[I]t is not sufficient to merely allege claims against multiple defendants and call them an enterprise.").

Plaintiffs have also failed to allege a RICO enterprise under their alternative argument that the enterprise is Fox. (*See* TAC ¶ 223.) "[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). A RICO person must be distinct from the RICO enterprise because a person cannot "associate" with themself. *See id.* at 161. "The distinctiveness requirement has long been recognized by courts of this Circuit." *In re Aetna UCR Litig.*, No. 07-3541, 2015 WL 3970168, at *27 (D.N.J. June 30, 2015). Here, Plaintiffs allege both that the RICO "enterprise" is Fox and Fox is a member of the enterprise. (*See* TAC ¶¶ 223 ("Fox Rothschild constitutes an 'enterprise' as defined in 18 U.S.C. § 1961(4))"; 350 ("The association is composed of Defendants Amabile, Bahal, Fox, JOHN DOES 1-10, and ABC CORPORATIONS 1-10."))[7] Plaintiffs' alleged enterprise therefore violates *Kushner's* distinctness rule. *See Kushner*, 533 U.S. at 161.

In sum, under either an association-in-fact or Fox-as-enterprise formulation, Plaintiffs have failed to plead a RICO enterprise.

### ii. Racketeering Activity

---

[7] As discussed *supra*, although Plaintiffs' allegations about Bahal's activities at times seem to imply that Bahal's scheme does not include Fox, *see, e.g.* TAC ¶ 184 ("Bahal created an Immigration RICO enterprise within Fox"), because Plaintiffs bring their federal RICO claim against all Defendants, including Fox (*id.* ¶¶ 348-391), the Court concludes that Plaintiffs allege that Fox is a "person" under RICO for purposes of their RICO claim.

Even assuming that Plaintiff intended to, and successfully, pleaded a standalone enterprise involving Defendants' alleged efforts to (i) induce clients to pay large retainers for immigration services they did not qualify for and (ii) retain clients' overpayments rather than reimbursing them (TAC ¶¶ 89-93, 362)[8], Plaintiff's RICO claim still fails to allege a pattern of racketeering.

To show a pattern of racketeering activity, a plaintiff must allege at least two predicate acts of racketeering. *See* 18 U.S.C. § 1961(5). Plaintiffs here allege that Defendants committed mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, and visa fraud in violation of 18 U.S.C. § 1546. (*See* TAC ¶¶ 328, 357, 375-76, 382-91; Opp. at 20-22, 25-26.) Fox argues that Plaintiffs have failed to plead any precise information sufficient to place Fox on notice regarding the alleged predicate acts of fraud. (Fox Br. at 33.) Bahal also argues that Plaintiffs do not allege mail and wire fraud with sufficient particularity. (Bahal Br. at 15-16.)

When fraud is the predicate act, a plaintiff must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Warden v. McLelland,* 288 F.3d 105, 114 (3d Cir. 2002). Specifically, under Rule 9(b), "'a party must state with particularity the circumstances constituting fraud or mistake.'" *Dist. 1199P Health & Welfare Plan v. Janssen*, *L.P.*, 784 F. Supp. 2d 508, 526 (D.N.J. 2011) (quoting Fed R. Civ. P. 9(b)). Because Plaintiffs "present a fraud-based RICO claim, they must plead with particularity the circumstances of the alleged fraud." *Nelson v.*

---

[8] Plaintiffs occasionally refer to an "Immigration RICO enterprise" or "Immigration RICO scheme," which, although unclear, appears not to include Amabile's alleged standalone fraudulent communications and activities. *See, e.g.*, TAC ¶ 89 ("It is more probable than not that Amabile was an unwilling victim of Bahal and Fox's Immigration Rico [sic] Scheme."). Because Plaintiffs conversely treat Amabile's activities as part of the enterprise's activities for purposes of the federal RICO claims, *see e.g.* TAC ¶¶ 227, 234, 236, 244, 355-91, the Court considered the allegations involving Amabile for purposes of assessing the enterprise's purpose and structure in Section III.B.i, *supra*. However, in an effort to draw all reasonable inferences in favor of the plaintiffs, *Phillips v. Cnty. of Allegheny*, 515 F.3d at 231, and for the avoidance of doubt, the Court conducts the analysis in this section under the assumption that Plaintiffs may have intended to alternatively plead the "Immigration RICO enterprise" as a separate, standalone RICO scheme.

*Claussen*, No. 23-01896, 2024 WL 4249730, at *9 (quoting *Morales v. Superior Living Prod., LLC*, 398 F. App'x 812, 814 (3d Cir. 2010)).

Plaintiffs may satisfy Rule 9(b)'s particularity requirement "by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud,'" *Ne. Revenue Servs., LLC v. Maps Indeed, Inc.*, 685 F. App'x 96, 102 (3d Cir. 2017) (quoting *Lum*, 361 F.3d at 224); *see also McBride v. Twp. of Washington*, No. 19-17196, 2020 WL 3396802, at *5 (D.N.J. June 19, 2020) (internal quotations omitted) ("To plead mail or wire fraud with sufficient particularity, plaintiffs must plead the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.").

"Mail or wire fraud consists of (1) a scheme to defraud, (2) use of the mail or interstate wires to further that scheme, and (3) fraudulent intent." *Jaye v. Oak Knoll Vill. Condo. Owners Ass'n, Inc.*, 751 F. App'x 293, 297 (3d Cir. 2018) (citing *United States v. Pharis*, 298 F.3d 228, 233-34 (3d Cir. 2002)). When mail fraud is pled as a predicate act to a RICO violation, a plaintiff "must allege that mailings are related to the underlying fraudulent scheme, even though mailings need not be an essential element of the scheme and need not themselves contain any misrepresentations." *Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 F. App'x 227, 231 (3d Cir. 2003) (citations omitted).

Plaintiffs claim that Defendants committed mail fraud, alleging that they "devised and participated in a scheme to defraud Plaintiffs out of money, in reliance on the mail." (TAC ¶ 377.) Plaintiffs claim Defendants used the mail to further their scheme by mailing visa applications to the USCIS Service Center in Vermont (TAC ¶ 240) and by communicating with Plaintiffs. (*Id.* ¶¶

11

241-42.) Plaintiffs also claim Defendants committed wire fraud by "rely[ing] on interstate wires" to "disseminate funds and to make purchases with the fraudulently acquired wire transfers…" and to transmit and disseminate false, fraudulent, and misleading communications. (*Id.* ¶¶ 383, 385.) Plaintiffs further claim that Defendants "induced these clients to pay large retainers for immigration services many did not qualify for" and fraudulently retained overpayments made by clients instead of reimbursing them. (*Id.* ¶¶ 89-93, 362.)

Plaintiffs fail to adequately allege with particularity the fraudulent circumstances underlying their RICO claims. First, Plaintiffs offer only conclusory allegations that Defendants fraudulently caused clients to pay large retainers for immigration services they did not qualify for (TAC ¶¶ 288, 362) and intended for clients to be placed in removal proceedings (*id.* ¶ 226). Plaintiffs' conclusion appears to rest on Wealth's allegations that Defendants recommended he apply for an immigration visa that they knew he did not qualify for the sole purpose of running up Wealth's bill and to pocket the balance of his retainer. (TAC ¶¶ 64-65, 68, 341). This is conjecture.[9]

Plaintiffs' allegation that Defendants fraudulently retained overpayments made by clients also does not satisfy Rule 9(b)'s particularity requirement. Out of a lengthy 391 paragraphs, Plaintiffs dedicate only a handful to this allegation. (*See* TAC ¶¶ 90-93, 123.) Plaintiffs have failed to plead "the 'date, place or time' of the fraud" or alternatively "inject[ed] precision and some measure of substantiation into their allegations of fraud.'" *Ne. Revenue Servs.*, 685 F. App'x at 102 (quoting *Lum*, 361 F.3d at 224.). Similarly, although Plaintiffs repeatedly emphasize that Amabile represented herself as an attorney (*see, e.g.*, TAC ¶¶ 14, 22, 41, 69-70, 95-96, 99, 101,

---

[9] Wealth argues that Defendants should have recommended he apply for a J-1 visa, but instead recommended he apply for an O-1 visa, which Wealth alleges is "designated for individuals who possess extraordinary ability in the sciences, arts, education, business, or athletics or who have a demonstrated record of extraordinary achievement in the motion picture or television industry." (TAC ¶¶ 33-35.) However, Wealth represented, in an April 12, 2022 email copied and pasted in its entirety in paragraph 197 of the TAC, that he was "considered a world-famous soccer player and ha[d] played on famous teams all over the world." (*Id.* ¶ 197.) In other words, Wealth admits that he represented to Fox that he was a world-famous soccer player, *i.e.*, he qualified for an O-1 visa.

109), Plaintiffs fail to allege with particularity how this misrepresentation was part of the scheme to defraud clients.[10]

For the above-mentioned reasons, Plaintiffs have failed to allege a pattern of racketeering activity under the heightened standard of Fed. R. Civ. P. 9(b).[11] Plaintiffs have not alleged a RICO claim under 18 U.S.C. § 1962(c).

### C. 18 U.S.C. § 1962(d)

Section 1962(d) of RICO makes it unlawful "for any person to conspire to violate § 1962(c)." Plaintiffs' claim under 18 U.S.C. § 1962(d) also fails because Plaintiff has not adequately alleged a RICO claim under 18 U.S.C. §§ 1962(a) or (c). *See Ojo v. Charles*, No. 23-22808, 2024 WL 5165236, at *7 (D.N.J. Dec. 19, 2024) (citing *Aguilar v. Ken's Marine & Oil Serv., Inc.*, No. 14-6735, 2017 WL 2312358, at *3 n.4 (D.N.J. May 25, 2017) and *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under [S]ection 1962(d) based on a conspiracy to violate the other subsections of [S]ection 1962 necessarily must fail if the substantive claims are themselves deficient.")).

For the foregoing reasons, Count 4 of the TAC is dismissed against all Defendants with prejudice.

### D. Supplemental Jurisdiction

The remaining counts are state law claims for fraud (Count 1), violation of NJRICO (Count 2), and legal malpractice by Wealth against Fox and Bahal (Count 3). Title 28 of the United States Code, Section 1367(c) states in relevant part, "[t]he district courts may decline to exercise

---

[10] In Wealth's April 12, 2022 email, embedded in the TAC, he expressly states that Amabile was a "team member[ ]" who worked on his case and was "not the person who filed [his] case" with USCIS. (TAC ¶ 197.) This email, which identifies only Bahal as Wealth's attorney responsible for filing his case, casts doubt on Plaintiffs' allegations that Amabile's representation that she was an attorney factored into the so-called "Immigration RICO enterprise's" scheme to defraud Fox clients.

[11] Because Plaintiffs have failed to allege mail or wire fraud, the Court does not assess the other alleged federal RICO predicate, visa fraud.

supplemental jurisdiction over a claim . . . if . . . the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, [or] the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c). "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must decline to decide the pendent state claims* unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (citation omitted) (emphasis added). Courts in the Third Circuit "have consistently declined to exercise supplemental jurisdiction over state claims when all federal claims have been decided." *McGowan v. New Jersey*, No. 08-5841, 2009 WL 1687663, at *9 (D.N.J. June 16, 2009) (collecting cases).

Here, the Court has dismissed the federal RICO claim; the Court does not have original jurisdiction over any of the remaining claims.[12] The Court concludes that considerations of judicial economy, convenience, and fairness to the parties do not provide an "affirmative justification" for retaining jurisdiction over the remaining state law claims. *West Mifflin*, 45 F.3d at 788. In this case, the parties have not yet attended an initial Rule 16 conference (*see* ECF 94), and other than initial disclosures (*see* ECF 66), have not engaged in any discovery. For these reasons, the Court declines to retain jurisdiction over Counts 1-3.

### IV.  CONCLUSION

For the reasons stated above, Defendant' motions to dismiss (ECF 81, ECF 82, ECF 83) Count 4 of the TAC (ECF 75) are **GRANTED**.  A court may dismiss a claim with prejudice when leave to amend would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.

---

[12] The Court does not have original jurisdiction under any of the state law claims under 28 U.S.C. § 1332 since there is not complete diversity among the parties and Plaintiff has not alleged that the amount in controversy for any individual state law claim exceeds $75,000.

14

2002). A finding that leave to amend would be futile is proper when "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 514 (E.D. Pa. 2018) (Baylson, J.) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434). Allowing Plaintiffs another attempt to plead a federal RICO claim against Defendants would be futile. The Court therefore dismisses Count 4 of the TAC against all Defendants with prejudice. The Court declines to exercise jurisdiction over Counts 1-3. An appropriate order follows.

/s/ Jamel K. Semper  
**HON. JAMEL K. SEMPER**  
**United States District Judge**

Orig:   Clerk  
cc:     James B. Clark, U.S.M.J.  
       Parties